UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARON L. PERKINS | : | CIVIL ACTION NO. |
| | : | 3:07CV967 (JCH) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | |
| | : | |
| *Defendant.* | : | JUNE 4, 2008 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S
RULE 23 STATE LAW CLASS ALLEGATIONS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................... 1

II.  PROCEDURAL BACKGROUND........................................... 3

III. LEGAL STANDARD .......................................................... 4

IV.  LEGAL ARGUMENT ........................................................ 7

A.  Rule 23 Class Claims Such as Those Brought by Plaintiff
    Contravene Congress's Intent to Limit FLSA Collective
    Actions to Individuals Who Affirmatively Request to
    Participate ...................................................................... 7

    1.  Incompatibility Between Rule 23 and FLSA Section
        216(b)..................................................................... 7

    2.  Numerous Courts Have Recognized the Irreconcilable
        Differences Between the FLSA and Rule 23......................... 8

    3.  The Incompatibility Between Rule 23 and the FLSA Was
        Intended by Congress ........................................... 9

    4.  Allowing Ms. Perkins to Pursue Her State Law Claim
        As an Opt-Out Class Action Would Undermine
        Congressional Intent............................................. 12

B.  The Rule 23 Claims Should be Dismissed Because the Class
    as Pled Is Unascertainable .............................................. 17

    1.  Plaintiff Is Required to Plead an Ascertainable Class in
        Her Complaint ................................................... 17

    2.  Plaintiff Has Failed to Plead an Ascertainable Class ......... 19

    3.  Plaintiff Has Pled an Impermissible Fail Safe Class .......... 22

C.  Plaintiff's Rule 23 Class Allegations Should be Dismissed
    Because, as a Matter of Law, She Cannot Show That a Class
    Action Is Superior to Other Available Methods of Adjudication . 25

D.  The Court Should Dismiss Plaintiff's Rule 23(b)(2) Class Claim
    Because Plaintiff's Action Seeks Primarily Money Damages...... 29

1. Plaintiff's Claim for Injunctive Relief Does Not Predominate Over the Monetary Relief Sought............................................. 29

2. The Statutes Plaintiff Claims Were Violated Do Not Authorize Injunctive Relief..................................................................... 33

V. CONCLUSION........................................................................ 34

## I.      **INTRODUCTION**

Sharon Perkins has sued the Southern New England Telephone Company ("SNET") alleging that it violated both Connecticut and federal wage and hour laws. Plaintiff's federal and state claims are based on identical factual allegations and legal contentions — namely, that SNET should have classified her as a non-exempt employee and paid her overtime for hours worked in excess of forty (40) each week.  Amended Complaint ¶¶ 3, 5.

Seeking to avoid the consequences of the Fair Labor Standards Act's ("FLSA's") opt-in procedures, plaintiff purports to sue on behalf of herself and others "similarly situated" by bringing a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") together with a collective action under the FLSA.  For the reasons set forth below, she cannot do this.  In her Amended Complaint, Ms. Perkins asserts that she will pursue her FLSA claim as an "opt-in" collective action on behalf of similarly situated employees who file written consents to join this action pursuant to 29 U.S.C. § 216(b), and her parallel state law claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all similarly situated employees who do not affirmatively "opt out" of the action.  Amended Complaint ¶¶ 6, 15, 17, 49, 83, 103.

*First*, even if all of plaintiff's factual allegations were true — which the Court must assume for the purposes of this Motion to Dismiss only — because of the irreconcilable differences between the FLSA's opt-*in* and Rule 23's opt-*out* procedures which this Court previously recognized in <u>Vogel v. American Kiosk Mgt.</u>, 371 F. Supp. 2d 122, 127 (D. Conn. 2005) (Hall, J.), plaintiff's cause of action under Rule 23 does not state a claim for relief.  Specifically, in a purported "hybrid" case like the present one, individual claimants who do not opt in to the FLSA action will nevertheless have their

FLSA rights foreclosed by virtue of a Rule 23 state law judgment. Such a result would circumvent the clear congressional intent embodied in Section 216(b) of the FLSA that no person shall have his FLSA rights adjudicated without his express written consent. For this reason, the Court should dismiss and/or strike the state law class allegations under Rule 23 from the Amended Complaint.

*Second*, the Court should dismiss plaintiff's Rule 23 class allegations because plaintiff has pled insufficient information regarding the members of the purported Rule 23 class. In addition, plaintiff has pled an impermissible "fail safe" class. For both reasons, her purported Rule 23 class is wholly unascertainable.

*Third,* as evidenced by plaintiff's concurrent pursuit of a like claim with the Connecticut Department of Labor ("CT DOL"), and the fact that she bases her Rule 23 class claims on essentially the same alleged facts upon which she bases her FLSA claims, a Rule 23 class action is not superior to other methods for adjudication available to, and indeed already being utilized by plaintiff.

*Fourth*, the Court should dismiss plaintiff's claims under Rule 23(b)(2) because her action seeks primarily money damages, and Rule 23(b)(2) claims may proceed only where injunctive relief is the predominant relief sought in the action.

For all of the above reasons, SNET respectfully requests that the Court dismiss and/or strike the Rule 23 class action allegations that accompany plaintiff's state law claims in this case, and that plaintiff pursue her state law claim on behalf of herself and only those similarly situated individuals who consent to join this action in the FLSA opt-in procedure.

## II.   **PROCEDURAL BACKGROUND**

In her Amended Complaint dated May 7, 2008 ("Amended Complaint"), plaintiff, who currently works for SNET as a construction manager, filed suit against SNET alleging violations of the FLSA and the Connecticut Wage Act.   In her Amended Complaint, plaintiff purports to sue on behalf of a class "pursuant to FLSA Sec. 216(b) and pursuant to Federal Rule of Civil Procedure 23." Amended Complaint ¶ 49.   Plaintiff alleges that the class consists of "two hundred individuals, more or less," Amended Complaint ¶ 50; she also avers that the intended class consists "of *all* employees who are, or have been, employed by   SNET in the applicable liability period." Id. at ¶ 60 (emphasis added).   Leaving the door open to include unlimited numbers and types of job titles, plaintiff alleges that the "Class consists of individuals SNET employs or did employ in positions classified as 'Level One' positions and bearing job titles of *no less* than 'Manager, Network Services,' 'Manager Construction and Engineering,' and 'Administrative Manager Construction Engineering.'"[1] Id. at ¶ 61 (emphasis added).

In a Statement of Claim for Wages dated July 6, 2007 filed by plaintiff with the Connecticut Department of Labor ("CT DOL Complaint"), she makes claims almost identical to those in the present case.   See CT DOL claim at Exh. A; see also Amended Complaint ¶ 24 (stating that plaintiff filed a complaint with the CT DOL "concurrent[ly]" with her federal court action).[2]

Plaintiff bases her federal and state claims, as well as her CT DOL Complaint, on virtually identical allegations — namely, that SNET misclassified her and other

---

[1]   There are approximately 115 job titles currently held by Level One managers at SNET.

[2]   In her CT DOL complaint, Perkins identifies "ATT Communications," as her employer, with an address at "AT&T East" and "AT&T Inc."   Following extensive briefing and a hearing on this issue, and as reflected in her Amended Complaint, plaintiff now acknowledges that her employer is SNET.   See, e.g., Amended Complaint ¶ 2.

"similarly situated" individuals as exempt rather than nonexempt employees for purposes of overtime payments. Plaintiff claims such classification was unlawful because the work that she and the other employees performed did not qualify for the executive, administrative, or professional exemptions to the state and federal overtime requirements. Amended Complaint ¶ 47. She claims that SNET therefore owes the employees overtime compensation for time worked in excess of forty hours a week pursuant to the FLSA and the CWA. As a remedy for these alleged violations, plaintiff seeks compensatory and punitive damages, as well as injunctive relief. See Amended Complaint, Prayer for Relief on Class Claims.

Plaintiff and any similarly situated employees were properly classified by SNET as exempt employees under both state and federal law. However, this Court should dismiss and/or strike plaintiff's state law class allegations because plaintiff may not proceed with her state law claim on behalf of a Rule 23 class.

## III.   <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes this Court to dismiss any aspect of a complaint on the ground that some or all of it fails to state a claim upon which the Court can grant relief — including invalid Rule 23 allegations. See <u>Otto v. Pocono Health Sys.</u>, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006) (granting motion to dismiss Rule 23 allegations because allowing them to proceed would essentially nullify Congress' intent in crafting § 216(b) and eviscerate the purpose of § 216(b)'s opt-in requirement).

Second, Rule 12(f) authorizes a court to "strike from a pleading" any matter that is "immaterial" or "impertinent." Fed. R. Civ. P. 12(f). By violating the substantive rights imparted by the FLSA, the Rule 23 allegations asserted by plaintiff are immaterial

and impertinent, and this Court should strike them from the Amended Complaint. <u>Himmelman v. Continental Cas. Co.</u>, No. 06-166, U.S. Dist. LEXIS 56187,[3] at *5-6 (granting motion to strike state law class allegations because Rule 23 opt-out class action would be "inherently incompatible" with Section 216(b) opt-in collective action and would undermine Congress's intent).

Finally, Rule 23(d) grants a court discretion to issue orders to manage class action proceedings as necessary. Fed. R. Civ. P. 23(d). Rule 23(d) gives a court flexibility in the management of the action to focus attention on the need to conduct the litigation without undue complication or repetition. <u>Green v. Wolf Corp.</u>, 406 F.2d 291, 298 (2d Cir. 1968). To aid in the management of such actions, Rule 23(d)(1)(D) expressly authorizes a court to order "that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

In <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), the United States Supreme Court recently addressed the standard for evaluating a complaint challenged under Rule 12(b)(6). The Court held that to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." <u>Id.</u> at 1965. A viable complaint must set forth "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.

Therefore, while in deciding a motion to dismiss under Rule 12 the Court must take as true the allegations in plaintiff's complaint and construe them in a manner favorable to sustaining plaintiff's causes of action; <u>see</u> <u>Waisonovitz v. Metro-North</u>

---

[3] For the convenience of the Court, defendant is filing copies of the unpublished opinions cited in this memorandum in a separately filed Appendix of Unpublished Authority re Defendant's Memorandum of Law in Support of Its Motion to Dismiss and/or Strike Plaintiff's Rule 23 State Law Class Allegations.

Commuter R.R., 462 F. Supp. 2d 292, 292-93 (D. Conn. 2006) (Hall, J.); Twombly confirms that to survive a motion to dismiss, plaintiff must, at a minimum, plead facts sufficient to establish that her right to relief is plausible and based on more than mere speculation. Twombly, 127 S.Ct. at 1965-74.

Under Rule 23(c), "*[a]t an early practicable time*" the Court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c) (emphasis added); see also Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998) (Rule 23 does not preclude court from considering motion to dismiss or motion for summary judgment prior to resolving whether class should be certified); Glewwe v. Eastman Kodak Co., No. 05-6462T, 2006 U.S. Dist. LEXIS 33449, at *6-7 (W.D.N.Y. May 25, 2006) (observing that Rule 23(c)(1) encourages that class rulings be made at an early juncture, court dismissed Rule 23 claims before plaintiffs moved for class certification); Neary v. Metro. Prop. & Cas., 472 F. Supp. 2d 247, 250 (D. Conn. 2007) (Arterton, J.) (declining to exercise supplemental jurisdiction over Rule 23 class claims in context of Rule 12(b)(6) motion to dismiss); Woodard v. Fedex Freight East, Inc., No. CV-06-1968, 2008 U.S. Dist. LEXIS 11919, at *10-12 (M.D. Pa. Feb. 19, 2008) (striking Rule 23 claims brought with claims under the FLSA); Herring v. Hewitt Assocs., No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5-6 (D. N.J. Aug. 11, 2006) (ruling that it is proper to strike class action allegations prior to discovery when "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," court struck Rule 23 claims because Rule 23 opt-out and FLSA opt-in actions are "inherently incompatible") (internal quotation marks omitted); Barabin v. ARAMARK Corp., 210 F.R.D. 152, 160-62 (E.D. Pa. 2002), aff'd, 2003 U.S. App. LEXIS 3532 (3d Cir. 2003) (striking class

claim where plaintiff failed to plead allegations sufficient to satisfy predominance and superiority prerequisites of Rule 23).

Because plaintiff's Rule 23 Class Claim fails to state a claim for relief, the Rule 23 allegations should be dismissed and/or stricken on the present motion.

## IV.   **LEGAL ARGUMENT**

### A.   **Rule 23 Class Claims Such as Those Brought by Plaintiff Contravene Congress's Intent to Limit FLSA Collective Actions to Individuals Who Affirmatively Request to Participate.**

#### 1.   **Incompatibility Between Rule 23 and FLSA Section 216(b).**

Under the FLSA, an individual only becomes a party to a collective action if she affirmatively asks to be made a party.   Therefore, an individual's rights are not adjudicated unless and until she agrees and advises the court that she wants them to be adjudicated.   See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such [FLSA] action **unless** he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought") (emphasis added).

Rule 23 operates in a directly contrary manner.   Under Rule 23(b)(3), unless a putative plaintiff affirmatively takes action to *exclude* herself from a proposed suit, she becomes a plaintiff and a *party* to the certified class action.   As a result, under Rule 23, any judgment on the underlying issues binds a putative plaintiff who does not take the actions necessary to advise the court that she does not wish her rights to be adjudicated in the proposed action.   See Vogel, 371 F. Supp. 2d at 127.   As this Court elaborated in Vogel:

> In a Rule 23 proceeding a class action is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has opted out of the suit. Under § [216(b)] of [the] FLSA, on the other hand, no person will be

bound by or may benefit from judgment unless he has affirmatively opted into the class; that is, given his written, filed consent.

Id. (internal quotation marks omitted) (*quoting* LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975)).[4]   Consequently, a plaintiff in an FLSA action "has no procedural right to represent other plaintiffs" that have not joined the action.  Id.

As the court summed up in Leuthold v. Destination Am., 224 F.R.D. 462 (N.D. Cal. 2004), an "FLSA suit provides a means of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join.  By contrast, a Rule 23 class requires that a  potential class member take affirmative action not to be bound by the judgment." Id. at 469-70.  The two actions  are therefore at their core incompatible and when, as here, plaintiff seeks to pursue the same alleged claims under both Rule 23 and FLSA Section 216(b), the two cannot coexist.

## 2.    Numerous Courts Have Recognized the Irreconcilable Differences Between the FLSA and Rule 23.

Numerous courts, including this Court, have recognized that "[t]here is a fundamental, irreconcilable difference" between an "opt-out" class action brought pursuant to Rule 23 and an "opt-in" collective action brought under the FLSA.  See Vogel, 371 F.Supp. 2d at 127 (citing cases); Neary v. Metropolitan Property & Cas., 472

---

[4]  LaChapelle involved a plaintiff's attempt to bring a Rule 23 class action for violation of the Age Discrimination in Employment Act ("ADEA").  Because the ADEA incorporates Section 216(b)'s procedures, the LaChapelle court held that "Rule 23 [could] not be invoked to circumvent the consent requirement of the third sentence of FLSA § 16(b) which has unambiguously been incorporated into ADEA" because the "two types of class actions are mutually exclusive and irreconcilable." LaChapelle, 513 F.2d at 289 (footnote omitted).  Several courts have followed LaChapelle and struck or dismissed ADEA claims that plaintiffs have attempted to bring under Rule 23.  See, e.g., Watkins v. Milliken & Co., 613 F. Supp. 408, 418-21 (W.D.N.C. 1984).  Courts also apply LaChapelle's logic in decisions involving attempts to combine FLSA and Rule 23 claims, ruling that such actions may not be combined.  See, e.g., Wyatt v. Pride Offshore, Inc., No. 96-1998, 1996 U.S. Dist. LEXIS 13335 (E.D. La. Sept. 6, 1996); McCann v. Chicago, No. 89 C 2879, 1990 U.S. Dist. LEXIS 5448 (N.D. Ill. May 3, 1990).

F. Supp. 2d 247, 250 (D. Conn. 2007) (same) (internal quotation marks omitted; *quoting* Vogel); see also Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 443-48 (W.D. Pa. 2007) (extensive discussion with citations).  In fact, "the prevailing view in the Second Circuit, and other Circuits is that actions such as those pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles." Vogel, 371 F. Supp. 2d at 127.

The fundamental incompatibility between the procedures set forth in Rule 23 and FLSA § 216(b) is the basis upon which courts have repeatedly refused to allow Rule 23 class claims to proceed with FLSA § 216(b) claims.  See Ellis, 527 F. Supp. 2d at 460-61 (dismissing Rule 23 parallel state law claims brought together with FLSA § 216(b) collective action);  Williams v. Trendwest Resorts, Inc., No. 2:05-CV-0605, 2007 U.S. Dist. LEXIS 62396, at *8-12  (D. Nev. Aug. 20, 2007) (granting defendant's motion for judgment on the pleadings and dismissing Rule 23 class claims); Ramsey v. Beck & Co., No. 07-635, 2007 U.S. Dist. LEXIS 56129, at *10-12 (E.D. Pa. Aug. 1, 2007) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 claims); Herring v. Hewitt Assoc., Inc., No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5-8 (D. N.J. Aug. 11, 2006) (striking Rule 23 class allegations).

### 3.     The Incompatibility Between Rule 23 and the FLSA Was Intended by Congress.

That the FLSA works directly counter to Rule 23 is no accident but rather was a deliberate act by Congress.  Prior to 1947, the FLSA operated similarly to Rule 23 in that it did not require individuals expressly to "opt in" in order to become parties to a collective action. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 173 (1989) (internal quotation marks omitted).

Because of a concern with the impact on employers of allowing "opt-*out*" FLSA class actions, in 1947 Congress amended the FLSA through the Portal-to-Portal Act. "In enacting the Portal-to-Portal Act of 1947, Congress made certain changes" to the FLSA, with the end result being what today is referred to as the "opt in" requirement. Id. As a result, Congress's amendment adding the "opt-in" language to the FLSA "prohibit[s] what precisely is advanced under Rule 23 — a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members." Cameron-Grant v. Maxim Healthcare Servs. Inc., 347 F.3d 1240, 1248 (11th Cir. 2003) (citations and internal quotation marks omitted). "It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge." Otto v. Pocono Health System, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006).

In discussing the Portal-to-Portal Act amendments to the FLSA, the Supreme Court explained,

> In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. See 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell). *The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions.*

Hoffmann-La Roche, 493 U.S. at 173 (emphasis added).  Thus, "[t]he FLSA recognizes two principal substantive rights: the right of employers not to be sued in representative actions, and the right of employees not to have their rights litigated without their knowledge and express consent. *As the legislative history makes clear, the FLSA's opt-in requirement is the device by which those rights are secured.*" Ellis, 527 F. Supp. 2d at

456 (footnote omitted; emphasis added); see also Moeck, 2006 U.S. Dist. LEXIS 511, at *15 (D. N.J. Jan. 5, 2006) ("Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions."); Otto v. Pocono Health Sys., 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006) ("It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge"); accord Evancho v. Sanofi-Aventis U.S., Inc., No. 07-2266, 2007 U.S. Dist. LEXIS 93215, at *16 (D. N.J. Dec. 18, 2007) (dismissing state-law class claims because "[p]laintiffs . . . are not permitted to 'circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA,' as this would 'undermine Congress's intent to limit these types of claims to collective actions.'").

In essence, and as the Northern District of Illinois stated in an often cited sua sponte memorandum issued in Rodriguez v. Texan, Inc., No. 01 C 1478, 2001 U.S. Dist. LEXIS 24652, at *3 (N.D. Ill. March 7, 2001):

> [The] *powerful policy considerations* that led Congress to change the original version of the [FLSA] . . . so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions . . . [and the] underlying congressional intent [of FLSA's opt-in requirement] would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

(internal citation omitted); see also Moeck, 2006 U.S. Dist. LEXIS 511, at *15-16 (allowing a plaintiff "to circumvent the opt-in requirement [of § 216(b)] and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA

would undermine Congress's intent to limit these types of claims to collective actions.").

### 4. <u>Allowing Ms. Perkins to Pursue Her State Law Claim as an Opt-Out Class Action Would Undermine Congressional Intent</u>.

Ms. Perkins's attempt to pursue her state law overtime claim as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." <u>See</u> <u>Otto</u>, 457 F. Supp. 2d at 524. Specifically, allowing plaintiff to utilize the "opt out" class action mechanism would cause current and former SNET employees to have their FLSA rights adjudicated indirectly without their express written consent.

Given the factual and legal similarities between plaintiff's FLSA overtime claim and her state law overtime claim, adjudication of plaintiff's state law claim on behalf of a Rule 23 class would have preclusive effect on the parallel FLSA claims of every member of the Rule 23 class — including those who do not consent to join the FLSA collective action. In other words, once adjudicated as a matter of *state* law, the overtime rights of individuals who did not join the collective action will nonetheless be adjudicated as a matter of *federal* law.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Gonzalez v. City of New York</u>, 396 F. Supp. 2d 411, 415 (S.D.N.Y. 2005) (quoting <u>Monahan v. City of New York Dep't of Corrections</u>, 214 F.3d 275, 285 (2d Cir. 2000)). To determine whether the doctrine of *res judicata* will bar a subsequent action, courts should consider whether (a) the prior decision was a final judgment on the merits, (b) the litigants were the same parties, (c) the prior court was of

competent jurisdiction, and (d) the causes of action were the same.  Gonzalez, 396 F.

Supp. 2d at 415 (employment discrimination claims of police officers were barred by *res*

*judicata* where officers were absent class members in prior class action involving the

same facts).

If the Court were to allow Ms. Perkins to proceed with her state law overtime

claim as a Rule 23 class action, individuals who did not opt out of the Rule 23 class

would be forever barred by principles of *res judicata* from pursuing their own FLSA

overtime claim — even if they did not affirmatively consent in writing to have their

FLSA claims adjudicated in these proceedings.  First, the final order issued by this Court

in this action (whether as an adjudication on the merits or an approval of settlement) will

qualify as a final judgment on the merits.  Gonzalez, 396 F. Supp. 2d at 415.  Second, so

long as proper notice procedures are followed with respect to a Rule 23 class action,

absent class members who do not "opt out" will be deemed to be "parties" who are bound

by the final judgment for purposes of *res judicata*, even if they never receive actual

notice of the class action.  Id. at 415-18.  Third, this Court would not even consider

plaintiff's attempt to pursue a Rule 23 class action if it did not first conclude that it was a

court of competent jurisdiction.  Finally, plaintiff's claim for overtime under Connecticut

law is the "same" as her claim for overtime under the FLSA for purposes of res judicata,

since it is based on the same transactions or events, the same evidence is needed to

support both claims, and the facts essential to the FLSA action are the same as those that

are essential to the state action.  Gonzalez, 396 F. Supp. 2d at 418.

Numerous District Courts that have addressed this issue have relied on the

"irreconcilable difference" between the FLSA and Rule 23 that was decisive in Vogel to

13

conclude that a plaintiff may not bring both FLSA and Rule 23 wage and hour claims in an action in federal court.  In recent and persuasive decisions from the Third Circuit, two District Courts have aptly explained the incompatibility of Rule 23 state law class claims and Section 216(b) collective action claims and ruled that the Rule 23 claims could not proceed.  In Evancho, 2007 U.S. Dist. LEXIS 93215 at *1-2, plaintiffs filed suit on behalf of themselves and "others similarly situated," alleging that defendants had violated the FLSA and Pennsylvania and California wage laws, and, like the plaintiff in the present case, they sought to bring their claims under both FLSA § 216(b) and Rule 23.  Granting the defendants' motion to strike plaintiff's Rule 23 claims, the District Court of New Jersey ruled that plaintiffs could not proceed with claims for overtime compensation through both an FLSA collective "opt-in" action and a Rule 23 "opt-out" class action.  Id. at *16-17.  The Court ruled that "[p]laintiffs . . . are not permitted to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA, as this would undermine Congress's intent to limit these types of claims to collective actions."  Id. at *16 (internal quotation marks omitted).

In Ellis, 527 F. Supp. 2d at 452, the District Court for the Western District of Pennsylvania dismissed plaintiff's Rule 23 state law wage claims in connection with its consideration of a proposed class settlement.  In so doing, the court explained its rationale as follows:

> In light of the policies that underlie the FLSA; Congress's clear intent to further those policies through enactment of the Portal-to-Portal Act's amendments to section 16(b) of the FLSA, 29 U.S.C. § 216(b); *and the total negation of those policies that would occur if the Court were to allow Plaintiffs to pursue state law overtime remedies under Fed. R. Civ. P. 23 and FLSA opt-in remedies in the same action*, the Court finds that Plaintiffs' parallel state claims must be dismissed.

(emphasis added).

Similarly, in <u>Otto</u>, 457 F. Supp. 2d at 524, persuaded by other courts that had viewed FLSA and Rule 23 claims as "inherently incompatible," the District Court for the Middle District of Pennsylvania dismissed the plaintiff's state law wage claim.   The Court held that allowing a Section 216(b) opt-in collective action to proceed together with a Rule 23 opt-out state law class action "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement."   Most recently, in <u>Warner v. Orleans Home Builders, Inc.</u>, No. 08-260, 2008 U.S. Dist. LEXIS 37962, at *15 (E.D. Pa. May 8, 2008), the District Court for the Eastern District of Pennsylvania dismissed state law wage and hour claims brought together with an FLSA action because it "agree[ed] with the courts in <u>Ramsey</u>, <u>Otto</u>, and <u>Herring</u> that FLSA collective actions for overtime pay are 'inherently incompatible' with Rule 23 state-law class actions for overtime pay and that allowing the two types of actions to proceed in federal court in a single suit would undermine Congress's intent in implementing an opt-in requirement for FLSA collective actions." <u>Id.</u>; <u>see also</u> <u>Herring</u>, 2006 U.S. Dist. LEXIS 56189, at *5-7 (striking Rule 23 state law class claims as "inherently incompatible" with FLSA Section 216(b) claim); <u>Himmelman v. Continental Cas. Co.</u>, No. 06-166 2006 U.S. Dist. LEXIS 56187, at *5-6 (D. N.J. Aug. 11, 2006) (same).

Although District Courts across the country are not unanimous in ruling that a plaintiff may not bring a  Rule 23 claim together with an FLSA § 216(b) action, at least one recent ruling has indicated that the majority of courts that have considered the issue have ruled that in such "hybrid" situations, the Rule 23 claim must fail. <u>See</u> <u>Williams v. Trendwest Resorts</u>, No. 2:05-CV-0605, 2007 U.S. Dist. LEXIS 62396, at *6-7  (D. Nev.

Aug. 20, 2007). <u>Williams</u> recognized that a "*handful*" of courts have concluded that an FLSA and Rule 23 claim may be brought together, while in "*a number of other recent decisions*" courts have "conclude[d] that it contravenes the purposes of the FLSA to allow simultaneous FLSA and Rule 23 collective actions." <u>Id.</u> at *7-9 (emphasis added; *citing* cases). In <u>Williams</u>, the District Court for the District of Nevada decided to "follow[ ] the latter line of cases and [found] that the class action mechanisms of the FLSA and Rule 23 are incompatible." <u>Id.</u> at *10-11. The <u>Williams</u> Court dismissed plaintiffs' Rule 23 claims, which alleged violations of the California Business and Professions Code. <u>Id.</u> at *11-12.

Like the many cases that have addressed Rule 23 state wage claims brought within actions under the FLSA, this Court should dismiss plaintiff's claim under Rule 23, because such claims are inherently incompatible with her claims under the FLSA. Therefore, to allow the Rule 23 claims to proceed would "essentially nullify Congress's intent in crafting Section 216(b) [of the FLSA] and eviscerate the purpose of [its] opt-in requirement." <u>Otto</u>, 457 F. Supp. 2d at 524. In effect, under plaintiff's proposed hybrid action, any current or former SNET managers who did nothing in response to a Court notice about this action (i.e., who did not opt in to the FLSA collective claim or opt out of the state class claim) would have their right to assert their own FLSA claims abridged by the factual findings, legal conclusions and judgment entered with respect to Ms. Perkins's state law overtime claim. The fundamental right of such individuals to have their FLSA rights adjudicated only upon their written consent would be extinguished. As one District Court explained in support of its decision not to exercise supplemental jurisdiction over a state law claim brought in connection with an FLSA § 216(b) claim:

> Allowing plaintiffs to proceed with a state-law class action here would confound Congress' design for the collective action and inject unacceptable complexities into the management of the case.   [An individual] with notice of her right to opt in to the FLSA claim and to opt out of the state class action might reasonably decide not to respond to the notice – but then she would be a party in the class action and not a party in the collective action.  *A judgment in the class action might operate to preclude her from pursuing an FLSA claim on her own, a result plainly at odds with Congress's intent to allow workers to preserve FLSA claims by declining to opt in.*

Chase v. Aimco Props., L.P., 374 F. Supp. 2d 196, 202 (D.D.C. 2005) (emphasis added).

**B.      The Rule 23 Claims Should be Dismissed Because the Class as Pled Is Unascertainable.**

**1.      Plaintiff Is Required to Plead an Ascertainable Class in Her Complaint.**

In addition to the requirements of numerosity, commonality, typicality, and adequacy of representation of Rule 23, "[a]lthough not specifically mentioned in Rule 23(a), there is an additional prerequisite to certification — that the class be ascertainable." Heffelfinger v. Electronic Data Sys. Corp., No. CV 07-00101, 2008 U.S. Dist. LEXIS 5296, at *25 (C.D. Cal. Jan. 7, 2008).  In effect, "[t]he courts have created two additional requirements:  first, that an identifiable class exists *from the outset of litigation*, and second, that the representative plaintiff be a member of that class." Petrolito v. Arrow Fin. Serv., LLC, 221 F.R.D. 303, 307 (D. Conn. 2004) (citing Norman v. Conn. State Bd. of Parole, 458 F.2d 497 (2d Cir. 1972)).

The plaintiff must plead an ascertainable class before the Court engages in its analysis under Rule 23 as to class certification.  See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiff must first define an ascertainable and identifiable class. Once an ascertainable and identifiable class has been defined, plaintiffs must show that

they meet the four requirements of Rule 23(a), and the two requirements of Rule 23(b)(3)" (citation and footnote omitted)); <u>O'Connor v. Boeing North American, Inc.</u>, 184 F.R.D. 311, 319 (D.C. Cal. 1998) (noting that the class definition must be "precise, objective and presently ascertainable"); <u>Bishop v. Saab Auto, A.B.</u>, No. CV 95-0721 JGD (JRx), 1996 U.S. Dist. LEXIS 22890, at *9-10 (C.D. Cal. Feb. 16, 1996) ("To file an action on behalf of a class, the named plaintiffs must be members of the class that they purport to represent at the time the class action is certified. *The named plaintiff must also demonstrate that the class is ascertainable.*") (emphasis added; citations omitted); <u>Bentley v. Honeywell Intern., Inc.</u>, 223 F.R.D. 471, 477 (S.D. Ohio 2004) ("Before delving into the `rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists . . . . "); <u>Robin v. Gillespie</u>, 219 F.R.D. 179, 183 (D. Kan. 2003) ("[a]bsent a cognizable class, determining whether Plaintiffs . . . satisfy the other Rule 23(a) and (b) requirements is unnecessary") (internal quotations omitted); <u>Buford v. H & R Block, Inc.</u>, 168 F.R.D. 340, 346 (S.D. Ga. 1996) ("[C]lass definition is an implicit requirement which must be met before a Rule 23 analysis can be undertaken by the district court.").

Thus, a class is properly described only if it is "precise, objective, and presently ascertainable." <u>Mentor v. Imperial Parking Sys., Inc.</u>, 246 F.R.D. 178, 182 (S.D.N.Y. 2007) ("Rule 23 contains an implicit requirement that the proposed class be precise, objective, and presently ascertainable."); <u>Toure v. Cent. Parking Sys.</u>, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *12 (S.D.N.Y. Sept. 28, 2007) (same). By requiring that a proposed class be ascertainable, Rule 23 ensures that the Court will be able to determine who is, and is not, a member without having to conduct factual inquiries into

each person's circumstances.  See Jankowski v. Castaldi, No. 01-cv-0164, 2006 U.S. Dist. LEXIS 4237, at *14 (E.D.N.Y. Jan. 13, 2006) ("[I]t must be 'administratively feasible for a court to determine whether a particular individual is a member of the class and the Court must be able to make this determination without having to answer numerous individualized, fact-intensive questions.") (quoting Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 181 (S.D.N.Y. 2005)).

"Where . . . a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition." Heffelfinger v. Electronic Data Systems Corp., Case No. CV 07-00101 MMM (Ex), 2008 U.S. Dist. LEXIS 5296 (C.D. Cal. 2008); see also Armstrong v. Chicago Park Dist., 117 F.R.D. 623, 626-27 (N.D. Ill. 1987) (a class definition is "self defeating" if "the court is forced to consider the merits of the controversy and to deny [certification] because of inability to define who belongs in [the class] before there has been a full trial"). "The need for a definition that permits identification of members of the class is particularly important where plaintiffs seek certification under Rule 23(b)(3) because of the notice requirements that must be satisfied for such a class." Heffelfinger, 2008 U.S. Dist. LEXIS 5296, at *29 (citing O'Connor, 184 F.R.D. at 319).

## 2.   Plaintiff Has Failed to Plead An Ascertainable Class.

As set forth above, one interpretation of plaintiff's class allegations is that the class consists of all current or former Level One managers who have been "subject to a systemic, willful pattern of denied payment of wages." Amended Complaint ¶ 51.

In her Amended Complaint, plaintiff has described the proposed class variously and ambiguously as follows:

19

22.    At all times material hereto, SNET employed other individuals in other Level One positions bearing job titles of *no less than* "Manager, Network Services," "Manager Construction and Engineering," and "Administrative Manager Construction Engineering."

23.    Other Level One positions of *no less than* "Manager, Network Services," "Manager Construction and Engineering," and "Administrative Manager Construction Engineering," are occupied by individuals employed by SNET and similarly situated to Perkins and the underlying facts of her claims herein.

50.    The Class is composed of two hundred individuals, more or less.

51.    Class Representative Sharon Perkins and the class of SNET employees she seeks to represent have been subjected to a systemic, willful pattern of denied payment of wages *involving a battery of practices*, which have had a continuing, unlawful effect on them and their employment opportunities.  The wrongful actions include (a) requiring employees to accept a classification of their positions as exempt for payroll and remuneration purposes; (b) requiring employees to work extended hours without appropriate overtime compensation; (c) processing payment to employees without proper consideration to the laws and regulations governing overtime and exempt classifications, and; (d) denying employees a right to the protections afforded them under state and federal statute.

59.    Class Representative Sharon Perkins seeks to maintain claims on her own behalf and on behalf of a class of current and former employees at SNET.

60.    The Class consists of *all employees who are, or have been, employed by SNET in the applicable liability period.*  Upon information and belief, there are over two hundred employees in the proposed class.

61.    Upon information and belief, the Class consists of individuals SNET employs or did employ in positions classified as "Level One" positions and bearing job titles of *not less than* "Manager, Network Services," "Manager Construction and Engineering," and "Administrative Manager Construction Engineering."

62.    The Class Representative seeks to represent *all of the employees described above.*   The systemic unlawful action described in this Complaint has been, and is, continuing in nature.

20

69.    As with the members of the Class, the payment of salary, wages, overtime pay and/or other perks and benefits to the Class Representative is inconsistent with the scope and intent of the statute during the liability period.

70.    The unlawful application of the statute for payment of salary, wages, overtime pay and/or other perks and benefits affects the compensation of the Class Representative and all the employee Class members in the same or similar ways.

Amended Complaint, ¶¶ 22, 23, 50, 51, 59, 60, 61, 62, 69, and 70.  According to the Amended Complaint, then, plaintiff's proposed class consists of at least persons holding the titles of "Manager, Network Services," "Manager Construction and Engineering," and "Administrative Manager Construction Engineering" and possibly either any other employees of SNET or any other current or former Level One managers who have been "subject to a systemic, willful pattern of denied payment of wages employed by SNET "in the applicable liability period."

The above definitions, taken together, are completely overbroad and unclear.  It is impossible to determine, on the face of the Amended Complaint, who is part of the proposed class and who is not.[5]

Overbreadth and ambiguity in a proposed class definition are not trivialities that can be overlooked by a court.  Rather, these flaws inhibit a court's ability to determine

---

[5] Defense counsel has attempted several times, both before and after raising the issue with the Court at the status conference on April 4, 2008, to reach agreement with plaintiff's counsel concerning the class description.  While plaintiff's counsel represented in a telephone conference that the class would be limited to SNET employees or former employees in the three titles mentioned in the Amended Complaint, the language of the Amended Complaint is much broader.  Although ambiguous and unascertainable with respect to who is included, the Amended Complaint clearly does not limit the class to the three titles.  On May 19, 2008, the undersigned wrote to plaintiff's counsel again requesting that the plaintiff describe the proposed class in a way that is ascertainable, making the same points made in this memorandum, and requesting that, "[i]n accordance with your discussion with Mr. Vegliante, please revise your proposed amended complaint to clearly encompass only the three titles you described previously, and eliminate the above language which implies a larger, but wholly unidentified, class of employees."  Exh. B attached hereto.  As of the time of this filing, plaintiff's counsel has not responded to this letter.

whether the proposed class meets the standards of Rule 23, including the commonality and typicality of claims, the adequacy of representation and, in the case of a Rule 23(b)(3) class, the predomination of common issues over individual issues.  As one District Court aptly noted:

> Proper identification of the proposed class serves two purposes.  First, it alerts the court and parties to the potential burdens class certification may entail.  In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit for the parties as well as for its own congested docket.  Second, proper class identification insures that those individuals actually harmed by the defendant's wrongful conduct will be the recipients of the awarded relief.

Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 580 (N.D. Ill. 2005) (internal quotation marks omitted), aff'd, 472 F.3d 506 (7th Cir. 2006), cert. denied, 127 S. Ct. 2952 (2007); see also Alliance to End Repression v. Rochford, 565 F.2d 975, 977 n.6 (7th Cir. 1977) ("Since the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class.").  Because plaintiff's purported class is unascertainable, her state law class action allegations should be dismissed and/or stricken from the Amended Complaint.[6]

### 3.    Plaintiff Has Pled an Impermissible Fail Safe Class.

One class description included in the Amended Complaint would encompass every Level One manager of SNET, regardless of title, if that person was improperly

---

[6]    Although there is no express ascertainability requirement under the FLSA, a collective action must also be pled clearly enough to identify the categories of employees whom the plaintiff alleges are similarly situated.  See, e.g., Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("[I]t is incumbent upon Plaintiff to propose an [FLSA] class that is sufficiently defined and manageable from the outset."); Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D. N.J. 2000) (concluding "that the [FLSA] class, as defined, is not appropriate because the scope of the class depends on the outcome of the merits of the litigation.").  Because the collective action allegations in the present Amended Complaint contain the same ambiguities as the Rule 23 allegations, they do not meet the requirement of pleading a sufficiently defined FLSA class, and plaintiff's FLSA collective claim also should be dismissed for the same reason as the Rule 23 claim.

classified as exempt or subjected to another "battery of practices" that resulted in unpaid wages. This approach to class description is known as a "fail safe" class, because no class member so described could ever lose the case. By definition, only those who prevail by proving they were improperly classified would be included. Fail safe class descriptions have been repeatedly held to be impermissible.

If plaintiffs were permitted to proceed on behalf of such a class, it would be impossible for the Court and the parties to determine who belongs in the class without resolving the merits of the case. As one District Court commented in a purported class action by property owners for trespass by a fiber optic cable company,

> The proposed class fails to meet the requirements of Rule 23(c)(3) because the Court cannot enter an adverse judgment that is enforceable against at least some of the proposed class members. The proposed class is limited to those property owners and former owners, of property that is not subject to an easement for installation and maintenance of fiber optic telecommunication cable, who did not consent to DTI's or LightCore's installation and maintenance of the Network. If LightCore proves that (1) a particular parcel is subject to a valid easement, or (2) the property owner of a particular parcel consented to LightCore's use of that parcel, then LightCore should be entitled to a judgment in its favor with respect to the owners of that particular parcel. The Court, however, could not enter judgment against that particular owner because the owner would no longer fit the class definition, quoted above. This type of class definition is called a "fail safe" class because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class. The proposed class definition thus is improper because the Court cannot enter an adverse judgment against the class.

Genenbacher v. Centurytel Fiber Co. II, LLC, 244 F.R.D. 485, 487-88 (C.D. Ill. 2007) (internal citations omitted).

By the same analysis, if Ms. Perkins were permitted to represent a class consisting of all individuals who were misclassified, it would be necessary to decide the merits of each putative class member's individual claim in order to determine whether that person

is actually included in the class.  Just as in <u>Genenbacher</u>, this would be an impermissible "fail safe" class definition under which each class member would either win or be excluded from the class.

By describing the class in this fashion, plaintiff leaves the Court and the defendant with no means of identifying the class members.  When as here the complaint lacks a straightforward, objective means of ascertaining class membership, the Court should dismiss rather than permit the matter to continue as a class action.  <u>See, e.g.</u>, <u>Jankowski</u>, 2006 U.S. Dist. LEXIS 4237, at *14 ("An identifiable class exists if its members can be ascertained by reference to objective criteria.") (quoting <u>In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.</u>, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)); <u>Mike v. Safeco Ins. Co. of Am.</u>, 223 F.R.D. 50, 52-53 (D. Conn. 2004) ("The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.") (*quoting* 7A Charles A. Wright, et al., <u>Federal Practice and Procedure</u> § 1760, at 120-21 (2d ed. 1986)); <u>Mentor v. Imperial Parking Sys., Inc.</u>, 246 F.R.D. 178, 184 (S.D.N.Y. 2007) ("Class membership must be readily identifiable such that a court can determine who is [in] the class and bound by its ruling without engaging in numerous fact-sensitive inquiries."); <u>Toure v. Cent. Parking Sys.</u>, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *20-21 (S.D.N.Y. Sept. 28, 2007) (same).

SNET currently has approximately 1,515 Level One managers in over a hundred titles ranging from managers of IT departments to administrative staff in the legal

department to managers of cable technicians who work in the field.[7]  Defendant has made substantial efforts to place plaintiff on notice that the complaint fails to indicate which of these individuals she purports to represent.  See transcript of April 4, 2008 Court Hearing (raising the unascertainability of the complaint to the Court and plaintiff's counsel in the context of discussing plaintiff's intention to amend the complaint); Exh. B (letter to plaintiff's counsel); Rule 26(f) Report dated March 6, 2008 at 3; Rule 26(f) Report dated May 19, 2008 at 8.  Notwithstanding these efforts, plaintiff has still failed to describe the class in an ascertainable manner.  Consequently, plaintiff's Rule 23 class claims should be dismissed.

**C.      Plaintiff's Rule 23 Class Allegations Should be Dismissed Because, as a Matter of Law, She Cannot Show That a Class Action Is Superior To Other Available Methods of Adjudication.**

The Court should also dismiss the state class allegations brought under Rule 23(b)(3), because plaintiff cannot show that a class action is a "superior" method of adjudicating her state law claims.

A class is maintainable under Rule 23(b)(3) where both (i) "questions of law or fact common to the class members predominate over any questions affecting only individual members," and (ii) where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3).

_____

[7] Plaintiff may claim that she sufficiently identified the class by stating that it includes employees with job functions "similar" to hers.  Such an argument does not avoid the fail-safe problem, and also fails because such a definition does not make the class ascertainable.  In Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 52-53 (D. Conn. 2004), the District Court held that a proposed class defined by the job duties of its members was unascertainable.  Because the class was defined on the basis of job duties, the court would have to individually examine each individual's daily tasks and job responsibilities before it could determine whether they were similar to the plaintiff's. Id.  The Court reasoned that the need for individualized inquiry necessitated a finding that the class was unascertainable and therefore, incapable of being certified under Rule 23.

First, it is undisputed that plaintiff's grievances may be addressed, and indeed *are* being addressed, by the Connecticut Department of Labor ("CT DOL"). See Amended Complaint ¶ 24 ("Plaintiff has filed a complaint with the State of Connecticut, Department of Labor, Wage, and Workplace Standards Division, concurrent with this action, which remains under investigation at the date of this filing."). The Connecticut state legislature created the CT DOL with the intent of providing an expert, efficient, and inexpensive forum in which to resolve precisely the type of state wage and hour disputes that plaintiff is pursuing in this action concurrently with her pursuit of the same claims with the CT DOL. Upon receipt of a complaint such as plaintiff's, the Commissioner of the CT DOL is authorized to conduct a full investigation, which may include "examin[ing] payroll and other records and interview[ing] employees, call[ing] hearings, administer[ing] oaths, tak[ing] testimony under oath and tak[ing] depositions." See Conn. Gen. Stat. § 31-76a. If the Commissioner deems the complaint to be meritorious, he is further empowered to file suit on behalf of the aggrieved employee. See Conn. Gen. Stat. § 31-68.

Plaintiff has not alleged that the remedies or procedural protections available to her in the CT DOL proceeding are inadequate. The fact is that they *are* adequate. In addition, plaintiff alleged that her complaint is currently being investigated by the CT DOL. Accordingly, given the existence of an alternate forum for addressing plaintiff's claims, and the fact that plaintiff is currently availing herself of the procedures of that forum, there is no way for her to demonstrate that initiating a federal class action is the superior means of adjudicating her state law claims.

Second, the "fundamental, irreconcilable difference" between a class action under Rule 23 and a collective action governed by FLSA § 216(b) prevents plaintiff from establishing that a Rule 23 class action is superior to all available alternatives. See Vogel, 371 F. Supp. 2d at 127.  In fact, as set forth at pp. 7-17, supra., there are several reasons why this course of action is *inferior*, including its basic disregard of Congress's expressed intent in creating the FLSA opt-in procedure, the likely confusion that will be born of the competing opt-in/opt-out procedures, and the potential for the "federal tail to wag what is in substance a state dog." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir. 2003).

As one District Court aptly observed, the ability of FLSA plaintiffs to pursue their pendent state law claims as part of the FLSA class action "undercuts all of the Rule 23(b)(3) superiority factors."  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 469 (N.D. Cal. 2004).  Citing this reasoning, several courts have found that a Rule 23 class action is a not a superior method of adjudicating state law claims when there is a concurrent FLSA class action.  See, e.g., De La Cruz v. Gill Corn Farms, Inc., No. 03-CV-1133, 2005 U.S. Dist. LEXIS 44675, at *20-27 (N.D.N.Y. Jan. 25, 2005) ("At this juncture, a class action simply is not a superior method for a fair and efficient adjudication of the controversy" given, inter alia, the congressional preference for the opt-in method of litigation, the danger of confusing potential plaintiffs by asking them to opt-in and opt-out simultaneously, and the potential for the state class vastly to outnumber the federal class); Leuthold, 224 F.R.D. at 470 ("[C]ertifying a Rule 23 class would exacerbate or create numerous problems. . . .  Maintaining the suit exclusively as a FLSA conditional class action is superior to certifying an additional state law class under

Rule 23(b)(3)."); <u>Edwards v. City of Long Beach</u>, 467 F. Supp. 2d 986, 991-93 (C.D. Cal. 2006) (agreeing with <u>Leuthold</u> and concluding that Rule 23 class action was not a superior means of adjudicating the plaintiff's state law claims); <u>Riddle v. Nat'l Sec. Agency, Inc.</u>, No. 05 C 5880, 2007 U.S. Dist. LEXIS 68842, at *8-11 (N.D. Ill. Sept. 13, 2007) (finding federal class action was not a superior method of adjudicating state law claims, because "combining an opt-out state law class and an opt-in FLSA class in one suit subverts congressional intent," "the Rule 23 class would likely dwarf the FLSA class," and "potential class members would likely be confused by a notice that tells them simultaneously about opting-in and opting-out of claims."); <u>McClain v. Leona's Pizzeria, Inc.</u>, 222 F.R.D. 574, 578 (N.D. Ill. 2004) ("[W]e find that certifying a class for [the plaintiff's] state law claims is not the superior manner in which to proceed under Rule 23 (b).  Holding otherwise would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action."); <u>Hasken v. City of Louisville</u>, 213 F.R.D. 280, 282-84 (W.D. Ky. 2003) (finding federal class action is not a superior method of adjudicating state claims where, <u>inter</u> <u>alia</u>, the state class members would have substantially outnumbered the FLSA class members); <u>Muecke v. A-Reliable Auto Parts & Wreckers, Inc.</u>, No. 01 C 2361, 2002 U.S. Dist. LEXIS 11917, at *6 (N.D. Ill. June 25, 2002) (finding the federal class action was not a superior method of adjudicating state claims based on the possibility of having "the rather incongruous situation of a[] FLSA 'class' including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees").

Because of the conceptual and practical difficulties inherent in maintaining a state law class action alongside a FLSA class action, a Rule 23 class action is not a superior means of adjudicating plaintiff's state law claims in this case.  Furthermore, plaintiff can, *and already is*, using the complaint procedure established by the CT DOL to pursue her state law claim.  These circumstances "undercut[ ] all of the Rule 23 (b)(3) superiority factors."  Leuthold, 224 F.R.D. at 469.

D.    **The Court Should Dismiss Plaintiff's Rule 23(b)(2) Class Claim Because Plaintiff's Action Seeks Primarily Money Damages.**

1.    **Plaintiff's Claim for Injunctive Relief Does Not Predominate Over the Monetary Relief Sought.**

Rule 23(b)(2) authorizes certification where Rule 23(a) is satisfied and the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Proc. 23(b)(2).  Rule 23(b)(2) "was never intended to cover causes . . . where the primary claim is for damages . . . . Rather, Rule 23(b)(2) is only applicable when the relief sought is exclusively and predominately injunctive."  Luciano v. Eastman Kodak Co., No. 05-CV-6463T, 2006 U.S. Dist. LEXIS 33452, at *5 (W.D.N.Y. May 25, 2006) (citing Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968), rev'd on other grounds, 479 F.2d 1005 (2d Cir. 1973)).  Thus, a class seeking monetary damages may be certified under Rule 23(b)(2) only where the injunctive or declaratory relief requested *predominates* over the monetary relief sought.  Robinson v. Metro North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001).

Expanding her case even beyond her incompatible causes of action under the FLSA and Rule 23(b)(3), plaintiff also attempts to allege a class claim under Rule

23(b)(2).   Amended Complaint ¶¶ 76, 77; <u>see also</u> Prayer for Relief on Class Claims (asking Court to certify action "as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3)").   Because plaintiff's primary claim in this case is for lost overtime wages — i.e., money damages — it cannot be maintained as a class action under Rule 23(b).   Therefore, in addition to the other reasons that defeat plaintiff's Rule 23 claims in their entirety, plaintiff's claim under Rule 23(b)(2) fails because this action is at its core an action to recoup money damages — allegedly unpaid overtime compensation.   In addition, inasmuch as discovery will not change the damages-focused character of this action, the Court should dismiss plaintiff's allegations under Rule 23(b)(2) at this early juncture in the litigation.

This Court and others have recognized that when a plaintiff attempts to allege a class under Rule 23(b)(1) or (b)(2) together with a class under Rule 23(b)(3), the Court must first determine whether the proposed class satisfies the requirements of Rule 23(b)(1)[8] and/or Rule (b)(2).[9]   See <u>Petrolito v. Arrow Financial Servs.</u>, 221 F.R.D. 303, 311-12 (D. Conn. Apr. 8, 2004) (Hall, J.); <u>McLaughlin v. Liberty Mutual Ins.</u>, 224 F.R.D.

_____

[8]   Rule 23(b)(1) states that a member of a class may maintain a class action if Rule 23(a) is satisfied and if, in addition,

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. Proc. 23(b)(1).

[9]   Rule 23(b)(2) states that a member of a class may maintain a class action if Rule 23(a) is satisfied and if, in addition,

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. Proc. 23(b)(2).

304, 310 (D. Mass. Oct. 30, 2004). This analysis may be properly done on a motion to dismiss, since courts recognize also that they "may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class." See Letouzel, 2006 U.S. Dist. LEXIS 33453, at *5.   Here, there can be no dispute that plaintiff seeks primarily money damages.   She thus cannot state claims under Rule 23(b)(2) and those claims should be dismissed.

Many District Courts have granted motions to dismiss upon finding that the plaintiff could not satisfy the requirements of Rule 23(b)(2).  For example, in Letouzel, 2006 U.S. Dist. LEXIS 33453, at *7-10, the Court granted defendant's motion to dismiss plaintiff's state law wage claims where plaintiff could not satisfy the requirements of Rule 23(b)(2) or Rule 23(b)(3).  In Luciano, 2006 U.S. Dist. LEXIS 33452, at *9, a case out of the Second Circuit, the Court held that where plaintiff sought unpaid overtime under the FLSA and state wage and hour laws, the claims for injunctive relief under Rule 23(b)(2) would be dismissed because "plaintiff's primary goal is an award of damages, and therefore Rule 23(b)(2) is not applicable to this matter."  In Saunders v. Bellsouth Adver. & Publ'g Corp., No. 98-1885, 1998 U.S. Dist. LEXIS 20523, at *1 (S.D. Fla. Nov. 10, 1998), the Court also analyzed the viability of plaintiffs' Rule 23(b)(2) claims early in the class proceedings.  There, the plaintiffs sought to pursue a class action "on behalf of all African-American applicants to and employees of Defendant . . . who . . . [had] [among other things] applied for better paying positions," during a specified period of time.  Id. Rejecting plaintiffs' argument that it was procedurally improper to consider a motion to dismiss directed to the class allegations before plaintiffs filed a motion for class certification, the Saunders Court rejected plaintiffs' argument and dismissed the class

claims. Id. at *2-8. Similar to the present case, plaintiffs in Saunders requested, among other relief, "compensatory and punitive damages in the amount of $50 million[10] as well as back pay." Id. at *5. The Saunders Court dismissed plaintiffs' claims under Rule 23(b)(2) because it concluded that the "[d]etermination of the compensatory and punitive damages" requested was "dependent on the individual circumstances surrounding each potential class member's claim." Id. The Court found that "the monetary relief sought predominate[d] and that therefore, the Plaintiffs' proposed class action [could] not, as a matter of law, be maintained under Rule 23(b)(2)." Id.

Similar to Saunders, in the present case, the determination of any compensatory and punitive damage award would be dependent on the individual circumstances of each potential class member's claim, including an analysis of each individual's job duties to determine exempt status, as well as the individual hours worked by each class member as part of any damages calculation. Moreover, the fact that plaintiff purports to include in her class *former* employees whose interest is solely in back damages — and who have *no* interest in injunctive relief — also makes it crystal clear that plaintiff's predominant claim in the case is for damages.[11] See Amended Complaint ¶¶ 59, 60. Furthermore, documents that are already part of the Court record further illustrate that plaintiff is unquestionably primarily seeking a monetary recovery in this case. See Exh. 1 to AT&T's Memorandum in Support of Motion for Protection and Request for Expedited Conference with the Court dated Sept. 7, 2007 (letter to potential class members sent

---

[10] In plaintiff's Amended Complaint in the present action, she requests damages in excess of $15 million as back pay, front pay, lost benefits, "other damages for lost compensation and job benefits," pre-judgment interest, post-judgment interest, compensatory and punitive damages, as well as litigation costs and expenses. Amended Complaint ¶¶ H, I, J, Prayer for Relief in Class Claims.

[11] The recent Dukes v. Wal-Mart case from the Ninth Circuit has made it clear that former employees have no standing to pursue injunctive relief and therefore cannot bring claims at all under Rule 23(b)(2). See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1189 (9th Cir. 2007) (substitute opinion).

early in the case by the named plaintiff stating, "Should you choose to join this Class Action please contact our attorney at the address provided . . . . Reclassification from exempt to non exempt calculates back pay up to $99,000 per manager.").

Although the Second Circuit differs from others in that courts in this Circuit will consider certifying a class under Rule 23(b)(2) even where plaintiffs' request for damages is more than "incidental," to satisfy Rule 23(b)(2), the injunctive or declaratory relief requested still must "predominate" over the monetary relief sought. Robinson v. Metro North Commuter RR Co., 267 F.3d 147, 164 (2d Cir. 2001). Here, notwithstanding plaintiff's loose references to injunctive relief, her request for monetary relief clearly predominates over any claim for injunctive relief. As in Petrolito, notwithstanding plaintiff's reference to injunctive relief, "monetary remedy is clearly the overwhelming remedy sought." Petrolito, 221 F.R.D. at 312. As in Petrolito, Letouzel, and Saunders, notwithstanding certain allegations in plaintiff's complaint, plaintiff's clear "primary goal is an award of damages, and therefore Rule 23(b)(2) is not applicable to this matter." Saunders, 1998 U.S. Dist. LEXIS 20523 at *9. This Court should therefore dismiss plaintiff's Rule 23(b)(2) class allegations.

### 2.    The Statutes Plaintiff Claims Were Violated Do Not Authorize Injunctive Relief.

Moreover, even if plaintiff's request for relief were "predominantly" injunctive, certification under Rule 23(b)(2) would never be permitted because the federal and state laws that plaintiff invokes do not permit plaintiff to seek injunctive relief. First, it "is well settled that the FLSA does not give a private individual the right to obtain an injunction, but gives this right only to the Secretary of Labor." Letouzel, 2006 U.S. Dist.

LEXIS 33453, at *13.  As for the state claims, Connecticut General Statutes § 31-2(d) authorizes the Connecticut Labor Commissioner to request that the Attorney General bring an action in superior court "for injunctive relief requiring compliance with any statute, regulation, order or permit administered, adopted or issued by the commissioner." However, Connecticut General Statutes § 31-68 and § 31-72 allow only the recovery of wages and attorney's fees in actions to recover wages due for violations of Connecticut General Statutes §§ 31-58 through 31-60, §§ 31-71a through 31-71i, and § 31-76k. Therefore, even if plaintiff in this case were predominantly interested in pursuing injunctive relief, her request for certification under Rule 23(b)(2) must be denied because, as a private individual, she cannot seek the injunctive relief she requests.  See, e.g., Petrolito, 221 F.R.D. at 312 (denying motion to certify Rule 23(b)(2) class action for violations of the Fair Debt Collection Practices Act because the Act does not provide for injunctive relief or declaratory relief that would have the practical effect of an injunction).

## V.     CONCLUSION

Although some courts have permitted plaintiffs to pursue their state law overtime claims through a Rule 23 "opt-out" class action in conjunction with their "opt-in" FLSA overtime action, those courts typically have done so with little (if any) analysis of the preclusive effect of the state claim judgment on the FLSA rights of absent class members, the ease of joinder under Section 216(b), or the superiority of the "opt in" procedures specifically approved by Congress.  As the cases cited throughout this memorandum demonstrate, courts across the country have recently been considering these issues more carefully and are now more commonly rejecting efforts to circumvent the Section 216(b)

opt-in requirement.  SNET respectfully submits that this Court should join the growing number of courts who refuse to allow plaintiffs to evade the requirements of Section 216(b).  For this reason and the additional reasons that the class as pled is unascertainable and that a class action under Rule 23 is not superior to other available methods of adjudication, SNET respectfully requests that plaintiff's state law class allegations be dismissed and/or stricken and t+hat she be allowed to pursue her state law claims on behalf of herself and similarly situated employees only to the extent that they consent to join the action under the procedures set forth in the FLSA.  The Court should also dismiss plaintiff's Rule 23(b)(2) class claim for the additional reason that this action seeks primarily money damages.

THE DEFENDANT
SOUTHERN NEW ENGLAND TELEPHONE
COMPANY

By _____
    Lori B. Alexander CT08970
    Theresa M. Waugh CT23559
    LITTLER MENDELSON, P.C.
    110 Washington Avenue, 3rd Floor
    North Haven, CT  06473
    Telephone:  (203) 234-6344
    Facsimile:  (203) 234-6345
    E-mail:  lalexander@littler.com
    E-mail: twaugh@littler.com

**EXHIBIT A**

# Law Office of Edmond Clark

## Counselor at Law

83 Scotland Avenue
Post Office Box 133
Madison, Connecticut  06443-0133

Telephone: 203.245.4602
Facsimile: 203.245.9734
E-Mail: eclarkmadisonlaw@aol.com

30 July 2007

Lori B. Alexander, Esq.
Littler Mendelson-NH,CT
110 Washington Avenue
Third Floor
North Haven, CT  06473

Re: *Sharon L. Perkins v. AT&T Inc.*
    *Docket No.: 3:07-cv-00967(JCH)*

Dear Attorney Alexander,

    At your request I include herewith, a copy of the complaint as was filed with the Department of Labor, State of Connecticut, and contemporaneously in the matter as above captioned.

    I also wish to take this opportunity to suggest we communicate in the next days for the purpose of fulfilling the obligations of the parties under Local Rule 26(f).

    I shall look forward to speaking with you.

    Thank you.

Sincerely,

EC/we
Enclosure

cc:  Sharon L. Perkins

STATE OF CONNECTICUT
DEPARTMENT OF LABOR
WAGE AND WORKPLACE STANDARDS DIVISION
200 Folly Brook Boulevard, Wethersfield, CT  06109

# *STATEMENT OF CLAIM FOR WAGES*

DATE:               JULY 6, 2007

NAME:               SHARON L. PERKINS   *(Et al.)*

SSN:                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

ADDRESS:            55 MCMULLEN AVENUE
                    WETHERSFIELD
                    CONNECTICUT  06109

TEL. NO.:           (860) 296-5259

TYPE OF WORK:       COMMUNICATIONS CONSTRUCTION & ENGINEERING

EMPLOYER:           AT&T COMMUNICATIONS

ADDRESS:            AT&T EAST                    AT&T INC.
                    310 ORANGE STREET    *and*    175 E. HOUSTON STREET
                    NEW HAVEN, CT  06510         SAN ANTONIO, TX  78205

TEL. NO.:           (203) 771-5200
                                                 (210) 821-4105

TYPE OF
  BUSINESS:         TELECOMMUNICATIONS

PERSON
  IN CHARGE:        REX M. ADAMS

TITLE:              PRESIDENT AND CHIEF EXECUTIVE OFFICER, AT&T EAST

WORK LOCATION OF COMPLAINANT:          1441 North Colony Road
                                       Meriden, CT  06450

NUMBER OF HOURS WORKED PER WEEK:     58

DATE HIRED: March 24, 1978          FIRST WAGE RATE:  Unknown

QUIT:  No       DISCHARGED:  No

DATE OF SEPARATION:  Not Applicable

CURRENT WAGE RATE:  $73,917.00 annually ($35.54 Per Hour or $1,421.60 per week)


WAGES CLAIMED FROM:  Twenty four month period preceding date of compliant –
         July 2005 through July 2007.

AT THE RATE OF $53.31 ($35.54 Per Hour @ 1 ½ overtime rate)

Weekly Rate – 18 hours X $53.31 X 104 weeks (two years)

TOTAL AMOUNT CLAIMED:  $99,796.32

**TYPE OF WAGES CLAIMED:  NOT PAID FOR ALL HOURS WORKED**


**COMPLAINANT'S AFFIDAVIT:**

         Pursuant to Title 29, Part 541, Code of Federal Regulations of the Fair Labor
Standards Act, and Conn. Gen. Stat. Sec. 31-76i an employee is exempt where he/she has no
responsibilities which include hiring, firing, scheduling and assessing employee performance
or determining staffing levels or formulating personnel policies.

         For reasons stated herein, I claim my position, for reasons of a comparison of its
published job description to the actual duties I customarily and regularly perform, should be
considered as Non-Exempt and classified as such for a determination of the payment of my
wages.

1. The position in which I am employed within AT&T is titled Manager – Construction and
Engineering.

2. The job description ("Synopsis") for the position of Manager describes the following duties:

> - coach, lead and develop Customer Systems Technicians in achieving performance and quality objectives;
> - handle customer escalations;
> - interact with other work groups;
> - lead service improvement teams as assigned;
> - serve as duty supervisor;
> - evaluate performance through the use of quality and safety observations;
> - coach technicians on changing competitive environment, new technical practices, and customer contact skills;
> - schedule force appropriate to workload;
> - analyze previous workload trends to make necessary adjustments.

3. My actual duties in performance of the position I hold include:

> - answer voice mail messages;
> - check work assignment log to check on technicians schedules;
> - enter technicians time worked and time off logs;
> - check work sites for safety issues;
> - answer urgent voice mail messages;
> - check workflow for problems;
> - receive, count and log DSL computerized inventory;
> - review websites for work performance problems;
> - review expenses charged to department;
> - coordinate with other work groups on difficult repair jobs;
> - setup spare vehicle use for technicians;
> - prepare six month rotating work schedules;
> - update overtime/weekend schedules;
> - coach technicians on attendance and cell bill overages as directed by my manager.

A. My primary duty does not include the management of the enterprises in which I am employed or that of a customarily recognized department within such enterprise.

B. I do not have the authority to hire other employees or fire other employees, nor do I have the weight of authority necessary to influence the hiring, firing, advancement, promotion or any other change of status of other employees.

C. My duties do not provide me customarily and regularly to exercise discretion and independent judgment decision making, on a more-than-occasional basis, in matters of significance that affect matters of consequence to the business of AT&T and/or its customers.

**EXHIBIT B**



**LITTLER MENDELSON®**

A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

Lori B. Alexander<br>
Direct: (203) 234-6344<br>
Direct Fax: (203) 234-6345<br>
lalexander@littler.com

May 19, 2008

Edmond Clark
83 Scotland Avenue, P.O. Box 133
Madison, CT 06443-0133

Re:   <u>Sharon L. Perkins v. The Southern New England Telephone Company</u>

Dear Attorney Clark:

I have reviewed the Amended Complaint dated May 7, 2008.  I write in accordance with the Court's instruction to attempt to arrive at a complaint that is acceptable to all in this case.  On May 6, 2008, the day before the Amended Complaint was due, we discussed your amendment of the complaint and you also had a conversation with David Vegliante, in-house counsel for SNET, about the Amended Complaint and our view of the appropriate scope of the class in this case. I do not believe the proposed Amended Complaint is consistent with those conversations.

You told Mr. Vegliante you were amending the complaint to narrow the class to employees of SNET holding any of three job titles in Network Services: "Manager, Network Services," "Manager Construction and Engineering," and Administrative Manager Construction Engineering."   Mr. Vegliante explained that the broader class of all SNET first level managers, which you had previously indicated you would include, includes employees with job duties entirely different from those of Ms. Perkins.  You ultimately agreed and told Mr. Vegliante that the Amended Complaint would identify the class as individuals holding three specific job titles within Network Services.

As you know, from the beginning of this case, we have been very concerned that the class, as pled, was unascertainable.  We raised the issue with the Court at the Rule 26(f) Conference on April 4, 2008.  The proposed Amended Complaint does <u>not</u> limit the putative class to those titles you indicated, nor have you described the class members in any other specific way.  I realize this may have been inadvertent since you amended an existing complaint. The proposed Amended Complaint contains the following sections that cause my concern:

> Paragraph 61: "Upon information and belief the Class consists of individuals SNET employs or did employ in positions classified as 'Level One' positions

Edmond Clark
May 19, 2008
Page 2

and bearing job titles of <u>no less than</u> 'Manager, Network Services,' 'Manager Construction and Engineering,' and 'Administrative Manager Construction Engineering.'"

Paragraph 23: "Other Level One positions of <u>no less than</u> 'Manager, Network Services," 'Manager Construction and Engineering,' and 'Administrative Manager Construction Engineering,' are occupied by individuals employed by SNET and similarly situated to Perkins and the underlying facts of her claims herein." (emphasis added)

Paragraph 60: "The Class consists of all employees who are, or have been, employed by SNET in the applicable liability period."

In accordance with your discussion with Mr. Vegliante, please revise your proposed amended complaint to clearly encompass only the three titles you described previously, and eliminate the above language which implies a larger, but wholly unidentified, class of employees.

Your proposed Amended Complaint contains several references to facts and claims that appear to have been taken from complaints in other cases, as they do not relate to Ms. Perkins's situation or facts at all.   Please revise the proposed Amended Complaint to eliminate these improper allegations:

Paragraph 65:   "SNET's pattern an/or practice of unlawful action also makes joinder impracticable by discouraging employees from applying for or pursuing promotional, training, or transfer opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of SNET's class-wide liability."

Paragraph 67: "These employment policies and procedures are not unique or limited to any department; rather they apply to all departments and, thus, affect the Class Representative and class members in the same ways no matter the facility, department, or position in which they work."  [This case is limited to the Network Services group.]

Paragraph 73:   The common questions of law and fact in this case include "b) [w]hether Defendant deducted monies from the Class members' wages to pay for support staff and other overhead expenses in violation of Connecticut General Statute Sec. 31-71(e)."

Paragraph 76:   SNET has refused to (b) " . . . adopt and apply policies and practices for . . . . promotion, transfer, training, performance evaluation, and discipline which do not have an unlawful affect on, or otherwise systemically affect the members of the Class, and: (c)

Edmond Clark
May 19, 2008
Page 3

refusing to provide equal terms and conditions of employment for all employees where adoption and applications of compensation policies and practices are at issue."

Prayer for Relief:  You continue to seek damages "in excess of Fifteen Million Dollars."

Please eliminate the above allegations from the Amended Complaint within a week of receiving this letter or contact me to discuss the issues.  I would like to avoid filing a motion directed to the proposed Amended Complaint if possible.

Sincerely,

Lori B. Alexander

cc:  David Vegliante, Esquire

## CERTIFICATION

I hereby certify that on June 4, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Lori B. Alexander (ct08970)
LITTLER MENDELSON, P.C.
110 Washington Avenue, 3rd Floor
North Haven, Connecticut  06473
Telephone:  203.234.6344
Facsimile:  203.234.6345
E-Mail: lalexander@littler.com