# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHARON L. PERKINS, MICHAEL J. BLASKO, JOSEPH E. KIELY, MICHAEL C. McDERMOTT and KELLY WERBINSKI,

        *Plaintiffs*

v.

SOUTHERN NEW ENGLAND TELEPHONE COMPANY

        *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**3:07CV967 (JCH)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (1) COLLECTIVE ACTION CERTIFICATION OF FLSA OVERTIME CLAIM UNDER 29 U.S.C. § 216(b), AND (2) RULE 23 CLASS CERTIFICATION OF OVERTIME CLAIM UNDER THE CONNECTICUT MINIMUM WAGE ACT**

**MARCH 2, 2009**

TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................. iii

Preliminary Statement and Summary of Argument ................................... 1

FACTUAL BACKGROUND ...................................................................... 7

A.    A General Overview of SNET's Level-One Managers .......................... 7

B.    The Job Duties of SNET's Level-One Mangers:
      Routinized; Uniformitized; Tightly-Controlled; Powerless
      and Discretionless ............................................................................ 8

      (1)    The Level-One Manger Starts His/Her Day ............................... 8

      (2)    The Level-One Receives an Automatic,
             Predetermined List of Assignments His Techs Must
             Carry Out that Day .................................................................. 8

      (3)    While He Waits for the Techs to Arrive, the Level-
             One Immerses Himself in Clerical work ................................... 8

      (4)    The Level-One Sends His Techs Out Into the Field ................... 8

      (5)    Level-One Managers Agree They Have No Input in
             Assigning Techs to Specific Jobs ............................................. 9

      (6)    Level-One Managers Conduct On-The-Job Safety
             Inspections of Their Techs' by Using Pre-Printed
             Checklists ................................................................................ 9

      (7)    Level-One Managers Uniformly Report They Have
             Little Discretion and No Real Authority .................................. 10

      (8)    Examples of How Level-Ones Lack Authority and
             Discretion ............................................................................... 11

      (9)    Level-One Managers are Micromanaged on the
             Most Trivial Matters ............................................................... 12

      (10)   Level-One Managers Lack the Power to Discipline
             Techs ....................................................................................... 13

I.     THE   COURT   SHOULD   GRANT   COLLECTIVE
       CERTIFICATION OF A SNET LEVEL ONE MANAGER
       CLASS .........................................................................................14

A.     FLSA Collective Action Certification Under 29 U.S.C.
       §216(b)........................................................................................14

B.     Collective Certification Is Required Once Plaintiffs Present
       "Modest" Allegations of Other Similarly Situated
       Employees....................................................................................16

C.     Under The "Lenient" Standard Described Above, Plaintiffs
       Have Made Much More Than A "Minimal Showing" That
       The Level-One Class Is Similarly Situated.   The Court
       Should Therefore Grant §216(b) Collective Certification
       For Plaintiffs' FLSA Claim .......................................................18

II.    PLAINTIFFS'   OVERTIME   CLAIM   UNDER   THE
       CMWA SHOULD BE CERTIFIED FOR CLASS
       TREATMENT UNDER FED. R. CIV. P. 23 .................................19

       A.     Plaintiffs Satisfy All Requirements of Rule 23(a) ..................20

              1.     Numerosity Is Met ........................................................20

              2.     Questions of Law and Fact Are Common to
                     the Class........................................................................21

              3.     The Representative Plaintiffs' Claims Are
                     Typical of the Class ......................................................23

              4.     Plaintiffs Will Adequately Represent the
                     Class..............................................................................24

       B.     The Proposed Class Satisfies the Requirements of
              Rule 23(b)(3)............................................................................25

              1.     Common Questions of Law and Fact
                     Predominate ..................................................................26

              2.     Class Treatment Is Superior to Other
                     Alternatives...................................................................27

CONCLUSION...............................................................................................28

TABLE OF AUTHORITIES

**<u>Federal Cases</u>**                                                                              *Pages*

*Ansoumana v. Gristedes Operating Corp.*
    201 F.R.D. 81 (S.D.N.Y. 2001) ............................................................. 21, 25, 26

*Bolanos v. Norwegian Cruise Lines, Ltd.*
    212 F.R.D. 144 (S.D.N.Y. 2002) ....................................................................... 27

*Braunstein v. Eastern Photographic Labs.*
    600 F.2d 335 (2d Cir. 1979)................................................................................ 16

*Cano v. Four M Food Corp.*
    2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009)........................................17

*Caridad v. Metro-North Commuter R.R.*
    191 F.3d 283 (2d Cir. 1999)................................................................................ 20

*Cazoline v. United Technologies Corp.*
    1998 Conn. Super. LEXIS 910 (Conn. Super. Ct. Mar. 31, 1998) ........................6

*Consol. Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995)................................................................................. 21

*Fengler v. Crouse Health Foundation, Inc.*
    2009 U.S. Dist. LEXIS 12895 (N.D.N.Y. Jan. 26, 2009).....................................17

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
    114 F.R.D. 48 (S.D.N.Y. 1987) .......................................................................... 27

*Green v. Wolf Corp.*
    406 F.2d 291 (2d Cir. 1968)................................................................................ 28

*Heagney v. European Am. Bank*
    122 F.R.D. 125 (E.D.N.Y. 1988) ....................................................................... 18

*Hoffmann v. Sbarro, Inc.*
    982 F. Supp. 249 (S.D.N.Y. 1997)...................................................................... 17

*Hoffmann-LaRoche, Inc. v. Sperling*
    493 U.S. 165 (1989)............................................................................................ 16

*Holbrook v. Smith & Hawken, Ltd.*
    246 F.R.D. 103 (D.Conn. 2007)................................................................. 4, 5, 16

*In re Catfish Antitrust Litig.*
  826 F.Supp. 1019 (N.D.Miss. 1993) .................................................................... 24

*In re Drexel Burnham Lambert Group, Inc.*
  960 F.2d 285 (2d Cir. 1992) ......................................................................... 24, 25

*In re Towers Fin. Corp. Noteholders Litig.*
  177 F.R.D. 167 (S.D.N.Y. 1997) ....................................................................... 20

*In re Visa Check/MasterMoney Antitrust Litig.*
  280 F.3d 124 (2d Cir. 2001), cert. denied, 536 U.S. 917 (2002) .................... 20, 27

*Kamean v. Local 363, Int'l Bhd. of Teamsters*
  109 F.R.D. 391 (S.D.N.Y. 1995) ....................................................................... 22

*Kelley v. SBC,* Inc.
  1998 U.S. Dist. LEXIS 18643 (N.D.Cal. Nov. 13, 1998) ................. 5, 6, 18, 23, 27

*Marcus v. American Contract Bridge League*
  254 F.R.D. 44 (D. Conn. 2008) ...................................................................... 5, 16

*Marisol A. v. Giuliani*
  126 F.3d 372 (2d Cir. 1997) .............................................................. 21, 22, 24, 25

*Martens v. Smith Barney*
  181 F.R.D. 243 (S.D.N.Y. 1998) ...................................................................... 26

*Morgan v. Family Dollar Stores, Inc.*
  551 F. 3d 1233 (11th Cir. 2008) ......................................................................... 4

*Moss v. Crawford & Company*
  201 F.R.D. 398 (W.D.Pa. 2000) ..................................................................... 5, 18

*Parks v. Dick's Sporting Goods, Inc.*
  2007 U.S. Dist. LEXIS 20949 (W.D.N.Y. Mar. 23, 2007) .................................... 17

*Petrolito v. Arrow Financial Services*
  221 F.R.D. 303 (D. Conn. 2004) .......................................................... 19-20, 24, 26

*Richards v. Fleet Boston Financial Corp.*
  238 F.R.D. 345 (D. Conn. 2006) ................................................................... 20, 22

*Richards v. Computer Scis. Corp.*
  2004 U.S. Dist. LEXIS 19638 (D.Conn. Sept. 28, 2004) ..................................... 16

*Robidoux v. Celani*
    987 F.2d 931 (2d Cir. 1993)...................................................................................25

*Rossini v. Ogilvy & Mather, Inc.*
    798 F.2d 590 (2d Cir. 1986)................................................................................. 26

*Scholtisek v. Eldre Corp.*
    229 F.R.D. 381 (W.D.N.Y. 2005)........................................................................ 17

*Scott v. Aetna Services, Inc.*
    210 F.R.D. 261 (D.Conn. 2002)................................................................... *passim*

*Torres v. Gristede's Operating Corp.*
    2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006).......................................6

*Trief v. Dun & Bradstreet Corp.*
    144 F.R.D. 193 (S.D.N.Y. 1992) ......................................................................... 21

## State Cases

*Bucchere v. Brinker International, Inc.*
    Conn. Super. LEXIS 3338 (Conn. Super Ct. Nov. 8, 2006)....................................6

*Sav-On Drug Stores, Inc. v. The Superior Court of Los Angeles County*
    34 Cal. 319 (2004) ............................................................................................... 28

*West v. Egan*
    142 Conn. 437 (1955) ............................................................................................ 6

## Federal Statutes

29 U.S.C. §216(b) ...................................................................................... 2, 4, 15

## State Statutes

Conn. Gen. Stat. § 31-76i .......................................................................... 22, 23

## Federal Rules

Fed. R. Civ. P. 23 ................................................................................................ 19

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 28

Fed. R. Civ. P. Rule 23(a)(1-4) ........................................................................... 20

Fed. R. Civ. Pro. Rule 23 ...................................................................................... 2

## <u>State Regulations</u>

Conn. Agencies Regs. § 31-60-14 ....................................................................... 22

Conn. Agencies Regs. § 31-60-15 ....................................................................... 22

## <u>Other Authorities</u>

1 Newberg on Class Actions § 3.5 (4th ed. 2008) ............................................... 21

## Preliminary Statement and Summary of Argument

The five named plaintiffs are current or former "Level-One Managers" employed by Defendant Southern New England Telephone Company ("SNET").  They sue individually and on behalf of approximately 150-200 similarly situated Level-One Managers to recover overtime wages which SNET has wrongfully refused to pay.  Plaintiffs assert a federal Fair Labor Standards Act claim ("FLSA") and a pendent cause of action under Connecticut's Minimum Wage Act ("CMWA").

Even though Plaintiffs and class members consistently work more than forty hours per workweek, SNET does not pay these employees time and one-half overtime wages.  The company classifies the "Level-Ones" as "managers" exempt from overtime under the "executive" and "administrative" exemptions of the FLSA and CMWA.

But that classification is bogus; it is an exemption by title, not duties.  The Level-One "Managers" are not "executive" or "administrative" employees within meaning of the FLSA and CMWA.

SNET employs a multi-tiered management structure with at least seven levels.  Plaintiffs and similarly situated First Level Managers are at the bottom of the pyramid, acting as low-level functionaries whose essential role is to relay information back and forth between SNET technicians (who are unionized employees) and management.  Plaintiffs and the members of the proposed class have a minimal role in supervising their technicians ("techs") and have virtually no authority to make or even recommend employment-related decisions, such as hiring, promoting or firing techs.  Level-Ones are strictly controlled by Company policy and by their supervisors, do not exercise discretion or independent judgment as to matters of significance, and do not perform work directly

related to the Company's management policies or general business operations.  Under these facts, Plaintiffs and the Class are entitled to overtime.

With this motion, Plaintiffs request: (1) collective certification and authorization of notice under 29 U.S.C. §216(b) on their FLSA allegations and (2) class certification under Fed. R. Civ. Pro. Rule 23 on their overtime claim under the CMWA.

The class under the FLSA is defined as follows:

> All First Level (or Level One) Managers employed by SNET in the State of Connecticut from June 2004 and thereafter, (1) to whom SNET assigned technicians; and (2) who worked as First Level Managers in departments and areas including, but not limited to, Network Services, Installation and Maintenance, Installation, Maintenance, IM, I/M, DSL, Cable Maintenance, Cable Repair, Installation and Repair (I&R), Consumer, Business, Splicing, Cable Splicing, Loop Electronics (LERT), Digital Electronics Group (DEG), Outside Plant, Network Operations, Construction, Engineering, Construction and Engineering, Local Field Organization (LFO), U-verse, and U-verse Operations.

The Rule 23 class under the CMWA is identical to the FLSA's collective group, except that the CMWA class period commences in June 2005, as opposed to June, 2004 for the FLSA.[1]

In support of their motion, Plaintiffs are submitting five of their own declarations and deposition excerpts from the testimony of numerous opt-in Plaintiffs.  Plaintiffs are also providing (a) deposition testimony from several higher-level SNET managers testifying on behalf of the company, and additionally, (b) SNET documents.  These submissions collectively confirm that Level-One class members perform substantially identical duties which do not qualify as executive or administrative.

Plaintiffs' motion should be granted because they easily hurdle the prerequisites for both a section 216(b) collective action and Rule 23 class certification.

---

[1] Because of varying statutes of limitations on the FLSA and CMWA counts, the class periods begin at different points.

As demonstrated below, SNET's Level-One Mangers within the class definition are **"similarly situated"**: They neither manage nor supervise.   Rather, Level-One Managers are at the bottom of SNET's rigid, top-down management process.   The class of Level-Ones work at routinized jobs and are tightly controlled by higher level SNET management.   SNET strips its Level-One "Mangers" of independent judgment and discretion.   A "manager's" every move is governed by checklists which he plays no role in creating.   Consequently, Plaintiffs and the class members fall outside the executive and administrative exemptions, and SNET is wrongfully depriving them of overtime.

SNET will argue that that its Level-One Managers "supervise" teams of technicians ("techs").   But to say that the class members "supervise" is to mangle that word beyond recognition.   Level-Ones do not choose which techs to work with; higher ranking SNET officials select the techs and assign them to the Level-Ones.   The Level-Ones have no power to discipline the techs, because the latter are unionized and disciplinary matters are governed by a collective bargaining agreement.   When one tech threw a computer at a Level-One Manager – missing his purported superior by inches – the tech stayed on the job.   Upper management wanted the tech to remain, the Level-One's protests be damned.   (*See* p. 13, *infra*)

Level-Ones need approval from higher ups to order pizza for techs working overtime, to empty an overflowing garbage dumpster, and to cut the grass outside their garages.   When a Level-One Manager asked his boss "when do I get to make decisions" – the answer came back: "**you don't**."[2]   (*Infra*, p. 12)

---

[2] *Cf. Morgan v. Family Dollar Stores, Inc.*, 551 F. 3d 1233, 1249-125 (11th Cir. 2008) (store "managers" were not exempt under executive exemption where employer subjected managers to strict rules and did not allow them to exercise discretion).

The techs – who work under the Level One Managers – are non-exempt, receive overtime pay and earn more money than their putative superiors.  Techs employ as much or even more discretion as do Level-Ones.  (*Infra*, p. 10-11)

        *                      *                      *                      *

Given these facts the Court should order collective action status and class certification.

*Regarding a collective action*, case law establishes that the standard under 29 U.S.C. §216(b) is a "lenient" one (*Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 264 n.4 (D.Conn. 2002)), which requires only a "minimal showing" that the employees are "similarly situated." *Holbrook v. Smith & Hawken, Ltd.,* 246 F.R.D. 103, 105 (D.Conn. 2007).  As this Court recently held in *Marcus v. American Contract Bridge League*, 254 F.R.D. 44, 47 (D. Conn. 2008), "a class representative has only (a) **minimal burden to show that he is similarly situated to the potential class**…The Court need not judge the merits of Plaintiff's claims because they are irrelevant to the conditional class certification inquiry, as long as Plaintiff asserts a plausible basis for the claim." *Id.* at 47 (emphasis added)(citing *Holbrook*, 246 F.R.D. at 105-106).

On a collective certification motion, it is unnecessary for Plaintiffs to prove that members of the class perform the same duties.  Instead, "it is appropriate to bring the FLSA exemption claim as a class action with regard to employees **who perform similar but not identical duties…**" *Scott*, 210 F.R.D. at 265 (emphasis added).  *Kelley v. SBC, Inc.,* No. 07-CV-2729 CW, 1998 U.S. Dist. LEXIS 18643, at *40-41 (N.D.Cal. Nov. 13, 1998) exemplifies this rule.  There, the Court granted collective action certification to Pacific Bell's "First Level Engineering Managers", notwithstanding that some members

of the class performed different job duties. *See also*, *e.g.*, *Moss v. Crawford & Company*, 201 F.R.D. 398, 410 (W.D.Pa. 2000) ("variation in the plaintiffs' duties [and] job locations…do not differentiate the collective basis of the class to defeat the primary objective of a section 216(b) action.").

&ast;    &ast;    &ast;    &ast;

*Plaintiffs also satisfy Rule 23's requirements for certification of their Connecticut overtime cause of action.*

Under Rule 23, Federal courts in this and other jurisdictions have often certified state law misclassification claims brought in conjunction with an FLSA cause of action. *See*, *e.g.*, *Scott*, 210 F.R.D. 261 (granting Rule 23(b)(3) class certification motion for employees deprived of overtime because they were classified as exempt in violation of Connecticut's Minimum Wage Act); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) (after granting a collective action motion under section 216(b), Court also ordered Rule 23 certification of employee overtime claims under New York's labor law); *Kelley*, 1998 U.S. Dist. LEXIS 18643 (certifying a California state law class of First Level Engineering Managers whom Defendant Pacific Bell misclassified and refused to pay overtime wages). *Cf. Cazoline v. United Technologies Corp.*, No. CV940048696S, 1998 Conn. Super. LEXIS 910 (Conn. Super. Ct. Mar. 31, 1998) (class certification of overtime claims under CMWA).

The legislative policy underlying the overtime provisions in Connecticut's Minimum Wage Act is to establish "a wage fairly…commensurate with the value of a particular service or class of services rendered." *West v. Egan*, 142 Conn. 437, 442

(1955); *Bucchere v. Brinker International, Inc.,* No. X01CV044000238S, 2006 Conn. Super. LEXIS 3338 (Conn. Super Ct. Nov. 8, 2006).

Class certification is critical if the overtime laws are to be effectively enforced. By himself, a single employee is powerless to take on giant corporations like SNET when these behemoths misclassify their workers and deny them overtime. This is particularly true in today's ravaged economy when employees feel more vulnerable than ever. In unity, however, lies strength and combined in a class action the wronged employees possess the resources to fight an overbearing employer and recover the overtime pay which is their due. (*Cf.* Deposition of Opt-In Plaintiff Richard Lavery, p. 110, indicating that "*we*" – the Level One class members – looked into their classification and found out that SNET was taking advantage of them by improperly treating them as exempt)

At bar, Plaintiffs satisfy all the elements for certification on their Connecticut overtime count. SNET denies the class overtime on the basis of either the administrative or executive exemption. The record evidence shows, however, that Plaintiffs' and the class members' job duties are too micro-managed and discretionless to qualify for any overtime exemption. The class of Level-One Mangers is sufficiently numerous. Testimony from both opt-in Plaintiffs and at least one SNET witness shows that there are at least 150 Level One Mangers. In addition to the five named Plaintiffs, 65 SNET Level-Ones have filed opt-in forms to date. This number suffices by itself to fulfill numerosity.

SNET's Level-One Managers with technicians are similarly situated. Plaintiffs have proffered powerful proof that they and the class members engage in uniform, routinized work.

Common questions predominate and the class action device is a superior remedy. The overriding issue in this case is whether SNET's Level-One Mangers perform job functions which would fit comfortably within Connecticut's administrative or executive exemptions. The evidence confirms that the Level-Ones are "managers" in name only. In reality, they are underlings within the SNET hierarchy. An underling by any other name, however, is just as non-exempt.

## FACTUAL BACKGROUND

### A.    A General Overview of SNET's Level-One Managers

There are approximately 100-140 Level-One Managers currently working for SNET in the state of Connecticut. (See Depo. testimony of Michael Imbriglio, SNET Area Manager, Construction and Engineering, p. 68-69; Depo. Testimony of Peter Dean, retired SNET Level-Two Manager, p. 77, 80). 80% of Level-One Managers have technicians reporting to them. (Dean Tr., p. 80).

While the Level-One Managers hold a variety of job titles – e.g. "Manager Network Services," "Manager U-Verse," "Manager Construction and Engineering" – their job duties are similar. The Level-One acts as a conduit between upper management and the "techs" – the unionized SNET employees or contractors who are out in the field doing the work of splicing cables, installing telephone lines, repairing equipment, etc.

Level-One Managers hand out work assignments to the techs, but the assignments are formulated not by the Level-Ones, but by the higher-ranking managers. The Level-One performs safety and quality checks on the techs by using checklists compiled by SNET's upper management. A Level-One Manager's main function is to follow orders

7

from higher-ups, and convey to the techs fiats from above.  Level-ones don't write the safety checklists and they don't supervise or control the techs.

**B.      The Job Duties of SNET's Level-One Mangers: Routinized; Uniformitized; Tightly-Controlled; Powerless and Discretionless**

> **(1)      The Level-One Manager Starts His or Her Day**

Between 6:00 a.m. and 7:15 a.m., the Level-One Manager arrives at the garage,[3] about one hour ahead of his or her team of techs.[4]

> **(2)      The Level-One Receives an Automatic, Predetermined List of Assignments the Techs Must Carry Out that Day**

At the Garage, the Level-One checks either his or her emails or an automated printout which specifies the assignments the techs must carry out that day.[5]

> **(3)      While Waiting for the Techs to Arrive, the Level-One Is Immersed in Clerical Work**

After checking the printed list of assignments (or emails), the Level-One Manager does a variety of clerical chores.  These tasks include checking the techs' time sheets for the previous day to make sure that the techs have properly coded their work.[6]

> **(4)      The Level-One Sends the Techs Out Into the Field**

At about 8:00 a.m., the Level-One Manager meets with the techs and sends them out to their pre-determined duties.[7]

---

[3] McDermott Dec., ¶12; Baranowsky Tr., p. 77; Blasko Dec., ¶12;  Lavery Tr., p. 25; Ollayos Tr., p. 195; Hunt Tr., p. 170; Barber Tr., p. 35; Keith Tr., p. 42.
[4] Lavery Tr., p. 25
[5] Baranowsky, Tr., p. 85 (MSOC computer module tells him what the day's workload is); Lavery, Tr,. p.28 (He receives his work from a computer print out sent to him by the dispatch); Ollayos, Tr., p. 21-25 ( "I have to go by the list"; Barber, Tr., p. 36 (gets day's work off the printer)
   First Level Managers in Construction and Engineering assign work to technicians based upon a pre-determined list of assignments to be completed on specific timeframes.  Perkins Dec. ¶¶ 19-23; Werbinski Dec. ¶¶ 21-24.  All other class members have no role in setting the techs' individual daily assignments, which are determined by dispatch.  Blasko Dec. ¶¶ 18-20; Kiely Dec. ¶¶ 21-24; McDermott Dec. ¶¶ 17-19.
[6] Baranowsky, Tr., p. 80; Barber, Tr., p. 36
[7] Baranowsky Tr., p. 80; Lavery Tr., p. 52; Blasko Dec. ¶¶ 12-14

**(5)     Level-One Managers Agree They Have No Input in Assigning Techs to Specific Jobs**

Michael J. Blasko, a Level-One Manager for Network Services and U-Verse, described his involvement in setting assignments for his techs:

> I do not assign jobs to any of the technicians.  Each morning, a dispatch office assigns jobs to the technicians.  I review these job assignments, but I do not have any authority or input into this assignment process.  I cannot alter the assignments after they are made.

> If a technician does not arrive to work, I do not reassign his jobs to other technicians.  The dispatch center is in charge of reassigning the jobs to those technicians who are present for that work day.  I do not have any authority or input into how jobs are reassigned.

> I do not select specific technicians for particular jobs based on their skills.  The dispatch center is already provided with information as to a technician's particular skills, and all assignments are produced from the dispatch center.  (Blasko Dec.¶¶ 18-20).[8]

**(6)     Level-One Managers Conduct On-The-Job Safety Inspections of Their Techs by Using Pre-Printed Checklists**

Each month, Level-One Managers are required to make a designated number of quality and safety inspections on technicians in the field.  Little or no discretion is involved in carrying out these inspections.[9]

The Level-One Manager conducts safety inspections by using a pre-written checklist containing a series of yes or no questions.  (See Exhibit "Y" to Declaration of Plaintiffs' Co-Counsel, Steven L. Wittels for an example of SNET's checklists)

---

[8] *See also* Baranowsky, Tr., p. 81 (Dispatch center "assigns the work to the guys"); Lavery, Tr., p. 77 (He pushes a button on his computer and MSOC automatically assigns all jobs for his techs – he doesn't decide which techs do which jobs); Ollayos, Tr., p. 22 ("I have to go by the list.")
   The process by which work is assigned in Construction and Engineering differs slightly, but does not involve the exercise of independent judgment on the part of Level Ones.  (*See* n.4, *supra*).
[9] Blasko Tr., p. 104; Kiely Tr., p. 42-32; Carey Tr., p. 126-128.

These questions include whether a tech has locked his truck or is wearing his goggles.[10]  Level-One Managers do not contribute to promulgating the safety checklist, and cannot resolve any problems they may encounter while making a safety inspection. Such problems must be brought to the attention of higher level managers who will address the issue.[11]

### (7)   Level-One Managers Uniformly Report They Have Little Discretion and No Real Authority

The Level-Ones repeatedly voiced the theme that almost everything they did at SNET was commanded from above.  Level-One managers wielded little power and were vested with virtually no discretion.  Indeed, the techs enjoyed as much, if not more, freedom than a Level-One "Manager."  (See p. 11, <u>infra</u>).

Frank Baranowsky – a Level-One in Network Services, summed up his situation this way:

> Management starts at Second Level, they make all the decisions.  I'm just a soldier, I just do what I gotta do, based on what my Second Level tells me what to do….I'm not a leader, not at First Level…I'm a nobody, I just carry out what I'm supposed to do.  If I was a leader, I would be his boss. (Tr., p. 117-119)

Bruce Ollayos, Level-One Manager of Network Services and Construction and Engineering testified:

> We don't make decisions.  **We're like puppets**.  (Tr., p. 32)… I can't disagree with anything.  I have to go with the policy.  (Tr., p. 103)... I'm an … employee that makes no decisions, has no power. (Tr., p. 115)

Richard Lavery, Level-One Manager Network Services:

---

[10] Blasko Dec., ¶ 30; Kiely Dec., ¶ 26; Werbinski Dec., ¶ 31; McDermott Dec., ¶ 28; Lavery, Tr., p. 32
[11] Hunt Tr., p. 51-53; Ollayos Tr., p. 98-99; Perkins Dec., ¶ 28.
 For "life-threatening" safety violations – enumerated in a list provided by the Company – a First Level must send the tech home for the day without pay.  "Life-threatening" violations include driving without a safety belt.  First Level managers do not have discretion to keep the tech on the job even where the tech has only moved a vehicle a few feet in the parking lot.  Lavery Tr., p. 39-40.

> I'm mandated to do most of my job.  I don't have a decision making format.  I'm pretty much the in-between [between] my boss and my techs. **The techs probably have more leeway of making their own decisions than I do**.  (Tr., p. 84)

Toni Barber, Level-One Manager Network Services:

> I don't make any decisions.  I'm dictated as to how I manage my employees…I don't have the discretion to hire and fire or promote and give raises too.  (Tr., p. 129-130)

Scott Hunt, Level-One Manager U-Verse:

> I don't make discretion decisions.  I'm basically more clerical as opposed to a manager because I am basically dictated to on what to do, when to do it, why to do it and how to do it.  (Tr., p. 174)…Everything I do now today is controlled from the second I walk in the door to even when I go to bed at night.  Micromanaging is a good word.  (Tr., p. 239)

### (8)     Examples of How Level-Ones Lack Authority and Discretion

First Level Managers in the proposed class do not write policies and regulations, but merely pass them from their superiors to the technicians.  For example, Richard Lavery received an email informing him of a "protective foot ware decree."  David Sheehan, Mr. Lavery's supervisor, sent Lavery an email that a new regulation required technicians to wear a protective shoe covering to protect customers' floors and property.  Mr. Lavery was instructed as to the specific type of booties the technicians should use.  (*See* Lavery Dep. p. 98, Ex. M to Wittels Dec., *see also* Ex. BB, email from David Sheehan to Richard Lavery)

### (9)     Level-One Managers are Micromanaged on the Most Trivial Matters

Scott Hunt testified that his boss criticized him because one night, for dinner, he bought pizza on the corporate credit card:

> A: The techs that were out there, there were six I believe. And they were going to be working all night. And I had gone out and bought dinner for them, pizza type thing on a corporate card. And after the fact when I had

told my boss, at the time Eric Schneider, he was not satisfied that I didn't call and ask for permission first.

Q:  To buy the pizza?

A:   To buy the pizza.  So I had – I remember having a discussion with him afterwards and I said, **"When do I ever get to make decisions?" And his answer was point blank, "you don't."** (Tr., p. 87-88)

Richard Lavery recounted how he needed to get Second-Level authority to empty a garbage dumpster.  (Tr., p. 120).[12]

*See also* Declaration of Kelly Werbinski, First Level Manager of Construction, ¶ 38.  Mr. Werbinski describes how when the dumpsters filled up with garbage, he had no authority to empty them out – "I have to call my superiors to request that they authorize the dumpsters be emptied.  This usually takes two to three days.  The dumpsters remain full and people begin throwing trash on the ground, because I can't order someone to empty them myself."

Similarly, Mr. Werbinski needs approval from his supervisors to have the grass cut.  (Werbinski Dec. ¶ 39)

### (10)   Level-One Managers Lack the Power to Discipline Techs

According to Michael McDermott, a First Level Manager of Network Services, "I have no authority to determine whether or not technicians should be disciplined…regardless of the severity of their conduct.  All decisions on discipline are made by my superiors."   (McDermott Dec. ¶ 21)  Mr. McDermott gave several instances where he was impotent to discipline a tech.  In one case, a tech was fixing phone lines in a customer's house and accidentally hit electrical wires which set the house on fire.

---

[12] Thomas Carey, Network Service Manager, Construction and Engineering:  "I seem to have less input or decisions-making than I've had in the past.  I don't schedule my own work anymore.  All of my materials, all of my jobs are predetermined by another group and then I'm notified via E-mail what I'm to work.  They'll order my materials, they'll get the jobs, send them down to me.  I basically hand them off to my crews and send them on their way." (Tr., p. 66-67).

Ultimately, the tech was not disciplined for this mishap.  Mr. McDermott had absolutely no say in the matter.  (*Id*., ¶23).

On another occasion, a tech threw a laptop computer at Mr. McDermott, missing his head by inches.  Mr. McDermott believed the tech should be suspended and fired.  But Mr. McDermott could not discipline the tech on his own.  Instead McDermott's boss, Dan Chantlos, sent the tech home for one day **with full pay**.  The tech received no further discipline and returned to work the following day. (*Id*., ¶25).

There was more.  Mr. McDermott discovered that one of his technicians was falsifying sales records.  When McDermott reported this to a supervisor, he was told to keep quiet and later learned the technician was not disciplined by SNET.  (*Id*., ¶24).

Michael J. Blasko's experiences echo Mr. McDermott's.  Twice, Mr. Blasko discovered that one of the techs he was supposedly "managing" and "supervising" had skipped work to play drums.  Even though First Level "Manager" Blasko expressed the opinion that the tech should be fired, Blasko was overruled by his superior, who told him to give the tech merely a written warning. (Blasko Dec., ¶28).

The final incident happened when Mr. Blasko discovered a technician sleeping on the job inside his van outside a customer's residence.  The van had been parked there for at least two hours.  Mr. Blasko said the tech should receive a written warning.  Once again, his advice was vetoed.  Mr. Blasko's superior let the tech escape with no punishment whatsoever.  (*Id*., ¶27).

The Level-One Managers unanimously report that they have no authority to promote, discipline, or terminate techs.  (*See* Blasko Dec., ¶¶ 33-34; McDermott Dec., ¶¶ 20-26, 30-31; Kiely Dec. ¶¶ 28-29 (In one situation, a technician on Kiely's team struck a

bridge with his truck and fled the scene of the accident.  Mr. Kiely was never asked for his input in how to discipline the tech.  The technician ultimately received a two-day suspension, which Mr. Kiely did not feel harsh enough under the circumstances.)

## I.     THE COURT SHOULD GRANT COLLECTIVE CERTIFICATION OF A SNET LEVEL ONE MANAGER CLASS

### A.     FLSA Collective Action Certification Under 29 U.S.C. §216(b)

When the FLSA was enacted in the 1930s, Rule 23 and its class-action remedy did not exist. Congress, however, thought it was important to create a mechanism by which employees who alleged violations under the FLSA could have their claims adjudicated in one lawsuit. Therefore, the FLSA created a precursor of Rule 23, specifically a "collective action" provision. (Now codified as 29 U.S.C. § 216(b)). Under the FLSA, the employee must affirmatively "opt-in" to the lawsuit, but once he or she does so, his or her case is part of the class-wide allegations in the lawsuit.

Through an opt-in procedure spelled out in 29 U.S.C. §216(b), the FLSA allows for the maintenance of a collective action by multiple employees subject to the same unlawful denial of overtime.  Section 216(b) provides that:

> an action may be maintained against any employer in any federal or state court…by any one or more employees for and in behalf of himself and other similarly situated employees.  No employee shall be a party plaintiff to such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such an action is brought.

The collective action mechanism serves to both further the broad, remedial purposes of the FLSA and promote efficient adjudication of such a claim.  *See*, *generally*, *Hemelim v. St. Luke's Healthcare,* No. 6:08-CV-1219 (DNH/DEP), 2009 U.S. Dist. LEXIS 9793, at *15 (N.D.N.Y. Jan. 26, 2009).

In the collective action provision of the FLSA, "Congress has stated its policy that…plaintiffs should have the opportunity to proceed collectively," because a collective action serves the twin goals of judicial economy and the lowering "of individual costs to vindicate rights by the pooling of resources." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Accordingly, district courts have the discretion to implement the FLSA's opt-in provision by facilitating the issuance of notice to potential plaintiffs in a collective action under the Act.  *Id.*  This notice should be "timely, accurate, and informative."  *Id.* at 172.

The Second Circuit has long endorsed collective certification of FLSA claims. *Braunstein v. Eastern Photographic Labs*., 600 F.2d 335, 336 (2d Cir. 1979) ("We believe that Judge Daly took the proper course in authorizing notice to other potential plaintiffs in this action under the FLSA...[T]his holding comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding the multiplicity of suits.").

**B.**     **Collective Certification Is Required Once Plaintiffs Present "Modest" Allegations of Other Similarly Situated Employees**

If there are potentially "similarly situated" employees, collective status and authorization of class-wide notice are appropriate.  *Hoffmann-LaRoche*, 493 U.S. at 168-69.  The evidence needed to demonstrate the existence of "similarly situated" employees is minimal.   *See Scott*, 210 F.R.D. at 264 n.4 (the standard for a collective action under 29 U.S.C. §216(b) is a "lenient" one); *Holbrook,* 246 F.R.D. at 105 (only a "minimal showing" that the employees are "similarly situated" is necessary); *Marcus*, 254 F.R.D. at 47 (Hall, J.) (the class representative has only a "minimal burden to show that he is similarly situated to the potential class"); *Richards v. Computer Scis. Corp.*, No.

3:03CV630(DJS), 2004 U.S. Dist. LEXIS 19638, at *9 (D.Conn. Sept. 28, 2004) ("The threshold issue in deciding whether to authorize class notice in an FLSA action is whether…potential class members are similarly situated….Plaintiffs can meet this burden by making a modest factual showing…that they and potential plaintiffs…were victims of a common policy or plan that violated the law.")

See also, e.g., Cano v. Four M Food Corp., No. 08-CV-3005 (JFB)(AKT), 2009 U.S. Dist. LEXIS 7780, at *9 (E.D.N.Y. Feb. 3, 2009) ("Once the plaintiff makes a colorable claim for relief, the only inquiry…is whether the potential plaintiffs to be noticed are similarly situated to the named plaintiff…The evidentiary standard is lenient."); Fengler v. Crouse Health Foundation, Inc., No. 5:08-CV-1221 (DNH/DEP), 2009 U.S. Dist. LEXIS 12895, at *9 (N.D.N.Y. Jan. 26, 2009) ("The standard which governs Plaintiffs' application is lax and their burden modest"). Parks v. Dick's Sporting Goods, Inc., No. 05-CV-6590 CJS, 2007 U.S. Dist. LEXIS 20949, at * 7-8 (W.D.N.Y. Mar. 23, 2007) ("In this early stage, courts employ a relative lenient…standard to determine whether a collective action is appropriate").

Notice in FLSA collective actions is warranted under standards far more lenient than those under Rule 23. See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005) ("the FLSA simply requires that all employees be 'similarly situated.' The other factors required in class actions-numerosity, typicality, etc.-do not apply to collective actions."); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 263 (S.D.N.Y. 1997) (Sotomayor, J.) ("[T]he prevailing view among federal courts, including courts in this Circuit, is that [FLSA] collective actions are not subject to Rule 23's strict requirements, particularly at the notice stage.").

The employment situations or claims of the notified employees need not be the same. Courts will send out notice to employees allegedly affected by the same policy regardless of their job titles, location within the company, or reporting relationships: "Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations." *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988).

*See also Kelley*, 1998 U.S. Dist. LEXIS 18643, at *40-41 (granting collective action certification to Pacific Bell's "First Level Engineering Managers," notwithstanding that some members of the class performed different job duties); *Moss*, 201 F.R.D. at 410 (ruling that variations in the plaintiffs' job duties and locations "do not differentiate the collective basis of the class to defeat the primary object of a §216(b) action.").

**C. Under The "Lenient" Standard Described Above, Plaintiffs Have Made Much More Than A "Minimal Showing" That The Level-One Class Is Similarly Situated. The Court Should Therefore Grant §216(b) Collective Certification For Plaintiffs' FLSA Claim**

Plaintiffs have made not just a "minimal showing" – they have offered a compelling showing that uniformly, Level-One Managers don't exercise discretion and independent judgment; and have no authority in selecting, directing, hiring, promoting, or dismissing the "techs" whom they purportedly "supervise":

- When a tech throws a computer at his Level-One "boss," the tech is sent home for a day with full pay, and no other consequences.

- Level Ones cannot fire:

        (i)       techs who sleep on the job;

        (ii)      techs who skip work to play the drums;

        (iii)    techs who falsify records;

(iv) techs who crash company trucks and flee the scene of the accident; and

(v) techs who set a customer's house on fire.

United by powerlessness, bonded by impotence, micromanaged to the max, the Level-Ones easily satisfy §216(b)'s relaxed test for being "similarly situated." Plaintiffs' motion for collective certification should be granted.

\*　　　　　\*　　　　　\*　　　　　\*

Plaintiffs also fulfill all the preconditions for certifying a Rule 23(b)(3) class on the Second Amended Complaint's CMWA overtime count.

## II. PLAINTIFFS' OVERTIME CLAIM UNDER THE CMWA SHOULD BE CERTIFIED FOR CLASS TREATMENT UNDER FRCP 23

Plaintiffs seek certification under Fed. R. Civ. P. 23 of a CMWA cause of action for withheld overtime.

Plaintiffs ask that the following class be certified:

All First Level (or Level One) Managers employed by SNET in the State of Connecticut from June 2005 and thereafter, (1) to whom SNET assigned technicians; and (2) who worked as First Level Managers in departments and areas including, but not limited to, Network Services, Installation and Maintenance, Installation, Maintenance, IM, I/M, DSL, Cable Maintenance, Cable Repair, Installation and Repair (I&R), Consumer, Business, Splicing, Cable Splicing, Loop Electronics (LERT), Digital Electronics Group (DEG), Outside Plant, Network Operations, Construction, Engineering, Construction and Engineering, Local Field Organization (LFO), U-verse, and U-verse Operations.

Federal Rule of Civil Procedure 23 provides that a court must certify a class where, as here, Plaintiffs satisfy the four prerequisites of Rule 23(a), as well as one of the three prerequisites of Rule 23(b). *See Petrolito v. Arrow Financial Services*, 221 F.R.D. 303, 307 (D. Conn. 2004)(Hall, J.). A class certification motion is not an inquiry into the merits of the action; at this stage, the claims should be taken as true. *Caridad v. Metro-*

*North Commuter R.R.,* 191 F.3d 283, 291, 293 (2d Cir. 1999) ("In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class.").

"The Second Circuit has held that 'Rule 23 is given liberal rather than restrictive construction and courts are to adopt a standard of flexibility.'" *Richards v. Fleet Boston Financial Corp.*, 238 F.R.D. 345, 348 (D. Conn. 2006) (Hall, J.)(citation omitted).

### A.        Plaintiffs Satisfy All Requirements of Rule 23(a)

To be certified, a class must meet the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative parties are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(1-4).  *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir. 2001), *cert. denied,* 536 U.S. 917 (2002); *Scott,* 210 F.R.D. at 266; *In re Towers Fin. Corp. Noteholders Litig.,* 177 F.R.D. 167, 169 (S.D.N.Y. 1997). The Level-One class Plaintiffs apply for here meets all four criteria.

### 1.        Numerosity Is Met

"To satisfy the numerosity requirement, Plaintiffs need not prove the exact number of proposed class members as long as they can reasonably estimate the size of the class." *Scott,* 210 F.R.D. at 266.  In the Second Circuit, "numerosity [under Rule 23(a)] is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).  *See also* 1 Newberg on Class Actions § 3.5 (4th ed. 2008) (class size of 40 or more raises presumption of impracticability of joinder).  At bar, Plaintiffs have

provided proof that there are more than 100 members of the Level-One class.  (*See*, *supra*, at 7, citing testimony of SNET managers).  And, as earlier noted, 65 Level Ones in addition to the named Plaintiffs have opted into the FLSA part of this case.  The numerosity threshold is easily cleared.

### 2.    Questions of Law and Fact Are Common to the Class.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."  *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citations omitted); *see also Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if Plaintiffs' grievances share *a common question* of law or of fact.") (emphasis added) (citing *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987)); *Ansoumana v. Gristedes Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y. 2001)("a single common question may be sufficient to satisfy this rule").

The polestar is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters,* 109 F.R.D. 391, 394 (S.D.N.Y. 1995). As this Court stated in *Richards v. FleetBoston Fin. Corp.,* 238 F.R.D. 345, 349 (D. Conn. 2006)( Hall, J.): "The commonality requirement is met if Plaintiffs' grievances 'share a common question of law or fact,'" (citing *Marisol A.*).

Here, an obvious "common thread" links the proposed Level-One class, and Plaintiffs' and the class members' grievances share a common question of law or fact. The common legal and factual issues follow below:

(1)     Are SNET's Level-One Managers exempt from overtime pay under Connecticut's exemptions for individuals employed in "bona fide" executive or administrative capacity? (Conn Gen. Gen Stat. § 31-76i)

This major issue implicates additional common questions under the executive exemption:

Do SNET's Level-One Managers:

(a)     Have as their primary duty the management of the enterprise or a customarily recognized department or subdivision thereof?; and

(b)     Customarily and regularly direct the work of two or more other employees?  (Conn. Agencies Regs. § 31-60-14)

With regard to the "administrative exemption" the predominating issue is:

Whether Level-One Managers primarily perform:

(i)      Office or non-manual work directly related to SNET's management policies and general business operations;

(ii)     requiring the exercise of discretion and independent judgment.  (Conn. Agencies Regs. § 31-60-15)[13, 14]

This motion demonstrates that Level-One Managers perform similar duties, notwithstanding that they occupy different positions or titles, e.g. "First Level Manager of Construction," "First Level Manager Network Services," "First Level Manager U-

---

[13] Pursuant to Conn Gen. Gen Stat. § 31-76i, even employees who meet either of these exceptions are only "exempt to the extent that such employees are exempt under the [FLSA]."  Thus in order to be exempt under Connecticut law, Plaintiffs and the class members must be exempt under *both* under the Connecticut and federal regulations defining these exemptions.

[14] Alternatively, to the extent Plaintiffs' and the class members' job duties fall within the meaning of either of these exemptions, they are not exempt from overtime under the CMWA unless paid (1) an amount equal or greater to their basic contractual hourly rate for all hours worked, plus (2) one-half times their basic contractual hourly rate for all hours over 40 that they work in a given week. Conn. Gen. Stat. § 31-76i.  All class members are classified and paid in the same way and whether this test is met is a common and predominating issue.

Verse."  None of the Level-One Managers manage the enterprise, direct the work of two or more employees, or wield any real authority with respect to promotion, hiring, firing, and any other change of status for techs or other employees.  Nor do the Level-Ones exercise discretion and independent judgment on matters of significance.  The Level-Ones testified that they are micromanaged and serve as little more than robots.[15]

Even assuming *arguendo* that the Level-One Managers do not all perform exactly the same duties, this variation does not defeat commonality.  The Courts have repeatedly certified Rule 23 class actions challenging an employer's classification of workers as exempt, even when the employees differ in their job duties.  *See*, *e.g.*, *Kelley*, 1998 U.S. Dist. LEXIS 18643, at *41 ("Defendants assert that the commonalty requirement is not met in this case because the jobs held by named Plaintiffs differed significantly in their duties, both by position and location.  Rule 23(a)(2) does not require that the actions of the defendant affect each member of the class in the same manner, nor that "all questions of law and fact involved in the dispute be common to all members of the class.").  *See especially Scott,* 210 F.R.D. at 266 , where, in a misclassification case, the Court certified a Connecticut overtime class under CMWA, even though some class members performed duties different from the rest of the class.  The Court held that, under the commonality dictate "there is no requirement that the claims of all the potential class members…have every issue of law and fact in common."  In *Scott*, the Court concluded that because the class of Aetna – Systems Engineers was "similarly situated," there was sufficient commonality of claims to satisfy Rule 23(a).

---

[15] *Supra*, at 10-11; Lavery Tr., p. 122; Hunt Tr., p. 255.

3.        The Representative Plaintiffs' Claims Are Typical of the Class

"The crux of both the commonality and typicality requirements is 'to ensure that maintenance of a class action is economical and that the named Plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Petrolito*, 221 F.R.D. at 309-310 (Hall, J.). Courts consequently find typicality satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.,* 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Commonality and typicality are related concepts, and neither means that class members be clones of each other.  *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1036 (N.D.Miss. 1993)("nothing in Rule 23(a)(3)… requires named plaintiffs to be clones of each other or clones of other class members… as long as the substance of the claim is the same as it would be for other class members, then the claims of named plaintiffs are not atypical."); *Ansoumana*, 201 F.R.D. at 86-87 (citing *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (if "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims")); *see also Marisol A.*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3).").

In the instant case all Level-One class members have been deprived of overtime because SNET misclassifies them as exempt.  This uniform grievance connects the five

class representatives, the opt-in Plaintiffs, and the absent class members.  Typicality is plainly present here.

### 4.    Plaintiffs Will Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Under a two-part inquiry, Plaintiffs must merely "demonstrate that [1] 'class counsel is qualified, experienced, and generally able to conduct the litigation' . . . . [and] [2] that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A.,* 126 F.3d at 378 (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d at 291). While Plaintiffs cannot have antagonistic interests, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Ansoumana,* 201 F.R.D. at 87 (quoting *Martens v. Smith Barney,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

"To demonstrate adequacy 'Rule 23(a)(4) [also] requires that Plaintiffs demonstrate that Class Counsel is qualified, experienced, and generally able to conduct the litigation.'" *Petrolito*, 221 F.R.D. at 310 (Hall, J.).

Plaintiffs pass both components of the adequate representation test.  There is no conflict between the claims of the five class representatives and other SNET Level-One Managers.   All were improperly classified as exempt executives or administrators notwithstanding their lack of decision making authority and inability to exercise discretion and independent judgment.   Sanford Wittels & Heisler, LLP and Edmond Clark, Esq., the law firms representing Plaintiffs, are experienced in class actions and employment and wage-and-hour litigation.  The firms have prosecuted and will continue

to prosecute this action ably and vigorously (*see* Ex. "A" to Wittels Dec., describing counsel's qualifications and expertise).

### B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) demands that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members, and . . . class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Plaintiffs easily vault the various Rule 23(a) criteria, and this is perhaps the best indicator that Rule 23(b)(3) is satisfied.  *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); *Martens,* 181 F.R.D. at 260.

### 1.    Common Questions of Law and Fact Predominate

The important inquiry here is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 139; *accord Bolanos v. Norwegian Cruise Lines, Ltd.,* 212 F.R.D. 144, 157 (S.D.N.Y. 2002). The Court must focus on *liability* and whether the liability issue is common to the class.  *See Bolanos*, 212 F.R.D at 157-158 (citing *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 52 (S.D.N.Y. 1987).  Where, as here, **"[p]laintiffs' claims are based on the alleged across-the-board deprivations of overtime wages"** by defendant, the **"predominance requirement is satisfied . . . ."**  *Id.* at 158 (emphasis added).

Authority abounds that the issue of whether an employer has misclassified employees and improperly deprived them of overtime qualifies as the "predominating question" for purposes of Rules 23(b)(3).  *See*, *e.g*., *Scott*, 210 F.R.D. at 266 (whether

Aetna acted improperly in classifying the Plaintiffs is the common liability question that **predominates** over all other factual and legal issues.); *Kelley*, 1998 U.S. Dist. LEXIS at *45 ("In this case, class members who held the same job title as named plaintiffs shared questions of law and fact as to what their jobs entailed, what level of independent judgment they exercise and whether, given the demands of their jobs, their were properly classified as exempt. **Common questions thus predominate over individual questions in this case."** (emphasis added).

## 2.  Class Treatment Is Superior to Other Alternatives

The second part of the 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3).

*Scott,* 210 F.R.D. at 266, summarized why a class action is the preferred remedy in a misclassification case involving many employees:

> Moreover, the Court concludes that a class action is the superior method for adjudications of the controversy, because (1) class members may fear reprisal and would not be inclined to pursue individual claims; (2) the cost of individual litigation is prohibitive, notwithstanding the high salaries of the Systems Engineers of the sizable potential damages awards; and (3) a class action would eliminate the risk that the question of law common to the class will be decided differently in each lawsuit.

In *Sav-On Drug Stores, Inc. v. The Superior Court of Los Angeles County*, 34 Cal.

319, 340 (2004), the California Supreme Court recognized that "considerations of public policy encourage use of the class action device in overtime misclassification case."

That philosophy should govern here as well.  Class certification is the most effective, indeed the inarguably "superior" method of giving SNET's Level-One Managers full relief.

## CONCLUSION

Plaintiffs have shown that SNET has a uniform policy of misclassifying Level-One Managers as exempt even though these "managers" do not exercise discretion or independent judgment and have no influence on whether other employees are hired, promoted and fired.

Such a mass misclassification is a prime example deserving of both collective action and class certification.

Plaintiffs' motion to collectively certify the FLSA claim, authorize the issuance of notice, and to grant class certification on the second amended complaint's cause of action for overtime under the CMWA should be granted in all respects.

Dated: March 2, 2009

Respectfully submitted,

By: ___/s/ Steven Wittels_____

Steven Wittels
Federal Bar No.: SLW-8110
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone:  (646) 723-2947
Facsimile: (646) 723-2948
Email: swittels@nydclaw.com
*Admitted Pro Hac Vice*


*Lead Counsel for Plaintiffs Sharon L.*
*Perkins, Michael J. Blasko, Joseph E. Kiely,*
*Michael C. McDermott, Kelly Werbsinki, the*
*Opt-In Collective Action Plaintiffs,*
*and the Proposed Class*
*and the Opt-In Collective Action Plaintiffs*

By: ___/s/ Edmond Clark_____

Edmond Clark
Law Office of Edmond Clark
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

*Co-Counsel for Plaintiffs Sharon L. Perkins,*
*Michael J. Blasko, Joseph E. Kiely, Michael*
*C. McDermott, Kelly Werbsinki, the Opt-In*
*Collective Action Plaintiffs, and the*
*Proposed Class*

## <u>CERTIFICATION</u>

I hereby certify that on March 2, 2009, copies of the foregoing were filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


    /s/ Steven L. Wittels

 Steven L. Wittels (SW-8110)
**SANFORD WITTELS & HEISLER, LLP**
 950 Third Avenue, 10th Floor
 New York, NY 10022
 Telephone:  (646) 723-2947
 Facsimile: (646) 723-2948
 Email: swittels@nydclaw.com
*Lead Counsel for Plaintiffs Sharon L.*
*Perkins, Michael J. Blasko, Joseph E. Kiely,*
*Michael C. McDermott, Kelly Werbsinki, the*
*Opt-In Collective Action Plaintiffs,*
 *and the Proposed Class*