UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHARON L. PERKINS, et al.** | : | CIVIL ACTION NO. |
| | : | 3:07CV967 (JCH) |
| *Plaintiffs*, | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| **SOUTHERN NEW ENGLAND** | : | |
| **TELEPHONE COMPANY** | : | |
| | : | April 19, 2010 |
| *Defendant*, | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)**

On or about April 2, 2010, Defendant Southern New England Telephone Company ("SNET" or "Defendant") served Requests for Production of Documents and Interrogatories directed to each of the 149 FLSA opt-in plaintiffs in this collective action.[1] The requests dictate that the 149 party plaintiffs must respond to thirteen document requests and ten interrogatories within thirty days.[2]

Plaintiffs propose that the Court issue a protective order pursuant to Fed. R. Civ. P. 26(c) adopting one of the following three options, in order of preference:

(A)  The Court will issue an order: (1) directing a random sample of thirty class members to respond to SNET's interrogatories and document demands; and (2) striking the remainder of SNET's interrogatories and document requests as unduly

---

[1] Eight opt-in Plaintiffs were excluded by the parties' stipulation, approved by the Court on April 5, 2010, to clarify the class definition to include certain titles.

[2] Plaintiffs and Defendant-SNET have conferred regarding the scope of written discovery of the class but have been as yet unable to reach an agreement. Plaintiffs' expert believes that a randomly selected sample of 30 would be an adequate initial sample in this case and would likely be sufficiently representative after the data is returned and the margin of error is calculated. SNET – while not committing to the idea of sampling – argues that a sample size of 108-132 plaintiffs would be required to reach the requisite degree of statistical significance. (Therefore, the benefit of sampling would be minimal) *See* attached Declaration of Steven L. Wittels   If Plaintiffs and Defendant are able to reach an agreement, effectively mooting this motion, we will immediately inform the Court.

1

burdensome. Plaintiffs' counsel will also collect and produce relevant documents from the additional 50 class members selected by SNET to be deposed but will not produce written responses for these plaintiffs.

(B) The Court will issue an order directing Plaintiffs' statistical expert Dr. Richard Drogin to confer with SNET's statistical expert in order to reach an agreement on the number of class members that should be used for a random statistical sample in this case. As discussed in the Declaration of Richard Drogin, Dr. Drogin has frequently conferred with the opposing expert in cases of this nature to reach agreement on sampling techniques. The Court's order would specify that if Dr. Drogin and SNET's expert cannot reach agreement within fifteen days of the Court's order, the Court will review the experts' respective reports and determine the proper sample size based on the reports. Such a procedure is within this Court's inherent power to manage a class action. See, e.g., Gordon v. Hunt, 98 F.R.D. 573, 578-79 (S.D.N.Y. 1983); Fed. R. Civ. P. 23(d).

(C) Instead of the written discovery being directed to a random sample, the Court will (i) issue an order that the fifty plaintiff-deponents produce documents and respond to reasonable supplemental interrogatories following their depositions, and (ii) strike all of SNET's document requests and interrogatories.

Plaintiffs also ask this Court to grant Plaintiffs motion to quash the following specific interrogatories and document demands served by SNET on all class members on April 2, 2010 (see Exhibit B to the Declaration of Steven Wittels):

- Interrogatories:

  o 1- Name, address, title, SNET facility, last title or facility; 2- Positions, dates, supervisors: Plaintiffs move to quash on the grounds that SNET already possesses this information about its employees and that the purpose of this interrogatory is to cause Plaintiffs unnecessary burden and expense.

  o 3- Periods with technicians assigned, technicians' names and titles, periods with no technicians assigned; 4- Names and titles of all other employees in same work group: Plaintiffs move to quash on the grounds that SNET already possesses this information. SNET provided this very same information to Plaintiffs in response to one of Plaintiffs' previous document requests. Plaintiffs request that the Court quash this request because it is overly burdensome and would require Plaintiffs to organize information for SNET that SNET is able to organize for itself.

  o 5- All discipline "received" by technicians: Plaintiffs move to quash on the grounds that information about the discipline "received" by technicians assigned to the class members is irrelevant; this interrogatory does not address the relevant issues of the role First Levels had in the disciplinary process and their actual authority to make disciplinary decisions. In fact, the Court has already recognized

>   that SNET's arguments regarding the authority of certain class members to make disciplinary decisions regarding their technicians were "overstated and unpersuasive," Perkins v. SNET, 669 F.Supp.2d 212, 220 (D. Conn. 2009), and that the class members uniformly lacked discretion and authority. Id. at 222-25.
>
>   o 9- Working hours by day or week, no averages permitted: Plaintiffs move to quash on the grounds that it is impossible for individual plaintiffs to accurately remember the number of hours they worked every week since 2004 – that is to break their working hours down day-by-day or week-by-week for more than 250 weeks. It was SNET's legal obligation to keep accurate records of the class members' hours, and it has failed to do so.
>
>   Instead of being forced to reinvent their hours at this minute level of detail, Plaintiffs request permission to respond with estimated averages of the hours they worked during particular periods. The representative sample group of written discovery plaintiffs should be allowed to calculate their hours based on whatever knowledge and records they have at their disposal with fifteen days after the close of fact discovery. The data and records to be produced by SNET will be critical.
>
>   Sampling should be used to estimate the average number of hours the class members' worked per week, after which individualized damages may be calculated by the number of weeks they worked during the class period and their individual wage rates. (See Declaration of Richard Drogin).
>
>   o 10- Deductions from pay: Plaintiffs move to quash on the grounds that this interrogatory is irrelevant because Plaintiffs have withdrawn their claim related to deductions from pay.

- Document Demands

    11- All documents related to other proceedings: Plaintiffs move to quash on the grounds that this document demand is irrelevant. Plaintiffs' involvement in non-related legal proceedings, including bankruptcy, bears no conceivable relevance to this case; the request is designed solely for harassment.

The grounds for Plaintiffs motion for a protective order are set forth below.

## BACKGROUND

Plaintiffs filed the instant action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and a class action pursuant to the Connecticut Minimum Wage Act ("CMWA") and Fed. R. Civ. P. 23. This action alleges that SNET violated the wage-and-hour provisions of the FLSA and CMWA by deliberately misclassifying Plaintiffs and the class

3

members as exempt administrative and/or executive employees in order to deny them their lawful overtime wages. See Second Amended Complaint.

On November 4, 2009, the Court granted: (1) Plaintiffs' Motion for Collective Action Notification pursuant to Section 16(b) of the FLSA; and (2) Plaintiffs' Motion for Rule 23(b)(3) Class Certification. The members of the FLSA collective action are all First Level Managers with the titles Manager Network Services or Manager Construction and Engineering employed by SNET in the State of Connecticut from June 2004 and thereafter to whom SNET assigned technicians in seven specific bargaining unit titles. The Rule 23 class has the same criteria, but the class period dates back to June 2005.

On or about April 2, 2010, Plaintiffs were served with interrogatories and document requests for each member of the FLSA class, which currently includes 149 opt-in plaintiffs. The interrogatories and document requests seek discovery concerning, among other requested information, the number of hours each plaintiff worked each day during his or her employment with SNET from June 1, 2004 through the time of trial, and any schedules or timesheets reflecting the number of hours worked during this same period. (Exs. A & B to accompanying Wittels Dec.) These requests are based in large part on SNET's theory that damages must be calculated on an individual basis factoring in each plaintiff's working hours.

However, as recognized by the Court at the April 5 status conference, this is simply not how a collective and class action operates. A firmly-established body of law dating back to the Supreme Court's 1946 decision in Anderson v. Mt. Clemens Pottery, makes clear that both discovery and trial – including a damages analysis – may proceed on representative evidence, often from a small percentage of the class. Plaintiffs' expert statistician, Dr. Richard Drogin, Ph.D. confirms that damages may be extrapolated from an average number of hours worked by a

random statistical sample of the class members. This methodology is common in similar cases.

Because written discovery from a sample of the class is sufficient and individual discovery of every member is overly burdensome and excessive for both the class and the judicial process, Plaintiffs' Motion for a Protective Order should be granted. In addition, as described above, several of SNET's demands are objectionable and should be quashed.

## The Court Should Issue a Protective Order Limiting Written Discovery to a Sample of Class Members

In order to guard against abuse of the discovery process, protective orders may be granted under Fed. R. Civ. P. 26(c)(1) upon a showing of good cause, to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. District Courts are granted wide discretion in deciding whether to grant protective orders. Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir.1992).

### A. Written discovery from a sample of class members is sufficient in this case

In collective action litigations under the FLSA, precedent establishes that class-wide questions of liability and damages should be decided based on evidence from a random sample of class members. As explained in the accompanying Declaration of Richard Drogin, a sample of 30 class members may ultimately be sufficient to accurately estimate damages for the entire class in this case given numerous factors including (a) the size of the class (149 FLSA collective action plaintiffs and approximately 190 Rule 23 class members); (b) the burden and expense of individualized discovery; (c) the high anticipated response rate; and (d) the extent of corroborating evidence in this case – including, but not limited to, the depositions of 50 additional class members selected by the company (the 22 already taken and the 28 to be taken by SNET pursuant to the Court's April 5, 2010 Order), testimony from SNET managers and corporate representatives, and massive relevant documentary production (both that already

completed as well as that contemplated by the parties during merits discovery).

In addition to the testimony of the 50 plaintiff-deponents, this corroborating evidence in part includes (i) the deposition testimony of Level Two Manager Daniel Chantlos, who testified that class members "typically" worked more than 40 hours per week and that their work weeks ranged from "44 to 50, 60 hours"; (ii) written surveys completed by the company in which Level Ones indicated their duties and hours; (iii) "duty" records and other records of payments that class members used to receive for working on-call duty or other extended hours assignments; and (iv) emails, log-in times, cell phone records and other documents confirming that class members performed extensive off-hours work.[3]  This extensive corroboration means that a lower sample size (involving a higher margin of error) is permissible in order to reduce litigation costs.  (Id.)

Dr. Drogin opines that the parties should begin with an initial sample size of 30 and then consider expanding the respondent group if the Court determines the margin of error is too high based on the incoming data.

In the context of wage and hour actions with multiple plaintiffs, the Second Circuit has stated that "not all employees need [to] testify in order to prove FLSA violations or recoup back-wages, [but rather] the plaintiffs must [only] present sufficient evidence for the jury to make a *reasonable inference* as to the number of hours worked by the non-testifying employees." Grochowski v. Phoenix Constr., Ypsilon Constr. Corp., 318 F.3d 80, 88 (2d Cir. 2003) (emphasis added).  In a wage and hour class action in California, the trial court relied on the joint declaration of Plaintiffs' statistical expert Dr. Drogin (see Drogin Declaration) and another statistician in holding that a sample composed of 286 class members provided a sufficient level of accuracy to allow the jury to hear statistical estimates about the aggregate damages of a 2500-

---

[3] Plaintiffs seek to compel the production of several of these categories of documents in their contemporaneously-filed motion to compel.

member class. Bell v. Farmers Ins. Exch., 115 Cal. App. 4th 715, 721-26 (Cal. App. 1st Dist. 2004). On appeal, a California Court of Appeal held that the use of statistical sampling was within the trial court's discretion and satisfied due process. Id., at 746-58. Dr. Drogin proposes an even higher ratio here (30/190); furthermore, with corroboration from the 50 deponents, SNET will have received discovery from up to 80 plaintiffs,[4] or more than half the FLSA class and more than 40 percent of the Rule 23 class.

The Second Circuit has held that that testimony from a representative sample of workers is adequate evidence on which to award back wages under the FLSA to an entire group of employees. See Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 67 (2d Cir.1997) (awarding back wages to a class of approximately 1,500 SNET technicians based on evidence from a representative sample of 39 employees). See also, e.g., Department of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir. 1995) ("The testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees."); Reich v. Gateway Press, Inc., 13 F.3d 685, 701-02 (3d Cir. 1994) (holding that plaintiffs "can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement [in a wage and hour class action]"); Donovan v. Bel-Loc Diner, 780 F.2d 1113, 1116 (4th Cir. 1985) (upholding the district court's determination that the testimony of twenty-two witnesses was sufficient to support an inference of violations for the remaining seventy-six employees); Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 472-73 (11th Cir. 1982) (back wages awarded to 207 employees based on the testimony of twenty-three employees).

### B. Individualized discovery from every plaintiff in the 150 member class is excessive and should be prohibited

---

[4] In order to make the sample truly random, there is likely to be some small degree of overlap between the deponent group and written discovery group.

Furthermore, SNET should not be allowed to seek individualized discovery from all 149 FLSA plaintiffs because: (1) The burden of compelling every class member to respond to individual discovery outweighs the minimal probative value of this discovery, especially given the Court's finding that the members of the class are similarly "situated"; (2) permitting written discovery of all class members would defeat the purposes of a collective action; and (3) Courts generally prohibit individualized discovery of all members of a class.

### 1. **The burden of compelling every class member to respond to individual discovery outweighs the minimal probative value of this discovery**

The burden of individualized discovery outweighs the probative value of this discovery because the individual and cumulative burden is very significant, particularly when compared to the marginal benefit of additional discovery.

In this case, Defendant-SNET's written discovery requests directed to each opt-in plaintiff are very extensive and would represent an enormous and unnecessary burden for Plaintiffs and their attorneys. For example, one of Defendant's document requests directs Plaintiffs to produce "all work schedules, timesheets and all other documents that reflect the number of hours and/or the activities that you or any first-level SNET manager have worked each day from June 2004 through the time of trial . . . ." See Exhibit A to the Declaration of Steven Wittels, Request No. 2. This request, if fully complied with, would require each opt-in plaintiff to produce a massive quantity of company documents and would pose a staggering burden when accumulated across the class. Similarly, one of the interrogatories requires each respondent to "[i]dentify the number of hours you worked each day during your employment with SNET from June 1, 2004 through the time of trial" without estimating an average. See Exhibit B to the Declaration of Steven Wittels, Interrogatory No. 9. This request covers over five years of employment and would represent a significant burden for class members. Indeed,

8

the document requests and interrogatories would be an undue burden for even one plaintiff; when accumulated across a class they are oppressive and should be stricken.

While Defendant's written discovery requests would place an enormous burden on Plaintiffs, the probative value of this discovery would be minimal at best. By the close of discovery, Defendant will have deposed fifty of the class plaintiffs. With an additional sample of 30 class members responding to written interrogatories, Defendant will likely receive discovery from more than half of the members of the FLSA class. This large amount of discovery will surely more than satisfy any notions of due process SNET seeks to raise.

Furthermore, in the case at bar, the Court has applied a second-stage decertification standard and determined that the class members are "similarly situated" under the FLSA. Perkins v. SNET, 669 F.Supp.2d 212, 217-18 (D.Conn. 2009). Because all members of the class are similarly situated, the evidence provided by a random sample of class members is sufficient for both parties to make their cases and for the fact-finder to reach a conclusion about liability and damages for the entire class. Finally, by using statistical methods, a sample of class members will accurately represent the entirety of the class and render further written discovery duplicative and unnecessary. See Drogin Declaration.

### 2. Permitting written discovery of all class members would defeat the purposes of a collective action

Allowing written discovery of all class members would defeat the purposes of a collective action as articulated in Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). In Hoffman-LaRoche, the Supreme Court identified two benefits that the collective action mechanism was intended to provide: (1) to lower individual costs of litigation; and (2) to provide efficient resolution of common issues of law and fact. Id. Both of these benefits would be obviated if all class members were subjected to individual discovery. First, each collective

action member would require legal advice in responding to document requests and interrogatories, greatly increasing the costs of the litigation. Second, where individual discovery of every class member is permitted, Defendant will likely seek individual damages findings for each class member. Such findings would effectively partition the collective action into over 150 mini-trials, thereby drastically reducing judicial efficiency.

### 3. Courts generally prohibit individual discovery of all members of a class

Because collective and class actions proceed by representative evidence and other generalized proof, courts routinely deny individualized discovery of class members. See, e.g., Russell v. Illinois Bell Tel. Co., 2009 U.S. Dist. LEXIS 37300, at *3-4 (N.D.Ill. Apr. 30, 2009) (noting that the parties agree that "in opt-in class actions under the FLSA it is generally appropriate to conduct representative discovery as opposed to class-wide individualized discovery"); Nelson v. Am. Standard, Inc., 2009 U.S. Dist. LEXIS 113448, at *10 (E.D.Tex. Dec. 4, 2009) (ordering discovery to be conducted based on a random sample of ninety-one out of over 1,300 opt-ins); Wilson v. Guardian Angel Nursing, Inc., 2009 WL 790107, at *5-7 (M.D.Tenn. Mar. 24, 2009) (denying post-notice discovery allegedly needed for decertification motion); Cranney v. Carriage Servs., Inc., 2008 WL 2457912, at *3 (D.Nev. June 16, 2008) (permitting individual discovery "would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources."); Prentice v. Fund for Pub. Interest Research, Inc., 2007 U.S. Dist. LEXIS 71122, at *14 (N.D.Cal. Sept. 18, 2007) ("[I]ndividualized discovery is rarely appropriate in FLSA collective actions."); Smith v. Lowe's Home Ctrs., Inc., 236 F.R.D. 354, 357-58 (S.D.Ohio 2006) (granting plaintiffs' motion for a protective order against individualized discovery of opt-in plaintiffs and limiting discovery to a statistically significant representative

sample; ordering parties to confer on plaintiffs' proposed sample size of 90 out of more than 1,500 opt-ins); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp.2d 1342, 1344 (N.D.Ga. 2002) (defendants only allowed to conduct discovery from thirty-one out of more than 300 opt-in plaintiffs); McGrath v. City of Philadelphia, 1994 WL 45162, at *2-3 (E.D.Pa. 1994) (individualized discovery in FLSA collective action "inappropriate;" would only "obfuscate the issues and drastically enhance the costs of litigation. Such a result cannot be countenanced"); Ruggles v. WellPoint, Inc., 591 F.Supp.2d 150, 164 (N.D.N.Y. 2008) ("court has the authority to limit post-notice discovery to a reasonable sample").

Because statistical sampling is appropriate in this case (see Drogin Declaration), Defendant is only entitled to written discovery from a sample of the class members. Indeed, if the court authorizes individual discovery for the entire class, the court will set a dangerous precedent whereby defendants in future class actions will ask for individual discovery in increasingly large classes. Such discovery would be incredibly burdensome and would have a chilling effect on the vindication of important legal rights through the class mechanism.

**C. SNET Should Not Be Able to Take the Depositions of Non-Opt-In Class Members**

At the April 5, 2010 status conference, the Court ordered that SNET be allowed to depose 28 additional plaintiffs during merits discovery. In accordance with these depositions, the Court should order SNET to select only opt-in Plaintiffs as deponents and should not permit SNET to depose absent class members. SNET has a very high burden in seeking the depositions of absent class members which it has failed to meet in this case. See, e.g., Redmond v. Moody's Investor Serv., 1995 WL 276150 (S.D.N.Y. 1995).

Plaintiffs however do not object to including absent class members in the random sample for written discovery. In fact, Plaintiffs' sampling plan specifically proposes that 24 opt-ins and

6 non-opt-ins be chosen, a ratio in close proportion to the composition of the class.

### D.  Several of SNET's Interrogatories and Document Demands Should Be Quashed

As set forth above, many of the document demands and interrogatories propounded in SNET's written discovery are overly broad, unduly burdensome, and harassing – seeking information and materials which the company itself is in a better position to respond to or produce.  The Court should issue an order protecting the representative written discovery plaintiffs from responding to these requests.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for a Protective Order, strike Defendant's Interrogatories and Requests for the Production of Documents, and limit written discovery to a sample of the class members as described in the Declaration of Richard Drogin.

Respectfully submitted

Dated: April 19, 2010

By: ____/s/ Steven Wittels_____
Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

___/S/ Edmond Clark_____
Edmond Clark
Law Office of Edmond Clark
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via ECF this 19th day of April, 2010 upon the following counsel of record:

**David J. Vegliante**
Southern New England Telephone Co
310 Orange St., 8th Fl.
New Haven, CT 06510
203-771-8818
Fax: 203-771-6577
Email: dv1793@att.com

**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*


\_\_\_/s/ Steven L Wittels_____
Steven L. Wittels