I, RICHARD DROGIN, hereby declare:

The facts set forth herein are personally known to me, and I have firsthand knowledge of same. If called as a witness, I could and would competently testify thereto.

**Introduction**

1. I hold a Ph.D. in statistics from the University of California at Berkeley, earned in 1970. I am currently an Emeritus Professor in the Department of Statistics at California State University, Hayward, where I have taught graduate and undergraduate courses in data analysis, non-parametric methods, regression analysis, sample surveys, probability theory, queuing theory, simulation methods and design of statistical software. I have been employed at California State University, Hayward, since 1973, and became an Emeritus Professor in 1996.

2. I am a partner in the statistical consulting firm of Drogin, Kakigi & Associates. This firm provides consulting services and computerized database management. We have experience in designing and analyzing random sampling plans, organizing and managing large database systems, stochastic modeling, and performing advanced statistical analysis. Our firm has served as statistical consultants to both governmental agencies and the private sector for over twenty-five years. I have been retained as a statistical consultant in over 250 class action cases, primarily cases involving employment discrimination and wage and hour claims, and I have testified over 25 times as an expert witness (statistical analysis, computer processing) in numerous state and federal courts. I have never failed to qualify as an expert in statistics in any litigation. A copy of my current resume is attached hereto as Appendix 1.

3. Plaintiffs' counsel retained me in the *Sharon Perkins vs. Southern New England Telephone Company* case pending in United States District Court, District of Connecticut to act as a statistical consultant and to provide advice and counsel on sampling issues.

1

**Information Reviewed**

    4. Materials provided to me by Plaintiff's counsel include the

        (a) Perkins v SNET Second Amended Complaint 3-2-09

        (b) Perkins v SNET Order GRANTING Motion for Collective and Rule 23 Class Cert 11-6-09

        (c) Plaintiff's fifth set of requests for production of documents to defendants; dated November 6, 2009;

        (d) Plaintiff's sixth set of requests for production of documents to defendants; dated January 25, 2010;

        (e) Deposition of Joseph Kiely 9-25-08;

        (f) Deposition of Michael McDermott 10-6-08;

        (g) Deposition of Maureen Anderson 11-05-08;

        (h) 22 predeposed opt-ins hours and duty chart.xls;

        (i) L1 deposition excerpts regarding overtime.doc;

        (j) L1 deposition excerpts regarding duty.doc;

        (k) Disk A-1st Levels in CT.xlsx;

        (l) Class Notice Distribution List #1 12-10-09.xls;

        (m) REQUEST FOR PRODUCTION NBRS 1-20;

        (n) Excerpts from Daniel Chantlos deposition;

**Summary of Conclusion**

    5. I understand that defendants are proposing that interrogatories be served on all class members, but plaintiffs argue that this would be extremely burdensome, and unnecessary. However, this is a situation where random sampling could be used to study only a subset of the entire class, and still obtain representative results. The results of the interrogatories, along with any subsequent information provided for the random sample, could be used to make a statistically valid projection of damages to the class as a whole. In particular, information about hours worked derived from the interrogatory responses and other data for a random subset of class members is likely to provide representative evidence of what would be obtained using the same interrogatories served on the entire class, and require much less expenditure of resources. I have been involved as a

statistician in numerous wage and hour cases where information from a random sample of class members has been successfully used to gather representative evidence for determination damages. My proposal for random sampling is described in more detail below.

**Random Sampling and Projecting to Population**

6. Random sampling is a statistical technique used to make inferences about an entire population, based on information gathered from a subset of the population. Sampling is used in all areas of research when it is impossible, cumbersome, or relatively expensive to obtain information about each member of a population.[1]

7. When statisticians refer to a *simple random sample* they are referring to a sample that has the property that all samples with a fixed number of units have the same chance of being selected. The *population* is the set of people (or items or events) being studied. According to the theory of probability, if all possible samples from the population have an equal chance of being selected, then it is likely that the resulting sample will be representative of the population. For example, the average number of hours worked by members of a random sample is likely to be close to the corresponding population average value, with accuracy increasing with larger sample sizes. The theory of probability allows the specification of how far the population values might differ from their sample estimates, and therefore the accuracy of the estimate can be calculated. Statisticians specify the accuracy of estimates in terms of a *confidence interval*. The glossary at the end of this affidavit gives a discussion of the basic concepts in random sampling.

**Examples of Wage and Hour Cases Where Sampling was Used**

8. In the following paragraphs, I will briefly describe some wage and hour class action cases in which I have personally been involved, where random sampling has been used to obtain evidence about Plaintiffs' claims.

---

[1] An excellent discussion of random sampling and surveys is presented in *Reference Manual on Scientific Evidence*, Second Edition, published by the Federal Judicial Center, in the chapter on "Reference Guide on Survey Research" beginning on page 229.

3

9. In the case of *Duran* v. *U.S. Bank*, No. 2001-035537, Superior Court of California, Alameda County, Northern Division, the court simply selected its own random sample of twenty class members to testify at trial.  The issue was whether the Defendant employer properly classified certain employees as exempt under the outside sales exemption rule, and if so, what would the damages be.  These class members were deposed, and then appeared as witnesses at trial.  The court has entered its finding of liability, and has determined the amount of damages in a Phase II proceeding[2] based on findings of fact regarding hours worked for those in the random sample.

10. In *Bell v. Farmers Insurance Exchange* the Court ordered Defendants' and Plaintiffs' statisticians to work together to select a random sample of class members, which was used to collect representative information about hours worked per week.  The experts from both parties cooperated to devise the sampling plan, collect the data, and produce progress reports to the court during this process.  The experts disagreed about how the collected data should be extrapolated to the population for determination of aggregate class wide damages, and this issue was the only issue decided at trial. This case has been concluded, and damage awards distributed. For complete discussion, see 115 Cal.App.4th 715 (2004).

11. In *Rocher, Dahlin* v. *Sav-On Case No*. BC 227551, Los Angeles Superior Court, State of California, the court has ordered both sides to have their statisticians work together to select a random sample of class members to be witnesses at trial.  I was retained by Plaintiffs and, working in cooperation with the statistician retained by the Defendant, we were able to select a random sample from the class very quickly.  This case was settled before the liability trial.

12. In the case of Coordinating Proceeding Special Title (Rule) 1550(b)-Staples Overtime Cases; Case No.: 4235, lead Case No. 816121, Superior Court of the State of

---

[2] Duran v. U.S. Bank, Superior Court of California, Alameda County, Case No. 2001-035537, Judgment Against U.S. Bank, and Statement of Decision for Phase II, both filed on May 20, 2009. Also, see Order Re: Statement of Decision for Phase I, filed on July 18, 2008.

4

California, County of Orange, the Plaintiffs selected a random sample of class members, and designated them as trial witnesses. They were deposed prior to the trial. The Plaintiffs proposed that the judge make a ruling on each person in the sample, as to whether the person was mis-classified as an exempt employee or not. Then, these decisions could be projected to the class as a whole, to obtain an overall percentage of those mis-classified as exempt. On the eve of trial this case settled.

13. In *Foster v. Federal Express*, No. BC 282300, Los Angeles County Superior Court, State of California, I selected a random sample of shifts worked by Federal Express Couriers. There were hard-copy documents that indicated time worked off-the-clock that was not recorded in electronic form. Using the random sample it was possible to estimate the average amount of off the clock hours per shift, and to estimate the aggregate class-wide value of off the clock work. In addition, an electronic database recording unpaid meal break periods was compared to another electronic database showing times of pickup and deliveries by couriers. Through this comparison, unpaid meal breaks where class members performed work could be identified. This case has settled.

**Possible Methodology**

14. Based on my experience in numerous other cases, and *Duran* v. *U.S. Bank* and *Bell v. Farmers Insurance Exchange* in particular, I suggest that the proposed interrogatories be taken for a random sample of class members, as described below.

   a) Statisticians from both parties work together to draw the random sample of class members who will be served the interrogatories. Ideally, both sides should jointly design and implement the sampling method, so that there will be no disagreement about whether the sample is, in fact, a random sample, and proper statistical estimates can be derived. I have done this in other cases, and found that the procedure is fairly simple, quick, and of little cost.

b) All available computerized or hard-copy information relating to the work schedule and payroll information[3] for those selected to complete interrogatories should be available to both sides prior to the completion of the interrogatories. This will ensure that objective information, such as dates, jobs held, paid hours, and wage rate, will be incorporated where appropriate.

c) Information about hours worked obtained from the random sample could be used to estimate the total aggregate damages for the class. Based on the interrogatory responses, and possible subsequent findings by the court, the average hours worked for those in the sample will be computed.[4]

**Sample Size**

15. There is no predetermined sample size. The well respected statistician Prof. David Freedman has stated the following: "How Big Should the Sample Be? There is no definitive statistical answer to this familiar question. Bigger samples have less sampling error. On the other hand, smaller samples may be easier to manage, and have less non-sampling error. Bigger samples are more expensive than smaller ones: generally, resource constraints will determine the sample size. If a pilot study is done, it may be possible to judge the implications of sample size for accuracy or final estimates."[5]

16. The choice of sample size depends on the desired margin of error and level of confidence, and the amount of resources available for implementing the sample plan. It is up to the user of the statistics (i.e., trier of fact) to decide on an acceptable confidence level and margin of error. Since larger sample sizes generally lead to a lower margin of error for a fixed level of confidence, the relation between sample size and margin of error

---

[3] including other contemporaneous time stamped data such as emails, phone records, instant messages, and records of external logins to company servers

[4] I propose to use the same statistical method that I used in Bell v. Farmers, and in Duran v. U.S. Bank to estimate the average unpaid overtime hours per week for the class. This average value can then be used to compute backpay damages resulting from unpaid overtime for the class as a whole.

[5] D.A. Freedman. "Sampling." In the *Encyclopedia of Social Science Research Methods*. Sage Publications (2004) Vol. 3 pp. 986–990. M. Lewis-Beck, A. Bryman, and T. F. Liao, eds. [PDF-Preprint]

is used to determine the sample size necessary to achieve a desired margin of error in the confidence interval.

17. The margin of error is only one factor to consider when evaluating the reliability of an estimate based on a random sample. Other relevant considerations include response rate, absence of measurement error, and whether there is corroborating information other than the sample itself that would indicate whether the estimate might be under or over-estimating the true value in the population. In the present case, it is my understanding that plaintiffs anticipate a very high response rate for the interrogatories. Moreover, there will be no measurement error, since the final calculation will be based on the findings by the trier of fact, and thus the data will be considered as a "fact". Finally, I am informed that there will be a substantial amount of auxiliary evidence that can be compared to the results of the random sample, including depositions of 50 class members selected by defendants (over 25% of the class), survey evidence SNET has agreed to produce of employee duties and hours worked for all Connecticut Level 1 Managers, and testimony of Level 2 Managers regarding hours worked, and other documents.

18. Based on the my experience where I have used random sampling in other wage and hour cases, and the considerations described above, I propose that a random sample of 30 class members would be adequate to provide sufficient information for estimating aggregate class wide damages. If the court finds that additional respondents are necessary after evaluating the margin of error for the sample of 30 and the considerations in paragraph 17 above, then the initial sample of 30 could be combined with the additional respondents to obtain an estimate of average unpaid overtime hours per week for the combined sample.

**Glossary of Statistical Terms**

1. A confidence interval consists of an estimate of a population quantity, a range of values around the estimate, and a degree of confidence that the population quantity being estimated is in that range. The most commonly used degree of confidence is 95% -- and that was the confidence interval approved by the Court in *Bell v. Farmers Insurance Exchange*, 115 Cal.App.4th 715 (2004), where I served as an expert witness for the Plaintiffs. A 95% confidence interval for a population quantity is computed so that the confidence interval range will include the population quantity in 95% of possible samples. The range of a confidence interval may be expressed alternatively in terms of a margin of error, which is just 1/2 of the range. For example, suppose the 95% confidence interval for the average number of unpaid overtime hours per week worked by class members was 10 hours plus or minus 1 hour. This means that we can be 95% confident that the average number of unpaid hours worked per week for the whole class is between 9 and 11 hours.[6]

2. The larger the sample size, the smaller the range in the 95% confidence interval will be. If the desired range of the confidence interval is specified, then the sample size required to achieve that range can be computed. This computation requires knowing something about the variation in the population data, as measured by a statistical quantity called the *standard deviation*. For most datasets[7], about 2/3 of the values in the data are within 1 standard deviation from the mean, and about 95% of the values are within 2 standard deviations from the mean.

3. Of course, larger sample sizes give more accurate estimates, but they involve somewhat more time and expense. There is a practical trade off between increased accuracy and cost. Statistical theory does not give a "correct" or "standard" margin of error that is appropriate in all sampling situations. The choice of a required margin of

---

[6] Technically, being "95% confident" means that if random samples were drawn over and over, and the hours worked given in interrogatories from each sample were used to compute a resulting confidence interval, then for 95% of the random samples the resulting confidence interval would include the true value for the average number of unpaid hours worked per week for the whole class.

[7] These general rules apply exactly to data that has a bell shaped (normal) distribution.

error estimate is an issue that should either be agreed upon by the parties, or set by the court.

**Two Stage Sampling**

4. If a required margin of error for the confidence interval is specified, then the sample size required to achieve that margin of error can be computed. But this requires knowing something about the variation in the population data (i.e. the standard deviation) before the sample is drawn. However, prior to sampling, the variation in the population usually will not be known. In this situation, it may be useful to draw a small pilot sample first to measure the variation. The observed variation in the pilot sample is then used to estimate the number of additional sample observations needed in a second sample to achieve the required margin of error.

I declare under penalty of perjury under the l9th day of April 2010 at Berkeley, California.

*Richard Drogin*

_____

Richard Drogin, Ph. D.