UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | |
| v. | |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | |
| **DEFENDANT.** | |

## DEFENDANT SNET'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

I.   **INTRODUCTION**

The parties have made extensive progress in resolving their differences with regard to Plaintiffs' Sixth Set of Requests for Production of Documents over the course of meet and confer conferences on April 9, 11, 13, 14, 23, and 27, and via correspondence between the parties. As a result, the parties have been able to resolve the issues presented in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Production of Documents ("Pl. Br.") with regard to Requests No. 6, 8, 15, 16, 22, and 27.

The remaining outstanding Requests – Nos. 12, 14, 19, 20, 24, 26 and 33 through 36 – seek information that is irrelevant, overbroad, extraordinarily burdensome, or – in some cases – all three. Plaintiffs seek all emails of nearly 200 class members during a six-year period, at a cost to Defendant of more than $6,000,000 in processing fees and attorney time to review the emails for privileged content. See Section II, *infra*. Without any attempt to establish the relevance of such information, Plaintiffs also seek production of all folders and documents Defendant preserved from class member computers. The processing and privilege review of that

1

data would run between $1.4 and $1.89 million dollars.  See Section IIIA.  In addition, Plaintiffs seek quarterly inventory reports that have no relevance to this action.  See Section IIIB.  The parties continue to disagree as to what documents are responsive to Plaintiffs' requests regarding "extended hours reports, logs, forms, and other documents" and "documents from MSOC reports or other similar programs which detailed a day in the life of a First Level Manager."  See Sections IVA, IVB.  Plaintiffs' counsel's representations regarding the documents they seek do not comport with the language of the requests and constitute and constitute impermissible attempts to propound new discovery requests after the deadline for serving written discovery has passed.  Finally, Plaintiffs persist in seeking information related to the reclassification of the exempt status of *any* Level One position at SNET in the past 20 years, despite the obvious overbreadth of the request, and Defendant's repeated explanation that the two job positions at issue in this lawsuit (the only potential positions of relevance) have not been reclassified within the requested time period.  See Section IIIC.

Plaintiffs' motion to obtain irrelevant and extraordinarily burdensome discovery should be denied.  See Fed. R. Civ. P. 26(b)(2)(C)(iii) (court may limit discovery where it finds that the burden or expense of the proposed discovery outweighs its likely benefit); McKissick v. Three Deer Ass'n L.P., Civil No. 3:09-CV-780, 2010 U.S. Dist. LEXIS 13324, at *2-3 (D. Conn. Feb. 17, 2010) (party's objection that discovery is "overly broad" or "unduly burdensome" will be sustained where the party demonstrates "how … each [request] is not relevant or how each question is overly broad, burdensome or oppressive"); Umbach v. Carrington Inv. Partners (US), LP, No. 3:08 CV 484, 2009 WL 3287537, at *2-7 (D. Conn. Oct. 9, 2009) (denying plaintiff's motion to compel responses to requests that are overly broad, irrelevant, unduly burdensome, and

"not narrowly tailored to elicit discoverable information relating to plaintiff's specific allegations in his complaint").

## II. THE EMAIL DISCOVERY PLAINTIFFS SEEK IS OVERBROAD AND UNDULY BURDENSOME

A. **Request No. 19**: "All emails to or from Level One Managers with direct reports from June 2004 to the present, including but not limited to all opt-in plaintiffs to this action."

Plaintiffs' Request No. 19 is extraordinarily burdensome, because it seeks production of an estimated 639 GB of data (Declaration of Lito Fernando ("Fernando Decl."), ¶ 3-5, attached hereto as Exhibit A) – consisting of all available sent and received email data archives of the nearly 200 opt-ins over the course of six years. SNET estimates that it would cost between $1,278,000 and $1,597,500 just to process the emails from their native format into a searchable and reviewable format.[1] Declaration of Steve McComb ("McComb Decl."), ¶ 7, attached hereto as Exhibit B. After processing, Defendant would then be forced to incur fees in the range of $4,984,200 to $6,869,250 in order to review the email for privileged content before production to Plaintiffs. McComb Decl., ¶¶ 6-7 (estimated 40,000 to 50,000 pages of emails per GB;

---

[1] Plaintiffs cite two cases for the proposition that "countless lawsuits have involved considerable email production." (Pl. Br. at 6). Neither of these cases, however, is a class or collective action seeking all email correspondence for nearly 200 class members for a period of nearly 6 years. In fact, in Ryan v. Paychex, Inc. – a single plaintiff case – the court ordered the defendant to produce a narrowly-tailored collection of emails limited by time period, sender, recipient, and subject matter. CIV NO. 3:08CV1151, 2010 U.S. Dist. LEXIS 25529, at *2-3 (D. Conn. Mar. 18, 2010) ("Defendant will produce all emails regarding Ms. Ryan's employment to and from Michael Szymanski between 1/1/07 and 12/15/08," and "Defendant will produce any emails of from [sic] Kim Lewis around the sale in January 2008 for which Graham Murray was the financial advisor and Jerry Giovinazzo received the credit."). This is a far cry from the Plaintiffs' characterization of the Ryan case, in which Plaintiffs claim the defendant was required "to produce all emails regarding Plaintiff's employment." (Pl. Br. at 6). Although Plaintiffs correctly note that Doe v. Norwalk Community College, 248 F.R.D. 372, 375-77 (D. Conn. 2007) addresses the *potential relevance* of e-mails and hard drives (Pl. Br. at 6), the Doe decision did not address whether the defendant was required to produce wholesale email collections from the class, but rather, related to whether an adverse evidentiary inference was appropriate based on the plaintiff's allegation of spoliation. Neither case is relevant here.

3

estimated 639 GB of email for the class); Declaration of Adam Platin ("Platin Decl."), ¶ 3 (estimate privilege review would cost 19.5 cents per page to 21.5 cents per page), attached hereto as Exhibit C.  In short, Plaintiffs' Motion seeks to impose on SNET discovery costs that would more than eclipse the entire potential back pay claims that are at issue in this action.  On grounds of burdensomeness alone, Plaintiffs motion to compel these documents should be denied.  See Regan-Touhy v. Walgreen Co., 526 F.3d 641, 649 (10th Cir. 2008) (upholding district court's refusal to compel production of "all email" sent from an employee's corporate email account, emphasizing "the burdens and costs associated with electronic discovery, such as those seeking 'all email.'"); Burus v. Wellpoint Cos., Inc., Civil Action No. 5:08-cv-154, 2009 WL 735127, at *2 (E.D. Ky. Mar. 17, 2009) (finding a request for "all e-mails from 2002 to present" containing two names was unmanageable, as it would require the defendant to produce over 60,000 emails and requiring the use of a list of search terms to narrow the number of emails the defendant would have to produce).

Moreover, Plaintiffs' request is grossly overbroad, because it is not limited in any way to topics relevant to Plaintiffs' claims in this lawsuit.  See, e.g., Umbach, 2009 WL 3287537, at *7 (finding requests for all communications "between plaintiff and any limited partner of the Fund" to be "overly broad on [its] face"); Maale v. Caicos Beach Club Charter, Ltd., No. 08-80131-Civ., 2010 WL 272913, at *8-9 (S.D. Fla. Jan. 15, 2010) (refusing to compel responses and finding request overly broad in scope "because it [sought] all [email] communications on any and all subjects between" the defendants and "a wide range of potential individuals").  Plaintiffs' suggestion that there may be some relevance to the time stamps associated with various emails sent by opt ins and Rule 23 class members in determining the hours worked by this group does not in any way justify the enormous burden they seek to impose on SNET.  A request that was

limited to time stamp information could likely be addressed at a substantially reduced cost, since this would not require the processing of entire emails or the review of the substance of emails for privilege and responsiveness. By demanding that Defendant produce both the time stamps and the substance of all emails sent and received by 200 people over a six year period, the Plaintiffs plainly overreach by insisting on overly broad and unduly burdensome discovery.[2]

III.   **THE OTHER DISCOVERY SOUGHT IS NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE**

Even within the broad scope of permissible discovery, it is incumbent upon the party seeking production to make a good faith argument as to why the discovery sought is appropriate; Plaintiffs have not – and cannot – carry this burden with regard to several of their requests. See, e.g., Franco v. Yale Univ., 80 F. App'x 707, 710 (2d Cir. 2003) (upholding the district court's denial of the plaintiff's motion to compel because the plaintiff failed to articulate the relevance of the documents he sought).

   A.   **Request No. 20**: All folders and documents which SNET has copied or taken from First Level Managers' computers from June 2007 to the present.

At the onset of this litigation, Defendant made efforts to preserve information that it might possibly be required to produce at some future date by obtaining an image of various files on the computers assigned to hundreds of SNET employees, including nearly all of the 200 opt-

---

[2] If Plaintiffs were required to bear a material share of the costs associated with this production, their Request likely would be withdrawn, because they, like SNET, would recognize the obvious imbalance between the massive costs associated with their request and the limited probative value of their demand for the production of all email. Were the Court to impose an order requiring production of email in this action, it should require Plaintiffs to bear a material share of the relevant costs. See, e.g., SEC v. Collins & Aikman Corp., 256 F.R.D. 403, 418 (S.D.N.Y. 2009) ("In considering requests for cost-shifting with respect to expensive and burdensome discovery, this Court has noted that the most important consideration is '[t]he extent to which the request is specifically tailored to discover relevant information.'"); Universal Del., Inc. v. Comdata Corp., CIVIL ACTION No. 07-1078, 2010 U.S. Dist. LEXIS 32158, at *23-24 (E.D. Pa. Mar. 31, 2010) (requiring plaintiffs to pay 50% of approximately $17,334 costs of creating a database comprised of the .tiffed images of documents collected from four custodians).

in and Rule 23 plaintiffs remaining in this case.  See Doe v. Norwalk Cmty. Coll., 248 F.R.D. 372, 377 (D. Conn. 2007) (finding that the defendants should have known that documents "including e-mails and hard drives . . . could potentially be relevant to future litigation" and thus should have preserved them).  As with all preservation efforts, this collection process was necessarily overbroad, attempting to capture the contents of company computers issued to these users without regard to whether such information might be relevant and subject to production.  Undeterred by the evident over-breadth of their Request, Plaintiffs in their Motion to Compel now seek to require SNET to produce all of the information it has preserved without offering the slightest indication that any of it is relevant to this proceeding.  Even if SNET were required to collect and produce all available data files just from the current class members' desktop collections, the size of that data would be approximately 143 GB.  Fernando Decl. ¶ 7.  It would cost Defendant between $286,000 and $357,500 to merely process the data, and approximately $1,115,400 to $1,537,250 to review the file contents for privileged material before production to Plaintiffs.  McComb Decl. ¶ 7 (estimated 40,000 to 50,000 pages of emails per GB; estimated 143 GB of data for class); Platin Decl., ¶ 3 (estimating privilege review of ESI would cost 19.5 cents per page to 21.5 cents per page).  This places an enormous burden and expense on Defendant, particularly where Plaintiffs have made no effort to show the relevance of any of the information that may be contained therein. See Umbach, 2009 WL 3287537, at *6 ("In these fifty-one Requests, plaintiff seeks, as defendants aptly describe in their brief, 'every single document received or generated by Carrington over the course of the last four years.' … Simply put, plaintiff's Requests are overly broad and unduly burdensome."); accord Regan-Touhy, 526 F.3d at 648-49 (noting that "the Supreme Court has underscored that 'the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied'" and

6

finding that had the plaintiff "issued a more narrowly targeted request focused only on documents (whether from the personnel file or elsewhere) that might indicate" information specifically relevant to the plaintiff's claim, the court "would face a very different question.").

- B. **Request No. 26**: All Quarterly Inventory reports for CPE Equipment or other similar documents written by Level One Managers with direct reports from 2004 to the present.

Plaintiffs claim that these documents are "relevant to the class members' duties and responsibilities," but fail to put forth any theory under which that would be the case. (Pl. Br. at 8). Therefore, Plaintiffs have failed to establish the relevance of these documents. See Franco, 80 F. App'x at 710; Kunajukr v. Lawrence & Mem'l Hosp., Inc., Civ. No. 3:05CV-1813, 2008 WL 410579, at *2-4 (D. Conn. Feb. 14, 2008) (denying motion to compel responses to certain interrogatories and document requests that were overly broad or not reasonably calculated to lead to the discovery of admissible evidence). The inventories are physically conducted by technicians and the information maintained about missing equipment sheds no light on whether Level Ones perform exempt managerial duties. Moreover, while there are timestamps in the available data associated with the uploading of certain data during the inventory, there is no information that indicates the total duration of the inventory, or identifies the Level One Manager who is supervising the inventory. Therefore the inventory data is not probative of hours worked, either.

- C. **Request No. 33:** All documents relating to the change in status of First Level Managers from non-exempt to exempt employees, including the reason(s) such change, at anytime from 1990 to the present.

    **Request No. 34:** All documents relating to the change in status of First Level Managers with direct reports from non-exempt to exempt employees, including the reason(s) for such change, at anytime from 1990 to the present.

    **Request No. 35:** All documents relating to the change in status of First Level Managers with direct reports from exempt to non-exempt employees including the reason(s) for such change, at anytime from 1990 to the present.

>**Request No. 36:** All documents relating to the change in status of First Level Managers from exempt to non-exempt employees including the reason(s) or such change, at anytime from 1990 to the present.

SNET has agreed to produce any non-privileged documents that are responsive to these Requests that relate to any of the First Level positions that are at issue in this litigation. Plaintiffs insist that this is insufficient and that SNET must produce documents related to changes in the exempt/non-exempt classification status of First Level Managers in positions that are **not** at issue in this litigation. Plaintiffs offer no basis for concluding that a decision with regard to the exempt status of an entirely unrelated job title, with unrelated job duties, an unrelated job description, and unrelated supervisees is reasonably calculated to lead to the discovery of admissible evidence with regard to the classification of the two positions at issue here. To the contrary, the Request seems more obviously intended to gather documents related to other lawsuits Plaintiffs' counsel may hope to bring. Use of discovery for this purpose is plainly improper. See, e.g., Pichler v. UNITE, 585 F.3d 741, 752 (3d Cir. 2009) ("fishing expedition" seeking discovery of other potential plaintiffs is an "impermissible purpose" of discovery).[3]

## IV.  PLAINTIFFS HAVE FAILED TO DESCRIBE WITH REASONABLE PARTICULARITY THE CATEGORIES OF DOCUMENTS THEY SEEK

Defendant is not required to guess what Plaintiffs' requests mean. Nor can Plaintiffs redeem poorly-drafted requests by claiming that Defendant's legitimate objections are merely "semantic argument[s]." (Pl. Br. at 5). See Regan-Touhy, 526 F.3d at 648 (plaintiff's post-hoc attempt to narrow a document request could not save a request that, as written, was overly broad). A request for production "must describe with reasonable particularity each item or

---

[3] The twenty-year period for which this request seeks documents is also patently overbroad, particularly given this case's limitations period, which stretches back, at most, to mid-2004.

category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A).  Thus, a motion to compel discovery should be denied when the party seeking the discovery fails to provide "sufficient information to enable [the recipient of discovery] to identify responsive documents." Thompson v. Lantz, Case No. 3:04cv2084, 2009 U.S. Dist. LEXIS 90923, at *4-5 (D. Conn. Sept. 25, 2009).  As the Tenth Circuit has explained:

> [P]arties to civil litigation are given broad discovery privileges.  But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with 'reasonable particularity ….  All-encompassing demands take little account of that responsibility. . . .  [A] discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and [to enable] the court … to ascertain whether the requested documents have been produced.

Regan-Touhy, 526 F.3d at 649-50 (internal quotations omitted).

    A.    **Request No. 12:** All extended hours reports, logs, forms, and other documents from June 2004 to the present indicating that First Level Managers with direct reports performed extended hours.

Defendant objected to Request No. 12, in part, because the term "extended hours" is vague and ambiguous.  See Defendant SNET's Objections and Responses to Plaintiffs' Sixth Set of Requests for Production of Documents to Defendant ("Objections and Responses"), attached as Exhibit D, p.22.  Defendant was not aware of anything called an "extended hours" report, log or form.  Defendant further responded that it interpreted "extended hours" to refer to "work that SNET Level One managers in the [then, six] covered job titles performed while acting as 'duty managers'" and directed Plaintiffs to previously-produced documents Defendant believed were responsive.  Id.  Defendant has subsequently produced additional documents related to work performed by class members while acting as duty managers.  See April 16, 2010 Production Letter, attached as Exhibit E.

In the parties' April 27 meet and confer session, Plaintiffs clarified that, as used in this Request, "extended hours" was intended to mean any work performed "outside of normal hours."

9

Plaintiffs' counsel also advised that the Request is intended to encompass "extended effort forms" that Plaintiffs' counsel represented Level One Managers fill out. Defendant disagrees that Request No. 12 relating to "extended hours" covers documents related to "extended effort," particularly where a separate request (No. 17) specifically requested documents "related to extended effort." Furthermore, Plaintiffs cannot overcome Defendant's valid objections by in effect orally re-writing the request.

Nevertheless, Defendant has produced the "Guidelines for Extended Effort" that describe how "extended effort special payment consideration" can be issued via the SPEAR system, as well as data from the SPEAR database regarding such payments made to the class members, in addition to duty schedules and data from the Callout database regarding time that Level One Managers worked as duty managers "outside of normal hours." Defendant believes that it has fully complied with this request.

> B. **Request No. 14**: All night logs from the CSRAB, DFCC, and similar systems or databases from June 2004 to the present indicating calls made to Level One Managers and their direct reports.

Defendant explained in its Objections and Responses and in several meet and confer sessions with Plaintiffs' counsel that there are no "systems or databases" called "CSRAB" or "DFCC." See Objections and Responses, p. 23. Plaintiffs clarified that they were seeking "night logs" from the DFCC and CRSAB (not "CSRAB," as it was called in Request No. 14) dispatch centers. Defendant has repeatedly confirmed to Plaintiffs that it has produced all available records of calls from night dispatch centers to SNET Level One Managers who are class members that are maintained in any system or database.[4] Request No. 14 does not call for the

---

[4] This data was captured for all groups other than U-Verse in the Callout Database produced by Defendant. See April 16, 2010 Production Letter. Defendant has confirmed to Plaintiffs that there is no database or system that collects dispatch data on U-Verse call outs.

10

collection or production of information outside of "systems or databases."  Plaintiffs' assertion that "Defendant must produce all information regarding night logs" (Pl. Br. at 5) is not only hopelessly vague, but impermissibly seeks to expand the Request, as written.

> C. **Request No. 24**: All documents from MSOC reports or other similar programs which detailed a day in the life of a First Level Manager from 2004 to the present.

Defendant conducted a survey called Day In The Life ("DITL"), and as stated in its Objections and Responses, the DITL documents are not contained in nor generated, as stated in the Request, from MSOC, which stands for Management System and Operating Control, a system designed to enhance the effectiveness of first level mangers.  See Objections and Responses, p. 27.  Nevertheless, Defendant produced Day In The Life survey responses from SNET employees in the relevant job titles, which included the survey questions given to the respondents, as well as voluminous training documents and other manuals related to the MSOC system, some of which relate to first level supervisors planning their day.  See April 16, 2010 Production Letter.  Plaintiffs' response that Defendant must also produce "all documents *given to* all First Level Managers regarding 'day in the life' activities" (Pl. Br. at 8 (emphasis in original)) is not reasonably encompassed in Plaintiffs' original request for documents "detail[ing] a day in the life" of an L1 Manager.  See Regan-Touhy, 526 F.3d at 649-50 (rejecting "kitchen sink" approach to discovery requests and requiring plaintiff to tailor her requests to specific information relevant to her claims).  More importantly, Plaintiffs have still failed to identify with particularity any other documents responsive to Request No. 24 that have not been produced.

V. **CONCLUSION**

For the reasons set forth more fully above, Plaintiffs' motion to compel further discovery responses should be denied.

Dated:  New York, New York
April 30, 2010

Respectfully submitted,

By:  /s/ Patrick W. Shea
Patrick W. Shea (CT07071)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

Leslie A. Dent (PHV 03877)
John F. Wymer, III (PHV 03876)
Erika L. Leonard (PHV 03875)
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E., Suite 2400
Atlanta, Georgia 30308
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
lesliedent@paulhastings.com
johnwymer@paulhastings.com
erikaleonard@paulhastings.com

Counsel for Defendant
SOUTHERN NEW ENGLAND
TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,**<br><br>**Individually and on Behalf of Others Similarly Situated,**<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**SOUTHERN NEW ENGLAND TELEPHONE COMPANY,**<br><br>**DEFENDANT.** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2010, a copy of foregoing DEFENDANT SNET'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS was filed electronically and served by U.S. mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Shea
Patrick W. Shea (CT07071)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

*Attorney for Defendant SNET*

LEGAL_US_W # 64471421.6