# How to Conduct a Wage and Hour Audit for Exemptions to Overtime Laws[+]

By Cristina G. Banks and Lloyd W. Aubry, Jr.

### Introduction

Companies continue to face costly lawsuits from employees challenging their failure to receive overtime pay based on the so-called "white-collar" exemptions to overtime under the Fair Labor Standards Act ("FLSA") and under parallel legislation at the state level, in particular the Wage Orders in California where the requirements exceed those under the FLSA. Elaine Chao, the U.S. Secretary of Labor responsible for issuing regulations and guidelines to ensure compliance with the FLSA, reports that in 2004 the Wage and Hour Division collected over $196 million in back wages, including overtime pay, for workers incorrectly classified.[1] Class action overtime lawsuits are very costly; costs include attorney and expert fees, and expenses related to administrative time and lost productivity of company personnel in addition to overtime wages paid to prevailing plaintiffs.

The revised "exemption" regulations issued by the U.S. Department of Labor effective on August 23, 2004 (called by the U.S. Department of Labor the "FairPay Regulations") are intended to reduce the number of misclassifications in the future and significantly raise the salary level required to qualify for exempt status. Companies should now seriously consider examining jobs they have classified as exempt against these new regulations and limit potential liability by determining which jobs should be reclassified as nonexempt.

### The FairPay Regulations

The FLSA exemptions generally break down into three tests: (1) the *salary level* test; (2) the *salary basis* test; and (1) the *job duties* test.[2] To meet the salary level test, executive, administrative and professional employees must earn a minimum of $455 per week and computer employees must earn $455 per week or at least $27.63 per hour if paid hourly. To meet the salary basis test, employees must be paid a predetermined amount every week in which the employee performs any work, and this amount cannot be subject to reduction because of variations in the quality or quantity of work performed. Employees paid by the hour are not considered exempt (except for computer employees). And finally, to meet the job duties test, employees must perform certain duties or perform them in particular ways in order to meet exemption requirements (see section below for detail). Although the criteria are straightforward for the salary level and salary basis tests, the criteria for the job duties test still require considerable interpretation and inference.

### What You Need to Conduct an Effective Audit

#### Understanding the Law

There are several parts to an effective audit. The most important is a thorough understanding of the federal and state laws regarding overtime exemptions. The FLSA sets the minimum standard for compliance with overtime laws, and state laws may be more restrictive. For example, exemptions may differ under federal and state laws. When a conflict or difference arises between state and federal law, the employer must comply with whichever laws establish the higher standard.

The following is a table summarizing the job duties exemption criteria for executive, administrative, professional, and computer employees, as expressed in the FairPay Regulations and elaborated in the online training provided by the Wage and Hour Division (www.wagehour.dol.gov).

---

[+] This article first appeared in the March/April 2005 issue of the HR Advisor Journal and is reprinted with the kind permission of the HR Advisor Journal.

[1] U.S. Department of Labor FY 2006 Budget Overview (www.dol.gov/sec/Budget2006/overview).

[2] FairPay Fact Sheet by Exemption Under the Fair Labor Standards Act (FLSA), Fact Sheet #17A – Overview.

| EXEMPTION | CRITERIA | TYPES OF TASKS & WORK CONTEXT |
|---|---|---|
| Executive | • Primary duty is management of the enterprise or of a department or subdivision<br><br>• Customarily and regularly directs the work of two or more employees<br><br>• Has authority to hire or fire other employees or gives recommendations that are given particular weight. | • Directs others: delegates tasks; makes work assignments; creates work schedules; adjusts number and location of staff; directs break and meal schedules.<br><br>• Manages staff: recruits and evaluates job candidates; evaluates performance of others; resolves performance problems; conducts performance reviews; provides training and coaching; disciplines and terminates staff; makes promotion and compensation decisions.<br><br>• Manages store/department operations: evaluates store/department performance; monitors and maintains security of cash; implements policies; develops plans for improving operations/profitability; controls discretionary costs; controls inventory.<br><br>• Manages customer service: resolves complex customer problems; monitors delivery of customer service; approves special transactions; provides special discounts to customers. |
| Administrative | • Primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or customers<br><br>• Primary duty includes the exercise of discretion and independent judgment | • Performs work directly related to assisting with the running or servicing of the business, as distinguished from working on a production line or selling a product in a retail or service establishment.<br><br>• Performs work in a functional area of the business such as tax, finance, accounting, budgeting, auditing, insurance, quality control, purchasing, procurement, advertising, marketing, research, safety and health, personnel management, human resources, employee benefits, labor relations, public relations, government relations, computer network, internet and database administration, legal and regulatory compliance.<br><br>• Work directly related to assisting with the running or servicing of the business of the employer's clients or customers such as tax experts and financial consultants.<br><br>• Compares and evaluates possible courses of conduct and acting on or making decisions based on evaluations.<br><br>• Formulates, affects, interprets, or implements management policies or operating practices.<br><br>• Carries out major assignments in conducting the operations of the business.<br><br>• Represents the business: commits the employer in matters that have significant financial impact; waives or deviates from established policies and procedures without prior approval; negotiates or binds the company on significant matters; investigates and resolves matters of significance on behalf of management; represents the company in handling complaints, arbitrating disputes or resolving grievances. |

| | | |
|---|---|---|
| | | • Provides consultation or expert advice to management. |
| | | • Participates in planning long- or short-term business objectives. |
| Professional | • Primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor. | • Uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. <br> • Performs work in traditional professions including law; medicine; theology; accounting; actuarial computation; engineering; architecture; teaching; various types of physical, chemical and biological sciences; pharmacy and similar occupations that have a recognized professional status. <br> • Invents, imagines, or creates work product given minimal instruction or direction; applies imagination, originality and talent to generate work product that cannot be created by intelligence, diligence, and accuracy alone. <br> • Teaches, tutors, instructs or lectures students in an educational establishment. <br> • Engages in the practice of law or medicine. |
| Computer Employee | • Computer employees whose primary duty consists of the application of systems analysis techniques and procedures; the design, development, documentation, analysis, creation, testing or modification of computer systems or programs; the design, documentation, testing, creation or modification of computer programs related to machine operating systems; or a combination of the above. | • Applies systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications. <br> • Designs, develops, documents, analyzes, creates, tests, or modifies computer systems or programs, including prototypes, based on and related to user or system design specifications. <br> • Designs, documents, tests, creates, or modifies computer programs related to machine operating systems. |

**Jobs to study**

Another part of an effective audit is determining which jobs would be most critical to study. Because it is generally impractical to examine every job or position in an organization, segregating jobs into these three categories is useful: (1) jobs that fall without question in the exempt category; (2) jobs that fall without question in the nonexempt category; and (3) jobs that fall within a gray area where close examination is needed to determine the proper classification. Guidelines for segregating jobs into these three categories are outlined below.

*Jobs Clearly Nonexempt*

- Employees who are paid hourly (except computer employees paid more than $27.63 per hour)
- Employees who earn less than $455 per month or $23,600 per year
- Employees who perform blue-collar work

*Jobs Clearly Exempt*

- Licensed professionals
- Non-blue collar employees earning over $100,000 per year
- Employees performing exempt work more than 50% of the time
- High-paid managers who supervise a large number of people
- High paid administrators who run the administrative functions of the business

*Jobs Not Clearly Exempt or Nonexempt*

*Executive Exemption:*

- Managers who have a small staff
- Managers who perform hands-on work at least part of the workweek
- Managers who make personnel decisions but are required to obtain approval at higher levels
- Managers who are involved in sales and customer service at least part of the workweek
- Managers who communicate and implement corporate policies with some interpretation and discretion
- Managers who follow detailed corporate programs designed for running profitable and efficient operations

*Administrative Exemption:*

- Employees who perform a combination of administrative and clerical duties
- Employees who do not exercise a great deal of discretion and independent judgment
- Employees who don't perform very high level duties and some production work
- Employees who work in functional areas of the business but not on matters which are highly significant or consequential
- Employees who work closely with their supervisors in performing the work—neither directed by supervisors nor working independently

*Professional Exemption:*

- Unlicensed professionals
- Highly skilled workers who apply specialized knowledge acquired from substantial work experience
- Employees performing work which does not require a high amount of advanced knowledge or knowledge required is not highly advanced
- Non-degreed employees who have and apply advanced knowledge similar to degreed employees
- Employees who perform work which requires innovation, imagination, originality, or talent to an unknown degree

- Employees who perform creative work which is not considered to be in a recognized field of artistic or creative endeavor
- Employees responsible for developing products but not entirely new product

*Computer Employee Exemption:*

- Employees do not perform a lot of work applying systems analysis techniques and procedures
- Employees do not perform a lot of work designing, developing, documenting, analyzing, creating, testing, or modifying computer systems or programs
- Employees perform some work involving the manufacture or repair of computer hardware or related equipment
- Employees use computer software some of the time or rely on the use of computers some of the time to perform their work

**Strategies for collecting job duty information**

After jobs have been identified that fall in the "gray zone," the next step is to develop a strategy for collecting job duty information in order to determine the appropriate classification. The regulations clearly state that classifications cannot be determined by job title.[3] The correct classification is best determined when a job is described at the task level through a job analysis. Tasks may be described at varying levels of specificity. A job analysis is a method for identifying the sets of tasks and activities actually performed by job incumbents. The result of the job analysis is a task list that captures the range of work performed by job incumbents. Once this information is known, then several options are available for collecting job information relevant to the determination of exemption status.

**Data Collection Methods**
*Job Questionnaire*
A questionnaire consisting of the list of tasks identified can be administered to job incumbents to determine what tasks each incumbent performs and how much time is spent on exempt vs. nonexempt tasks. Tasks will need to be categorized as either exempt or nonexempt prior to the questionnaire administration, and a response format needs to be designed to enable incumbents to provide reliable and accurate reports of time spent on exempt and nonexempt work.

---

[3] FairPay Regulations, 29 C.F.R. section 541.2.

### Job Observations

Job incumbents can be observed to determine the tasks performed and the amount of time spent on tasks. Observers should be trained in observation methods in order to be as unobtrusive as possible. If so, incumbents will be least likely to change their work behavior because they are being watched. This method allows time to be accumulated across exempt and nonexempt work. As with the questionnaire described above, types of tasks would need to be categorized as either exempt or nonexempt prior to the analysis of the observational data.

### Job Interviews

An independent party (e.g., outside consultant, attorney, HR representative) could interview job incumbents to collect detailed information about the specific tasks and activities performed and the manner in which they are performed (e.g., with/without supervision, frequency, and various contextual factors). Specific information can be sought which is directly relevant to the exempt criteria, and the job can be explored in depth through extensive probing and testing of conceptualizations of the job gleaned from various sources.

### Diary-keeping

Job incumbents can keep a log of their tasks and activities across a shift or shifts and then track "start" and "stop" times. This method allows incumbents to track their own job behavior and be able to describe the work as they see it and in their own words. Diary-keeping is not a natural part of the job, but with minimal training job incumbents can become skilled trackers. Time associated with each task can be accumulated across exempt and nonexempt work.

### Who Collects the Data

Another set of considerations involves who collects the information. Ideally, data collection should be done by people who are knowledgeable about the job — either because they perform/have performed the job, or have acquired detailed knowledge of the job from a variety of sources including reviews of company materials related to the job duties and/or through observations of job incumbents. This familiarity with the job allows the data collector to understand the information he/she is collecting, thus minimizing errors arising from misinterpretations of incumbents' descriptions of their work, misunderstandings of terminology used by incumbents, and misperceptions of the context in which incumbents work, among others. There are several choices of data collectors:

### Job Incumbent

People who perform the job can generate job information through self-reports. These reports are quite informative as incumbents are the most knowledgeable because they currently perform the job. However, their reports also can be self-serving under certain circumstances such as if an incumbent were motivated to produce a certain result. With proper instructions and given assurances that the data will be treated confidentially, incumbents do generate very accurate and valuable data.

### Job Incumbent's Supervisor or Manager

Supervisors and managers are also knowledgeable if they in fact monitor incumbents' job performance. It is likely that they performed the job as well before they were promoted to a supervisory position. Like incumbents, their reports also can be self-serving under certain circumstances. Again, with proper instructions and given assurances that the data will not reflect on their own performance or affect them in any way, supervisors and managers can generate accurate and valuable data.

### An HR Representative

Members of HR properly trained in job analysis methods and who are well informed of the FairPay Regulations and exemption criteria could also be effective data collectors. The HR representative should become familiar with the details of the job prior to data collection in order to be most prepared to collect appropriate data. Being an independent party, an HR representative should not be motivated to distort reports with respect to what tasks and activities are performed in the job. However, being an "insider" and potentially interested in maintaining the current exemption classifications, HR representatives may pursue or be given information that is self-serving. With proper training and a commitment to accuracy regardless of the outcomes of the study, HR representatives can collect accurate and valuable data.

### An Outside/Neutral Party

The only data collector that is theoretically "free" from competing agendas is an outside or neutral party (e.g., trained job analysts). The outside party needs to become familiar with the details of the job from a variety of sources including reviews of company documents related to job duties and through observations of job incumbents. In addition, the outside party should be knowledgeable about job analysis techniques and understand the job information that needs to be collected to properly classify jobs according to exemption criteria.

### How Many Incumbents To Study

Another consideration is how many job incumbents should be examined in each job under study. Two issues have to be examined at the same time: (1) what is the appropriate classification for the job, and (2) how many incumbents are performing that job in an exempt (nonexempt) manner? Although it is the job that is given the classification, the number of

incumbents who perform the job in that manner is also important. As the number of incumbents who perform the job in an exempt (nonexempt) manner shrinks, the classification for the job becomes questionable. This sets up an interesting problem in terms of who and how many incumbents should be part of a job study. Generally, the larger the sample of incumbents studied, the clearer the picture of whether the job is exempt or nonexempt. Similarly, the more information collected first hand (vs. second hand) regarding the actual tasks performed in the job, the more conclusive the information obtained and the smaller the sample needed to make a determination. Thus, there are trade-offs here that must be considered and weighed carefully as one designs this aspect of the audit. Alternatives are discussed below.

*The Population of Job Incumbents*
Ideally, collecting information from every incumbent will provide the clearest picture of the range of tasks actually performed on the job, and this information provides the most complete picture for making the determination. Studying all incumbents can be costly and time-consuming, yet worth it because then the company knows who is performing the job in an exempt (nonexempt) manner. If so, the company might use this information to address those incumbents who do not comply with the requirements for the exemption. More will be said about interventions following an audit later.

*A Random Sample of the Job Incumbent Population*
A true "random" sample can be sufficient for determining the exemption status of a job because it "represents" the rest of the population of incumbents. A random sample will mirror the characteristics of the population, and the results of an audit based on this sample can be generalized to the rest of the population. Therefore, the proportion of incumbents who perform the job in an exempt (nonexempt) manner would be indicative of the number of incumbents in the population who perform the job in this manner. A random sample is a cost-effective way to test the exempt status of a job as long as the sample is large enough and similar enough to the population to be truly representative.

*A Targeted Sampling of the Job Incumbent Population*
An alternative to a random sample is a targeted sample, one that is selected from a subset of the population for which the company wants a closer look, such as incumbents in small retail stores, those who are involved in customer service and sales, or those who engage in hands-on or production work. It would be cost effective to focus on these incumbents to determine whether the exempt status of the job was not appropriate for a particular subset within the job title.

While it is not necessary to study 100% of the job incumbents, it is important to study enough incumbents to ensure incumbents comply 100% with the classification requirements. The more uncertainty there is in terms of whether incumbents perform the job in an exempt (nonexempt) manner, the greater the number of incumbents that need to be included in the study.

**Frequency of Data Collection**
Another consideration is how frequently an audit should be conducted. There may be several "triggers" for an audit:

1. When a job changes significantly, creating some ambiguity with respect to classification.
2. When the FLSA regulations change significantly.
3. When job incumbents change significantly as a function of high turnover or mergers/acquisitions.
4. Every few years (e.g., 3-5 years) as the job evolves over time.
5. When concerns are raised about a job's exemption status.
6. When legal action is taken (e.g., overtime claims are filed).

**Accumulation and Maintenance of Data**
The final consideration is how data ought to be accumulated and tracked over time. What is the value of the data to the organization once exemption status is determined? For purposes of defending a misclassification lawsuit, would it be best to have historical data in order to demonstrate that actions were taken to improve the exempt status of a job? Is it best to show evidence that a review of the exempt status was contemplated on a regular basis? Answers to these and related questions would help to determine the best course to take with respect to the extensiveness of the database.

*Continuing Problems with Exemption Criteria*
Companies interested in pursuing an audit of classification decisions still face the problems of interpreting the exemption criteria and investigating how work is performed by job incumbents in order to make correct determinations of exemption status. The revised guidelines did provide more clarification of exemption criteria for executive, administrative, professional, computer and outside sales employees (see "FairPay Fact Sheets by Exemption under the Fair Labor Standards Act" on the Wage and Hour Division website, www.wagehour.dol.gov). However, the exemption criteria under the "job duties test" still contain ambiguously defined terms which require

significant interpretation and moreover, leave open the question of what evidence would be sufficient to claim a job is exempt without threat of litigation.

*Job duty terms and their definitions*
Below we list the job duty terms and definitions provided under the revised regulations. These terms are collected below to provide readers a quick reference for determining what job information needs to be collected to make an exemption determination. We advise readers to review the regulations in their entirety when an audit is undertaken.[4]

---

[4] 29 C.F.R. Part 541, "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule; Subpart H." *Federal Register*, April 23, 2004.

| Term | Definition | Examples |
| --- | --- | --- |
| Primary Duty | The principal, main, major, or most important duty that the employee performs. | The relative importance of exempt duties as compared with other types of duties; The amount of time spent performing exempt work; The employee's relative freedom from direct supervision; The relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. |
| Customarily and Regularly | A frequency that is greater than occasional but which may be less than constant. | Work that is normally and recurrently performed every workweek (not isolated or one-time tasks). |
| Exempt and Nonexempt Work | All work described in various sections of the regulations[5] and the activities directly and closely related to such work. | (None provided) |
| Directly and Closely Related | Tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work. Includes physical tasks and menial tasks that arise out of exempt duties and the routine work without which the exempt employee's exempt work cannot be performed properly. | Recordkeeping; Monitoring and adjusting machinery; Taking notes; Using the computer to create documents or presentations; Opening the mail for the purpose of reading it and making decisions and using a photocopier or fax machine. Keeping time, production or sales records related to managing a department and supervising employees; Distributing materials, merchandise or supplies to maintain control of the flow of and expenditures for such items; Conducting spot checks and examines the work of subordinates; Setting up a machine when such work is not part of the production operation; Walking the sales floor to observe the work of sales personnel under one's supervision; Taking notes after reviewing information and typing a report when this work is necessary for analyzing data and making recommendations; Making and administering policies of the employer; Contracting, negotiating, and making rearrangements with contractors when this work is necessary for planning a company's transportation; Cleaning equipment when a |

---

[5] Sections: 541.100; 541.101; 541.200; 541.300; 541.301; 541.302; 541.303; 541.304; 541.400; 541.500.

| | | |
|---|---|---|
| | | chemist is in the middle of an original experiment; Driving a school van or monitoring student behavior when a teacher takes students on a field trip. |
| Use of Manuals | The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills and that are used to provide guidance in addressing difficult or novel circumstances | (Not applicable when using manuals to apply well-established techniques or procedures within closely prescribed limits to determine correct response.) |
| Emergencies | Performing work of a normally nonexempt nature that is done in an effort to prevent the following results: threatening the safety of employees, a cessation of operations or serious damage to the employer's property. Emergencies are events that are beyond control or for which the employer cannot anticipate or reasonably provide in the normal course of business. | Pitching in after an explosion and digging out workers who are trapped in the rubble; Assisting nonexempt employees during periods of heavy workload or to handle rushes; Replacing nonexempt workers on the first day or partial day they become sick; Repairing and cleaning equipment if the breakdown of or damage to the equipment was caused by accident or carelessness. |
| Occasional Tasks | Occasional, infrequently recurring tasks that are a means for an exempt employee to properly carry out exempt functions and responsibilities and cannot be practicably performed by nonexempt employees. | (Not performing the same work as performed by person's subordinates; Delegating the work to nonexempt employee is not practical; performing the task frequently.) Industry practice for the employee to perform the task. |

It should be obvious after a cursory review of the table above that much is still left to interpretation. For some terms the new regulations provide new examples of activities but fail to define terms clearly and for others, terms are defined but the new regulations fail to give clear examples. To address this need for greater clarity and to facilitate compliance with overtime laws, we provide guidance on the job information companies need to collect to make clearer distinctions between exempt and nonexempt jobs, and how to treat data collected through an audit to increase the likelihood of a favorable result should litigation ensue.

*What job information to look for*
The most critical part of the audit is knowing what job information to examine and how the actual performance of job duties meet/do not meet exemption criteria. To assist with this aspect, we provide guidance on what job duty information would be most pertinent to examine for each exemption. The following table was created by identifying appropriate inquiries implied by the job duty descriptions associated with each exemption. We include ones that might add clarity to the determination of whether a job meets or does not meet exemption criteria. A handy resource for obtaining descriptions of work which may assist in the design of an appropriate inquiry into actual work performed is the O*NET (www.onetcenter.org),[6] a government-sponsored database of worker attributes and job characteristics, and an extensive library of job descriptions covering work in both the public and private sector.

---

[6] Department of Labor on-line job information center.

| EXEMPTION | EXAMPLE INQUIRIES |
|---|---|
| Executive | • Controls own work schedule? Changes schedule at his/her discretion?<br>• Controls others' work schedules (e.g., who works when and where)?<br>• Directs others' work activities? Changes who works where and when?<br>• Makes or effectively recommends personnel decisions: hires, fires, promotes, pays, transfers?<br>• Makes business-related decisions that nonexempt employees can't make?<br>• Supervises others while performing nonexempt work? |
| Administrative | • Work provides support to functional areas of the business?<br>• Makes decisions after weighing and evaluating possible courses of conduct which materially impact management or business operations?<br>• Advises or consults to employer's clients or customers?<br>• Works relatively autonomously (without immediate direction or supervision) and free to make independent choices?<br>• Makes decisions that affect management policy, operating practices or business operations?<br>• Makes decisions that have a significant financial impact?<br>• Performs secretarial, clerical work or other routine and repetitive work?<br>• Can a person without specialized knowledge or skills understand and interpret the manuals, guidelines, or other established procedures used in the execution of the job? |
| Professional | • Can a person with general manual ability and training generate the same work product?<br>• Can a person with intelligence, diligence and accuracy generate the same work product?<br>• Can non-degreed employees produce the same work product from analyzing, interpreting or making deductions from the same set of facts or circumstances as degreed employees?<br>• Can manuals or reference material be interpreted by anyone who does not have advanced knowledge or specialized knowledge and skills?<br>• Knowledge applied in the job acquired through apprenticeship or extensive job training?<br>• Creative work the result of routine or public information collected and organized into a work product?<br>• Is work product a unique interpretation or analysis?<br>• Is work product subject to substantial control by others? |
| Computer | • Is use of computers or computer programs incidental or primarily facilitative of the work product?<br>• Work product the maintenance or repair of computers or computer software?<br>• Work product the manufacture of computer hardware or related equipment?<br>• Is work product unique or the result of the application of complex analysis or investigation?<br>• Is the work product subject to substantial control by others? |

| | • Works relatively autonomously (without immediate direction or supervision) and free to make independent choices? |
|---|---|

*Guidelines for Assessing Risk*

Assessing risk in the exempt/nonexempt context is both difficult and an individual matter. It is difficult because the determination of whether a particular job is exempt or nonexempt involves a subjective analysis guided by relatively imprecise legal standards while the actual duties and job incumbents may change over time. It is individual because different companies and managers are willing to tolerate different levels of risk.

That being said, it seems that a helpful way to think about this issue systematically is in the context of the three categories discussed above: clearly nonexempt, clearly exempt, and "gray area." Obviously there is no risk if everyone is in the clearly nonexempt category and is paid overtime, but that is both unrealistic and unwarranted. Jobs need to be segregated in the clearly exempt and clearly nonexempt categories with the assurance that they truly belong in those categories. But the point is that to the extent that those categories are maximized (even if it means some job restructuring) and the "gray area" category minimized, risk has been minimized.

Once the "gray area" category has been minimized to the extent possible, the level of risk in that category should be evaluated. Are there positions that involve a large number of incumbents doing similar jobs where individual performance may evolve over time resulting in some people functioning in an exempt fashion while others are functioning in a nonexempt fashion? If so, the risk of being challenged is greater both because the group is attractive as a potential class action and it is probable that at some point there will be one or more unhappy employees. Are there effective controls in place to ensure that all incumbents in these jobs continue to function in an exempt way? Continued supervisorial attention to ensuring that jobs do not evolve over time will avoid this problem. Are the employees well paid or are their salaries close to the threshold for exempt status? The closer to the threshold the more likely the employees are to feel unfairly treated if they are working hours well in excess of 40. Are the employees regularly working more than 50 hours per week? Most claims involve employees alleging they are working 50 or more hours per week, week in and week out. Are the employees doing significant amounts of production or service work? If so, there is a chance the jobs are nonexempt and/or that employees will feel that they are not truly managers or exempt employees.

Obviously, these factors all fit together in greater or lesser degrees and employers need to monitor all of them in order to ensure that they have minimized the risk to the extent possible.

*Retaining Audit Data*

Many employers are wary of compiling this kind of data or performing an audit because of the obvious concern that data would then exist documenting that the company has and/or knows about a potential classification problem. To minimize this concern, employers often perform these audits under the auspices of inside or outside counsel to ensure that whatever data is collected is arguably protected by the attorney-client privilege and/or the attorney work product doctrine. However, great care must be taken in handling the data, in order to avoid waiving the privilege. While there have been efforts to create an "audit" privilege that would protect this data regardless of attorney involvement, to date these efforts have only been successful in limited circumstances. Employers who are concerned about these issues should consult with legal counsel before beginning to collect this type of audit data.

*What To Do With The Data*

What do you do with the data following an audit? If the data suggest that a job meets the exemption criteria, the exempt classification can be determined. If the data suggest that the job does not meet exemption criteria, the classification should be converted to nonexempt. If the data suggest that a job is barely exempt or that a number of incumbents are not performing the job in an exempt manner, then several options could be pursued to increase the exempt nature of the job:

- <u>Redesign the job.</u> Take some of the nonexempt tasks out of the job and incorporate them into a nonexempt job.

- <u>Train/coach incumbents to emphasize exempt tasks.</u> Ensure incumbents understand the importance of devoting time and attention to all of their exempt work and improve skills in delegation, directing others, scheduling, and other management areas.

- <u>Revise performance appraisal criteria.</u> Emphasize the importance of the exempt work and ensure incumbents are evaluated on their effectiveness in performing management duties.

- <u>Revise selection criteria for the job.</u> Ensure new hires into the job have the management skills necessary to perform the job in an exempt manner.

- <u>Train/coach incumbents' supervisors.</u> Incumbents' supervisors should know how to coach and guide incumbents to perform exempt duties as intended. Supervisors should also be aware of how they influence incumbents' job performance and to pay special attention to the emphasis they give to specific aspects of incumbents' jobs.

## Summary

It is clear that while the new regulations updated and clarified some aspects of the overtime laws, substantial room for interpretation remains. Examples are not sufficient to clearly derive the rules by which job duties will meet/not meet the exemption criteria, and rules alone do not cover the myriad of ways work is performed in U.S. businesses. Therefore, it may be useful to create additional tools for making these determinations. One such tool is the articulation of a strategy for conducting an effective audit and accumulating evidence which supports exempt classifications. Another tool might be a guideline for determining what kinds of job information would be most pertinent for each exemption. Still another tool might be a guideline for assessing the risk of litigation following the designation of exempt classifications supported by the evidence collected. In this article, we have, hopefully, provided preliminary guidance for the development of such tools.

*****

*Lloyd W. Aubry, Jr. is Of Counsel at Morrison & Foerster in San Francisco where he practices labor and employment law representing clients in a variety of matters relating to employment discrimination, wage and hour law, safety and health issues and National Labor Relations Act issues. Prior to joining Morrison & Foerster, Mr. Aubry served as State Labor Commissioner (1985-1989) and Director of the California Department of Industrial Relations, a cabinet level position, from 1991 to 1997.*

*****

*Cristina Banks, Ph.D. is an industrial/organizational psychologist and Senior Lecturer at the Haas School of Business at the University of California, Berkeley. She also founded Terranova Consulting Group, a management consulting firm. She has taught strategic human resource management and organizational effectiveness nationally and internationally for over 30 years, and has published on a variety of topics including wage and hour compliance. She currently serves on the editorial board of HR Advisor.*