UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | |
| **v.** | |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | **January 18, 2011** |
| **DEFENDANT.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SNET'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.    **INTRODUCTION**

The Plaintiffs and class members in this case are quintessential first-level managers, exempt from the overtime requirements of Connecticut law under the executive exemption.  The Connecticut law "short test" for the executive exemption is simple and straightforward.  An employee is employed in a *bona fide* executive capacity, and thus exempt from Connecticut overtime laws where, as here:  1) he is compensated on a salary basis not less than $475 dollars per week; and 2) his "primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein."  CONN. AGENCIES REGS. § 31-60-14 (2010); CONN. AGENCIES REGS. § 31-76i ("The [overtime] provisions of sections 31-76b to 31-76j, inclusive, shall not apply with respect to … (e) any person employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the Labor Commissioner issued pursuant to section 31-60").

The parties agree that the Plaintiffs Sharon L. Perkins, Michael Blasko, Joseph E. Kiely, Michael C. McDermott and Kelly Werbinski, on behalf of themselves and the other class members (collectively, "Plaintiffs"), meet the salary requirement.  There is no genuine dispute that the Plaintiffs' and class members' primary duty is management and that they direct the work of two or more employees.  Plaintiff First-Level Managers[1] are responsible for crews of ten to 31 Technicians ("Techs").  Plaintiffs review and correct the work of their Techs, give direction to their crews regarding their work, ensure the safety of their Techs and the garage locations that they oversee, and act as the first point of contact for resolving issues related to their Techs, including complaints from SNET customers.  (Defendant SNET's Local Rule 56(a)(1) Statement ("Def. St."), filed contemporaneously herewith; Second Amended Complaint [Doc. 118] ¶¶ 26, 33, 42, 49, 57, 64, 72, 79, 86, 93, 103, 130).[2]  Therefore, Defendant is entitled to summary judgment on the Second Claim for Relief alleged by Plaintiffs in their Second Amended Complaint [Doc. 118].

There are disputed factual issues between the parties with regard to Plaintiffs' claims under the Fair Labor Standards Act.  Namely, the parties disagree as to whether and to what degree Plaintiffs exercised discretion in the course of their work, whether Plaintiffs had authority to hire or fire other employees, and whether Plaintiffs' suggestions and recommendations as to personnel decisions were given particular weight.  Although some or all of these issues may be germane to Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") – and thus, Defendant does not seek summary judgment on those claims – none of these disputed issues play

---

[1] First-Level Managers are also referred to as "Level One Managers," "L1s," "first line managers," or "field managers."
[2] Not only do Plaintiffs admit these facts, but they amended their original complaint to so state.

any role in the Connecticut "short test" for the executive exemption.[3]  Moreover, the parties

continue to dispute the extent to which Plaintiffs and the class members are similarly-situated

under the FLSA.  Defendant believes that the differences in work experiences between individual

Plaintiffs and class members will be important in the trial of Plaintiffs' FLSA claims.  However,

the Plaintiffs who have testified by deposition all perform the limited duties that are salient under

the Connecticut law "short test" across the board, making collective summary adjudication of

Plaintiffs' Connecticut law claims appropriate.

## II.     UNDISPUTED MATERIAL FACTS

As "Managers, Network Services" and "Managers, Construction & Engineering" for

Defendant Southern New England Telephone Company ("SNET"), Plaintiffs are First-Level

Managers responsible for the daily functioning of their crew of ten to 31 Technicians ("Techs").

(Def. St., # 2, 10).  Plaintiffs report to second-level managers called "Area Managers," who have

anywhere from 5 to 12 First Level Managers reporting directly to them, and upwards of 100

Techs in their chains of command.  (Def. St., # 6).  Area Managers supervise First Level

Managers at multiple garages, and therefore are not necessarily on-site at the garage where the

First Level Manager works.  (Def. St., # 7).   Nor are Area Managers typically on-site in the field

with the First Level Managers or their Techs.  (Id.).

---

[3] The "administrative" exemption under both Connecticut state law and the FLSA requires some
level of the exercise of discretion and independent judgment.  CONN. AGENCIES REGS. § 31-60-
15 (2010); 29 CFR § 541.200 (2010).  The administrative exemption is not addressed in this brief
as a ground on which Defendant seeks summary judgment.  There is no similar discretionary
requirement under the Connecticut state law short test or the FLSA test for the executive
exemption.  CONN. AGENCIES REGS. § 31-60-14; 29 CFR § 541.100 (2010) .  The FLSA no
longer employs a second "short test," and the current executive exemption under the FLSA
requires an additional factor that is not a part of the Connecticut "short test" for the executive
exemption: that employees have "the authority to hire or fire other employees" or their
"suggestions and recommendations as to the hiring, firing, advancement, promotion or any other
change of status of other employees are given particular weight."  29 C.F.R. § 541.100.

Plaintiffs work in one of three organizations: Core Installation & Maintenance (also referred to as "CIM," "I&M," "Installation & Repair," or "I&R"), Construction & Engineering (also referred to as "C&E"), or U-verse.  (Def. St., # 3).  The CIM organization is responsible for the repair and installation of customer service telephone lines, DSL and business telephone lines. (Id.).  The C&E organization is responsible for the construction of the telephone "plant" supporting customer telephone services, including placing and splicing cables and fiber, setting poles, moving poles, and placing building terminals.  (Id.).  The U-verse organization is responsible for the installation and repair of the U-verse television, high-speed internet and digital home phone services.  (Id.).

Plaintiffs are assigned a fixed crew of Techs who cover a discernable geographic area or "turf" for the CIM, C&E, or U-verse organization.  (Def. St., # 4).  Plaintiffs oversee this fixed crew of Techs and provide work-related directions and information to them, including by conducting a morning meeting where safety, performance and/or job assignments are discussed. (Def. St., # 10).  Plaintiffs answer Techs' questions that arise in the field throughout the day and attempt to resolve any "roadblocks" that interfere with a Tech's ability to complete a job accurately and efficiently.  (Def. St., # 11).  Plaintiffs conduct "quality inspections" and "ride alongs" in the field to observe, evaluate and review their Techs' performance and skills.  (Def. St., # 15, 17). Plaintiffs ensure that their crew of Techs has the appropriate tools and equipment to carry out their jobs, including placing orders or approving Tech orders for necessary supplies. (Def. St., # 27).   Plaintiffs work to resolve customer complaints related to their Technicians' work, including speaking directly with customers on the phone or traveling to customer sites to speak with customers and to inspect the work or alleged damage that is the basis for their complaints.  (Def. St., #22).

4

Plaintiffs ensure that their crew of Techs complies with Company policies and procedures. (Def. St., #14-17, 19-20, 23).   This includes ensuring that their crew receives the required training in Company procedures for performing their work. (Def. St., # 12-13).   In addition, to ensuring that Techs complete required training (Def. St., # 12), Plaintiffs arrange for informal "on the job" training or "peer to peer" training from another Tech. (Def. St., # 13). First-Level Managers conduct monthly "safety observations" to audit their crew's compliance with Company safety procedures. (Def. St., # 19-20).   Plaintiffs conduct daily inspections of the garage locations they supervise to ensure the safety and security of those locations pursuant to the OP78 Asset Protection policy. (Def. St., # 26).   Plaintiffs monitor their crew's performance metrics and discuss them with the Techs. (Def. St., # 18).   Plaintiffs complete performance evaluations of the Techs on their crews. (Def. St., # 21). Plaintiffs review and approve their crew's time sheets. (Def. St., # 25).   Plaintiffs monitor their crew's attendance for compliance with the Company's attendance policies. (Def. St., # 23-24).

Plaintiffs attend regular management-only meetings and training. (Def. St., # 28). Plaintiffs have never been required to record their time worked. (Def. St., # 29).   Plaintiffs are compensated pursuant to a management compensation plan. (Def. St., # 30).   Plaintiffs knew, when they became First-Level Managers, that they would not earn overtime pay. (Def. St., # 31).   Before this lawsuit, Plaintiffs never complained that their job positions were misclassified nor did they request to be paid overtime for their normal First-Level Manager work. (Def. St., # 32).

III.   **LEGAL ARGUMENT**

The at-issue jobs are properly exempt under the Connecticut executive exemption.   Under Connecticut state law, the executive exemption applies where: 1) the employees are compensated on a salary basis not less than $475 dollars per week; and 2) their "primary duty consists of the

5

management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein." CONN. AGENCIES REGS. § 31-60-14. This so-called Connecticut "short test" does not require proof of any additional factors, such as evidence that supervisors exercise discretion or make personnel recommendations.[4] (See also Frey v. Spokane Cnty. Fire Dist., No. 8, No. CV-05-289, 2006 WL 2597956, at *2 (E.D. Wash. Sept. 11, 2006) (granting summary judgment for employer under former FLSA "short test"; "[r]eview[ing] schedule to ensure that schedules prepared by [other people] properly covered all necessary shifts" is a "management duty")). The Connecticut "long test" applies only where employees are paid a salary greater than $400 per week, but less than $475 per week, and in that case, requires proof of additional factors and therefore is a more difficult test to meet: 1) the employee must have the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight," 2) the employee must "customarily and regularly exercise discretionary powers," and 3) the employee must not "devote more than twenty percent … of his hours of work in the workweek to activities which are not directly and closely related to the performance of [management duties]." CONN. AGENCIES REGS. § 31-

---

[4] The Connecticut "short test" is materially different from the current FLSA test for the executive exemption. "In the former regulations, the DOL created a 'long' test and a 'short' test [under the FLSA] to determine whether an employee is employed in an administrative or executive capacity." Monroe Firefighters Ass'n. v. City of Monroe, 600 F. Supp. 2d 790, 799, n. 17 (W.D. La. 2009). The former FLSA "short test" had an identical duties component to the Connecticut "short test." See, e.g., Donovan v. Burger King Corp., 675 F.2d 516, 520 (2d Cir. 1982) (employees meeting the salary threshold of the "short test" are exempt under the executive exemption if their "primary duty consists of management of the enterprise or of a subdivision thereof and includes the customary and regular direction of the work of two or more employees" (internal punctuation omitted) (citing prior regulation 29 C.F.R. § 541.1(f)). "Under the current regulations, there is only one ["long"] test [under the FLSA]." Monroe, 600 F. Supp. 2d at 799, n. 17 (District Chiefs exempt under FLSA's executive exemption).

60-14.  By the plain language of the regulation, these additional factors have no applicability to employees earning more than $475 per week.

Summary judgment is proper because Defendant has established that there are no genuine issues of material fact in dispute as to Plaintiffs' exempt status under Connecticut law, and thus Defendant is entitled to judgment as a matter of law on Plaintiffs' Second Claim for Relief in their Second Amended Complaint [Doc. 118].  See Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544, 547 (D. Conn. 2009).  "Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial, and present such evidence as would allow a factfinder to find in his or her favor."  Id. (internal quotations and citations omitted).

A.      **Plaintiffs satisfy the "salary test" of the executive exemption.**

The parties agree that the salary basis test has been met with regard to Plaintiffs.  See Memorandum in Support of Plaintiffs' Emergency Motion to Strike Expert Report and Testimony of Dr. Kathleen Lundquist and APT*Metrics*, Inc. [Doc. 288], p. 6 ("The exemptions at issue in this case consist of both salary and duties components.  It is uncontested that the salary component is met and only the class members' duties and whether they qualify as exempt are in question."); see also Skorupski v. United Bus. & Indus. Fed. Credit Union, CV980488029S, 1999 Conn. Super. LEXIS 651, at *7 (Mar. 9, 1999) (noting that "a judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it…").

B.      **Plaintiffs' job duties satisfy the "duties test" of the executive exemption.**

The "duties test" under the executive exemption is made up of two prongs: 1) the employee's "primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof") and 2) the employee

"customar[ily] and regular[ly] direct[s] the work of two or more other employees").  CONN.

AGENCIES REGS. § 31-60-14 (2010).  Plaintiffs satisfy both prongs.

1.   <u><strong>Plaintiffs' primary duty is management of their crew.</strong></u>

"The primary factor in [determining] whether a person is employed in a bona fide

executive capacity, and thus exempt from overtime compensation, is the nature of his or her

duties."  <u>Skorupski</u>, 1999 Conn. Super. LEXIS 651, at *6 (granting motion to strike plaintiff's

overtime claims where plaintiff admitted in the complaint that she was an exempt employee, that

she was head of two departments and a Project Manager, and that her job duties required her to

work more than 40 hours per week).  Plaintiffs' key responsibilities include: giving direction to

their crew on the work to be performed, inspecting the Techs' work to ensure compliance with

Company standards, ensuring Techs' compliance with Company safety procedures, and acting as

the first point of contact for resolving disputes.  Each of these responsibilities is managerial in

nature, and leads inexorably to the conclusion that Plaintiffs' primary duty is management.

Indeed, Plaintiffs considered themselves "managers" or "supervisors," including

representing their management status on their resumes.  (Def. St., # 9; <u>see</u>, <u>e.g.</u>, Nuzzo Dep. 69-

70 (admitted describing his performance as follows: "As a cable repair supervisor [I] embrace

teamwork and instill that mentality into the team that [I] manage. As a manager, I present myself

to my Techs a mentor to guide and support them, motivate them to reach higher goals, provide

them with constructive feedback for performance improvement, with 24/7 accessibility, and

recognize them for a job well-done.")).  Plaintiffs all held the title of "Manager" during the class

period.  (Def. St., # 8).  Defendant held Plaintiffs out as being its First-Level Managers.

Plaintiffs agree that they regularly attended meetings and training attended only by First-Level

and higher managers.  (Def. St., #28).  Plaintiffs were never required to punch a time clock or

record their hours worked.  (Def. St., # 29).  Plaintiffs are compensated pursuant to a

8

management compensation plan.  (Def. St., # 30).  These are all indicators that Plaintiffs are, in

fact, exempt managers.  See Lloyd v. Kearing, CV004001456S, 2006 Conn. Super. LEXIS 2190,

at *8-9 (July 14, 2006) (finding manager met executive exemption under more strenuous

Connecticut "long test," based on "determining factors" that included that plaintiff held the title

of "manager," "never punched a time clock or kept track of his hours," had a "private office,"

and attended "managers' meetings").  Furthermore Plaintiffs knew, when they became First-

Level Managers, that they would not earn overtime pay (Def. St., # 31) and yet they never

complained until the filing of this lawsuit that their job positions were misclassified nor did they

request to be paid overtime for their normal First-Level Manager work.  (Def. St., # 32).  Id., at

*8-9 (finding manager met executive exemption under more strenuous Connecticut "long test,"

based on "determining factors" that included that plaintiff "continued to accept his salary as

manager and never requested overtime pay").

        a.    ***Plaintiffs give direction to their Technicians on the work to be performed.***

Plaintiffs have been assigned responsibility for crews composed of between ten and 31

Techs during the periods that they were included in the class definition.  (Def. St., # 2).  The

composition of these crews is fixed, rather than fluctuating from day-to-day.  (Def. St., # 4).

Plaintiffs' crews cover a discernable geographic area for the CIM, C&E, or U-verse organization.

(Id.).  These crews are "customarily recognized subdivisions" of SNET under CONN. AGENCIES

REGS. § 31-60-14.[5]

---

[5] "It is clear that divisions beneath the level of a formal 'department' are sufficient so long as
they are 'customarily recognized.'"  Scherer v. USA Compass Group, Inc., 340 F. Supp. 2d 942,
951-52 (W.D. Wis. 2004) (awarding summary judgment for employer under former FLSA "short
test" and finding that a particular kitchen was a recognized subdivision of the catering
department for purposes of the test where defendant's evidence showed that employees referred
to the kitchen in separate terms from the dining area, that kitchen staff work independently from
employees in the dining area, that kitchen staff "remain constant and are not rotated," and

Plaintiffs provide work-related information to these crews, as needed and as appropriate to the type of work the Techs perform or particular jobs they have been assigned.  (Def. St., # 10, 14, 18; Kavanaugh Dep. 67 ("Q. What are the kinds of things [your Techs] are calling you about?  A. They might need help on a job. They have to go in the manhole. You have to have a second guy. They might need a police officer. They might be concerned that they've been on a job for a long time. Hey, boss, I got this U-verse job. It's a pain in the butt. You know, da, da, da, da, da, da. There are a million things that they ask me about, but I answer every one of them. There are personal things. People have problems. You got 21 guys, there is 21 problems.")).  They conduct daily "huddle" meetings in which they also discuss safety and performance.  (Def. St., # 10).  Such functions are plainly managerial under Connecticut law.  See Sgro v. Ingenito, Inc., CV 960472107S, 1998 Conn. Super. LEXIS 1342, at *4 (May 7, 1998) (finding plaintiff exempt under Connecticut administrative and executive exemptions where "[t]he plaintiff would instruct the employees in the work each was to do, where and how a particular job was to be carried out and when overtime hours would be worked"); Cain v. J&K Elec. Co., No. CV 92-0331213, 1996 Conn. Super. LEXIS 1963, at *2, 6 (July 24, 1996) (plaintiff's duties as "field operations manager," which were defined in his job description to include "supervising and

---

"[e]ven more tellingly, defendant has shown that under its organizational structure, immediate supervision of the front of the house and immediate supervision of the kitchen and food production were conducted by different persons. Certainly, this evidence is sufficient to distinguish the kitchen from 'a mere collection of men assigned from time to time to a specific job or series of jobs.'").  See also West v. Anne Arundel Cnty., 137 F.3d 752, 763 (4th Cir. 1998) (finding that a fire department Captain's supervision of one fire station or one shift of officers satisfies the requirements of the former FLSA "short test" for the FLSA executive exemption; "A station or a shift constitutes a recognized department or subdivision of the Fire Department and is comprised of many more than the regulatory minimum of 'two or more other employees.'"); Smith v. Frac Tech Servs., LLC, No. 4:09CV00679 JLH, 2011 WL 96868, at *28, n. 14 (E.D. Ark. Jan. 11, 2011) (finding that plaintiff's primary duty was managing a "frac crew," which was a "recognized department or subdivision" of defendant company where "[a] frac crew was the group that performed the fracturing job" and "[p]articular frac crews maintained the same supervisors").

coordinating electrical contracting jobs" were such that he was employed in a bona fide executive capacity under Connecticut law).[6]  Plaintiffs are typically the only managers on-site with their crew (Def. St., #7), a factor which weighs in favor of their managerial status.  See Sgro, CV 960472107S, 1998 Conn. Super. LEXIS 1342, at *4 (plaintiff satisfied Connecticut administrative and executive exemptions where he was the owner's "alter ego on the job site" and owner instructed the other employees that plaintiff "would be in charge" when the owner was not present; "The plaintiff was the person directly in contact with the employees, and to whom they looked to for direction and who responded to any questions they had regarding the employment tasks.").[7]

Plaintiffs monitor their crew's attendance, including making necessary staffing adjustments when Techs are unexpectedly absent.  (Def. St., # 23).  They approve non-vacation requests for time off.  (Def. St. # 24).  These are managerial duties under Connecticut law.  See, e.g., Lloyd v. Kearing, CV044001456S, 2006 Conn. Super. LEXIS 2190, at *8-9 (July 14, 2006) (manager met executive exemption under more strenuous Connecticut "long test," based on "determining factors" that included that plaintiff approved time off for his employees).[8]

---

[6] See also Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1115 (9th Cir. 2001) (affirming, in relevant part, summary judgment for employer; "oversight of employees" is a managerial duty under the prior FLSA "short test"; primary duty was management where their duties included "[i]ssu[ing] written and oral instructions"); Debrecht v. Osceola County, 243 F. Supp. 2d at 1371 (M.D. Fla. 2001) (granting summary judgment for employer where plaintiffs met executive exemption under former "short test" for FLSA; "The primary goal of Plaintiffs' position … is to supervise the day-to-day operations of the [defendant's] personnel"); Frey, 2006 WL 2597956, at *2 (granting employer summary judgment; "supervising assigned staff" is a "management duty" under former FLSA executive exemption "short test" and employee is exempt where employee "directed [the] work" of subordinates).

[7] See also Baldwin, 266 F.3d at 1115 ("status as the owner's on-site representative" is a managerial duty under the prior FLSA "short test").

[8] Lloyd, 2006 Conn. Super. LEXIS 2190, at *8-9, was decided under the more stringent Connecticut "long test" for the executive exemption where employees do not meet the salary threshold for the Connecticut "short test."  As described above, the Connecticut "long test" is

Plaintiffs review and sign off on timesheets for their crew.  (Def. St., # 25).  See Lloyd, 2006 Conn. Super. LEXIS 2190, at *8-9 (applying the more stringent Connecticut "long test" in finding the at-issue employee exempt under the executive exemption, based on "determining factors," including that plaintiff "signed off on the hourly time sheets for his employees which were sent to payroll").

Plaintiffs make sure that their crews have the appropriate tools and supplies to perform their work, by purchasing these items directly or by reviewing and approving such items ordered by their Techs.  (Def. St., # 27).  These responsibilities are managerial.  See Lloyd, 2006 Conn. Super. LEXIS 2190, at *8-9 (Jul. 14, 2006) (finding manager met executive exemption under more strenuous Connecticut "long test," based on "determining factors" that included that plaintiff "purchased parts as need[ed] for repairs and purchased the stock which was kept on hand"); Cain, No. CV 92-0331213, 1996 Conn. Super. LEXIS 1963, at *2, 6 (plaintiff's duties as "field operations manager," defined in his job description to include "organizing inventory" were such that he was employed in a bona fide executive capacity under Connecticut law).[9]

b.   ***Plaintiffs review and inspect Techs' work to ensure that Techs comply with Company policies and procedures.***

Plaintiffs uniformly and adamantly testified that their purpose as Managers is to convey Company policies and procedures to their Techs and to seek the Techs' compliance with those policies and procedures.  (Def. St., # 10, 14-16, 18-20; Fermo Dep. 118 ("Well, the company wants my technicians, and the company wants myself and, you know, my boss, wants to be successful. I want my guys to be successful. I want to be successful. That's what we do. You

---

more difficult to meet because it requires proof of additional factors not required by the "short test" that applies here.  CONN. AGENCIES REGS. § 31-60-14.

[9] See also Monroe, 600 F. Supp. 2d at 793 (District Chiefs exempt under FLSA's more stringent "long test" for the executive exemption where they "review supply requests … to determine if they are excessive").

know, it's incumbent upon them to make sure that they are doing their part to get that done. And it's incumbent upon me to make sure I am doing my part to comply with company policy as to what the company wants.")).  "Ensuring that company policies are carried out constitutes the 'very essence of supervisory work.'"  <u>Donovan v. Burger King Corp.</u>, 672 F.2d 221, 226 (1st Cir. 1982) (finding Assistant Managers exempt under former "short test" for FLSA executive exemption).  Plaintiffs uniformly testified that they conduct regular "quality inspections" of their Techs to ensure that they are performing their work correctly and according to Company standards, and to correct any mistakes Techs make.  (Def. St., # 15-16; Carey Dep. 86-87 ("I think my job is to be out in the field with my guys, to let them see me there, to be there to support them and observe what they're doing for them to see the eyes in the field."); Kavanaugh Dep. 139 ("We all are going to make mistakes.  That's where you have repeaters [Techs being sent back to correct a job they did incorrectly the first time]. Some guys are haphazard. And that's my job to make them not haphazard. Try to do the job right the first time. Every time we roll that truck, it costs big money to the corporation. Be efficient.")).  Plaintiffs also conduct "DPC" rides to observe their Techs for a half day or full day to evaluate and review the Tech's performance and skills.  (Def. St., # 17).  Plaintiffs are responsible for reviewing daily and keeping up with extensive information about their Techs' metrics and performance, and communicating that information to their Techs either one-on-one or in group "huddle" meetings. (Def. St., # 14, 18; <u>see also</u> #16, Poirier Dep. 170-71 ("I do coaching all the time.  It's part of my job.  It's what the union expects and it's what the technician expects to keep them on the right path of doing the right thing every day.")).  Plaintiffs conduct their Technicians' performance evaluations.  (Def. St., # 21).  Plaintiffs further testified that they are responsible for ensuring that Techs receive the required training in Company procedures for performing their work.  (Def.

St., # 12-13).  These performance-management duties are managerial.  See, e.g., Cain, 1996

Conn. Super. LEXIS 1963, at *2, 6 (plaintiff's duties as "field operations manager," which were

defined in his job description to include "evaluating the performance of field personnel," were

such that he was employed in a bona fide executive capacity under Connecticut law);

Connecticut Department of Labor, "Exempt/Non-Exempt Employees For The Purposes Of Wage

and Hour Laws," available at *http://www.ctdol.state.ct.us/wgwkstnd/wage-hour/exempt.htm*

("assessing employee performance" is an exempt duty under Connecticut laws).[10]

 Another of Plaintiffs' important functions is ensuring that employees are working in a

safe manner.  (Def. St., # 19; Anderson Dep. Vol. 2, 159-60 ("Until [the technicians] are in and

safe in the garage, you are responsible to know what they are doing . . . .  You really can't

abandon your work until you know that last tech is in and safe.").  This includes making sure that

employees attend required safety training (Def. St., # 12) and regularly inspecting Techs' work

habits for compliance with Company safety procedures.  (Def. St., # 19-20).  These are exempt,

managerial duties.  See Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1114 (9th Cir. 2001)

---

[10] See also Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 507 (6th Cir. 2007)
(affirming summary judgment for employer; "management was [plaintiff's] primary duty" under
the FLSA's former "short test" for executive exemption, where plaintiff "evaluated her
employees' performance"); Monroe Firefighters Ass'n. v. City of Monroe, 600 F. Supp. 2d 790,
792 (W.D. La. 2009) (Deputy Chiefs exempt under FLSA's more stringent "long test" for
executive exemption where they "must ensure that firefighters in all three districts obtain the
necessary number of hours of training"); Baldwin, 266 F.3d at 1109, 1114 (affirming summary
judgment for employer, in relevant part, under former FLSA "short test"; primary duty was
management where their duties included "examin[ing other employees'] work for exactness,"
"correcting the [subordinate] assistant managers' mistakes and ensuring their compliance with
company policy outlined in a manual" and "evaluating" other employees); Jones v. ENSR Corp.,
No. 96-3836 1997 WL 369440, at *3 (6th Cir. July 1, 1997) (affirming summary judgment for
employer; finding plaintiff met the requirements of the FLSA's former "short test" for executive
exemption where his duties included "evaluat[ing] the work of his crew members, [and]
complet[ing] performance reviews"); Debrecht, 243 F. Supp. 2d at 1371 (granting employer's
motion for summary judgment; plaintiffs met executive exemption under former "short test" for
FLSA where plaintiffs "prepare annual performance evaluations of the eight [employees] on
each of their shifts").

(affirming summary judgment for employer, in relevant part; "maintaining the safety of the employees [is an] exempt activit[y]" under prior FLSA "short test"); <u>Frey</u>, 2006 WL 2597956, at *2 (granting employer's motion for summary judgment; employee exempt under former FLSA "short test" for executive exemption; investigating accidents, documenting and maintaining accurate safety-related records and "looking out for the welfare of the [subordinate] personnel" are "management dut[ies]"); <u>McDowell v. Cherry Hill Twp.</u>, No. Civ. 04-1350, 2005 WL 3132192, at *12 (D.N.J. Nov. 21, 2005) (granting summary judgment to employer; finding plaintiff exempt under the FLSA's former "short test" for the executive exemption, because plaintiff's primary duty was management where his duties included "providing for the safety of the [subordinate employees]").

First-Level Managers are also charged with maintaining the security of the Company's garage locations by completing daily OP78 Asset Protection sweeps of the facilities and identifying and rectifying potential safety and security hazards observed.  (Def. St., # 26).  This is a managerial duty.  <u>See</u> <u>Frey</u>, 2006 WL 2597956, at *6 (granting employer's motion for summary judgment and finding employee exempt under former FLSA "short test" for executive exemption where employee "provided for the safety of the employees and property of [the employer]"); <u>Monroe</u>, 600 F. Supp. 2d at 793 (District Chiefs exempt under FLSA's more stringent "long test" for executive exemption where they "are responsible for ensuring the safety and security at the fire stations under their command").

c.   ***Plaintiffs are the first point of contact for resolving issues.***

Plaintiffs are the initial point of contact for their crews for issues that arise related to work assignments, performance, "road blocks" or obstacles to completing their work, attendance, and other work-related issues.  (Def. St., # 10-11, 14-20; <u>see</u>, <u>e.g</u>, Barber Dep. 70-71, 80 ("…[M]y technicians could come to me at any point with any problem they might have.  And I

15

could help them work around the problem or direct them in the right direction where to get an answer to their problem."); O'Connor Dep. 31 ("My job duties are to supervise the men, make sure they're there, make sure they're present, make sure they have the tools that they need to work, make sure they have the training they need to do the job and basically to take care of the problems that arise.")).  This is a quintessential managerial function.  See Sgro, 1998 Conn. Super. LEXIS 1342, at *4 (plaintiff satisfied Connecticut administrative and executive exemptions; "The plaintiff was the person directly in contact with the employees, and to whom they looked to for direction and who responded to any questions they had regarding the employment tasks.").

Plaintiffs work to resolve customer complaints, including speaking directly with customers on the phone or traveling to customer sites to speak with customers and to inspect the work or alleged damage that is the basis for their complaints.  (Def. St., #22).  Handling customer complaints is a managerial duty, as well.  See Lloyd, 2006 Conn. Super. LEXIS 2190, at *8-9 (finding manager met executive exemption under more strenuous Connecticut "long test," based on "determining factors" that included that plaintiff "resolved disputes with customers when a complaint was made").

Although Plaintiffs may dispute the extent to which they exercise discretion in doing so (as opposed to merely following and carrying out detailed Company policies), there is no genuine dispute that each of the Plaintiffs performs the three basic categories of tasks described above.  That is sufficient to establish that their primary duty is management of a recognized subdivision of the employer.

### 2. **Plaintiffs direct the work of two or more employees.**

This requirement is straight forward – the test is met if the employee oversees the work of two or more employees.  Courts reviewing exempt status under the Connecticut law have

routinely found that employees assigned to supervise two or more employees satisfy the requirements of the Connecticut executive exemption.  See Cain, 1996 Conn. Super. LEXIS 1963, at *2, 6 (plaintiff "field operations manager" satisfied executive exemption where his job description included "scheduling personnel to complete the work" and "evaluating the performance of field personnel"); Sgro, 1998 Conn. Super. LEXIS 1342, at *4, 6 (plaintiff satisfied executive exemption where his duties included instructing multiple employees regarding their work); see also Lloyd, CV044001456S, 2006 Conn. Super. LEXIS 2190, at *8-9 (even under the more stringent Connecticut "long test," plaintiff satisfied the executive exemption where his duties included responsibilities for "his employees" ).[11]

Plaintiffs concede that they had two or more Techs assigned to them at all times that they were under the class definition.  (Def. St., # 1, 2)

C.     **Plaintiffs' executive status is not undermined by their compliance with standardized Company procedures or their consultation with Area Managers with regard to some issues.**

1.     **SNET's standardized procedures and forms do not alter Plaintiffs' exempt status.**

Plaintiffs' deposition testimony made much of the fact that they are required to follow Company policies and procedures and use standardized Company forms or "checklists" for certain aspects of their work, such as documenting safety observations, quality inspections, and coaching sessions.  However, courts have recognized the needs of employers to implement consistent standards and practices and have repeatedly held that this standardization has no effect on the exempt status of managers:

---

[11] See also Jones v. ENSR Corp., No. 96-3836, 1997 WL 369440, at *2 (6th Cir. July 1, 1997) (awarding summary judgment to employer and finding plaintiff directed the work of two or more employees under FLSA's former "short test" for executive exemption where he testified in his deposition "that he supervised approximately twenty to thirty workers" and his "resume stated that he supervised approximately ten to twenty workers at any given project site").

> Most if not all nationwide companies with multiple outlets establish standardized procedures and policies to guide individual store managers.  This practice may circumscribe but it does not eliminate the discretion of the on-site manager of any isolated store who is responsible for day-to-day operations.

Murray v. Stuckey's, Inc., 50 F.3d 564, 570 (8th Cir. 1995) (finding managers exempt even under FLSA's more stringent "long test" for executive exemption); see also Donovan, 675 F.2d at 517 ("We fully recognize that the economic genius of the Burger King enterprise lies in providing uniform products and service economically in many different locations and that adherence by Assistant Managers to a remarkably detailed routine is critical to commercial success. … Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made."; finding Assistant Managers exempt under former "short test" for FLSA executive exemption); Donovan v. Burger King Corp., 672 F.2d 221, 223, 226 (1st Cir. 1982) ("The supervision of other employees is clearly a management duty.  The fact that Burger King has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion."; finding Assistant Managers exempt under former "short test" for FLSA executive exemption, because their primary duty was management even where "[m]any of [the managers'] tasks are governed by highly detailed, step-by-step instructions contained in Burger King's "Manual of Operating Data," and admit of little or no variation."); Baldwin, 266 F.3d at 1115 ("affirming summary judgment for employer, in relevant part, and finding managers were exempt under FLSA's prior "short test" even where the managers "had to adhere to company policies, record completed tasks on checklists, and were subject to performance reviews conducted through a monthly inspection by [the company]."); Thomas, 506 F.3d at 499 (awarding summary judgment to employer because managers exempt under prior "short test" for executive exemption of FLSA, despite "stringent managerial oversight" and "detailed company policies and standardized operating procedures, [implemented] as an

additional means of fostering consistency throughout its multi-store organization."); Beauchamp v. Flex-N-Gate LLC, 357 F. Supp. 2d 1010, 1017 (E.D. Mich. 2005) (finding plaintiff satisfied FLSA's more stringent "long test" for executive exemption, even where defendant's facility was "a closely controlled environment in certain respects, thereby limiting the discretion exercised by supervisors in carrying out their oversight functions" (internal quotations and citations omitted) including being "constrained" by industry standards and "guidelines that Defendant adopted for this facility, which dictated to a significant extent the precise procedures that workers would follow in carrying out the sequencing process" and having "his disciplinary powers … limited by the terms of the collective bargaining agreement"); Burson v. Viking Forge Corp., 661 F. Supp. 2d 794, 801 (N.D. Ohio 2009)(finding plaintiff exempt under FLSA's more stringent long test" for executive exemption; "The fact that the training plaintiff was to provide his [subordinate employees] and the discipline he was to administer was governed by existing company policies and the fact that, like many companies, Viking Forge used a standardized form for its performance appraisals, does not transform plaintiff's duties into ones that are not managerial in nature.").

> 2.  **The fact that Plaintiffs consult their Area Managers regarding some of their decisions does not undermine the conclusion that Plaintiffs are employed in a *bona fide* executive capacity.**

Final decision-making authority is not required by the executive exemption.[12]  See Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 866 (N.D. Tex. 2001) (final decision-making authority is not required under the former "short test" for executive exemption of the FLSA).  As one court explained, if final decision-making authority were the test for determining whether an

---

[12] Indeed, this is not required by the current FLSA test (formerly called the "long test" when there was a contrasting second "short test"), either.  See 29 CFR § 541.100 (requiring only that the manager's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight").

employee met the executive exemption, then employees would rarely, if ever, meet the
exemption:

> A president or chief executive officer of a company could say that he does not
> have final decision-making authority because he is only authorized to carry out
> the policies set by the board of directors, and the board of directors is free to
> review and veto his decisions.   Typically, there is a hierarchy or line of
> supervision in any corporate entity or business wherein managers and supervisors
> have persons to whom they must report, and that an individual does not have final
> supervisory or discretionary authority does not take that person out of the realm of
> being a manager or supervisor in the company or business.

Kastor, 131 F. Supp. 2d at 867.

Courts further recognize that supervisors themselves are frequently subject to some level
of supervision by other, higher managers and that this fact does not eliminate the supervisory
power afforded in lower-level managers.   "Even in situations where a supervisor, himself, is
subjected to the close supervision of his superior, courts have routinely found that the
supervisors responsible for the daily activities of their subordinates are vested with enough
discretionary power and freedom from supervision to qualify for the executive exemption."
Burson, 661 F. Supp. 2d at 802 (finding plaintiff exempt under FLSA's more stringent "long
test" executive exemption; ("The fact that plaintiff had a manager who retained control over
certain management decisions and dictated how other decisions were to be made did not
undermine his authority to run his shift on a daily basis."); see also Haines v. Southern Retailers,
Inc., 939 F. Supp. 441, 450 (E.D. Va. 1996) (manager who needed her superior's approval to
hire, fire, or discipline still retained enough discretion over day-to-day activities to warrant the
executive exemption); Baldwin, 266 F.3d at 1115 (the fact that the owner was on site once or
twice a month indicated that there was "no constant oversight" of the managers; finding that
managers qualified for executive exemption under the prior FLSA "short test"); Murray, 50 F.3d
at 570 ("[A]ctive supervision and periodic visits by a regional manager do not eliminate the day-

to-day discretion of the on-site store manager."; finding managers exempt under FLSA's more stringent "long test" executive exemption); <u>Thomas</u>, 506 F.3d at 507-08 ("A local store manager's job is no less managerial for FLSA purposes simply because she has an active district manager." (internal punctuation and quotations omitted)).

Certainly, the fact that Area Managers are available for consultation with the Plaintiffs does not undermine the finding that, based on all the evidence above, Plaintiffs' primary duty is management.  See <u>Donovan</u>, 675 F.2d at 517 (2d Cir.) (finding Assistant Managers exempt under former "short test" for FLSA executive exemption, because their primary duty was management where "for a great bulk of their working time, Assistant Managers are solely in charge of their restaurants and are the 'boss' in title and in fact. … That the Restaurant Manager is available by phone does not detract in any substantial way from this conclusion."); <u>Thomas</u>, 506 F.3d at 507-08 ("Neither does a store manager's frequent, even daily, exchange of email and phone communications with her district manager compel a finding that the store manager is subject to 'exacting supervision.'").

## IV.    CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment on Plaintiffs' Connecticut law claims should be granted.

Dated:  New York, New York
       January 18, 2011

Respectfully submitted,

By:   /s/ Patrick W. Shea
     Patrick W. Shea (CT07071)
     Paul, Hastings, Janofsky & Walker LLP
     75 East 55th Street
     New York, NY 10022
     Telephone: (212) 318-6000
     Facsimile: (212) 319-4090
     patrickshea@paulhastings.com

     Leslie A. Dent (PHV 03877)
     John F. Wymer, III (PHV 03876)
     Erika L. Leonard (PHV 03875)
     Paul, Hastings, Janofsky & Walker LLP
     600 Peachtree Street, N.E., Suite 2400
     Atlanta, Georgia 30308
     Telephone: (404) 815-2400
     Facsimile: (404) 815-2424
     lesliedent@paulhastings.com
     johnwymer@paulhastings.com
     erikaleonard@paulhastings.com

     Counsel for Defendant
     SOUTHERN NEW ENGLAND
     TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | |
| **v.** | |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | **January 18, 2011** |
| **DEFENDANT.** | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2011, a copy of foregoing DEFENDANT SNET'S

MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

thereof was filed electronically and served by U.S. mail on anyone unable to accept electronic

filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's

electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the

Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>/s/ Patrick W. Shea</u>
Patrick W. Shea (CT07071)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

*Attorney for Defendant SNET*

LEGAL_US_W # 66849088.10

23