UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARON L. PERKINS, ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:07-CV-967 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | JANUARY 27, 2011 |
| TELEPHONE CO., | : | |
| Defendant. | : | |

**RULING RE: MOTION TO STRIKE (DOC. NO. 287)**

I.  **INTRODUCTION**

Plaintiff, Sharon Perkins, brings this action against defendant, Southern New England Telephone Co. ("SNET"),[1] on behalf of herself and a class of similarly situated employees alleging that she was not paid for overtime work in violation of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 207 and Connecticut General Statutes §§ 31-60(a) and 31-76(c). See Second Amended Complaint (Doc. No. 118). On December 8, 2010, plaintiffs filed an emergency Motion to Strike the expert report of Dr. Kathleen Lundquist ("Dr. Lundquist") (Doc. No. 287).

Dr. Lundquist is an industrial and organizational psychologist hired by SNET to share her opinion as to the job responsibilities of members of the class. Plaintiffs argue that Dr. Lundquist's opinions violate the federal rules and are based on flawed methodology. Additionally, plaintiffs argue that, by utilizing Dr. Lundquist's services, counsel for SNET has violated an agreement made between counsel to not call experts on the issue of liability. Plaintiffs argue that the allowance of Dr. Lundquist's report will,

---

[1] Perkins originally filed her action against AT&T, but substituted SNET as the proper defendant in an Amended Complaint. See Compl. (Doc. No. 1); Am. Compl. (Doc. No. 51).

1

therefore, prejudice plaintiffs, as the time has elapsed for them to produce their own liability expert.

For the following reasons, the court grants plaintiffs' Motion to Strike.

## II. FACTUAL BACKGROUND[2]

On April 6, 2010, the court issued a Scheduling Order in this case, requiring plaintiffs to disclose expert reports on or before September 30, 2010, and requiring SNET to disclose its expert reports on or before November 22, 2010. See Scheduling Order at 2-3 (Doc. No. 250). The court has not granted extensions of these deadlines to either party.

The day prior to the issuance of this Order, the court held a hearing to discuss, inter alia, the parties' joint Motion for Order Regarding Class Notice (Doc. No. 219). At that hearing, the court asked whether the parties' intended to call experts on the issue of liability. Hr'g Tr. 49:3-4, Apr. 5, 2010 (Doc. No. 253). Counsel for SNET responded,

> Honestly at this point, I cannot imagine that. I would see mostly a rebuttal from the plaintiffs' perspective. What the jury is going to do is hear about the individual duties from the individuals themselves, from the manager. They are going to be instructed on the law by your Honor. I don't see that subject to expert testimony. Expert testimony typically comes in at the damages phase.

Id. at 49:5-12. After this conversation, plaintiffs' counsel claims that a number of discussions were held between parties wherein both parties agreed to not call experts as to liability. Wittels Decl. ¶ 5, Dec. 8, 2010 (Doc. No. 289). Counsel for SNET disagrees with this characterization and claims, instead, that he only agreed to not call an expert to make legal conclusions. Email from Patrick W. Shea to Zachary Waisman

---

[2] The court assumes familiarity with this case.

(Dec. 07, 2010, 9:57 AM) (Doc. No. 289-2).

Dr. Lundquist's report, attached to plaintiffs' Motion to Strike, is a little under 200 pages long, including attachments. See generally Lundquist Report, Dec. 3, 2010 (Doc. No. 289-3). It includes a detailed description of Dr. Lundquist's background and experience as an industrial/organizational psychologist, as well as an explanation of the methodology she used to analyze the plaintiffs' job. Id. at 4-31. Lundquist's report is quite detailed, providing the reader with a number of tables and charts. See id. at 47-114.

Dr. Lundquist concludes her report with several opinions. See id. at 32-43. She sets them out briefly, then provides a more detailed explanation of her findings. Id. These opinions include:

> Opinion 1: A SNET Level One Manager's primary duty is management.
> Opinion 2: SNET Level One Managers regularly direct the work of Technicians or other employees.
> Opinion 3: Level One Managers exercise a key role in making or influencing personnel decisions related to Technicians or other employees.
> Opinion 4: Level One Managers exercise discretion in the performance of their job.

Id. at 32.

## III. ANALYSIS

### A. Admissibility of Expert Report

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

3

Fed. R. Evid. 702.  Courts read this Rule in conjunction with the relevancy provisions to determine whether to admit or strike an expert report.  See Fed. R. Evid. 402 (prohibiting the admission of irrelevant evidence); Fed. R. Evid. 403 (permitting the striking of evidence for which the probative value is substantially outweighed by its prejudicial effect).  District courts are empowered under Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 589, 597 (1993), to perform a gatekeeping function and review the reliability of a proposed expert's testimony.  See Major League Baseball Props. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008).  Plaintiffs in this case request the court to strike Dr. Lundquist's report under Daubert and on the grounds that her report expresses legal conclusions, usurping the roles of the court and the jury.

As an initial matter, the court rejects plaintiffs' arguments under Daubert.  The court is not prepared, at this stage of the litigation and on the information presented in plaintiffs' memoranda, to find Dr. Lundquist's qualifications inadequate or her opinions unsupported or unreliable.  Dr. Lundquist has an elaborate resume and has testified in numerous cases on behalf of plaintiffs and defendants alike.  See Lundquist Report at 116-38; see also Ebbert v. Nassau County, No. CV 05-5445, 2008 WL 8086382, at *7-10 (E.D.N.Y. Sept. 29, 2008) (finding Dr. Lundquist to be well qualified as an expert witness).  She supports her methodology with a number of sources, Lundquist Report at 8-11, 150-51, and she supports her opinions with tables and charts detailing the results of her interviews with SNET's employees, id. at 47-114.  The court does have some concerns with respect to the sample size underlying Lundquist's analysis.  See id. at 19 (stating that a random sampling was unnecessary because all Level Two Managers were asked to participate); id. at 22 (noting that not all Level Two Managers participated

4

in the survey). However, the court is not prepared, based solely on plaintiffs' citation to a reference guide on surveys and an article on wage and hour audits, to reject Dr. Lundquist's report as unreliable. See Pls.' Mem. at 10, 12. Rather, such attacks are better left for cross-examination. See United States v. Joseph, 542 F.3d 13, 21-22 (2008) (noting that, when dealing with a social sciences expert, the place to "quibble" with an expert's training and techniques is generally on cross-examination).

The court does agree with plaintiffs, however, that Dr. Lundquist's opinions are inadmissible for two reasons. First, Dr. Lundquist's opinions are largely legal conclusions. Second, her opinions discuss matters which are uncomplicated and usurp the jury's job of determining the veracity of testimony expected at trial. For these reasons, Dr. Lunquist's opinions are unhelpful, of questionable probative value, and prejudicial to plaintiffs.

### 1. Legal Conclusions

Historically, opinions as to the "ultimate issue" were not permitted to be expressed by a witness during trial. See United States v. Scop, 846 F.2d 135, 139-40 (2d Cir. 1988) (citing Fed. R. Evid. 704 advisory committee's note). This common law rule was eventually abrogated by Federal Rule of Evidence 704, which provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). The Second Circuit has clarified, however, that this change does not permit any and all expert testimony. See, e.g., Scop, 846 F.2d at 140. Rather, courts must be guided by the language of Rules 702 and 403 and permit only expert testimony that assists the trier of fact and is not more prejudicial than probative. See

5

Nimely v. City of New York, 414 F.3d 381, 398 (2d Cir. 2005) (applying Rule 403 to expert testimony).

Courts have specifically found expert testimony expressing a "legal conclusion" to be inadmissible under this standard. See, e.g., Densberger v. United Techs. Corp., 297 F.3d 66, 74 (2d Cir. 2002). Such an opinion by an expert usurps the role of the court in explaining the law and usurps the role of the jury in reaching a final conclusion based on all of the evidence. See United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994). District courts are, therefore, empowered with the discretion to police expert testimony to determine whether it will actually assist the trier of fact. See United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993) (noting that the admissibility of expert testimony is left to the discretion of the district court judge). Dr. Lundquist's report will not.

In her first opinion, for example, Dr. Lundquist states, "A SNET Level One Manager's primary duty is management." Lundquist Report at 32. This characterization of plaintiffs' duties appears to be taken directly from the FLSA, which exempts individuals, whose "primary duty is management," from its overtime requirements. See 29 U.S.C. § 213(a)(1) (exempting "executive" employees); 29 C.F.R. § 514.100(a)(2) (defining "executive" employees to include those "[w]hose primary duty is management"). In another context, Lundquist's choice of language might appear unremarkable. However, in a FLSA case such as this, the issue for the jury is precisely Lundquist's opinion: whether SNET's Level One Manager's primary duty is management. Before a jury makes such a decision, this court will need to carefully explain the legal definition of both "primary duty" and "management." The

regulation discussing "primary duty," for example, requires a jury to identify the "principal, main, major or most important duty that employee performs." 29 C.F.R. § 541.700(a). Such a determination "must be based on all the facts in a particular case," and "the amount of time spent performing" the relevant work is only one of the factors to be considered. id.

The court has reviewed Dr. Lundquist's report and her analysis. Before arriving at her first opinion, Dr. Lundquist inevitably weighed the factors she considered most pertinent to her determination. Such an opinion, thus, usurps a judge's role in explaining the relevant factors and the weight, if any, that should be accorded to each. See Scop, 846 F.2d at 140 ("'It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" (quoting Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977))). It further usurps the jury's role in determining which of the factors are more important to it in reaching a final determination. See Duncan, 42 F.2d at 101 ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

Dr. Lundquist's other opinions suffer from the same defect. Each one relies on terms that come directly from a relevant regulation,[3] and each one carries the same

---

[3] Lundquist's second opinion states: "SNET Level One Managers regularly direct the work of Technicians or other employees." Lundquist Report at 32 (emphasis added). The executive exemption includes employees who "customarily and regularly direct[] the work of two or more other employees." 29 C.F.R. § 541.100(a)(3). The regulations further explain what is meant by "customarily and regularly." See 29 C.F.R. § 541.701. Lundquist's fourth opinion states: "Level One Managers exercise discretion in the performance of their job." Lundquist Report at 32 (emphasis added). This phrasing mirrors language found in the administrative exemption, which covers employees "[w]hose primary duty includes the exercise of discretion." 29 C.F.R. § 541.200(a)(3). The regulations also provide a further explanation of the term "discretion." See 29 C.F.R. § 541.202.

While the short version of Lundquist's third opinion does not blatantly include language from the

7

risks the court identified with respect to Lundquist's first opinion. In short, Dr. Lundquist's opinions do not assist the jury, and any probative value derived from admitting her report is outweighed by the risk of confusing the jury as to the relevant legal standards.

2. Bolstering Fact Witnesses

In addition to the fact that Dr. Lundquist's opinions express "legal conclusions," the court finds that they are uncomplicated and inappropriately bolster fact witnesses. Nimely, 414 F.3d at 398. The Second Circuit generally requires expert testimony to touch on issues that are "esoteric" and are, thus, not within the realm of an average juror's understanding. See United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992). Dr. Lundquist's opinions are largely based on surveying and interviewing plaintiffs' supervisors, reviewing employment documents, and observing a Level One Manager on the job. While such testimony might be particularly helpful in a case involving hundreds of employees, Dr. Lundquist interviewed only fourteen supervisors in order to reach her conclusions. The questions Lundquist asked were not especially complicated and the information she uncovered is easy to understand and evaluate. It is well within the ability of a jury to listen to the testimony of the supervisors at trial, review the relevant documents, and determine the characteristics of plaintiffs' jobs.

Even if the court were to accept that Lundquist provides some assistance to the

---

relevant regulations or statutes, see Lundquist Report at 32, her more detailed explanation of this opinion suffers from the same defects as her other opinions, see id. at 39-40. Lundquist repeatedly refers to the Level One Manager's "recommendations" with respect to "pay raises" and "promotions." Id. The executive exemption covers employees whose "recommendations as to . . . advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). The regulations further provide factors for deciding whether such recommendations are accorded "particular weight." See 29 C.F.R. § 541.105.

8

finder of fact, the court is concerned with the risk that Lundquist's opinions will have the effect of bolstering the testimony of Level Two Managers. Her testimony may suggest that, because a qualified psychologist believed the statements made by Level Two Managers, the jury should do the same. See United States v. Dukagjjni, 326 F.3d 45, 53 (2d Cir. 2003). The Second Circuit has long held that using experts in such a way is impermissible. United States v, Lombardozi, 491 F.3d 61, 77-78 (2d Cir. 2007) (citing Cruz, 981 F.2d at 662-63). For this reason, the court finds that, to the extent Lundquist's opinions are relevant, their probative value is outweighed by the risk of inappropriately bolstering the testimony of fact witnesses.

      B.     <u>Prejudice to Plaintiffs</u>

In addition to the reasons articulated above, the court strikes SNET's expert report because of its prejudicial effect on plaintiffs. The court is reluctant to involve itself in a "he said, he said" dispute between attorneys. However, the court is persuaded that defense counsel's representations to plaintiffs' counsel were misleading at best.

Defense counsel's representation on the record during the April 2010 hearing supports plaintiffs' counsel's understanding that liability experts would not be called in this case. See Hr'g Tr. 49:5-14. That was also the court's understanding. The court did not enter an order that prevented defendant from disclosing an expert on liability, but surely counsel should have advised plaintiffs' counsel of his change in plans.

According to plaintiffs' counsel, these representations continued well after the hearing. Wittels Decl. ¶ 3. Defense counsel disagrees, claiming only to have represented that SNET would not call an expert to opine with "legal conclusions." See

9

Email from Patrick W. Shea to Zachary Waisman.  This characterization does not appear plausible to the court, however.  It seems quite doubtful that counsel would find it necessary to agree to the exclusion of expert reports including "legal conclusions," as it is well understood within this Circuit that such opinions are inadmissible.  See Part III.A, supra.  Such an agreement seems pointless and, thus, unlikely.  Further, at the conference with the court in April 2010, defense counsel referred to "liability experts." Hr'g Tr. 49:3-12.  At some point he changed his mind, and it is this court's view that, having made that representation, he was obliged to correct it when he decided to retain a liability expert.

The court acknowledges that, rather than striking the report, it could permit plaintiffs time to produce their own liability expert.  However, this case is already four years old, and the court will not delay it further by permitting additional expert discovery months after the relevant deadlines have passed.  In light of the prejudice to plaintiffs, the inevitable delay if a second expert is permitted, and defense counsel's failure to advise plaintiffs' counsel that defense counsel's representation to the court was no longer accurate, the equities favor the striking of Dr. Lundquist's report.

## IV. CONCLUSION

Because the disclosed expert has been offered to opine on legal conclusions and makes key assessments of credibility within her opinions, the Motion to Strike (Doc. No. 287) is granted.  Further, as a second basis, because of defense counsel's representation that he would not call an expert as to liability and his failure to correct this representation, the court grants the Motion to Strike.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of January, 2011.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge