UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | **DEFENDANT SNET'S REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT** |
| **v.** | |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | **March 3, 2011** |
| **DEFENDANT.** | |

Plaintiffs' response brief misses the mark.  Defendant moved for summary judgment solely on Plaintiffs' Connecticut state law claims.  These claims involve the less-stringent executive exemption "short test," requiring only proof that Plaintiffs: 1) are compensated on a salary basis not less than $475 dollars per week; and 2) their "primary duty consists of the management of the enterprise in which [they are] employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein."  CONN. AGENCIES REGS. § 31-60-14.  Because the parties agree that the first requirement is met, there is a single, simple issue for the Court's consideration:  whether Plaintiffs' primary duty is management, including customarily and regularly directing the work of the Techs assigned to them.  The undisputed facts demonstrate that this requirement has been met.

Plaintiffs' response attempts to inject factors not found in the Connecticut "short test," such as discretion and disciplinary authority, and for authority they rely almost exclusively on federal Fair Labor Standards Act cases, which require proof on these points.  Because the Connecticut "short test" does not require exempt executive employees to exercise discretion or disciplinary authority, any disputes that may exist on these points are not material and the federal authorities are inapposite.

There is no genuine dispute that Plaintiffs' primary duty is management and they customarily and regularly direct the work of Techs assigned to them.[1]  Defendant is entitled to summary judgment under the Connecticut "short test."

I.     **LEGAL ARGUMENT**

The "duties test" is made up of only two elements: a) the employee's "primary duty" is management and b) the employee "customar[ily] and regular[ly] direct[s] the work of two or more other employees."  CONN. AGENCIES REGS. § 31-60-14 (2010).  Plaintiffs' duties satisfy both.

A.     **Plaintiffs' primary duty is management.**

1.     **Discretion and disciplinary authority are not elements of the Connecticut "short test" for the executive exemption.**

In deciding whether employees' primary duty is management, courts construing the Connecticut executive exemption "short test" have not placed emphasis on employees' discretion or their ability to discipline other employees.  Plaintiffs cite no cases under the Connecticut "short test" evaluating the plaintiffs' discretion or disciplinary authority.  (Plaintiffs' Opposition to Defendant SNET's Motion for Partial Summary Judgment [Doc. 321] ("Pl. Resp.") 16-18, 30-33).  In fact, reading such requirements into the Connecticut "short test" is flatly inconsistent with the regulations, because the regulations explicitly require the exercise of discretion and disciplinary authority only for exempt employees making less than $475 per week.  CONN. AGENCIES REGS. § 31-60-14.  By claiming that these factors must also be satisfied for employees making more than the $475 threshold, Plaintiffs ask the Court to read the explicit distinction based on the $475 threshold out of the regulation.  This is flatly impermissible.  See Paul v. McPhee Elec. Contractors, 46 Conn. App. 18, 22 (1997) ("Where statutory language is clearly expressed ... courts must apply the legislative enactment according to the plain terms and cannot read into the terms of [the] statute something

---

[1] Plaintiffs also seriously misrepresent the record and purport to raise disputes concerning facts that are not material.  These points are addressed in Defendant's Reply in Support of Its Local Rule 56(a)(1) Statement.

which manifestly is not there in order to reach what court thinks would be a just result."); see also Wright v. Rayonnier, Inc., 972 F. Supp. 1474, 1478, n. 5 (S.D. Ga. 1997) (in deciding claims under prior FLSA "short test," plaintiff's "reliance on elements of the long test, which allegedly weigh in her favor, is misplaced. … If the short test is applicable, then the long test need not be considered.").

2.      **Plaintiffs' duties are managerial in nature under Connecticut law.**

Because "primary duty" is not defined in the statute or regulations, courts applying the Connecticut executive exemption look at the nature of the plaintiffs' duties to determine whether their "primary duty" is management.  (Memorandum of Law in Support of Defendant SNET'S Motion For Partial Summary Judgment [Doc. 307] ("Def. Br.") 8-16).  Plaintiffs cannot avoid the legal significance of their job duties by applying self-serving labels like "clerical" or "administrative."  Regardless of Plaintiffs' characterization, the duties they regularly perform make it clear that Plaintiffs' primary duty is management.  There is no dispute that Plaintiffs:

1) provide work-related information to their crews (Defendant SNET's Local Rule 56(a)(1) Statement [Doc. 309] and Reply in support thereof, filed herewith ("Def. St.") #10, 14, 18);

2) conduct regular "quality inspections" to ensure their Techs are performing their work correctly and according to Company standards (Def. St. #15-16);

3) conduct "DPC" rides to observe, evaluate and review Techs' performance and skills (Def. St. #17);

4) ensure that Techs attend required safety training, and regularly observe Techs' work habits for compliance with Company safety procedures (Def. St. #12, 19-20); and

5) provide regular feedback to Techs concerning their performance.  (Def. St. #10, 14, 16, 18, 20, 21).

Plaintiffs cannot plausibly deny these facts, because Plaintiffs' counsel argue – and Plaintiffs uniformly testified – that their purpose as Managers is to convey Company policies and

procedures to their Techs and to ensure compliance therewith.  (Def. St. #10, 14-16, 18-20).  This

function is quintessentially managerial under Connecticut law, particularly where – as is

undisputed here – Plaintiffs are typically the only managers on-site with their crew.  (Def. St. #7).[2]

Plaintiffs have made no attempt to distinguish the cases cited by Defendant under

Connecticut law, and instead rely entirely on FLSA cases.  (Pl. Resp. 7-36).[3]  Plaintiffs also focus

on 12 "factors" derived from a Connecticut Department of Labor (CDOL) "Worksheet to Help

Determine Exempt/Non-Exempt Status of Managerial or Executive Employees."  (Pl. Resp. 5-23;

Plaintiffs' Exhibit ZZ [Doc. 323-4]).  As an initial matter, the Worksheet is merely advisory and

does not carry the force and effect of law or agency regulations.  See, e.g., Velez v. Mayfield,

CV0840179255, 2010 Conn. Super. LEXIS 1214, at *9 (May 14, 2010) (declining to defer to

CDOL's interpretation of Connecticut Family Medical Leave Act, because "[t]his is a matter of

statutory construction for the court to decide."); Elections Review Comm. of Eighth Utils. Dist. v.

Freedom of Info. Comm'n, 219 Conn. 685, 698 (1991) ("We are not bound by the interpretation of

an agency on questions of law, such as the interpretation of a statute.").[4]  None of the 12 factors

Plaintiffs derive from the Worksheet appear in the Connecticut wage and hour laws or in CDOL

regulations.  Nor have Plaintiffs cited any case applying these 12 factors to the Connecticut

executive exemption.[5]

---

[2] See Sgro v. Ingenito, Inc., CV 960472107S, 1998 Conn. Super. LEXIS 1342, at *4 (May 7, 1998); Cain v. J&K Elec. Co., No. CV 92-0331213, 1996 Conn. Super. LEXIS 1963, at *2, 6 (July 24, 1996).
[3] The only Connecticut cases Plaintiffs cite are Hendricks v. J.P. Morgan Chase Bank, 677 F. Supp. 2d 544 (D. Conn. 2009) (construing professional and administrative exemptions), for the undisputed proposition that job titles are not dispositive of exempt status (Pl. Resp. 7) and Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677 (D. Conn. 2008) for the errant proposition that a certain percentage of time is required to "customarily and regularly" direct the work of two or more employees. (Pl. Resp. 39-40).  See fn. 19, infra.
[4] On the face of the Worksheet, the CDOL disclaims: "This analysis is meant only to be a guideline to assist in the determination of whether an employee or position is exempt or non-exempt from minimum wage, overtime, and record-keeping requirements under Connecticut law."  See Plaintiffs' Exhibit ZZ at 2.
[5] A review of the directions for interpreting the results of the Worksheet make it clear that CDOL does not require satisfaction of the 12 factors urged by Plaintiffs to meet the executive exemption.  In Section F, the Worksheet instructs that "[t]he position may be considered exempt if" questions 1 and 4 under Part A are

Moreover, Plaintiffs seriously mischaracterize the examples in the worksheet.  The Worksheet actually lists 14 examples, not 12.  Plaintiffs have chosen to ignore two factors, one of which plainly weighs in Defendant's favor (see below).  Plaintiffs' Exhibit ZZ at 4.  Plaintiffs' attempts to disclaim the performance of <u>any</u> of the duties listed on the Worksheet – including mischaracterizing the CDOL's examples of exempt duties, where it suits them – are transparently misleading.  For instance, one listed example of an exempt duty is "[e]valuating employees' efficiency and productivity."   Id., at 4.  Because it cannot be disputed that Plaintiffs are required to review their Techs' metrics on a daily basis – including those related to efficiency and productivity – (Def. St. #18), Plaintiffs have chosen to alter this factor.  Plaintiffs represent to the Court that "Management Factor #5" relates to "apprais[ing] productivity or efficiency *for the purpose of recommending promotions*" – adding an element not discussed anywhere in the Worksheet.  (Pl. Resp. 15).  Plaintiffs also fail to point out that they do not perform any of the "non-exempt duties" listed in Section C of the Worksheet.  Plaintiffs' Exhibit ZZ at 5.

It is undisputed that Plaintiffs perform these exempt duties listed in the Worksheet (Id.):
- "Directing work" (Def. St. #10, 14-20)
- "Evaluating employees' efficiency and productivity" (Def. St. #15-18, 21)
- "Handling employee's complaints"[6] (Def. St. #22)
- "Distributing work to others"[7] (in C&E) (Def. St. #10, 23; Plaintiffs' Local Rule 56(a)(2) Statement [Doc. 324] ("Pl. St.") #40, 42)
- "Controlling flow and distribution of merchandise, materials and supplies"[8] (Def. St. #27)
- "Providing for safety of employees and property"[9] (Def. St. #12, 14, 19, 20, 26)

---

answered "yes" and the employees' salary is $475 per week.  Id., at 9.  Question 1 asks whether the employee's "primary duty consists of the management of the enterprises in which he/she is employed or of a customarily recognized department thereof."  Id., at 2.  Question 4 asks whether the employee "customarily and regularly directs two or more people."  Id., at 4.  These questions embody the "short test" for the executive exemption – and the CDOL's instructions for using the Worksheet do not require the analysis of the 14 examples of exempt duties listed in Section B of the Worksheet.  Id., at 9.
[6] Plaintiffs add handling grievances to this factor, even though grievances are not mentioned anywhere in the Worksheet.  (Pl. Resp. 15-16).
[7] Plaintiffs change this factor from "distributing" to "apportioning" work (Pl. Resp. at 20-21) to avoid the undisputed fact that Plaintiffs distribute work orders to Techs in C&E.  (Def. St. #10, 23; Pl. St. #40, 42).
[8] Plaintiffs ignored this factor in whittling the CDOL's list of 14 examples down to 12.

To avoid the clear impact of the listed factors, Plaintiffs attempt to expand the factors to encompass discretion or disciplinary authority not required by the Connecticut "short test." For instance, rather than admitting – as they must – that Plaintiffs "provid[e] for safety of employees and property" because they are required to make sure that Techs take their scheduled safety training (Def. St. #12), perform regular safety observations of their Techs to ensure compliance with Company safety procedures (Def. St. #19, 20), and perform safety sweeps to ensure the safety and security of the garages and Company property housed therein (Def. St. #26), Plaintiffs argue about their alleged lack of discretion in disciplining for safety violations, state that they do not teach the safety training courses, and complain that they are given checklists to guide their safety observations. (Pl. Resp. 22-23). These issues are irrelevant under the Connecticut "short test."

### 3.  **Management is Plaintiffs' primary duty under Connecticut law.**

Where laws and regulations do not define a term, the term is given its plain meaning. See AvalonBay Cmtys. Inc. v. Zoning Com'n of Town of Stratford, 87 Conn. App. 537, 559 (2005) ("The legislature is supreme in the area of legislation, and the courts must apply statutory enactments according to their plain terms."). The plain meaning of "primary" is: that which is most important.[10] Plaintiffs argue that "clerical" tasks are more important than their managerial duties. (Pl. Resp. 28-30). As Plaintiffs admit, it is not Plaintiffs' opinion that is dispositive, but what is most important to the employer. (Pl. Resp. 28). The cases Plaintiffs cite in support of the proposition that SNET values "non-managerial" tasks over Plaintiffs' managerial work are inapposite, all arising under the FLSA, in which the regulations provide a specific definition of "primary duty" that is absent from the Connecticut regulations. Moreover, Plaintiffs' cited cases

---

[9] Plaintiffs omit the aspect of providing for the "safety of … property" from this factor (Pl. Resp. 22-23), in order to avoid the undisputed facts that Level One Managers perform security sweeps of the garages to provide for the safety of SNET's physical plant and property stored there. (Def. St. #26)

[10] See Webster's English Dictionary ("Def. 2a: of first rank, importance, or value: principal (the *primary* purpose); b: basic, fundamental (security is a *primary* need)").

relate to managers who perform the same non-exempt work as the employees they supervised.[11]

In contrast, Plaintiffs admit that they do not do perform any of the type of work that is done by the Techs that they supervise – nor could they, under the term of the Company's Collective Bargaining Agreement.[12]   SNET is not asking Level One Managers to do Tech work.  Plaintiffs' duties identified, *supra*, at pages 3-6 are the most important part of their job. [13]  See, e.g., Cain, 1996 Conn. Super. LEXIS 1963, at *2, 6 (field operations manager met executive exemption where duties included "supervising and coordinating electrical contracting jobs" and "evaluating the performance of field personnel"); Brillas v. Bennett Auto Supply, Inc., 675 F. Supp. 2d 1164, 1168 (S.D. Fla. 2009) (employee's primary duty was management of store, and therefore, employee was exempt under FLSA's executive exemption where 20-30% of employee's time was spent without another manager in store, leaving employee solely in charge, and thus the employee's managerial duties constituted "the primary value the employer placed on the employee").

Unlike the cases cited by Plaintiffs in which managers were found to be non-exempt where they primarily engaged in production or manual work performed by hourly employees, the "clerical" or "administrative" tasks that Plaintiffs categorize as "nonmanagerial" is, in fact, exempt work because it is closely related to their managerial duties and is, most often, performed at the same time.  For instance, Plaintiffs complete checklists (which they call "clerical" work) while

---

[11] See Reyes, 459 F. Supp. 2d at 553 (pawn shop managers' jobs included "performing sales and making loans"); Cowan v. Treetop Enters., Inc., 120 F. Supp. 2d 672, 676 (M.D. Tenn. 1999) (restaurant managers worked as grill cooks and waitstaff; company manual specifically stated the "primary objective" for managers was "to become a proficient grill operator" and the "second objective [was] to gain exposure to the daily management duties and responsibilities"); Plaunt v. Dolgencorp, Inc., No. 3:09cv079, 2010 U.S. Dist. LEXIS 132135, at *7 (M.D. Penn. Dec. 14, 2010) (store manager "stock[ed] shelves and assist[ed] customers" – tasks identical to those performed by non-exempt employees plaintiff supervised – and "spent much time in the store alone, ostensibly directing no other employees").

[12] See, e.g., G. Albert Dep. 65; S. Clark Dep. 83; Fredsall Dep. 87.

[13] Area Managers are not on-site with Techs and have more than 100 Techs that report to them up through the chain of command.  (Def. St. #6, 7).  There is no evidence to support Plaintiffs' absurd arguments that the SNET workplace would function the same without Plaintiffs performing their managerial tasks, and that crews of Techs run themselves.  (Pl. Resp. 29).

conducting on-site safety observations and quality inspections to evaluate Techs' compliance with company safety and performance standards ("managerial" tasks).  (Def. St. #19).  Even the CDOL Worksheet relied upon by Plaintiffs explains that:

> At times an exempt manager may do non-exempt work such as using the computer to draft correspondence or to do performance evaluations.  In these situations the important issue is whether or not the non-exempt function is necessary *or a means to accomplish the exempt responsibilities*.

Plaintiffs' Exhibit ZZ [Doc. 323-4], at 4 (emphasis supplied).[14]

### 4.   The managerial nature of Plaintiffs' primary duty is not undermined by Plaintiffs' reliance on inapposite federal regulations.

Plaintiffs seek to avoid summary judgment by invoking federal case law, decided on the basis of regulatory language that does not exist in the Connecticut law.  As previously fully briefed by Defendant, it is well-settled that even under federal law, Plaintiffs' exempt status is not undermined by their compliance with standardized Company procedures or their consultation with Area Managers with regard to some issues.  (Def. Br. 17-21).

Despite conceding that there is no numerical requirement for establishing that management is the primary duty under Connecticut law (Pl. Resp. 24), Plaintiffs argue that they do not spend 50% of their time engaged in managerial duties.  The Connecticut statute and regulations

---

[14] "Administrative tasks" related to management duties are themselves managerial duties.  See Jones v. ENSR Corp., No. 96-3836, 1997 WL 369440, at *3 (6th Cir. July 1, 1997) (exempt under former FLSA "short test" where duties included "necessary administrative paperwork for the site and the crew that was under him"); Jones v. Virginia Oil Co., Inc., 69 F. App'x 633, 635 (4th Cir. 2003) (daily sales and invoice "paperwork" and "running reports" are "management-related duties"); Burson v. Viking Forge Corp., 661 F. Supp. 2d 794, 800-02 (N.D. Ohio 2009) (exempt under FLSA, rejecting plaintiff's argument that because he "entered onto a computer program production numbers that had been relayed to him by [subordinate employees]," that "this is commonly known as 'data entry' work, which is clearly not an executive responsibility"); Farnsworth v. Terra-Petro Dev., Inc., Civil Action No. 5:06-cv-00279, 2007 WL 4613036, at *1 (S.D. W.Va. Dec. 31, 2007) (exempt under FLSA where duties included "processing paperwork, and other similar managerial tasks"); Frey v. Spokane Cnty. Fire Dist., No. 8, No. CV-05-289, 2006 WL 2597956, at *7, 9 (E.D. Wash. Sept. 11, 2006) ("maintaining records, responding to emails, and other daily clerical tasks" are "directly and closely related to the management of the division" and thus are managerial; "The manual and clerical tasks that he performed were undertaken in order to support Plaintiff's primary value to Defendant, which was to ensure that Plaintiff's units were operating efficiently and effectively").

pertaining to the executive exemption provide no test for determining whether management is an employee's "primary duty," and have not adopted the FLSA's 50% guidance. CONN. AGENCIES REGS. § 31-60-14; CONN. GEN. STATS. § 31-76i (2009). Plaintiffs cite no cases in which courts applied the FLSA regulations describing "primary duty" to the Connecticut executive exemption.

Furthermore, Plaintiffs misconstrue the 50% guidance as something more than a "rule of thumb." The FLSA regulations could not be more clear: "nothing … requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700(b) (2010). Courts will not deem employees exempt purely based upon the percentage of time spent on managerial duties, nor deny the exemption by applying a "clock" standard.[15] Instead, Connecticut courts examine the nature of the plaintiffs' duties. (Def. Br. 7-16).

Furthermore, Plaintiffs' argument regarding the relative compensation of Level One Managers and Techs is misplaced. First, Plaintiffs cite no cases interpreting the Connecticut executive exemption that consider this factor, nor does this factor appear in Connecticut wage and hour laws or the regulations interpreting them. Second, Plaintiffs misrepresent this factor as it appears in the FLSA regulations. In determining whether an employee's primary duty is management, the FLSA regulations permit examination of "the relationship between the employee's salary and the wages paid other employees *for the kind of nonexempt work performed by the supervisor*." 29 C.F.R. § 541.700. Plaintiffs concede they do not perform "the kind of nonexempt work" performed by the Techs.[16] Tech compensation is thus irrelevant.

B.    **Plaintiffs customarily and regularly direct the work of more than 2 employees.**

It is undisputed that Plaintiffs have been assigned crews of between ten and 31 Techs.

---

[15] See Kastor v. Sam's Wholesale Club, 131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001) (exempt under FLSA even though he spent 90% of his time performing non-managerial tasks, because those non-managerial tasks were not the purpose of his employment).
[16] See, e.g., G. Albert Dep. 65; S. Clark Dep. 83; Fredsall Dep. 87.

(Def. St., #2).  Instead, Plaintiffs contend that they do not customarily and regularly direct the work of these crews.[17]  The deposition testimony of 49 opt-in Plaintiffs proves otherwise.

Plaintiffs inexplicably argue that "customarily and regularly" means a specific numerical percentage of their working time, somewhere between 64% and 80%.  (Pl. Resp. 38-40).  There is no valid legal support for this argument.  The Connecticut regulations do not define "customarily and regularly," let alone ascribe a numerical value.  The term "customarily and regularly" also appears in the FLSA, which the FLSA regulations clarify means directing other employees' work on a *weekly* basis.[18]  The undisputed facts establish that Plaintiffs would meet even the FLSA standard, as they direct the work of their Techs on a weekly basis through huddle meetings and visits to the field to evaluate compliance with safety standards and technical proficiency.  (Def. St. #10, 14-17, 19-20).[19]  Plaintiffs clearly meet the Connecticut standard, where courts have looked to whether the employees were assigned two or more employees as dispositive of the requirement.[20]

## II.    CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment on Plaintiffs' Connecticut law claims should be granted.

---

[17] Plaintiffs's Response does not dispute that these crews are "customarily recognized subdivisions" of SNET under CONN. AGENCIES REGS. § 31-60-14.

[18] See 29 C.F.R. § 541.701 (2010).

[19] Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677 (D. Conn. 2008) does not require that Plaintiffs spend more than 64% of their time directing the work of two or more employees to meet the executive exemption.  (Pl. Resp. 39-40).  The Court in Asp – in denying summary judgment *to the plaintiffs* – did not clarify what "customarily and regularly" means under Connecticut law, but rather, commented that it would be "difficult to determine," given the CDOL's lack of guidance on the issue.  The Court queried whether the plaintiff could "customarily and regularly" direct the work of two or more employees for her entire employment *where it was known she did not have two or more employees assigned to her for 22 of her 61 work weeks.*  Id.  Here, all Plaintiffs had Techs reporting to them in order to satisfy the class definition and the teams of Techs far exceeded the two-employee threshold.  (Def. St. #1, 2).

[20] See Cain, 1996 Conn. Super. LEXIS 1963, at *2, 6 (field operations manager met executive exemption by "scheduling" and "evaluating the performance of field *personnel*" (plural)); Sgro, 1998 Conn. Super. LEXIS 1342, at *4, 6 (executive exemption met where duties included instructing multiple employees regarding their work); see also Lloyd v. Kearing, CV044001456S, 2006 Conn. Super. LEXIS 2190, at *8-9 (July 14, 2006) (even under the more stringent Connecticut "long test," plaintiff satisfied executive exemption where duties included responsibilities for "his employees").

Dated:  New York, New York
       March 3, 2011

Respectfully submitted,

By:   /s/ Patrick W. Shea
      Patrick W. Shea (CT07071)
      Paul, Hastings, Janofsky & Walker LLP
      75 East 55th Street
      New York, NY 10022
      Telephone: (212) 318-6000
      Facsimile: (212) 319-4090
      patrickshea@paulhastings.com

      Leslie A. Dent (PHV 03877)
      John F. Wymer, III (PHV 03876)
      Erika L. Leonard (PHV 03875)
      Paul, Hastings, Janofsky & Walker LLP
      600 Peachtree Street, N.E., Suite 2400
      Atlanta, Georgia 30308
      Telephone: (404) 815-2400
      Facsimile: (404) 815-2424
      lesliedent@paulhastings.com
      johnwymer@paulhastings.com
      erikaleonard@paulhastings.com

      Counsel for Defendant
      SOUTHERN NEW ENGLAND
      TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | |
| **v.** | |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | |
| **DEFENDANT.** | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2011, a copy of foregoing DEFENDANT SNET'S

REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT was filed electronically and

served by U.S. mail on anyone unable to accept electronic filing.  Notice of this filing will be sent

by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the Court's CM/ECF System.

<div style="margin-left: 50%;">

/s/ Patrick W. Shea
Patrick W. Shea (CT07071)
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

*Attorney for Defendant SNET*

</div>

LEGAL_US_W # 67317865.8

12