```
1              UNITED STATES DISTRICT COURT.

2              DISTRICT OF CONNECTICUT

3    _____
     SHARON L. PERKINS, ET AL  )
4              Plaintiffs. )  NO: 3:07cv967(JCH)
                           )
5    vs.                   )  March 9, 2011
     SOUTHERN NEW ENGLAND   )
6    TELEPHONE COMPANY      )  10:30 a.m.
              Defendant    )
7    _____)
                              915 Lafayette Boulevard
8                              Bridgeport, Connecticut

9              MOTION HEARING

10

11   B E F O R E:
              THE HONORABLE JANET C. HALL, U.S.D.J.

12

13   A P P E A R A N C E S:

14   For the Plaintiffs  :
                              STEVEN WITTTELS
15                            Sanford, Wittels & Heisler,
                              LLP-NY
16                            1350 Avenue of the Americas
                              31st Floor
17                            New York, NY 10019

18                            EDMOND CLARK
                              83 Scotland Avenue
19                            P.O. Box 133
                              Madison, CT 06443-2501

20

21   For the Defendant   :   PATRICK W. SHEA
                              LESLIE DENT
22                            ERIKA LEONARD
                              Paul, Hastings, Janofsky &
23                            Walker
                              75 East 55th Street
24                            New York, NY 10022

25
```

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1          THE COURT:  Good morning.  We're here in the

2     matter of Perkins versus Southern New England Telephone

3     Company, 307CV967.  If I can have appearances please.

4          MR. WITTELS:  Steven Wittels for the plaintiff

5     and the class.

6          MR. CLARK:  Edmond Clark for the plaintiffs and

7     the class.  Good morning, your Honor.

8          MR. SHEA:  Patrick Shea from Paul Hastings for

9     the Defendant Southern New England Telephone Company.

10         MS. DENT: Leslie Dent also from Paul Hastings

11     for the defendant.

12         MS. LEONARD:  Erika Leonard also from Paul

13     Hastings for the defendant.

14         THE COURT:  Good morning.  I would like to

15     address the Motion to Compel the deposition of John Tate

16     which was filed two months ago, 304.  It's been briefed.

17     There's also a Motion to Seal I believe.  314 to Seal the

18     Plaintiff's Memorandum.  So that needs to be addressed as

19     well in connection with this.  I guess it is the

20     defendant's motion.  Why do you want to take Mr. Tate's

21     deposition, sir?

22         MR. SHEA:  Your Honor, we're getting ready for

23     trial in this case.  It is very important for SNET's

24     defense that we be able to show the jury what are the

25     wide range of duties that are performed by first level

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    supervisors.  Mr. Tate was initially selected for two

2    reasons.

3             First because he had had substantial involvement

4    in disciplinary matters, and we believe we can show

5    through his testimony that first level supervisors

6    satisfy the third prong of the exemption.  That is to

7    make recommendations on matters of discipline.

8             Secondly based on our knowledge and reputation,

9    we expect him to be more candid about his job duties than

10   some of the rode heavily prepared testimony we have seen

11   from other first level supervisors.  That's our main

12   reason for selecting him.

13            Our reason is confirmed by plaintiff's

14   opposition.  They have confirmed that he's less than

15   cooperative which sounds to us like he won't go along

16   with the party line.  They told him for secret reasons

17   that they won't disclose to us he's atypical and

18   different from other members of the class.  All that

19   tells us, your Honor, he's the exact person we want to

20   put in front of this jury.  We need to take his

21   deposition to be able to do that.

22            THE COURT:  Am I correct that you identified

23   Mr. Tate and noticed his deposition without knowledge of

24   what was going on or not going on between he and counsel

25   for the plaintiff?

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

```
 1              MR. SHEA:  That's correct, your Honor.
 2              THE COURT:  You noticed him before the
 3    termination deadline for discovery?
 4              MR. SHEA:  That's correct, your Honor.
 5              THE COURT:  You noticed him at the time and you
 6    haven't competed the number of depositions I have
 7    allowed?
 8              MR. SHEA:  We have not, your Honor.
 9              THE COURT:  All right.  If I could ask
10    plaintiff's counsel.  I would start first with I will
11    call it housekeeping detail.  That is your motion to seal
12    your opposition.  I struggled to see anything in there
13    that's privileged.  You allude to privilege
14    communications which obviously I'm not surprised there
15    would be some but I don't see that you tell me what they
16    are SO why should I seal it?
17              MR. WITTELS:  There was some confusion on our
18    part here as I understand it in trying to figure out the
19    proper mechanism to have it sealed.  I would ask your
20    Honor perhaps to put that aside for a second, if
21    possible, on the sealed because I think you have before
22    you most of what you need to know and perhaps what I say
23    would perhaps have the court talk to us in camera about
24    this issue if your Honor deemed it appropriate.  In
25    essence, we, as the plaintiffs, had no alternative but to
```

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    oppose the defendant's attempt to depose Mr. Tate for a

2    few reasons:

3             A, when Mr. Tate informed us in the first

4    instance.  I think you can see from Mr. Clark's

5    declaration that he would appear, we thought we would go

6    forward as we had with other 50 deponents.  However, he

7    backtracked and told us, in essence, he did not want to

8    have anything further to do with the case.  He told us

9    other information that we have not disclosed which

10   Mr. Shea has eluded to which shows us that he's really

11   not part of the class and is atypical because he's not

12   really in the class.

13            Because of that, we then when he told us he

14   didn't want to participate, initially we opted him out of

15   the opt in.  However that left him in the Rule 23 class.

16   I think last time your Honor asked me, may have been on a

17   call, I can't remember exactly, maybe at our last

18   conference, what did we plan to do with him with respect

19   to Rule 23 because the period for opting out had expired

20   under the notice and the order we couldn't do anything

21   unless we communicated and got the court's permission to

22   extend the period to opt him out.

23            We were in a bind here since he's sitting here

24   without any order now as part of the Rule 23 class.

25   However we would like to get him out of the class.  Have

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    him opted out because in our judgment he's not part of

2    the class.  Given that, we don't think it is appropriate.

3    We have had 50 depositions to have him deposed or spoken

4    to.  However it is the court's discretion.

5              THE COURT:  You had 50 or had 49?

6              MR. SHEA:  Right.  He's the 50th.

7              MR. WITTELS:  Almost 50.  Sorry.  I misspoke.

8              THE COURT:  I obviously asked defense counsel.

9    I said he could have 50.  That's what I gave him.

10             MR. WITTELS:  We have had 49.

11             THE COURT:  The only argument it seems to me you

12   can make is he's not part of the class because I said

13   that the defendant could take 50 depositions of opt in

14   plaintiffs.  I don't know if I said class members.  He's

15   not an opt in.  I suppose the defendant if he wanted to,

16   he isn't going to do this but he could argue he isn't

17   bound by the number 50 but why can't he take a deposition

18   of anybody he wants to that works at the company and

19   works at an area that your clients work in?

20             MR. WITTELS:  You are talking as a non-opt in.

21             THE COURT:  Just take his deposition.  Why can't

22   he take his deposition?  If you get to a subject that's

23   privileged, let's say Attorney Shea were to ask this

24   question which I don't think he will, let's assume he

25   did.  What did you tell your lawyer.  That's like saying

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1  give me the documents produced to the grand jury.  That's

2  secret, right?  But you can say give me all of the

3  documents on the subject X which happens to be the grand

4  jury subject.  That's okay.  I'm sure Attorney Shea isn't

5  going to say tell me what you told your lawyer and he

6  told you back.  He's going to say tell me what your job

7  is, tell me what you do, what don't you do, those fact

8  questions but let's assume he were silly enough to say

9  tell me what you told your lawyer when you asked him for

10  legal advice.  You are going to say that's a privileged

11  matter.  I advise you Mr. Tate that it is prejudiced and

12  that you don't have to answer that question, if you don't

13  want to.  Obviously he can answer if he wants to, right?

14  It is not your privilege.  It is his but I think it is

15  not inappropriate for you as his former lawyer to advise

16  him on that subject.  I assume Attorney Shea wouldn't

17  have any objection to you doing that including

18  repeatedly, if he repeatedly seeks to ask such a stupid

19  question.  If the client, says I will tell you anything

20  you want to know, doesn't sound like he's going to do

21  that.  Maybe he'll have a change of heart.  He can

22  testify to what he told you.  I'm happy -- I'm happy but

23  I guess if you wish to go to sidebar and tell me what it

24  is in the communications with him that are privileged,

25  that is going to change my reaction I guess here this

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    morning.  It may very well.  I don't know what I don't

2    know.  But I'm having difficulty understanding why just

3    because this guy is not being cooperative, wants out, you

4    think he shouldn't be in the class, why all of that means

5    his deposition can't be taken.

6          MR. WITTELS:  If you allow me two minutes at

7    sidebar on the issue.

8          MR. SHEA:  Your Honor, I'm happy to allow the

9    sidebar only on the condition if it does change your

10   mind, I think I need to have some access to it.  I have

11   to object to a situation in which my right to take a

12   deposition gets quashed for a secret reason I never get

13   to find out about.

14         THE COURT:  You can assert that position.  I

15   would suggest that happens all the time that people move

16   to compel documents that the other side says are

17   privileged.  They submit them in camera.  I look at them

18   and I say right, they are privileged.  Sorry you can't

19   get them.  On the other hand, they are not privileged.

20   You are getting them but on the first call by the court,

21   you don't get to look at them and say I get to argue to

22   you why you're wrong.

23         MR. SHEA:  I think this is the little bit

24   different because he's not saying the entire Tate

25   deposition would be privileged.  It is one thing for the

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    court to examine privileged communications in camera and

2    make a determination on privilege status.  I think it is

3    different if the court takes an in camera submission.

4    Only going to be a live issue if he changes your mind.

5         THE COURT:  I'm not agreeing to anything.  To

6    the extent you are suggesting there's some ground rules

7    that I will be bound by, the answer to that is no.  If

8    I'm told things which I don't think are privileged,

9    there's no reason for you not to know them.  I'm not

10   agreeing to anything.

11        MR. SHEA:  I was just stating my position for

12   the record.

13        THE COURT:  You do wish to make a presentation

14   of ex parte about privilege communications?

15        MR. WITTELS:  Very briefly.

16        THE COURT:  Please come up to sidebar.

17        MR. SHEA:  Can I inquire one aspect?  Will a

18   sealed record be made?

19        THE COURT:  Yes.  At this point, once we start

20   the sidebar, the transcript will be sealed until I step

21   away from sidebar.

22        (Sidebar.)

23        THE COURT:  What was recounted to me at sidebar

24   was in my view attorney/client privilege, which was

25   something that was relayed to counsel, clearly as counsel

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    in connection with this individual's information.  I

2    guess I will leave it at that.  What I started to say at

3    sidebar and realized I need to say this on the record is

4    just to reinforce nothing that was said to me changes my

5    view that the deposition -- if the defendant's want, it

6    should be taken, can be taken I should say.  It does

7    re-endorse my initial advice to counsel.  Particularly

8    plaintiff's counsel but even though this individual is

9    one you should make it clear I guess you are no longer

10   his counsel.  I think that's a fair statement, right?

11            MR. WITTELS:  Assuming he acknowledges that at

12   the start of the deposition.

13            THE COURT:  Whatever.  And then but even though

14   and therefore, you won't be representing him at the

15   deposition I guess if that's the case.  In other words, I

16   think -- while normally I don't like lots of long 20

17   pages of introduction on the deposition transcript, I

18   think in this case you may need to put some things on the

19   record, Attorney Wittels, then but in particular what I

20   said earlier I think I'm more convinced I'm correct

21   about.  That is to the extent that Attorney Shea happens

22   to seek to break the attorney/client privilege which I'm

23   assuming he's not purposely going to do that.  Assuming

24   he did or did it inadvertently, I would encourage you to

25   continue to remind Mr. Tate of his rights to protect such

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    communications.

2           Beyond that, I don't know what else I can say.

3    But in terms of the allowance of the deposition of

4    Mr. Tate, the court grants the defendant's motion to

5    permit that to be done and ordered that it be arranged as

6    promptly as possible.  Given what was stated about

7    Mr. Tate and contacting him, I'm not sure what you are

8    going to do.  I suppose you may have to issue a subpoena

9    if you can find him, I assume at work.

10         MR. SHEA:  We know where to find him.

11         THE COURT:  The only thing I didn't follow,

12    Attorney Wittels, of the prior conversation we had on the

13    record, the status of Mr. Tate vis-a-vis the Rule 26

14    class, is he out of that?  Is it too late for him to get

15    out and are you asking me permission to let him out if he

16    wants to be out.  I didn't follow that in terms of

17    whether he's still your client.

18         MR. WITTELS:  The Rule 23 class, the Connecticut

19    class, he would be part of since he having opted out

20    affirmatively of the FSLA class, still would remain in

21    the Rule 23 class so the question is what would be his

22    status since he's somewhat in limbo.  This is why

23    Mr. Shea and defense counsel can contact him.  He's

24    technically a class member.  I'm representing him.

25    That's what we do have to clarify at the start of the

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1   deposition.  My thought to your Honor was perhaps if he

2   decides as I presume from his communication, he no longer

3   wants to participate in the case, means that he wants to

4   be opted out of the 23, he would have to affirmatively

5   have permission to do that.

6          THE COURT:  Do you have an objection, Attorney

7   O'Brien, if on the record he indicates at the beginning

8   as part of this preliminary conversation with him, he

9   indicates a desire to have nothing to do with this

10  litigation including not just FSLA but the class.  Do you

11  have an objection to my permitting him to opt out of the

12  class if he indicates after this colloquy that's what he

13  desires to do?

14         MR. SHEA:  No objection.

15         THE COURT:  The court grants him permission for

16  the late withdrawal I guess is really what it is so long

17  as it is clear that that's what he wants to do.  And I

18  presume -- he's gotten all the paperwork.  I assume you

19  will make an appropriate record that he understands what

20  he's doing.  If at the end of that he says I want out, I

21  will permit him to do that.

22         MR. SHEA:  I have no objection.

23         THE COURT:  Thank you.  I don't intend to

24  resolve the issues that you spent quite a bit of time

25  with Attorney Hawkins with last week.  I guess I have

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    only briefly read the filings that had been made by each

2    side on these issues.  I think they just came in.  I'm in

3    the middle of preparing for a lengthy argument this

4    afternoon.  I have looked at some cases.  The question I

5    would ask each counsel is have you ever tried an FSLA

6    class or a Rule 23 class action involving, quote, over

7    time claims, I will call them and if so, what was the

8    order of trial?

9         MR. WITTELS:  We have not tried one.  But we are

10   familiar with other attorneys who have done it in the

11   Staples case fairly recently in New. Jersey.  Before the

12   federal court.  Stillman was the name where they did try

13   it.  It is a misclassification case like ours and the

14   same issues came up.  The defendants tried to ask that

15   they be entitled to go first.  The court denied that.

16        THE COURT:  Which judge?

17        MR. WITTELS:  Judge Schwartz.  She was the

18   Magistrate Schwartz.  I can't confirm she actually tried

19   it.  She may have.

20        THE COURT:  How about the rule 23 class action

21   involving wages?

22        MR. WITTELS:  No.  So but I will say that as

23   your Honor reads the papers, we tried to keep it short.

24   We understood given the volume of material that's already

25   been submitted we wanted to not burden your Honor further

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    to the extent we could.  We thought the issue was pretty

2    much decided in light of the bifurcation inclination at

3    the first -- at the conference where your Honor set the

4    schedule because your Honor had said I was going to bring

5    it in.  But your Honor had said that, I'm quoting,

6    bifurcation is a recipe for dragging out a litigation

7    insufferably and unnecessarily.  That's page 32 of the

8    record on April 5, 2010.  Point being here really that at

9    the time when we agreed to bifurcation, it was to avoid

10   the additional 35 depositions.

11        THE COURT:  Can I stop you?  If you remember a

12   while ago my question was how many cases have you tried.

13   I think I got the answer.  Attorney Shea the answer.

14        MR. SHEA:  One. It was an arbitration that was

15   done pursuant to a resolution of a case.  It was Rule 23

16   FSLA.  A case in front of Judge Droney.  We tried -- the

17   original plan had been to try 20.  We wound up trying

18   nine test cases.  Half selected by the plaintiff and half

19   selected by defendant before an arbitrator, Retired

20   Federal Judge Frank Bullock and I did go first on behalf

21   of the defendant.

22        THE COURT:  That was by agreement of the parties

23   you sought a third party neutral instead of being in

24   federal court.

25        MR. SHEA:  What happened in that case it was a

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    very old case.  It had been pending over 10 years and

2    ultimately the parties decided that rather wait for a

3    trial date, we would agree to arbitrate the matter so it

4    was arbitration by agreement.

5            THE COURT:  Maybe I should slow down my docket.

6            MR. SHEA:  But what I was going to say was that

7    was a contested motion where the judge did rule we had

8    the right.  Judge Bullock did rule we had the right to go

9    first.

10           THE COURT:  I understand.  Attorney Wittels you

11   first.  Why shouldn't I try the Rule 23 class action

12   first?  Isn't Connecticut law the same as federal?  Would

13   that help?

14           MR. WITTELS:  Are you saying not to have a FSLA

15   case tried?

16           THE COURT:  Good old-fashioned Rule 23 case.

17   Forget about who goes first.

18           MR. WITTELS:  The question might be on the

19   statute of limitations is my first reaction as to period.

20           THE COURT:  What's the state period?

21           MR. WITTELS:  Well, I know under the federal

22   rule, we have got the two years back from the date of opt

23   in.

24           THE COURT:  There's a possible third year.

25           MR. WITTELS:  The state it might be early.  It

1    might be from 2004.

2         MR. SHEA:  It's two years prior to the filing of

3    the initial complaint which would reach back to 2005 I

4    believe in this case.

5         THE COURT:  The federal reach back to what?

6         MR. SHEA:  Two or three from the date of opt

7    in.

8         MR. WITTELS:  That's an interesting proposal,

9    then, your Honor, in. --

10         THE COURT:  I have no thought on it.  I'm trying

11    to think about how to slice this pie.  That's one

12    thought.

13         The second thought I had I will ask Attorney

14    Shea's reaction to it.  I'm not looking for final answers

15    today.  The other thought I had is I would ask you and

16    tell me if you think this is a waste of your time.  You

17    are going to have to do it eventually but it is usually

18    the last thing people do.  What if you were to give me

19    the jury interrogatories you think that have to be

20    answered by the jury to resolve the entire case, forget

21    about whether I chopped it into seven stages or did one

22    stage.  At the end of the day this is all the questions

23    the jury has to answer.  Wouldn't that help me to see

24    really what the case is about from the party's point of

25    view?  You might not agree on the interrogatories.  I

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    suspect one side will have 4,000 and the other 400.

2    We'll have the different points of view.  How detailed

3    does an interrogatory have to be but I would at least be

4    able to see what each side thinks the issues are that

5    have to be resolved to get to a judgment.  What's your

6    reaction to that?

7              MR. WITTELS:  Excellent suggestion.

8              THE COURT:  Let's start with you.  How about

9    trying the Rule 23?

10             MR. SHEA:  The first point I want to make with

11   respect to Rule 23 is we would disagree that Connecticut

12   law is the same as federal law.  In fact, our pending

13   summary judgment motion argues that Connecticut law

14   explicitly deletes two of the requirements of the federal

15   exemption.  I want to make sure that's covered.

16             THE COURT:  Okay so that means it is easier for

17   the plaintiff to prove their case.

18             MR. SHEA:  My affirmative defense.  I don't have

19   to show any influence or discipline or personal

20   decisions.

21             THE COURT:  So the plaintiff probably wouldn't

22   want to try Connecticut first for that reason.

23             MR. SHEA:  Perhaps not.  All that tells me would

24   be that if I win on that, which I obviously hope will be

25   the case, then I will have to come back and deal with the

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    federal issues.  Plaintiff would say you defended one

2    from the defense was easier.  And also the other point I

3    would make would be because it is my affirmative defense,

4    in either event, I still believe I should be allowed to

5    go first.

6            THE COURT:  I understand that.  I don't want to

7    argue that.  I have looked at the cases.  I read your

8    papers.  I have a few questions.

9            MR. SHEA:  With respect to interrogatories, I

10   think it is good suggestion.  We have already had I think

11   some substantial discussion about some of those with

12   Special Master Hawkins.  We're scheduled to see him next

13   week to work further on that.  It is clear from the

14   exchanges we had last week, there's very different views

15   as to the questions the jury should be asked.  I think

16   framing that up would likely be a good idea.

17           THE COURT:  I will start with you.  With this

18   new question, that is you referred to the case you had

19   with test plaintiffs.  Could we try this case with test

20   plaintiffs on the FSLA claim and the class action?  Could

21   we accomplish both of those at the same time?

22           MR. SHEA:  Yes, your Honor, I think we could.

23   As a practical matter, since I think one of the few

24   things that Mr. Wittels and I agree on is there's no way

25   in the course of a jury trial we're going to put on

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    evidence with respect to the specific duties of almost
2    200 class members.  That we know is off the table.  So
3    that really means to try this case, we need to focus on a
4    subset of those, and the issues I think are three fold.
5    One, how many; two, how are they selected and three, what
6    questions do we ask a jury about that subset.  Those were
7    the three issues that we teed up in front of -- and I'd
8    say the fourth thing, frankly probably makes both sides
9    nervous serious on this.  If it is still the court's
10   intention to try this case in May, we're very worried
11   about being ready to do that because it's very difficult
12   for either side to prepare for trial until we know what
13   that subset of the 200 is and have identification of the
14   witnesses.  There are over half a million documents
15   produced in this case, a huge amount of date on top of
16   that that needs to be culled, provided and prepared for
17   all of that.  We're frankly running out of time.
18              THE COURT:  Is it your view if we try on some
19   number less than 200, some number less than 200 take the
20   witness stand or have evidence introduced about them,
21   that if you lose on that number, you've got to try the
22   rest of them?
23              MR. SHEA:  My view would be as follows --
24              THE COURT:  So test is not the right word.
25              MR. SHEA:  Here is what my thought is, your

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    Honor.  If with respect to those the jury decides that

2    they were all exempt, then I win.  If the jury decides

3    they are all nonexempt, then I lose.  If the jury reaches

4    a split decision -- last time we were using colors pink

5    and purple.  If some are pink and some are purple, then

6    post-trial we have to decide what to do about that, then

7    you are going to need to take additional evidence.  If I

8    lose them all --

9         THE COURT:  Couldn't we ahead of time let's

10   assume again I don't know enough yet about who the 200

11   are, how many job titles there are for the 200.  Yes,

12   they are all individual people but I have to believe they

13   grow into bunches.  In other words, Mary Smith looks a

14   lot like Jane Jones.  Couldn't we pick the people about

15   whom we're going to try so there's at least one person

16   who is the subject of the jury's answers that would be

17   analogous to all of the others who aren't in this case

18   directly to the jury so that when you get a mixed

19   verdict, you will say you have a defense verdict on these

20   three and they are the red, green and yellow people so

21   anybody who is red, green and yellow before the trial, we

22   agree the plaintiff has agreed that defendant wins on all

23   of those people, not just the three who were the, quote,

24   the representative of them.

25        MR. SHEA:  I think depends how the evidence

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    comes in.  Some cases that won't work.  Let me give you

2    an example.

3           THE COURT:  I don't need an example.  Can I ask

4    plaintiff's counsel what I called test plaintiffs but I

5    don't mean them.  Test cases are tobacco cases decide to

6    try one first on the theory that maybe the rest will go

7    away but if it doesn't resolve, they can still try the

8    second and the 200th and 2000th if they want to.  I mean

9    a sample in effect of plaintiffs who are perhaps

10   representative of the possible ways of looking at these

11   people such that with verdict, with jury interrogatories

12   as to each of those, we could all the rest of them would

13   be resolved.  That's what I mean by test.

14          MR. WITTELS:  I think defendant seized on your

15   use of the word test as support for his argument that he

16   was pushing in front of Judge Hawkins which is one we're

17   completely opposed to.  Let me explain why we're not

18   calling it a test case and then trying it the way just

19   defendant proposed it is probably a memory call to the

20   FSLA rule and what we intend to try to do with the jury.

21   Defendant would like to have a case where he can have

22   special interrogatories and have the jury rule thumbs up

23   or thumbs down as to exempt or nonexempt as to each

24   plaintiff which is not how we envisioned the trial and we

25   were at such logger heads with Judge Hawkins.  In our

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    view, the case should be tried as a class action or

2    representative action under the FSLA.  That means putting

3    forward representative evidence.  Does not have to be

4    statistically significant evidence as we have gone over

5    in our earlier conferences but representative sample as

6    your Honor has proposed it, from a group that we select

7    as the plaintiff's put forth in our evidence.  Could be

8    six, seven, eight, level one with other supporting

9    evidence and other witnesses to show in fact the duty

10   that the witnesses perform are nonexempt duties.  The

11   jury will then decide can infer from the evidence.  They

12   don't have to have all of the plaintiffs testify.  The

13   law is clear.  We have case law and showed Special Master

14   Hawkins that information.  We can show your Honor.  The

15   law allows inferences to be drawn from or the fact finder

16   can draw inferences from this evidence and they can make

17   a determination thumbs up or thumbs down are these people

18   exempt.  Without getting into what Mr. Shea wants and

19   would love to reargue which is let's have individual

20   determinations of each plaintiff which is not how these

21   cases proceed.  They proceed as a class action.  Not how

22   defendants want to pick and choose and say this is not a

23   class action.  They keep pushing the same argument and

24   push it with the Special Master Hawkins and try to slide

25   it in here to try and tell your Honor they should be able

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    to have the juries should thumbs up or thumbs down on

2    each plaintiff.  That's not how it works.  The jury will

3    decide whether they are exempt or nonexempt and the jury

4    whether decide what the damages are on an aggregate

5    basis.

6              THE COURT:  If you want first, what would you be

7    proving?

8              MR. WITTELS:  We need to show that they meet the

9    requirements of the statute which are multiple aspects.

10   We have to show they worked more than 40 hours per week

11   on a regular basis.  We have to show the extent of the

12   hours that, in fact, they were working.  We have to show

13   the type of activities they perform to show that those

14   activities were ones that the employer knew were being

15   performed in the regular course of business and those

16   activities were nonexempt duties.  The jury has to

17   understand this is not de minimis work, not as the

18   stipulation the defendant proposed if they worked one

19   hour a week.  At some point, one hour a year overtime.

20   But the fact that work performed was not de minimis in

21   terms of the overtime hours.

22             THE COURT:  Where does the requirement of

23   proving not de minimis come in?  Does that go to the

24   element of willfulness to extend your damages?

25             MR. WITTELS:  I believe it is willfulness.  I

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1  think if it was only one hour in the entire year, one can

2  feel on liability that really this is not a case where we

3  met the threshold.  That's all the defendant is willing

4  to stipulate to one hour.  That they worked overtime

5  without any specificity.  We have to meet those elements

6  and to show willfulness, we have to show the employer

7  knew that in fact these activities were being performed.

8  This involves thorough examination and presentation.  We

9  can't be put in the situation just trying to rebut his

10  evidence.  Not to get into that argument but the point is

11  we would strongly object to the defendant's attempt to

12  cast us as a one-on-one with a limited number of

13  plaintiffs selected by the parties.  We intend to select

14  our parties as in any case, as any jury trial occurs, we

15  select who want to present, put them on.  If your Honor

16  wants to put time limitations on.  That's what Judge

17  McMahon did in the federal case, the Vargas case, where

18  we had 5600 people.  We put on I would say 13 plaintiffs

19  and there were other experts that came forward.  We did

20  it in a month.  We can do it here in a month or less.  I

21  don't envision more than two weeks to put on our case.

22  We're open to time limits.  The defendant wants to call

23  100 witnesses in a week, let him do so but the point is

24  they can be representative and the jury can infer from

25  the testimony that, in fact, damages were warranted on an

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    entire basis and the reason for it is in an FSLA case or

2    wage-an-hour case under Rule 23, the defendant has to

3    have the record.  There's no way to have perfect justice.

4              THE COURT:  The Vargas case with Judge McMahon

5    was FSLA?

6              MR. WITTELS:  No.  Title VII.  To again to prove

7    it on a class basis, we had to have representative

8    testimony.

9              THE COURT:  That was a Rule 23 class?

10              MR. WITTELS:  Yes.

11              THE COURT:  I'm not deciding anything.  I can

12    say go ahead and respond.  I have already heard you

13    partly on what the issue is.  I read your brief and I'm

14    not deciding it today anyway.  If you don't mind, I will

15    end it.  I'm not resolving anything.  One thought that I

16    had that is Attorney Hawkins had suggested might be

17    helpful.  I haven't made up of my mind.  I want to ask if

18    you have any objection.  You may think this is what he

19    is.  Whether I appoint him as a special master so he can

20    make a recommendation to me.  In other words, it is not

21    informal.  It is better I suppose in the sense it is

22    known to you what he's saying and representing then you

23    get to respond to it.  Right now he was a bit frustrated

24    with the situation that he was in with you folks trying

25    to address the issues so I guess and I'm not sure I will

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1   do this.  I may decide I will manage it.  I don't know if

2   I will do that.  But that is still a possibility in my

3   own mind which is one of the reasons I don't want to get

4   into the issues today but if I decide to go the route

5   because of my criminal schedule which is rather busy if I

6   don't get to this soon.  Does anyone have an objection to

7   my appointing Attorney Hawkins with the title of Special

8   Master.  I don't intend at this point to look to the

9   parties to compensate him.  He does this pro bono for the

10  court.  He should be given a Medal of Valor in my opinion

11  but at least at this point, I'm not.  I'm not looking for

12  it to be a Special Master.  So does anybody object if I

13  were to do that?  Again I haven't decided if I were to

14  continue to look and rely upon him to try to tease these

15  issues out with you folks and come up with a

16  recommendation based on his conversations with you and

17  whatever briefing you did to him.  Is there any objection

18  to my appointing him as a Special Master?

19          MR. WITTELS:  Your Honor, I haven't thought

20  about it.  Can we have a day to think about it?

21          MR. SHEA:  Your Honor, I have one particular

22  question.  If he makes a recommendation as a Special

23  Master how the trial should be conducted, are those

24  subject to de novo review by the court?

25          THE COURT:  Yes, I guess.  I would view them as

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    his sort of considered opinion.  You would know what they

2    are and we then decide what we're going to do with them I

3    guess.  That's why I'm not sure this makes sense whether

4    I should do the heavy lifting myself because I will

5    understand the issues better but I just -- there's only

6    so many hours in the day so I'm not certain that I can do

7    it in this case.  In case I decide to do it, I want to

8    raise it.  If you want to let me know, there's no

9    emergency or rush to it.

10           The question came up about the trial of this

11   case in May.  I expect I haven't picked up the summary

12   judgment but it is next on my list.  I expect that that

13   decision will come out hopefully in the not too distant

14   future so that resolves one before trial issues.  At this

15   point I cannot say to you when we're going to try this

16   case.  I'm hopeful we're going to do it in May but I'm

17   not releasing you yet.  I'm sorry if that's creating a

18   problem with your schedule.  Look at it this way.  You

19   will have a nice vacation if we don't get to it.  I have

20   some problems.  Not only the problems mentioned by

21   Attorney Shea.  That's because we haven't focused the

22   case enough.  That's a problem I suppose for counsel to

23   get ready but I'm not.  That doesn't bother me.  What

24   bothers me is that I have three major criminal cases all

25   obviously which should have been tried already due to the

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    government indicting, superseding indictment and second

2    superseding indictmenting in two of them, which prevented

3    the trial of those two in October and again in November

4    and again in January.  Those have to be tried before the

5    summer and then I have a complex mortgage, bank fraud

6    case which also has been scheduled several times.  The

7    defense counsel availability is very limited.  She's a

8    very popular lawyer.  A week before that was supposed to

9    be tried, she got kidney stones and hospitalized.  So

10   that went over to a February trial.  If those all go, I

11   can't try yours but again they were supposed to go four

12   times already and they didn't so I have not given up that

13   I can get yours tried but I think in fairness to you

14   folks, I have to focus on how we're going to try it.  I

15   hope to do that in the not too distant future.  I know

16   I'm going to talk to Attorney Hawkins.  Probably after

17   that conversation, I will speak with him and I will make

18   some judgments about how I want to decide how to go

19   forward.

20           MR. WITTELS:  May I be heard briefly what

21   concerns us, not the court's.  The court's schedule

22   obviously concerns us because we were targeting the May

23   date.  In trying to work with Attorney Hawkins, we were

24   really at, you know, the end of a two-hour session,

25   unable to go forward without having the bifurcation and

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    order of proof issue resolved so I'm not sure where we

2    come back to discuss with him where we go.

3            THE COURT:  I may solve that for you.

4            MR. WITTELS:  The second part if it doesn't go

5    in May, your Honor mentioned the other three trials,

6    obviously they were put over quite a while.  We, from the

7    plaintiff's perspective, are rearing to go if your Honor

8    wanted to.  Didn't want to see us forever.

9            THE COURT:  It was my oldest case.  You have

10   been saved from the ignominy.  A multi-district judge

11   decided to send a 10-year-old case back to me that still

12   needs a year of discovery so you are no longer the oldest

13   case.

14           Listening to Attorney Shea, I'm thinking maybe I

15   should let you sit and ripen another six, seven, eight

16   years, then you will go take care of it on your own.  I

17   like that approach.  I'm being a facetious.

18           MR. WITTELS:  If I doesn't go in May, does that

19   mean we're on call for June and July?

20           THE COURT:  I think in a case like this, it is

21   not fair to put you on call too many times.  In effect,

22   you are basically on call for May because the criminal

23   has to come ahead of civil because of the Speedy Trial

24   Act problems.  And I'm not going to get more waivers

25   unless somebody gets sick or one of the defense lawyers

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1    gets indicted which is another reason why that case has

2    been continued which might happen.  I have had such bad

3    luck.  It is unbelievable with the criminal docket but

4    anyway I would seek to give you another date certain

5    which I think once I get through -- the problem if these

6    criminal cases don't go for some reason, they roll over

7    to when I would put you.  It is not easy scheduling but

8    as I say, I would like to get off the bench.  I have a

9    sentencing at 11:30, then a three-hour argument in

10   another case.  I have to be out of the district in the

11   beginning of next week.  When I return to focus on this

12   case and direction through Attorney Hawkins or myself.  I

13   will give him some direction if he's going to take the

14   lead as to my thoughts.  I will know by the 15th.  I will

15   still be in Washington at a judicial conference on the

16   15th so it will be after that I will probably consult

17   with Attorney Hawkins.  See if he got anywhere with you

18   folks.  If not, then sit down and decide what I want to

19   do.  I have the motion to seal.  I'm advised I mentioned

20   that when I came out on the bench.  I didn't.  I guess

21   you wanted to seal the Memorandum of Law.  Has it been

22   sealed already?  I didn't have a copy in front of me on

23   the bench.  Plaintiff's Memorandum of Law in Support of

24   Plaintiff's motion To file A Sealed Response.  Motion to

25   file a sealed response.

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)

1          MR. WITTELS:  If it's been served on the

2     defendants, I see no point on sealing that.

3          THE COURT:  That motion is denied 314 and 304

4     was granted.

5          MR. WITTELS:  So your Honor knows we also as

6     part of the summary judgment.

7          THE COURT:  I just saw that motion.  I will take

8     it up at the time that I address the summary judgment

9     motion.  We'll stand in recess.

10          (Whereupon, the above hearing adjourned at 11:36

11     a.m.)

12

13

14     COURT REPORTER'S TRANSCRIPT CERTIFICATE

15     I hereby certify that the within and foregoing is a true

16     and correct transcript taken from the proceedings in the

17     above-entitled matter.

18

19     /s/  Terri Fidanza

20     Terri Fidanza, RPR

21     Official Court Reporter

22

23

24

25

You created this PDF from an application that is not licensed to print to novaPDF printer (http://www.novapdf.com)