# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | ) ) ) |
| **Individually and on Behalf of Others Similarly Situated,** | ) No: 3:07CV967 (JCH) ) ) |
| **PLAINTIFFS,** | ) CLASS PLAINTIFFS' PROPOSED ) TRIAL PLAN ) |
| **v.** | ) ) ) |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | ) ) ) |
| **DEFENDANT.** | ) ) |

# **TABLE OF CONTENTS**

*Page*

INTRODUCTION ..........................................................................................................................1

I. Overview as to Why the Court Should Order that Plaintiffs Present Their Case First to the Jury in a Non-Bifurcated Case on All Issues of Liability and Damages ...............................................................................................................1

    1. The Trial Should Proceed in a Single Liability and Damages Phase Without Bifurcation ...........................................................2

    2. The Case Should Proceed Under the Standard Order of Proof – Plaintiffs Go First ...........................................................................4

    3. The Case Should Be Tried With A Single Class; Sub-Classing is not Warranted ..........................................................................7

    4. The Jury Should Return a Single Liability and Damages Verdict as to the Entire Class Based on the Representative and Common Proof to be Elicited at Trial ....................................................8

        a. The Jury Should Return a Single Liability Verdict; SNET's Position that Individual Liability Verdicts or Interrogatories Are Required is Baseless ..................................10

        b. The Jury Should Return a Single Damages Verdict based on Class-Wide Proof; SNET's Position that Damages Cannot be Determined in a Collective Proceeding is Erroneous as a Matter of Law ................................11

II. Plaintiffs' Proposal Regarding Witnesses and Presentation of Evidence .........................13

III. Plaintiffs' Proposed Jury Instructions ...............................................................................14

IV. Questions Remaining for the Court if the Jury Returns a Verdict for the Plaintiffs ..............................................................................................................................14

CONCLUSION ............................................................................................................................15

## **INTRODUCTION**

I. **OVERVIEW AS TO WHY THE COURT SHOULD ORDER THAT PLAINTIFFS PRESENT THEIR CASE FIRST TO THE JURY IN A NON-BIFURCATED TRIAL ON ALL ISSUES OF LIABILITY AND DAMAGES**

In every wage and hour class or collective action where damages were disputed and the case proceeded to trial[1] the Plaintiff-employees presented their evidence first. Moreover, the parties used representative evidence, and the jury was asked to decide on a **class** and/or **collective** action basis whether the employees were non-exempt and entitled to overtime pay. Most assuredly, the jury did not make separate determinations on each individual employees' exempt or non-exempt status.

Notwithstanding this overwhelming precedent, SNET continues to press for individual mini-trials in its seemingly never-ending quest to skirt around this Court's November 2009 ruling certifying this case as a class and collective action. Accordingly, as directed by the Court's para-judicial officer, James Hawkins, Plaintiffs and the Level One Field Manager Class ("Level Ones" or "L1's") hereby set forth their proposed Trial Plan for a *class* trial that accords with precedent and this Court's pre-trial directives.

Plaintiffs' plan for a single class trial is founded on several building blocks:

(1) all jury questions (liability and damages) should be decided in one proceeding (no bifurcation);

(2) evidence should be presented in the standard order of proof (Plaintiffs go first);

(3) subclassing is unnecessary; and

(4) this certified litigation should be adjudicated on a class-wide basis with a single liability and damages verdict as to the entire class, through the use of representative and common proof.

At the recent meetings with Mr. Hawkins, the parties agreed that each side would call a maximum of 10-15 Level One Field Managers, along with other certain other SNET witnesses. Plaintiffs intend to call Level Ones to describe their work duties and long hours so that the jury can

---

[1] (of which we are aware)

determine whether the Level Ones lack the requisite managerial attributes and therefore are entitled to premium overtime compensation. As part of its deliberations, the jury would necessarily have to consider the amount of hours these employees work, as well as the type of work the Level Ones perform. Thus, the Level Ones' testimony is inextricably tied both to liability and damages issues, and this warrants a one-time presentation to the jury in a unified trial.

Our Trial Plan sets forth a framework for presentation of witnesses and evidence that will result in streamlined and straightforward jury questions on liability and damages. We also include suggested verdict questions for the jury so that the Court can appreciate how the jury will be asked to resolve the case on a class-wide basis.

**(1)** **The Trial Should Proceed in a Single Liability and Damages Phase Without Bifurcation**

In this case, the Court ordered non-bifurcated discovery with the presumption that the case will proceed to a trial "on all issues in one step." (Pretrial Conference Transcript before J. Hall on April 5, 2010, p. 62, Ex. A). All discovery – including extensive damages discovery - is now complete and the case is ready for the efficient resolution contemplated by the Court in one trial on both liability and damages. SNET's proposal to bifurcate the trial into liability and damages phases should be denied. The law favors a single, non-bifurcated trial.

Case law establishes that bifurcation is the exception, not the rule; the party seeking bifurcation must show it will result in "substantial benefits." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004); *Lewis v. City of New York*, 689 F. Supp.2d 417, 428-29 (E.D.N.Y. 2010). *See also*, *e.g.*, *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) (movant has burden to demonstrate that judicial economy would be served and that no party would be prejudiced by separate trials; bifurcation should **not** be ordered unless "clearly necessary"); *Argue v. David Davis Enters.*, 2008 U.S. Dist. LEXIS 11416, at *3 (E.D. Pa. 2008) (denying motion "[b]ecause no

compelling reason has been presented as to why bifurcation is necessary or beneficial").

To determine whether a movant has met its burden, "courts generally consider… three factors: '1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.'" *Computer Assocs. Int'l Inc., v. Simple.com*, 247 F.R.D. 63, 67 (E.D.N.Y 2007); *Weddingchannel.com Inc. v. The Knot, Inc*., 2004 U.S. Dist. LEXIS 25749, at *3 (S.D.N.Y. 2004). *See also Svege*, 329 F. Supp.2d at 284-85 (considering whether bifurcation needed to avoid prejudice, produce economies, and reduce confusion). Notwithstanding a court's discretion, the Third Circuit has "condemned the…practice of bifurcating trials as a general rule." *Barr Labs., Inc. v. Abbott Labs.*,978 F.2d 98, 115 (3d Cir. 1992) (citing *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824-25 (3d Cir. 1978)).

Here, damages evidence consists primarily of testimony from the same witnesses who will testify on liability and involves no unusually complex calculations. *See Real*, 195 F.R.D. at 621, 622. In recognition of the considerable overlap of witnesses and evidence, SNET has recently agreed (in the interest of efficiency) that the witnesses be permitted to testify as to damages issues – such as their hours – in the liability phase. This evidence is already admissible on liability, particularly because the class members' percentage of hours performing various tasks is essential to a determination of whether their "primary duty 'is' management." And, SNET's knowledge of the excessive hours worked by its employees is relevant to the question of "willfulness," which is material to both liability and damages. Under the FLSA, the statute of limitations is extended from two to three years if a violation is willful. This distinction will determine the scope of SNET's liability and to which L1s it is liable.

Once the L1s testify as to their hours worked and the tasks performed during those hours, this would leave only a small amount of evidence remaining for the damages trial: one or two days of expert testimony calculating class damages. It makes no sense to have the jury hear nearly all the

evidence, render a verdict, and then start a new damages trial.[2]  By retreating from its earlier position that damages evidence must be reserved for a separate trial, SNET only undermines bifurcation.[3]  In similar misclassification cases, courts have denied bifurcation.  *See Rodriguez v. Farm Stores Grocery, Inc.*, No. 1:02-cv-22451-JMM (S.D. Fla. Jan. 18, 2005)(Ex. B); *Puchalski v. Taco Bell Corp.*, No. GIC 870429, at *5 (Cal. Super. Oct. 28, 2010) (Ex. C); *Stillman v. Staples*, No. 2:07-cv-849-PS (D.N.J. Dec. 15, 2008) (Ex. D);[4] *Lopez v. UPS, Inc.*, No. 3:08-cv-5396-SI (N.D. Cal. Mar. 1, 2010) (Ex. E).[5]

In sum, no "extenuating circumstances" warrant bifurcation.  *Real*, 195 F.R.D. at 621, 622.  As *Real* noted, bifurcation is never the default: "A single trial generally tends to lessen the delay, expense, and inconvenience to all concerned, which is why separate cases are the exception."  *Id*. at 624.  *See also* Ex. A, indicating Court's reluctance to bifurcate proceedings.  SNET has presented and can offer nothing "compelling" to alter this presumption.  *Argue*, 2008 U.S. Dist. LEXIS 11416, at *3.  The only "benefits" of bifurcation are delay and confusion, and to serve as a Trojan horse for SNET's real objective – to reverse the order of proof and be able to present its evidence first.

**(2)     The Case Should Proceed Under the Standard Order of Proof- Plaintiffs Go First**

In this case, Plaintiffs seek affirmative relief in the form of a verdict declaring that SNET has improperly classified them as exempt and awarding damages.  While SNET technically bears the burden of proof on the administrative and executive exemptions, as a practical reality, Plaintiffs begin the game behind the eight ball.  Class members bear the company-bestowed title "First Level Manager."  Labels are powerful.  In the eyes of a lay jury, SNET's "manager" label is likely to carry

---

[2] This is particularly so when this Court already rejected the bifurcation of damages plan in April 2010 and both sides expended enormous time and money in producing expert witness reports and deposition testimony on damages.

[3] Assuming the same jury, bifurcation would require some refresher for the jury in the "to be continued" damages phase – as well as an additional round of opening and closing arguments, jury instructions, motion practice, and deliberations.

[4] In *Stillman*, defendant argued that bifurcation was warranted because the damages phase would require individual mini-trials for each opt-in. The court rejected this contention, finding that well-established law supported the use of representative testimony to prove both liability and damages for the entire class. (*See*, infra at pgs. 8-9)

[5] *See also* Ex. F, *Morgan v. Family Dollar Stores Inc*., No. 7:01-cv-303-UWC (N.D. Ala.), Doc. 493 (Verdict Form showing no bifurcation), Doc. 384 (Pretrial Order, p. 4, showing deft had argued for bifurcation).

some weight on whether Plaintiffs' duties are managerial in nature.[6] Plaintiffs claim that their title is a misnomer, and they must be able to present their stories, describe their duties, and persuade the jury that they are not real managers.

Nevertheless, SNET keeps pushing for the chance to put on its affirmative case first and to have the final opportunity for rebuttal. This request is premised on: (1) its proposal for bifurcation; (2) its reliance on the exemptions as affirmative defenses; and (3) its willingness to concede that the class members each worked at least one minute of unpaid overtime. SNET thus asserts that the liability phase turns solely on the issue of whether the Level Ones were properly classified. However, plaintiffs customarily proceed first, even where an affirmative defense plays a central role in the case. Where, as here, Plaintiffs continue to have the burden of proof on at least some aspects of the case, there is nothing to challenge the strong presumption of plaintiff priority.

Even with SNET's "concessions," the Plaintiffs continue to bear the burden of proof on key elements of their claims such as willfulness (for the FLSA statute of limitations) and damages. They have the burden of proving their hours worked and compensation due – which also includes showing that their unpaid overtime is compensable and not *de minimis*, and that the time they are on-call during a duty shift constitutes work performed for the benefit of SNET. In such situations, courts in wage and hour cases have declined to reverse the order of proof. *See*, *e.g*., *Stillman v. Staples*, No. 2:07-cv-849-PS (D.N.J. Dec. 15, 2008) (Ex. G, at 6-7);[7] *Rodriguez v. Farm Stores Grocery, Inc.*, No. 1:02-cv-22451-JMM (S.D. Fla. Jan. 18, 2005) (Ex. B); *Lopez v. UPS, Inc.*, No. 3:08-cv-5396-SI (N.D. Cal. Mar. 1, 2010) (Ex. E); *Roussell v. Brinker Int'l, Inc.*, 2009 U.S. Dist. LEXIS 17142, at *11, 14 (S.D.

---

[6]*Cf*. Montcrieffe and Eyben, eds., *The Power of Labeling: How People Are Characterized and Why it Matters* (2007).
[7] "Moreover," the Staples court stated, "there's no rule or law that prevents a party who received a stipulation on a fact from presenting evidence that also supports the same fact." Evidence regarding the tasks Plaintiffs performed and the amount of time spent on each one is highly relevant to their case in chief. *Id*. at 7.

Tex. Mar. 6, 2009)(declining to reconsider Mar. 4 oral order), (Ex. H, Doc. 216, at 8-11, oral order).[8, 9]

These cases embody the prevailing rule that if there are multiple issues and competing burdens of proof, plaintiffs should open and close the evidence. *See, e.g.*, *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996); *L-3 Commc'ns Corp. v. OSI Sys.*, 418 F. Supp.2d 380, 383 (S.D.N.Y. 2005); *Am. Home Assurance Co. v. Merck & Co.*, 462 F. Supp.2d 435, 442 (S.D.N.Y. 2006);*Starter Corp. v. Converse, Inc.*, 1996 U.S. Dist. LEXIS 17892, at *5-7 (indicating that court will only reverse order of proof if defendant makes factual concessions under which it bears the "sole burden of proof"); *Nucor v. J. Baker & Assocs.*, 2009 U.S. Dist. LEXIS 107451, at *10-11 (E.D. Ark. Nov. 17, 2009); *Employers Mut. Cas. Co. v. Maya,* 2004 U.S. Dist. LEXIS 24811, at *5 (N.D. Tex. Dec. 9, 2004) ("Absent a showing that the plaintiff no longer bears the burden of proof, a court will not normally realign the parties and place the plaintiff on the defense side.").[10]  Ordinarily, a court will only reverse the order of proof where defendant has the *sole* burden of proof in the case.[11]

Here, reversing the order of proof "will not advance any efficiency rationale or make the presentation of the evidence clearer for the jury." *L-3 Commc'ns*, 418 F. Supp.2d at 383.  Rather than breaking up the trial into disjointed segments where Plaintiffs are cross-examined by their own counsel, it would make sense to allow them to present a coherent and unified narrative about their jobs, describe

---

[8] In *Roussell*, defendant argued it bore the burden of proof on its affirmative defense, the "principal issue" in the case.  (Ex. G, at 8)  The court rejected defendant's motion to reverse the order of proof, finding that "the plaintiffs have understandably been assuming that they're going to go first. **That's the way most cases go down, and I haven't heard enough to cause me to disturb that.** I'm going to let them go first."  (*Id*. at 11)

[9] *See also Morgan v. Family Dollar Stores*, No. 7:01-cv-303-UWC (N.D. Ala. Feb. 6, 2006) (Ex. I, Supplemental Pretrial Order: "In the presentation of their testimonial evidence, class counsel shall anticipate the Defendant's affirmative defense").

[10] *See also Ericsson, Inc. v. Harris Corp.,* 1999 U.S. Dist. LEXIS 12549, at *9-10 (N.D. Tex. Aug. 11, 1999) ("It is elemental that the party who files a lawsuit is designated as the plaintiff... A court normally will not realign the parties from their original designations unless the plaintiff no longer retains the burden to prove at least one of its claims or if subsequent events in the case significantly shift the ultimate burden of proof..."); *Litton Sys. v. VHS, Inc.*, 1998 U.S. Dist. LEXIS 10305, at *4-5 (N.D. Tex. July 9, 1998) (declining to realign parties where plaintiff had burden on one aspect of case).

[11] SNET has cited three wage and hour cases where courts have exercised their discretion to reverse the usual order of trial proceedings.  None of these provide any support to justify a reversal here; the circumstances in those cases align with the general rule that reversal is only warranted where defendant has the sole burden of proof.  In fact, the vast majority of trials in overtime cases proceed by the standard order of proof – Plaintiffs, then Defendant.  (*See* attached chart, Ex. J, summarizing order of proof in misclassification and other overtime cases where defendant bears a key burden of proof).

6

their duties and hours, and explain how they are overworked without compensation and why – contrary to their titles – they are not really managers. SNET will have ample opportunity to put on its case.

### (3) The Case Should Be Tried With a Single Class; Sub-Classing is Not Warranted

In its decision on collective and class action certification, the Court certified a single class of SNET Level One Managers. *See Perkins v. S. New Eng. Tel.*, 669 F.Supp.2d 212 (D. Conn. 2009). Despite some minor distinctions in duties among SNET Plaintiffs, (namely in the way work is assigned to technicians in the Construction & Engineering department, *see* 669 F.Supp.2d at 221 n.5), the Court concluded that the class members were all "similarly situated" under the FLSA and that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) were satisfied.[12] The Court did not suggest that subclasses were necessary in order to proceed with a class trial.

The certified class consists of SNET Field Managers – L1s in two titles (Manager Network Services, Manager Construction & Engineering) with technicians in seven specific titles assigned to them. However, SNET continues to assert that class members serve in "three separate job functions" and has asserted that separate trials and/or verdicts may be necessary. Plaintiffs maintain (1) that the nomenclature of "separate job functions" is inaccurate and misleading and (2) that the Court's November 2009 certification decision stands intact. Sub-classing is unnecessary.

Trial evidence will show that the class members do not have "three separate job functions." Rather, Field Managers work in three subunits of the company – Core Installation & Maintenance, U-verse, and Construction & Engineering – but share the same basic duties and functions, and are regarded as interchangeable. The work performed by the technicians and the technology used differs, but the Level One Managers' jobs remain essentially the same – as prescribed by company policies,

---

[12] For example: "the evidence before the court demonstrates that the plaintiffs are similarly situated in job duties and in the way they are classified as exempt under FLSA by SNET," *id.* at 223; and: "the court is persuaded by a preponderance of the evidence that, despite some dissimilarities, the potential class members performed similar non-exempt duties, and exercised similar amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification." *Id.* at 225. The Court thus "conclude[d]that the "proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.*

procedures, and systems. Class members in Core I & M and U-verse share the same job title and job description. Field Managers routinely move between the three subunits with ease. Any small variance between the Managers in the two titles does not affect collective and class adjudication; the class members need only be "similarly situated," not "identical."[13]

### (4) The Jury Should Return a Single Liability and Damages Verdict as to the Entire Class Based on the Representative and Common Proof to Be Elicited at Trial

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court clearly articulated the purpose of a collective action:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

*See also*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008)("One of the purposes of trying several overtime pay claims in a collective action is to avoid the inefficiencies of conducting multiple individual trials on the same factual and legal issues."); *O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829 at *12 (S.D. Cal. June 17, 2008) (class action justified "because individual claims offer no more than the prospect of random and fragmentary enforcement of the employer's legal obligation to pay overtime").

Consistent with these purposes, wage and hour collective and class actions are typically tried on representative testimony and other common proof, both on liability and damages. *See*, *e.g.*, *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997) (testimony from 39 of 1,500 class members sufficient); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1279 (11th Cir. 2008) ("general rule that not all employees have to testify in order to prove overtime violations" and that "employees who perform substantially similar work may testify on behalf of their counterparts");[14]

---

[13] Nevertheless, Plaintiffs intend to elicit testimony from each of the three subunits. Strict proportionality is not mandated.
[14] In *Morgan*, the court found testimony from seven of over 1,400 "managers" and other common proof sufficient evidence for a class verdict in a misclassification case: "We reject Family Dollar's argument that the executive exemption defense is so

8

*United States Dep't of Labor v. Cole Enters.*, 62 F.3d 775, 781 (6th Cir. 1995) ("testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-702 (3d Cir. 1994)("Courts commonly allow representative employees to prove violations with respect to all employees… not all employees need to testify in order to prove the violations or to recoup back wages."); *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050 (8th Cir. 1992); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991) ("well established that not all employees need testify in order to prove the violations or to recoup back wages… the Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof"); *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Donovan v. Bel-Loc Diner,* 780 F.2d 1113, 1116 (4th Cir.1985); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83 (10th Cir. 1983); *Donovan v. Burger King Corp.,* 672 F.2d 221, 224-25 (1st Cir. 1982) (testimony of six employees, with stipulations from 20 others, found to support award to 246 employees at 44 restaurants in misclassification case).[15]

---

individualized that the testifying Plaintiffs did not fairly represent the non-testifying Plaintiffs. For the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representatives of one another." *Id*. at 1280.

[15]*See also*, *e.g.*, *Dilts v. Penske Logistics LLC*, 267 F.R.D. 625, 637-38 (S.D.Cal. 2010)(statistical sampling and representative testimony acceptable methods of proof on liability and damages); *Stillman v. Staples*, 2009 WL 1437817, at *17-20 (D.N.J. May 15, 2009) (testimony from 13 of 342 opt-ins sufficient in misclassification case); *Roussell v. Brinker Int'l, Inc.*, 2009 U.S. Dist. LEXIS 94890, at *7-10 (S.D. Tex. Apr. 29, 2009); *Wilson v. Guardian Angel Nursing, Inc.*, 2009 U.S. Dist. LEXIS 26126, at *14-15 (M.D. Tenn. Mar. 24, 2009)("relevant question" on certification inquiry is the propriety of a "collective merits determination" – ie. "is this a case in which the legally significant facts across plaintiffs are sufficiently similar as to permit fair adjudication as to all plaintiffs on the basis of the representative evidence of a few?"); *Fast v. Applebee's Int'l, Inc.*, 2009 WL 2391921, at *1 (W.D. Mo. Aug. 3, 2009) ("As to due process concerns, representative testimony is contemplated by the FLSA and Applebee's can defend with representative testimony just as Plaintiffs can seek to prove their claims with representative testimony."); *Falcon v. Starbucks*, 580 F.Supp.2d 528, 540-41 (S.D. Tex. 2008) (permitting representative testimony over individual "mini-trials"; due process served by finding class members' claims substantially similar); *Epps v Oak Street Mortgage LLC*, 2006 WL 1460273, at *7 (M.D. Fla. 2006) ("Based on the Court's determination that the Plaintiff and opt-in Plaintiffs, who were classified as exempt, are similarly situated, the exemption defense can be addressed collectively."); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 265 (D. Conn. 2002) (certifying misclassification case as "plaintiffs have established that their claims may be supported by generalized proof"); *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 272 (S.D.N.Y. 2000) (permissible to extrapolate damages from "pattern and practice" evidence); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812, 822-26 (D.N.J. 1989) (award to 393 employees justified based on testimony of 43 witnesses); *National Electro-Coatings, Inc. v. Brock*, 1988 WL 125784, at *8 (N.D. Ohio July 13, 1988) ("Courts have consistently allowed, or required, a small number of employees to testify to establish a pattern of violations for a larger number of workers."); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 746-752 (2004).

### (a) *The Jury Should Return a Single Liability Verdict; SNET's Position that Individual Liability Verdicts or Interrogatories Are Required is Baseless*

Under the above precedent, a class-wide liability verdict is warranted. This case is certified as a collective and class action. At the most basic level, the inquiry involved in a certification decision is whether it would be expedient and fair to try a case by common adjudication. *See*, *e.g.*, *Wilson*, cited supra n.14. By finding the class members similarly situated with regard to the classification inquiry and certifying the class under both § 216(b) and Rule 23, the Court has recognized that SNET's exemption defense can be addressed collectively by representative evidence and other common proof. *See* nn. 11, 14, supra; *Stillman v. Staples*, 2009 WL 1437817, at *19 (D.N.J. May 15, 2009)("the testifying plaintiffs are similarly situated to the non-testifying plaintiffs and hence their testimony is representative"). At the end of the trial, the Court will decide any decertification motion and reevaluate whether the evidence supports a collective determination of Plaintiffs' claims. If the Court finds the class members' jobs sufficiently similar to be decided on a class basis, SNET does not get another bite at the apple by putting each individual L1's exemption status to the jury. Rather, the jury must decide the class' exemption status **as a whole**. *See id.*; *Puchalski* (Ex. C, at 3-4). *See also*, *e.g.*, *Morgan v. Family Dollar Stores, Inc.*, No. 7:01-cv-303-UWC (N.D. Ala. June 28, 2005) (Ex. F, Verdict Form, posing single, class-wide liability and damages questions in executive exemption case).

SNET, however, asserts that the jury should return individual liability verdicts or special interrogatories for each of the testifying witnesses. Apparently, SNET believes that if there is even one defense verdict the case must be decertified.[16] This is contrary to the way collective and class actions work and would defeat the substantial benefits of collective and class procedures. SNET's opposition to representative adjudication is futile and its attempt to transform this case into a collection of mini-

---

[16] It remains to be seen whether SNET would concede that a unanimous Plaintiffs' verdict would extend to the entire class.

10

trials must be rejected.[17]

In balancing due process concerns in its class certification decision, the Court has concluded that the differences between the class members are too insignificant to prevent collective adjudication and require individualized verdicts. If SNET seeks to decertify the class, it must do so directly. It cannot divide this action into a series of mini-trials in the hopes of getting at least one verdict in its favor. SNET's demand for individual verdicts turns the law on its head; under R. 23(b)(3), class treatment is superior to individual litigation when it "eliminates the risk that the question of law common to the class will be decided differently in each lawsuit." *Scott v. Aetna Servs.*, 210 F.R.D. 261, 268 (D. Conn. 2002). SNET seeks exactly what a class action is designed to prevent: disparate decisions on common issues – here, as in *Scott*, the class members' classification status.[18]

### (b) *The Jury Should Return a Single Damages Verdict Based on Class-Wide Proof; SNET's Position that Damages Cannot be Determined in a Collective Proceeding is Erroneous as a Matter of Law*

It is firmly established that where the employer has failed to maintain accurate time records, class damages may be approximated based on a reasonable inference from the evidence; and the defendant has no cause to complain that the calculation is imprecise. *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946); *Reich v. SNET*, 121 F.3d at 66-70; *Tony & Susan Alamo*

---

[17] SNET's contention that its rights would be violated by common adjudication is little more than a challenge to collective and class action procedures themselves. Yet SNET does not deign to argue that § 216(b) or Rule 23 are unconstitutional.

[18] Like the mini-trials and individual verdicts proposed by SNET, any procedure to conduct individual "test cases" (or, "sample trials") in advance of or instead of a class trial would be inefficient, and contrary to the Court's certification decision and the purposes and benefits of collective and class actions. Each test case would involve repetition of much of the common proof applicable to the class. There is no indication that sample trials would be likely to facilitate settlement. It would be difficult for the parties even to agree as to which Plaintiff should be the first test case, second, third… and so forth.

The court should not adopt a "test case" procedure. A judge "can encourage parties to stipulate to a test case approach," David F. Kerr, Annotated Manual for Complex Litigation § 21.5, at 478 (4th ed. 2010), but there appears to be nothing allowing a judge to mandate a test case procedure in a certified class case. Furthermore, in certifying the class, the Court has already considered whether "a class action is superior to other available methods." Fed. R. Civ. P. 23(b)(3). The appropriate forum for discussing "test cases" was in the class motion. In that context, numerous courts have found a class action superior to a test case alternative. *See*, *e.g.*, *Lumco Indus., Inc. v. Jeld-Wen, Inc.*, 171 F.R.D. 168, 175 (E.D. Pa. 1997)(class action would be more "fair and efficient" than test cases); *In re First Interregional Equity Corp.*, 227 B.R. 358, 370 (Bankr. D.N.J. 1998) ("If the Court adopted the proposal to try several 'test cases' rather than the single class action, the costs incurred could be higher to all parties and the court's docket would become more crowded.")

*Found.*, 952 F.2d at 1052; *Selker Bros., Inc.*, 949 F.2d at 1297-98; *McLaughlin*, 850 F.2d at 589; *Simmons Petroleum*, 725 F.2d at 85-86; *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 746-752 (2004) (aggregate damages can be determined through logical inference, including by statistical sampling).[19] Here, Plaintiffs intend to meet their burden under *Mt. Clemens* by using representative testimony and evidence, company data and documents, surveys performed by the company regarding its Field Managers' typical work hours, statistical analysis, and expert computations. From this evidence, the jury will be able to reasonably infer the damages to the class.

If the jury returns an award, the damages can be easily apportioned between the class members as a ministerial matter without requiring almost 200 separate damages verdicts. Plaintiffs' expert has computed both individual and class-wide damages using several estimates of the class members' average working hours as well as their individual rates of pay and number of weeks in the class.[20] Once the jury arrives at an overall figure, it is a straightforward arithmetical matter to divide up the lump sum award on a proportional basis.

This procedure is efficient and amply supported by precedent. The fact-finder is permitted to extrapolate the class' damages from representative evidence, and Courts have often sanctioned the derivation of aggregate figures through averaging. *See*, *e.g.*, *Wang v. Chinese Daily News, Inc.*, 2008 U.S. Dist. LEXIS 82538, at *6-8, 13-16 (C.D. Cal. Feb. 27, 2008)(use of ratios expanding limited data to larger class); *Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037, 1049 (S.D.N.Y. 1993)(in-store and across-store averaging), *rev'd* on other grounds, 52 F.3d 35 (2d Cir. 1995); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812, 826 (D.N.J. 1989); *Donovan v. Hudson Stations, Inc.*, 1983 U.S. Dist. LEXIS 12751, at *19-22 (D. Kan. Oct. 14, 1983) (calculation of awards based on formula using

---

[19] *See also Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("Plaintiff plans to use statistical evidence, including surveys or representative testimony, or both, of class members to determine damages at trial. This type of evidence is commonly accepted by courts for calculating damages in large class actions.")

[20] In conducting his analysis, the expert will rely on, among other evidence, deposition testimony and interrogatory responses of 80 class members – 50 deponents selected by SNET and 30 additional opt-ins chosen randomly.

averages from deposition testimony); *Bell*, supra (calculation of aggregate damages by statistical sampling, resulting in estimate of average weekly overtime); *Puchalski* (Ex. C., at 6-7) (jury to determine average weekly overtime of testifying class members, to be extrapolated to calculate class damages; apportionment to be decided at later time). Moreover: "It is well established that "the allocation of that aggregate sum [of the judgment] among class members is an internal class accounting question that does not directly concern the defendant." *Bell*, 115 Cal. App. 4th at 759.

Despite clear law to the contrary, SNET asserts that individual damages trials and verdicts are required; otherwise damages cannot be calculated with precision. SNET has taken the position that it will be prejudiced without individualized proceedings because it may have to pay more than it actually owes, or individual class members may receive too high or too low an award. This position is futile. Given the volume and quality of evidence, SNET's concerns about over- and under- compensation cannot trump the interest in class adjudication. As *Mt. Clemens* and its progeny recognized, the perfect is the enemy of the good; justice need not be perfect in order to be realized effectively. The "argument for individualized proof of damages, if accepted, would challenge all class action judgments adopting reasonably expeditious means of distributing the recovery among class members" and abandon "the more pragmatic approach characterizing federal decisions." *Bell*, 115 Cal. App. 4th at 750.

## II. PLAINTIFFS' PROPOSAL REGARDING WITNESSES AND PRESENTATION OF EVIDENCE

Plaintiffs propose that calling 10-15 class member witnesses is sufficient for representative purposes. This number is higher than the percentage in many cases, and when combined with other evidence and common proof, should be more than adequate to present the jury a reasonable picture of the class members' jobs and the company's policies and practices.

Plaintiffs suggest that each party be given approximately 10 days to put on its evidence. (Together with other trial proceedings, this would result in approximately a four-week trial.) Each

13

party should be given a corresponding time limitation in hours, and cross-examination should count against the clock. Within their respective time limits, each party should be able to put on any admissible evidence it wishes, subject to applicable Federal Rules of Evidence and Civil Procedure.

### III.     PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

1. Did Plaintiffs prove that they worked in excess of 40 hours per week without overtime pay?
   Yes_____     No_____

*IF YES, PROCEED TO QUESTION 2*

2. Did Defendant SNET prove plainly and unmistakably that the Level One class members are "executive" or "administrative" employees and therefore are not entitled to overtime?
   Yes_____     No_____

*IF NO TO QUESTION 2, PROCEED TO QUESTIONS 3 AND 4*

2. Did Plaintiffs prove that Defendant SNET's failure to pay them overtime was willful [FLSA, Statute of Limitations]?
   Yes_____     No_____

3. Did Plaintiffs prove that the failure to pay them overtime was unreasonable, arbitrary, or in bad faith? [State claims, liquidated damages]
   Yes_____     No_____

*PROCEED TO QUESTION 5*

4. What is the total amount of unpaid overtime owed to the Level One class?
   $_____

### IV.     QUESTIONS REMAINING FOR THE COURT IF THE JURY RETURNS A VERDICT FOR THE PLAINTIFFS

If the jury awards a damages verdict to the class, there are several housekeeping items remaining. The Court must decide liquidated damages under the FLSA. *See* 29 U.S.C. § 260; *Reich v. SNET*, 121 F.3d at 70-72; *Morales v. Cancun Charlie's Rest.*, 2010 U.S. Dist. LEXIS 125516, at *24 (D. Conn. Nov. 23, 2010). If the jury answers "Y" to #4, double damages are required under Connecticut law; even without such a finding, the Court may award such damages in its discretion. *See*

Conn. Gen. Stat. §§ 31-68, 31-72; *Butler ex. rel. Skidmore v. Hartford Tech. Inst.*, 243 Conn. 454, 470-71 (1997); *Stokes v. Norwich Taxi, LLC*, 2006 Conn. Super. LEXIS 3511, at *4 (Nov. 15, 2006); *Morales*, 2010 U.S. Dist. LEXIS 125516, at *25-26.[21]  In addition, on the state claims, Plaintiffs are entitled to 12% annual interest on their unpaid wages. *Morales*, supra, at *23 (citing Conn. Gen. Stat. §§ 31-72, 31-265).[22]

Furthermore, if the jury returns a liability verdict, the Court should issue (i) a declaration that SNET's classification of its Field Managers as exempt violates the law and (ii) an injunction requiring SNET to pay all statutorily-required wages pursuant to Connecticut labor law.

**Conclusion**

For all the reasons set forth herein, Plaintiffs and the Class respectfully request that the Court adopt the foregoing Trial Plan.

Respectfully submitted,

Dated: April 6, 2011      /s/ Steven L. Wittels
                          Steven Wittels, (SLW-8110)
                          Jeremy Heisler, (JH-0145)
                          Andrew Melzer, (AM-7649)
                          **SANFORD WITTELS & HEISLER, LLP**
                          1350 Avenue of the Americas, 31st Floor
                          New York, NY 10019
                          Telephone: (646) 723-2947
                          Facsimile: (646) 723-2948

---

[21] *See also Ziotas v. Reardon Law Firm, P.C.*, 296 Conn. 579, 590-91 (2010) ("Under § 31-72, an employee is entitled to 'twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court' when an employer fails to pay the employee's wages.")

[22] Alternatively, Plaintiffs seek interest under Conn. Gen. Stat. § 37-3a.  *See Cabrera v. GT Constr.*, 2006 U.S. Dist. LEXIS 27058, at *4 (D. Conn. Mar. 27, 2006).  On their FLSA claims, Plaintiffs are entitled to prejudgment interest if not awarded liquidated damages.  *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064-65 (2d Cir. 1988); *Zhao v. E. Harlem Laundromat, Inc.*, 2010 U.S. Dist. LEXIS 121335, at *27 (E.D.N.Y. Oct. 8, 2010); *Soler v. G & U, Inc.*, 768 F. Supp. 452, 461-62 (S.D.N.Y. 1991).  Post-judgment interest is available as a "matter of course." *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 68 (N.D.N.Y. 2008), citing *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 57 (2d Cir. 1984).

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734

*Attorneys for Plaintiffs and the Class*