UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** **Individually and on Behalf of Others Similarly Situated,** <br><br> PLAINTIFFS, <br><br> v. <br><br> **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** <br><br> DEFENDANT. | **CIVIL ACTION NO. 3:07CV967 (JCH)** <br><br> **DEFENDANT SNET'S RESPONSE TO PLAINTIFFS' PROPOSED TRIAL PLAN** <br><br> April 13, 2011 |

I.  **INTRODUCTION**

A comparison of the trial plans submitted by Plaintiffs and Defendant reveals key differences in four primary areas: 1) the questions that should be presented to the jury; 2) the treatment of representative testimony; 3) the order of proof; and 4) bifurcation and treatment of expert testimony regarding damages. Defendant submits that in all four areas, its trial plan is superior in allowing for a more efficient trial that protects both parties' statutory and constitutional rights.

The most significant difference in the two plans is with respect to the proposed jury verdict. At the close of trial, the evidence will almost certainly be such that a reasonable jury could find that some Testifying Plaintiffs are exempt and some are not. For more than 200 years, the right to a jury trial has been sufficiently sacrosanct that a court is not permitted to take away from the jury any factual issue on which reasonable minds may differ. Indeed, James Madison

noted that "[t]rial by jury in civil cases is as essential to secure the liberty of the people as any one of the pre-existent rights of nature."[1]

Yet Plaintiffs ask this Court - - even in the face of conflicting evidence - - to instruct the jury that it must disregard any differences they may find between Testifying Plaintiffs and render a single verdict for or against the class, presumably based on whether they believe a majority of Testifying Plaintiffs are exempt or not. Such a directed verdict would violate Defendant's jury trial rights and would offend due process.

The only rationale Plaintiffs offer for their "all or nothing" approach is that a single verdict is necessary because the Court has certified this case as a class action. But there is no authority that permits violation of Seventh Amendment or due process rights merely to maximize the chance that a class action will be kept intact. To the contrary, Rule 23 allows a right of class action as a procedural device only. Pursuant to the Rules Enabling Act it may not be used to abridge substantive rights.

Plaintiffs attempt to divert the Court's attention from the constitutional infirmities of their trial plan by citing a multitude of cases regarding the admissibility of representative proof. This argument is a red herring, as Defendant's trial plan does not require testimony from all class members and allows for possible proof by representative testimony. If the jury decides that all Testifying Plaintiffs are exempt or all are non-exempt, the case can be decided based on representative proof. If a jury reaches a split decision, subclass dispositions might be a possibility. But if subclasses are not possible and the jury has decided that some Testifying Plaintiffs are exempt and others are not, then the jury verdict will have demonstrated that

---

[1] Mark W. Bennett, Judges' Views on Vanishing Civil Trials, 88 JUDICATURE 306, 307 (2005) (quoting 1 Annals of Cong. 454 (Joseph Gales ed., 1789)).

representative proof is not appropriate in this case, and Defendant will ask the Court to decertify the class.

Plaintiffs argue that they should open and close the evidence because they bear the burden of proof with respect to damages.  Plaintiffs' proposed jury instructions, however, illustrate that *Defendant* bears the burden with respect to the pivotal issue in the case – liability – upon which all other issues rest.  The court should thus exercise its discretion to allow Defendant to present its case first.  Additionally, modest bifurcation is warranted in this case, as it will conserve the Court's and jury's resources and avoid unnecessary confusion arising from complex and disputed, class-wide expert calculations that depend upon a variety of contingencies to be resolved during the liability phase of trial.

II.  **PLAINTIFFS' PROPOSED JURY VERDICT ENCROACHES UPON DEFENDANT'S CONSTITUTIONAL AND STATUTORY JURY TRIAL RIGHTS AND VIOLATES DUE PROCESS.**

   A.  Plaintiffs' Trial Plan Violates Defendant's Jury Trial Rights

Defendant has a clearly-established constitutional and statutory right to trial by jury.  See Defendant SNET's Proposed Trial Plan [Doc. 346], at 7-8.  Plaintiffs do not dispute this right in their papers, and indeed a jury trial was demanded by Plaintiff Sharon Perkins in her original Complaint [Doc. 1].

"Once the right to a jury trial attaches to a claim, … it extends to all factual issues necessary to resolving that claim."  Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 (5th Cir. 1998).  "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  Chauffeurs, Teamsters & Helpers v. Terry, 494 U.S. 558, 565 (1990) (quoting Beacon Theatres v. Westover, 359 U.S. 500 (1959)).

One procedural mechanism that reinforces the right to jury trial is Fed.R.Civ.P. 50(a)(1), which sharply restricts the Court's right to take factual disputes away from the jury. Under the Rule a directed verdict or judgment as a matter of law may only be used to remove issues from jury consideration "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue…" See Okemo Mt., Inc. v. Sikorski, 303 F. App'x 938, 940 (2d Cir. 2008) (judgment as a matter of law permitted "only if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party."), cert. denied, 130 S. Ct. 145 (2009).

At this juncture, no one can know for certain what the evidence will show at trial. But it is likely the evidence will allow a reasonable jury to conclude that some Testifying Plaintiffs are exempt, and others are not, for three reasons.

First, Second Circuit law makes clear that a determination of an employee's exempt status turns on an examination of the individual's "actual job characteristics and duties." Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010). The Court will be required to so instruct the jury.

Second, as noted in SNET's Proposed Trial Plan Memorandum, the evidence with respect to job duties is likely to vary from Testifying Plaintiff to Testifying Plaintiff, depending on, among other things, the amount of leeway each is allowed by his or her Area Manager.

Finally, credibility will be a central issue in this trial. The jury will have to decide whether they believe the minimalist version of job duties proffered by the various Testifying

4

Plaintiffs, or the more substantial duties described by Area Managers and others. The jury may decide to believe some Testifying Plaintiffs, and disbelieve others. Such credibility determinations are exclusively the province of the jury. Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) (district court erred in directing a verdict, because "the matter of whose version [of events] to believe was within the province of the jury, not of the court" and thus it could not be said that the jury's verdict was without any evidentiary support).

Likewise, outside of the directed verdict context, a Court cannot use jury instructions or verdict forms to take away from the jury genuine factual issues. As the Supreme Court observed more than a century ago: "Courts cannot assume, in their instructions to juries, that material facts upon which the parties rely are established, unless they are admitted, or the evidence respecting them is not controverted. The courts would otherwise encroach upon the appropriate and exclusive province of juries." Bank of Leavenworth v. Hunt, 78 U.S. 391, 394 (U.S. 1871). "[T]he assumption of a disputed fact in a jury instruction is prejudicial error." Resolution Trust Corp. v. Eason, 17 F.3d 1126, 1133 (8th Cir. 1994) (citing Weatherford v. Wommack, 766 S.W.2d 922, 924 (Ark. 1989)); see also United States v. Benedetto, 558 F.2d 171, 177 (3d Cir. 1977) (finding "that the trial court erroneously invaded the province of the jury by directing it to assume a fact at issue").

If the evidence would allow a reasonable jury to conclude that some Testifying Plaintiffs are exempt and others are not, then the Court cannot take this disputed issue away from the jury without abrogating the right to a jury trial under the Seventh Amendment and violating the restrictions of Fed.R.Civ.P. 50(a)(1). Such a ruling would deprive Defendant of its right to a jury determination of "all factual issues necessary to resolving [the] claim." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 (5th Cir. 1998).

> B. <u>Plaintiffs' "all or nothing" approach could result in either an improper windfall or an improper deprivation of overtime compensation, which is inconsistent with both parties' due process rights.</u>

Plaintiffs' "all or nothing" approach also violates due process, which protects the rights of every litigant "to present his case and have its merits fairly judged." <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 433 (1982). These due process rights require that defendants have "an opportunity to present every available defense" at trial. <u>Philip Morris USA v. Williams</u>, 549 U.S. 346, 353 (2007); <u>see also</u> <u>SEC v. Elliott</u>, 953 F.2d 1560, 1567-68 (11th Cir. 1992) (holding that defendants were denied due process where they were not permitted to present available affirmative defenses).

Due process likewise requires that defendants have the opportunity to present defenses that apply to individual class members, even if they do not apply to the class as a whole. <u>See</u>, <u>e.g.</u>, <u>Lusardi v. Xerox</u>, 118 F.R.D. 351, 370-71 (D.N.J. 1987) (holding in ADEA collective action under 216(b) that defendant would be deprived of Fifth Amendment right to due process if the case proceeded without permitting defendant "to raise at the liability stage of trial each and every defense available to it"). In <u>Lusardi</u>, the court held that where Congress has created certain statutory defenses, "it is contrary to due process to prevent their utilization by a defendant in the liability phase of the trial," and therefore deemed a finding of classwide liability without the opportunity to raise individual defenses would be "plainly unworkable and intolerable." <u>Id</u>. at 371-72. Thus, Defendant's due process rights include the ability to present evidence and argument – and the opportunity for the jury to make a finding – that Defendant has proven its exemption defense as to some members of the class, even if such proof does not extend to all members of the class.

Numerous courts have recognized a due process right to individualized determinations of exempt status where the evidence presented to a jury would support such a determination. For

6

example, in Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567 (E.D. La. 2008), the court decertified a class after receiving evidence indicating that some testifying managers were exempt, while others were not. The court observed that, the "efficiency gains" of the FLSA's collective action device:

> cannot come at the expense of a defendant's ability to prove a statutory defense without raising serious concerns about due process. … The collective action device does not effect its statutory purposes when it only puts the defendant between a rock and a hard place.

Johnson, 561 F. Supp. 2d at 586.

Likewise, the Court in Home Depot held that a class-wide determination of exempt status could not be made because:

> It is the plaintiffs['] clearly articulated position that if 50.1 percent of [managers] are doing non-exempt work a majority of the time, *everyone* in the class presumptively is entitled to overtime. Likewise, if 50.1 percent of [managers] are engaged in exempt work a majority of the time, no one in the class recovers. … Theoretically, this would result in a potential windfall to 49.9 percent of the population of [managers who individually were exempt based on their particular duties]; or a deprivation to 49.9 percent of [managers] deserving overtime pay.

Home Depot Overtime Cases, Riverside County Case Nos. JCCP 4339, RIC 361920 (Order, dated Feb. 2, 2006), affirmed by 2007 Cal. App. Unpub. LEXIS 9403, at *9 (Nov. 21, 2007). Accord, Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422, 1428 (2006), (finding that class certification would be unfair if evidence showed that "the [exemption] policies were appropriate as applied to 70% of the [managers] and inappropriate with respect to the remaining 30%"); Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 948 n. 15 (2009), (refusing to permit class wide determination of exempt status where evidence showed that some class members were properly exempt; allowing such an all or nothing approach "would allow putative class members who, by their own admission, do not qualify for relief, to litigate inherently meritless claims in a representative action"); Reich v. Gateway Press, Inc., 13 F.3d 685, 701(1994) (noting that where

7

the District Court found some employees were exempt and others were not, "it was important" for the finder of fact to determine which employees belong in which categories).

These due process concerns are highlighted by Plaintiffs' proposed jury verdict form, which purports to ask the jury whether "Defendant SNET prove[d] plainly and unmistakably that the Level One class members are 'executive' or 'administrative' employees and therefore … not entitled to overtime." The question as framed refers generally to "class members" and appears designed to require Defendant to prove the exempt status of all such members. Plainly this is impossible in a limited trial where evidence cannot be presented concerning the duties of each member of the class. Thus, by accident or design, Plaintiffs have devised a patently unfair Catch-22 for Defendant as an integral part of their trial plan. Defendant must either concede that the evidence presented at trial is representative of the class as a whole (a point which Defendant vigorously disputes) or face the argument that Plaintiffs are entitled to a directed verdict as to those members of the class where no evidence was presented, because Defendant has failed to meet its burden of proof.

Plainly such a result would be unfair and would violate due process. But what alternative is there? Possibly the court could instruct the jury to answer Plaintiffs' "all or nothing" query based on whether it believed a majority of the Testifying Plaintiffs were exempt or non-exempt. But this, too, would violate due process. If the jury rules in favor of all class members because a majority of the class appears non-exempt, the exempt minority will receive a windfall. By contrast, if the jury similarly rules against the class, the minority of class members who are actually non-exempt would be improperly denied overtime compensation. See Home Depot (rejecting plan that would yield improper windfalls or overtime denials); see also Randall v. Rolls Royce Corp., No. 10-3446, 2011 WL 1163882, at *5 (7th Cir. Mar. 30, 2011) (Posner, J.)

8

(rejecting the use of class action device in discrimination action which would violate due process by "jeopardize[ing] the ability of unnamed class members to obtain relief in individual suits or in a subsequent class action."). Based on these considerations, the Court in Johnson ultimately decided to decertify the class, observing:

> After considering the full record, the Court reaches the inescapable conclusion that the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides. Were the Court to rule in plaintiffs' favor, it would have to do so on the basis of proof that is not representative of the whole class, and the verdict would result in liability on the defendant in a magnitude that is not likely to be warranted in reality. … On the other hand, were the Court to find that on the whole Big Lots proved its defense, then all of plaintiffs' claims would be extinguished. The Court is not convinced, however, that Big Lots properly classified each of the 936 opt-in plaintiffs. … But given the posture of this case and the way it was tried, the Court cannot simply pluck out the [managers] who may have been misclassified.

Id.

Similar considerations require rejection of Plaintiffs' "all or nothing" approach.

C.   Plaintiffs present no persuasive authority addressing the constitutional infirmities of their proposed trial plan.

Plaintiffs primarily cite two jury trial cases in support of their argument that the jury must render an "all or nothing" verdict with respect to the entire class. In Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 (11th Cir. 2008), the court did not address the defendant's Seventh Amendment jury trial and due process rights, and it does not appear that the defendant ever raised the issue. Similarly, in Puchalski v. Taco Bell Corp., Case No. GIC 870429 (Cal. Super. 2010), an unpublished opinion from a California state trial court, the court not only did not address the jury trial issue, it also noted that it was unclear whether there would even be a jury trial in the case. Puchalski, at 5 n. 6. Neither case provides any real support for Plaintiffs' position.

9

Likewise, Plaintiffs cite a welter of cases regarding the legitimacy of representative proof in class and collective actions.  See Class Plaintiffs' Proposed Trial Plan [Doc. 347], at 8-9.  As described in further detail in Section III, *infra*, Defendant does not contest the legitimacy of representative proof in a collective action if the record supports a finding that proof is truly representative.  But the overwhelming majority of cases found on pages 8-9 of Plaintiffs' proposal were non-jury bench trials in which the above-described constitutional issues were not present, and where the Court, as the trier of fact, was fully authorized to decide that the proof it had heard was in fact representative.  See, e.g., Reich v. S. New England Telecomms. Corp., 121 F.3d 58 (2d Cir. 1997) (bench trial); United States Dep't of Labor v. Cole Enters., 62 F.3d 775 (6th Cir. 1995) (bench trial); Reich v. Gateway Press, Inc., 13 F.3d 685 (3d Cir. 1994) (bench trial); Martin v. Tony & Susan Alamo Found., 952 F.2d 1050 (8th Cir. 1992) (bench trial); Martin v. Selker Bros., Inc., 949 F.2d 1286 (3d Cir. 1991) (bench trial); Secretary of Labor v. DeSisto, 929 F.2d 789 (1st Cir. 1992) (bench trial); McLaughlin v. Seto, 850 F.2d 586 (9th Cir. 1988) (bench trial); Donovan v. Bel-Loc Diner, 780 F.2d 1113 (4th Cir. 1985) (bench trial); Donovan v. Simmons Petroleum Corp., 725 F.2d 83 (10th Cir. 1983) (bench trial); Donovan v. Burger King Corp., 672 F.2d 221 (1st Cir. 1982) (bench trial).  These cases do not support Plaintiffs' argument that the Court can treat a jury trial in the same fashion and take issues away from the jury when the Court is not the trier of fact.

Plaintiffs' only argument for their "all or nothing" approach is that it is essential to preserving the Court's class certification determination.  That decision, however, as with every certification decision, was provisional and subject to being modified or vacated based on subsequent proceedings.  See Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 571 (E.D. La. 2008) (noting the "ongoing obligation to monitor the propriety of certification in light of

factual developments" including the specific evidence that had been offered at trial) (citing Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983) (observing that the district court is "charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, sub-class, and decertify as appropriate in response to the progression of the case from assertion to facts.")); see also Marlo v. United Parcel Serv., Inc., 251 F.R.D. 476, 487-88 (C.D. Cal. 2008) (decertifying Rule 23 class action in misclassification case on the eve of trial "where, in spite of earlier indications that class treatment was feasible, the subsequent discovery, motion practice, and trial preparations . . . revealed that the requirement of predominate common issues [was] not satisfied."). If a jury determines that Plaintiffs and class members are not similarly situated, because some are exempt and some are not, and if sub-classes cannot be used, it will be entirely appropriate for the Court to decertify the class.

The need, at all costs, to keep this case a class action cannot be used to justify a violation of the Seventh Amendment or the Due Process Clause. Rule 23 is a procedural device designed to permit litigation of common issues consistent with rights to trial by jury and due process. It cannot be used, as Plaintiffs suggest, to trample on those rights without violating both the Constitution and the Rules Enabling Act. See McLaughlin v. American Tobacco Co., 552 F.3d 215, 231 (2d Cir. 2008) (rejecting trial plan that created a "disconnect [that] offends the Rules Enabling Act, which provides that federal rules of procedure, such as Rule 23, cannot be used to 'abridge, enlarge, or modify any substantive right'").

### III. PLAINTIFFS' PROPOSAL REGARDING THE USE OF REPRESENTATIVE PROOF IS UNWORKABLE AND DESIGNED TO PROVIDE PLAINTIFFS WITH AN UNFAIR TACTICAL ADVANTAGE.

As described in Section IIC, *supra*, Plaintiffs cite a multitude of cases regarding the admissibility of representative proof in class and collective actions. Plaintiffs' argument on this

11

point is a red herring, as Defendant does not contend that representative proof cannot be offered in this case or that all class members must be required to testify. To the contrary, Defendant has proposed a trial plan that will rely on representative testimony in the first instance, provided the testimony is truly representative and can be applied fairly to reach a decision that applies to all members of the class. If the testimony proves not to be representative, because of differences between Testifying Plaintiffs, then decertification will be appropriate.

While both trial plans assume that representative proof may be used in the first instance, there is one very large difference between the two plans. Defendant proposes a trial plan that will focus on the duties of ten Testifying Plaintiffs. Such a compact and focused trial will be sufficient to allow differences between Testifying Plaintiffs to come to the fore, while allowing the trial to be completed in close to three weeks.

By contrast, Plaintiffs propose to call 10 to 15 witnesses in support of their case, and will presumably select the 10 to 15 plaintiffs who appear most likely to be deemed nonexempt by a jury. Defendant will have to respond by calling another 10 to 15 plaintiffs – presumably those who appear most likely to be exempt. In the end, therefore, Plaintiffs' proposal will require testimony concerning the job duties of 20 to 30 first level supervisors - - two to three times the number proposed by Defendant. This proposal will unnecessarily prolong the length of the trial and present the jury with an unduly burdensome and confusing task. Defendant's proposal, where each party selects five plaintiffs to testify at trial, is more streamlined and more likely to yield a fair verdict.

IV. **DEFENDANT, AS THE PARTY WITH THE BURDEN OF PROOF ON THE PRIMARY ISSUE OF LIABILITY, SHOULD OPEN FIRST, PRESENT ITS EVIDENCE FIRST, AND CLOSE LAST.**

Plaintiffs make the unsupported argument that they "begin the game behind the eight ball" due to the "powerful" effect of their managerial "label" (see Class Plaintiffs' Proposed

12

Trial Plan [Doc. 347], at 4-5).  Since the jury will be instructed that labels are not controlling in this case, the managerial label is unlikely to have any impact and certainly does not warrant permitting a party that has no burden of proof on liability to open first, present evidence first and close first.  Indeed, there is no presumption that Plaintiffs should proceed first simply because they are the plaintiffs.  As the court explained in <u>Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.</u>, No. 03-w-0190:

> [T]he privilege of opening first and closing last is not given to plaintiffs simply because they are plaintiffs.  Rather, fairness requires that the party with the burden of proof should have the first and last opportunity to persuade the jury of its position.

2004 U.S. Dist. LEXIS 5239, at *3-4 (W.D. Wis. Mar. 30, 2004), aff'd, 407 F.3d 876 (7th Cir. 2005).

It is clear from Plaintiffs' Trial Plan that Defendant has the burden of proof on liability. The Plaintiffs suggest that the jury respond to two interrogatories, but their first interrogatory concerning whether Plaintiffs worked more than 40 hours without overtime pay is something Defendant will stipulate to.  Defendant has the burden of proof on the remaining question, which is the only liability issue.[2]

Because Defendant has the burden of proof on liability, it should go first, even if Plaintiffs retain the burden to prove damages.  Plaintiffs in *every case* have the burden of proof on damages, and yet even in cases without bifurcation, the party with the burden on the pivotal issue – liability – presents its evidence first.  <u>See</u>, <u>e.g.</u>, <u>Moylan v. Meadow Club, Inc.</u>, 979 F.2d 1246, 1251 (7th Cir. 1992) (affirming district court's decision to allow defendant to go first and

---

[2] Defendant objects to the obviously loaded form of the second question proposed by Plaintiffs, just as it does to many other issues in Plaintiffs' memorandum, such as the incorrect statements regarding the recoverability of pre-judgment interest and double damages under Connecticut law. But those are issues not germane to the trial plan and are best addressed in subsequent pre-trial briefings.

13

last during closing arguments in non-bifurcated FLSA "misclassification" trial on the grounds that the sole remaining liability issue was defendant's exemption defense); see also Latino Food Marketers, LLC, 2004 U.S. Dist. LEXIS 5239, at * 2 (allowing defendant in non-bifurcated contract dispute to open first, present evidence on affirmative defense first, and close last because the affirmative defense was the principal issue at trial); Montwood Corp. v. Hot Springs Theme Park Corp., 766 F.2d 359, 364 (8th Cir. 1985) (affirming decision to allow defendant to argue first and close last in closing arguments in non-bifurcated contract dispute because defendant bore the burden of proof on the only liability issue in dispute).

In the majority of cases cited by Plaintiffs in support of their argument to go first, there is no indication that the defendant ever sought to go first. See Exhibit J to Class Plaintiffs' Proposed Trial Plan [Doc. 347].[3] Likewise, the cases cited by Plaintiffs in support of their proposition that "if there are multiple issues and competing burdens of proof, plaintiffs should open and close the evidence," are readily distinguishable. See L-3 Commc'ns Corp. v. OSI Sys., 418 F. Supp. 2d 380 (S.D.N.Y. 2005) (declining to realign parties; "[w]here both parties bear the burden of proof on distinct counts of their causes of action, as is the case here, the court has good grounds for allowing the actual plaintiff, the party that filed the lawsuit, to proceed first."); American Home Assurance Co. v. Merck & Co., 462 F. Supp. 2d 435 (S.D.N.Y. 2006) (declining to realign the parties where the plaintiff insurer bore the burden of proving the

---

[3] See, e.g., Diaz v. Jaguar Restaurant Group, LLC, Saizan v. Delta Concrete Products, Hays v. City of Pauls Valley, Morgan v. Family Dollar, and Urnikis-Negro v. American Family Property Services. Id.; see also Exhibit I to Class Plaintiffs' Trial Plan [Doc. 347]; Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1277 n. 69 (11th Cir. 2008).

applicability of any exclusions or limitations on coverage).[4]  By contrast, in this case, *Defendant alone* bears the burden of proof with respect to liability and should be permitted to go first.

V. **EXPERT TESTIMONY REGARDING DAMAGES SHOULD BE BIFURCATED UNLESS AND UNTIL THE JURY FINDS LIABILITY AS TO ALL TESTIFYING PLAINTIFFS.**

Bifurcation makes sense here for all of the reasons it is frequently used in a complex case: it allows for a shorter trial and conserves judicial resources if there is no finding of liability, and it allows for a clear focus on separate issues that will promote efficient management of this lengthy trial.  "[A] court may bifurcate a trial for 'convenience, to avoid prejudice, or to expedite and economize.'"  D'Cunha v. Genovese/Eckerd Corp., 10-876-cv, 2011 U.S. App. LEXIS 4824, at *7 (2d Cir. Mar. 9, 2011) (quoting Fed. R. Civ. P. 42(b)).  Only one of the factors needs to be satisfied for a party to demonstrate that bifurcation is warranted.  See, e.g., Saxion v. Titan-C Mfg., Inc., 86 F.3d 553, 556 (6th Cir. 1996); Nyazie v. Kennedy, No. 97-0120, 1998 WL 872504, at *2 (E.D. Pa. July 27, 1998).  In this case, all of these considerations are present.  Tellingly, liability and damages issues are commonly bifurcated in FLSA cases.  See, e.g., Davis v. City of Loganville, No. 3:04-CV-68, 2006 WL 1312411, at *4 (M.D. Ga. May 11, 2006) ("Having considered the complexity of this [FLSA] case, the discreteness of the issues to be tried, the likelihood of confusion to the jury, and the convenience of bifurcation, the Court finds bifurcation of the issues of liability and damages to be appropriate."); Goldman v. Radioshack Corp., Civil Action No. 03-0032, 2005 U.S. Dist. LEXIS 9174, at *6 (E.D. Pa. May

---

[4] Accord, Starter Corp. v. Converse, Inc., No. 95 Civ. 3678, 1996 U.S. Dist. LEXIS 17892 (S.D.N.Y. Dec. 3, 1996) (defendant did not bear sole burden of proof on liability), Nucor v. J. Baker & Assocs., 3:08CV00067, 2009 U.S. Dist. LEXIS 107451 (E.D. Ark. Nov. 17, 2009) (same), and Employers Mut. Cas. Co. v. Maya, 3:03-CV-2916, 2004 U.S. Dist. LEXIS 24811 (N.D. Tex. Dec. 9. 2004) (same).

16, 2005) ("Bifurcation is also appropriate because the standards and evidence required to prove liability are entirely different than the evidence required to prove damages.").

Defendant proposes minimal bifurcation of the issues, consisting simply of bifurcating damages testimony from the parties' expert witnesses.  To avoid duplicative testimony or unnecessarily having to recall witnesses, Testifying Plaintiffs would be permitted to testify regarding their own work hours and compensation during their liability testimony.  Likewise, any other witnesses with knowledge of the work hours and compensation of the Plaintiffs would be permitted to give such testimony during the liability phase.  However, for several reasons, Plaintiffs' damages experts – who have calculated only classwide total damages rather than making any attempts to quantify individual damages – should not testify unless and until the jury has established some basis for class-wide liability on behalf of Defendant.

First, the experts' lengthy testimony would be entirely unnecessary if the jury makes a liability finding in favor of Defendant, and thus bifurcation of the expert damages testimony could result in a shorter and more efficient trial.  This is clearly an appropriate reason for the Court to approve bifurcation.  <u>Bonilla v. Jaronczyk</u>, 354 F. App'x 579, 582 (2d Cir. 2009) ("bifurcation falls well within the court's discretion, because litigation of the first issue might eliminate the need to litigate the second issue").

Second, the testimony of the parties' competing experts will be completely irrelevant if the jury reaches a split verdict and no class-wide finding of liability is permissible.  No expert has developed damages testimony that could be useful in the event of a mixed verdict.

Finally, expert testimony which includes a variety of damages permutations depending on whether Federal law, State law (or both or neither) has been violated will be highly confusing to

the jury. See, e.g., Davis, 2006 WL 1312411, at *4 (ordering bifurcation to avoid jury confusion).

Plaintiffs also argue that once the jury reaches a class award, "it is a straightforward arithmetical matter to divide up the lump sum on a proportional basis." See Class Plaintiffs' Proposed Trial Plan [Doc. 347], at 12-13. The notion that the apportionment of damages among class members can be accomplished by a simple mathematical formula is nonsensical. There will be no evidence in the record as to the number of hours worked by any individuals other than the Testifying Plaintiffs. Plaintiffs themselves suggest no meaningful basis for determining individual awards, other than vague allusions to "straightforward arithmetic[]," and "averaging." Id. Moreover, Defendant objects to Plaintiffs' assertion that the allocation of the class award among individual plaintiffs "does not directly concern" it. See Class Plaintiffs' Proposed Trial Plan [Doc. 347], at 13. Many members of the class are still current employees of Defendant, and Defendant has a strong interest – and a legal obligation – to see that its employees are compensated properly. For all these reasons, Plaintiffs' Proposed Trial Plan with respect to damages should be rejected. See McLaughlin v. American Tobacco Co., 552 F.3d 215, 231 (2d Cir. 2008).

VI.   **CONCLUSION**

For all the reasons described herein, the Court should adopt Defendant's trial plan.

Dated:  New York, New York  
      April 13, 2011

Respectfully submitted,

By: /s/ Patrick W. Shea  
Patrick W. Shea (CT07071)  
Paul, Hastings, Janofsky & Walker LLP  
75 East 55th Street  
New York, NY 10022  
Telephone: (212) 318-6000  
Facsimile: (212) 319-4090  
patrickshea@paulhastings.com

Leslie A. Dent (PHV 03877)  
John F. Wymer, III (PHV 03876)  
Erika L. Leonard (PHV 03875)  
Paul, Hastings, Janofsky & Walker LLP  
600 Peachtree Street, N.E., Suite 2400  
Atlanta, Georgia 30308  
Telephone: (404) 815-2400  
Facsimile: (404) 815-2424  
lesliedent@paulhastings.com  
johnwymer@paulhastings.com  
erikaleonard@paulhastings.com

*Counsel for Defendant*  
SOUTHERN NEW ENGLAND  
TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** **Individually and on Behalf of Others Similarly Situated,** <br><br> **PLAINTIFFS,** <br><br> v. <br><br> **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** <br><br> **DEFENDANT.** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2011, a copy of foregoing **DEFENDANT SNET'S RESPONSE TO PLAINTIFFS' PROPOSED TRIAL PLAN** was filed electronically and served by U.S. mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    /s/ Patrick W. Shea
    Patrick W. Shea (CT07071)
    Paul, Hastings, Janofsky & Walker LLP
    75 East 55th Street
    New York, NY 10022
    Telephone: (212) 318-6000
    Facsimile: (212) 319-4090
    patrickshea@paulhastings.com

    *Counsel for Defendant*
    SOUTHERN NEW ENGLAND
    TELEPHONE COMPANY