# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| **SHARON L. PERKINS, et al.,** )<br><br>**Individually and on Behalf of Others Similarly Situated,**<br><br>**PLAINTIFFS,**<br><br>**v.**<br><br>**SOUTHERN NEW ENGLAND TELEPHONE COMPANY,**<br><br>**DEFENDANT.** | )<br>)<br>)<br>) **No: 3:07CV967 (JCH)**<br>)<br>) **PLAINTIFFS' MEMORANDUM OF**<br>) **LAW IN SUPPORT OF**<br>) **MOTION TO PRECLUDE SNET**<br>) **FROM USING ALL DOCUMENTS**<br>) **THAT IT UNTIMELY PRODUCED**<br>) **ON MAY 12, 2011**<br>)<br>) |

## SUMMARY OF ARGUMENT

Plaintiffs are keenly aware of this Court's admonition that the losing party in this motion may be subject to Court-imposed sanctions. But we have no choice. Our fiduciary obligation to the class forces us to bring this limited Rule 37 motion to prevent SNET from capitalizing on its egregiously late and prejudicial 500+ page document production. SNET's late production is a classic example of trial by ambush, a tactic the Federal Rules expressly prohibit.

On May 12, 2011, 4 ½ months after the Court-ordered December 31, 2010 discovery cutoff, Defendant SNET blindsided Plaintiffs by producing to Plaintiffs more than 500 pages of documents relating to Level Ones John Tait, Greg Albert and other Level Ones, plus other documents related to Level Ones' job duties. This surprise document dump came six business days before the rescheduled Tait and Albert depositions, and only 15 days prior to the parties' agreed-upon date to disclose their list of Level One trial witnesses.

Plaintiffs tried to compromise and avoid making this motion.   Plaintiffs proposed a reasonable compromise that would allow the two pending Level One Depositions (Tait and Albert) to proceed without use of the late-produced documents and to reserve for a full *in limine* motion the issue of whether the late documents could be used at the Tait/Albert depositions.   SNET, however, refused a reasonable compromise.   Instead, SNET insisted that Plaintiffs agree in advance to sanction themselves by agreeing in advance to pay SNET's legal bills and costs associated with the motion to preclude  if the Court denies the motion.   But this is an unreasonable and punitive solution.   Moreover, despite its late production, SNET has the temerity to insist that it (i) be allowed extra time to question Plaintiff Albert beyond the one hour remaining on his deposition (which it already conducted for 3 of the 4-hour limit), and (ii) be awarded an extra 1 ½ hours to question Mr. Tait on the withheld documents above the 4-hour limit that Your Honor previously imposed on all Level One depositions.

Plaintiffs therefore ask this Court for the following limited relief: an order banning SNET from using the late documents that were requested by Plaintiffs in multiple Demands prior to the December 31, 2010 discovery cutoff.   SNET can offer no legitimate reason why it did not timely produce these documents.   SNET's assertion that the late documents were never before requested is refuted by the Misrepresentation Chart attached to the accompanying Wittels Declaration, and the background facts contained in that Declaration.

SNET's excuse for the late production—that the untimely documents were never previously demanded by Plaintiffs—is a blatant falsehood.   The SNET misrepresentation chart and Wittels declaration more fully explain that all the late documents *were* previously demanded, and should persuade this Court that SNET's gamesmanship cannot

be tolerated.  This latest stratagem—like (a) SNET's misrepresentations in opposition to Class Certification and (b) its misrepresentations in support of its improper expert report, which was stricken—calls out for a remedy; a short order striking the offensive documents.

The prevailing precedents in the Second Circuit and this Court support such a preclusion remedy.  In deciding whether to impose sanctions pursuant to Rule 37, a court should consider four factors: "(1) the party's explanation for the failure to comply with the [relevant order or rule]; (2) the importance of the testimony of the precluded witness[es and/or documents]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; (4) the possibility of a continuance." *Pal v. N.Y. Univ.*, No. 06 Civ. 5892 (PAC)(FM), 2008 U.S. Dist. LEXIS 52620at * 8 (S.D.N.Y. June 30, 2008) (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).  "Bad faith" on the part of the noncompliant party is not required to impose sanctions. *Oz v. Lorowitz*, 2011 U.S. Dist. LEXIS 23313 (S.D.N.Y. Mar. 7, 2011) at 5-6. "Willful and obstructive conduct" like the kind engaged in by SNET here, is an important consideration in determining the severity of the sanctions. *In re Sagecrest II, LLC*, 444 B.R. 20, 25 (D. Conn. 2011). SNET's deliberate and unjustified late production of documents warrants this remedy.

SNET admitted in its production cover letter to Plaintiffs that a number of the 500+ pages were not timely produced (and has since refused to specify exactly which of the 500+ pages is new).  (Wittels Dec. ¶ 28, 57-58)  Defendant SNET cannot be allowed to pick and choose documents to produce on the eve of trial, when Plaintiffs are neither allowed nor prepared to pursue appropriate follow-up discovery as they would have done had these documents been produced in a timely manner.

To remedy Defendant's violation of this Court's Scheduling Order, Plaintiffs respectfully request, pursuant to Local and Federal Rules of Civil Procedure 37, that this Court (1) preclude Defendant from  using any of the wrongfully withheld and untimely produced documents for any purpose; and (2) grant any other relief that this Court deems just and proper.[1]

## BACKGROUND FACTS SUPPORTING THIS PRECLUSION MOTION

On April 6, 2010, this Court issued a Scheduling Order requiring that all discovery in this case be completed by December 31, 2010.  (*See* Court Docket ("Doc.") 250 at 1)  On December 13, 2010, this Court entered a First Amended Scheduling Order. (Doc. 293)  The First Amended Scheduling Order did not alter the December 31, 2010 discovery deadline.  (*See id.* at 2)  In accordance with this Court's order, Plaintiffs reasonably believed that all discovery was completed by on or about December 31, 2010.[2]  (Declaration of Plaintiffs' Co-Counsel, Steven L. Wittels ("Wittels Dec." ¶ 5))

Before the close of discovery, Plaintiffs served seven separate Requests for Production of Documents ("Requests for Production" or "requests") – each containing numerous individual requests –on Defendant SNET.  (*Id.* at ¶ 6)  These comprehensive requests sought, *inter alia*, all documents relating to any involvement that any Level One had in the discipline of any AT&T employee, all documents reflecting any role that any Level One had in changing the job status of any AT&T employee, and all documents

---

[1] In accordance with Local Rule 37(a) and Federal Rule of Civil Procedure 37(a)(1), Plaintiffs' Counsel has attempted to resolve the issues relating to Defendant's wrongful late production of documents by first contacting Defendant's Counsel in writing on May 12, 2011 and through multiple subsequent communications with the aid of Mr. Hawkins.  The parties were unable to resolve the issues.  (*See* Wittels Dec. ¶¶ 57-67)

[2] Under an agreement between the parties, Plaintiffs received a short extension to produce supplemental disclosures.  (Wittels Dec. ¶ 4)  All supplemental disclosures were produced by January 10, 2011.  (*Id.*)  Plaintiffs met thid deadline; Defendant neither requested nor made any disclosure after December 31, 2010.

concerning any review of any AT&T employee by any Level One. (*Id.* at ¶¶ 8-11 (citing Plaintiffs Second Request for Production, Request No. 3, 4(e), 4(f); Plaintiffs Third Request for Production, Request No. 7)).[3]   In response to these requests, Defendant SNET produced emails and hundreds of thousands of pages of documents from its WebAdd system prior to the close of discovery. (Wittels Dec. ¶ 11)  Plaintiffs reasonably believed that Defendant SNET had produced all responsive documents in its WebAdd system prior to the close of discovery.

Plaintiffs further relied on Defendant's to their detriment in believing that SNET complied with the Court Order to produce full-content emails on only 20 randomly-selected Level Ones.  SNET argued to the Court that it would be burdensome for the company to produce emails for more than a limited sample of 20 Level Ones (Wittels Dec. ¶ 14; Doc. 249 at 14, 19-20).  This representation was obviously false, since Defendant produced the Tait and Albert emails at issue after the cutoff.  These two Level Ones were not among the 20 whose full-content emails were produced pre-cutoff.

On May 12, 2011, Defendant SNET noticed depositions for Messrs. Tait and Albert.  That same day, Defendant's counsel sent Plaintiffs over 500 pages of newly produced documents.  (*Id.* ¶ 26)  The Defense letter stated:

> Enclosed please find documents Bates labeled SNET00411065 – SNET00411574.  In the course of our

---

[3]Plaintiffs' requests also sought"[a]ll emails to or from Level One Managers with direct reports from June 2004 to the present, including but not limited to all opt-in plaintiffs to this action." (Wittels Dec. ¶ 13 (quoting Plaintiffs' Sixth Request for Production, Request No. 19))  On April 2, 2010, Defendant objected to the request for all emails to or from Level Ones—claiming it was too burdensome and expensive.  (Wittels Dec. ¶¶ 14-5)  The parties met and conferred and ultimately engaged in motion practice regarding this issue.  (*See id.* ¶ 14).  On June 8, 2010, this Court limited full email production to twenty Level Ones.  (*Id.* ¶ 15)  Defendant SNET produced emails for the twenty Level Ones shortly before the close of discovery in 2010.  (*Id.* ¶ 16) Defendant also randomly produced a very small number of select emails for other Level Ones prior to the close of discovery.  (*Id.* ¶ 17)

> trial preparations, we identified the enclosed documents which may be used as exhibits at trial. Although these documents were not responsive to previous discovery requests, we are producing them now in advance of any required pre-trial exchange of exhibits. Many of these documents have previously been produced as part of SNET's production of WebAdd data.

(Letter from Erika Leonard to Steven L. Wittels, May 12, 2011, Ex. E to Wittels Dec. ¶ 28)

SNET's May 12, 2011 production included numerous previously unproduced documents that are plainly responsive to Plaintiffs' requests for production. (Wittels Dec. ¶ 29); *see infra* at 10. These wrongfully withheld documents include responsive documents from Defendant SNET's WebAdd system as well as emails.[4] (*See* Wittels Dec. ¶ 29)

Plaintiffs were shocked to receive this production so long after the close of discovery. (*Id.* ¶ 57) Accordingly, on May 13, 2011, Plaintiffs' counsel wrote defense counsel a letter regarding this untimely production. (Ex. S to Wittels Dec. ¶ 57) This letter asked Defendant SNET to identify which documents in the untimely production were not responsive to Plaintiffs' numerous prior discovery requests. (*See id.*) To date, Defendant's counsel have refused to identify which documents were "previously produced." Instead, SNET has asserted that none of the belatedly produced documents are responsive to Plaintiffs' prior document requests

---

[4] Although Defendant SNET served deposition notices for Mr. Tait and Mr. Albert in 2010, and Defendant SNET produced documents relating to those depositions in 2010, it appears that many of the documents produced on May 12, 2011 were not in those prior productions. (Wittels Dec. ¶ 29) The untimely production contained seven emails to or from John Tait, none of which were previously produced and all of which are responsive to Plaintiffs' discovery requests. (*Id.* at ¶ 30) The production also contained three emails from Greg Albert, none of which were previously produced and all of which are responsive to Plaintiffs' discovery requests. (*Id.* ¶ 31) All of the ten newly-produced emails involving Mr. Tait or Mr. Albert are anomalous, cherry-picked emails that support Defendant SNET's case. (*See id.* ¶ 54)

On May 19, the parties discussed their impasse before Parajudicial Officer Hawkins.  (*Id.* ¶ 60)  During that discussion, Defendant's counsel represented that the untimely produced documents were hand-selected from the files of SNET's Director of Labor Relations, John Naznic.  (*Id* )  With Mr. Hawkins' guidance, the parties agreed to an expedited briefing schedule for the instant motion.  (*Id.* ¶ 60)  On May 20, Plaintiffs proposed that motion practice would be unnecessary if Defendant SNET agreed not to use any of the wrongfully withheld and untimely produced documents (and the information contained in those documents) at deposition or trial and if Defendant identified which of the new documents were previously produced.  (*Id.* ¶ 61)  Defendant SNET did not agree to Plaintiffs' proposal.  (*Id.*)

On May 21, 2011, Parajudicial Officer Hawkins proposed that the depositions proceed in two phases, with questions relating to the untimely produced documents only allowed during the second phase.  (*Id.* ¶ 62)  Mr. Hawkins' proposal allowed for two seven hour depositions.  (*Id.* ¶¶62-3)  Defendant SNET agreed to Mr. Hawkins' proposal, without informing the Court that: (1) Defendant had previously deposed Mr. Albert and was only entitled to one hour of additional deposition; and (2) under a prior order there was a four-hour limit to deposition of Plaintiffs in this case.  (*Id.* ¶ 63)

Plaintiffs responded by proposing a counteroffer and reasonable compromise.  On May 23, 2011, the parties met and conferred by phone with Parajudicial Officer Hawkins present.  During that conversation, Defendant SNET rejected Plaintiffs' reasonable proposal, and counter-proposed that Plaintiffs should stipulate in advance that Plaintiffs would pay attorney fees and all costs should Plaintiffs lose a motion *in limine* (*Id*. ¶¶ 65-6).  As Defendant's proposal is plainly unacceptable, the parties were unable to reach agreement and Plaintiffs are forced to submit the present motion.

## ARGUMENT

### I.    The Court Should Exercise its Discretion and Barr SNET From Using the Untimely Produced Documents.

#### A.    Standard: This Court Has Wide Discretion to Fashion a Fair Remedy.

Federal Rule of Civil Procedure 37 provides that a court may impose sanctions on a party for disobedience of a discovery order.  Fed. R. Civ. P. 37(b)(2).  The Second Circuit has held that a "district court has 'wide discretion' in imposing sanctions under Rule 37."  *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007.

"Sanctions pursuant to Rule 37 are intended:  (1) to prevent a given party from benefiting from its failure to comply with discovery orders, (2) to specifically deter that party from continued violation of current and future discovery orders, and (3) to generally deter similar misbehavior by parties in other cases."  *In Re Sagecrest II, L.L.C.*, 444 B.R. 20, 23 (D. Conn. 2011) (Hall, J.) (citing Update Art v. Modiin Publishing, 843 F.2d 67, 71 (2d Cir. 1988)).  Courts often exercise their discretion to sanction parties who produce or identify responsive documents after a court-ordered date for the close of discovery by precluding the offending party from using the untimely produced documents.  *See, e.g.*, *Bouzo v. Citibank, N.A.*, 96 F.3d 51, 56-58 (2d Cir. 1996) (precluding plaintiff from using documents not disclosed in violation of a court order); *Wilson v. Thorn Energy, LLC*, 08 CIV. 9009 FM, 2011 WL 1044860 at *5 (S.D.N.Y. Mar. 17, 2011) (precluding use of documents that were not timely produced and precluding the non-producing party from offering evidence relevant to certain of the documents); *Yuan v. Rivera*, No. 96 Civ. 6628 (HB)(JCF), 2000 U.S. Dist. LEXIS 4483 at * 5-8 (S.D.N.Y. Apr. 7, 2000).

**B.     Defendant SNET Unambiguously Violated This Court's Discovery Cutoff Order.**

This Court explicitly ordered that all discovery be completed by December 31, 2010.  (Doc. 250)  Defendant SNET ignored this Court's Order and sandbagged Plaintiffs by producing responsive documents on May 12, 2011—more than four months after the close of discovery and just fourteen days before the parties were scheduled to submit their list of Level-One witnesses they intend to call at trial.

The documents belatedly produced by Defendant SNET related to witnesses Tait and Albert are unquestionably responsive to Plaintiffs' requests.  SNET is aware that these documents are responsive because it previously produced documents very similar to the untimely produced documents.

The chart below illustrates SNET's blatant misconduct by setting forth examples of (i) the untimely produced May 12, 2011 documents, accompanied by a (ii) summary list of specific requests served by Plaintiffs to which each newly produced document is responsive, and (iii) accompanied by examples of similar documents that Defendant SNET properly produced before the close of discovery:

**Examples of Misrepresentations In SNET's Untimely**
**May 12, 2011 Documentation Production**

| Untimely Produced Document | Plaintiffs' Discovery Requests to Which the Untimely Document Is Responsive | Similar Responsive Document Timely Produced by SNET |
|---|---|---|
| SNET00411118-00411123 (Email from Tait with technician case history and performance rankings: "His current ranking in the crew is 5 out of 10 on his job title") | **2:3**[5] (requesting all documents indicating that Level One employees have any role in hiring, firing changing the status of or disciplining employees),<br><br>**2:4(f)** (seeking all reviews of employees by Level Ones)<br><br>**3:7**(requesting "Any and all documents, and/or records concerning policies or procedures for disciplining technicians"),<br><br>**6:19**(requesting all emails to and from any Level One) | SNET235418-235421 (Email with sample case history for technician) |
| SNET00411124-411125 (Email from John Tait with Company's language for technician termination: "Patrick Mullen is being dismissed for unsatisfactory work performance…") | **2:3,2:4(e)** (requesting all documents reflecting that level Ones played a role in "hiring, firing, promoting or otherwise changing the status of other employees"),**3:7, 6:19** | SNET108401 (Email from John P. Nasznic providing language for technician termination) |
| SNET00411165 (Employee Coaching Form: "There have been too many times in passing that he has been seen in the cab of his vehicle") | **2:3, 2:4(f)** | SNET233399 (Employee Coaching Form) |
| SNET00411177-411179 (Outside Plant / Consumer & Deployment Performance Feedback Form) | **2:3, 2:4(f)** | SNET027818-027820 (Outside Plant / Consumer & Deployment Performance Feedback Form) |
| SNET00411219-00411220 (Email from Greg Albert with technician accident history) | **2:3,  2:4(e), 3:7, 6:19** | SNET265292-265293 (Email from Level 2 to Level 1 requesting review of attached accident history) |

[5] "2:3" denotes Plaintiffs Second Request for Production, individual request number 3. The other requests are referenced in the same manner. All relevant requests and documents are attached as exhibits to the declaration of Steven L. Wittels.

| SNET00411312 – 00411315 (Email from Tait to Nasznic with separation proposal for technician: "Reason for proposing separation") | **2:3**,  **2:4(e)**, **3:7,6:19** | SNET233387-233388 (Email with attachment regarding sending separation proposals to Nasznic) |
|---|---|---|
| SNET00411511-00411512 (Level One Timeline of Discipline of Technician: "5/18/2010 Customer mistreat – Recommendation Terminate" ) | **2:3**,  **2:4(e)**, **3:7, 6:19** | SNET230945-230947 (Timeline of Technician Discipline and Performance) |

As this Court has previously stated:  "'discovery orders are meant to be followed,' and a party who 'flouts such orders does so at his peril.'"  *Southern New England Telephone Co. v. Global NAPs, Inc.*, 251 F.R.D. 82, 90 (D. Conn. 2008 (Hall, J.) (entering an order of default judgment against a party violating court orders) (quoting Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995)).  **By producing responsive documents for the first time long after this Court's discovery deadline had expired, Defendant SNET has flouted this Court's Order and is inviting sanctions.**  *See, e.g.*, *Bouzo v. Citibank, N.A.*, 96 F.3d 51, 56-58 (2d Cir. 1996) (discussing with approval the issuance of sanctions for a plaintiff who did not disclose documents in violation of a court order); *Banjo v. U.S.*, No. 95 CIV. 633 (DLC), 1996 U.S. Dist. LEXIS 10743 at * 5-22 (S.D.N.Y. July 30, 1996) (sanctioning a party for identifying responsive documents after the close of discovery by dismissing the party's claims).

## II.     Defendant SNET Should Be Precluded From Using the Documents Belatedly Produced in Violation of This Court's Order

"In deciding whether to exercise its discretion to impose sanctions [precluding the use of documents], a court should consider: '(1) the party's explanation for the failure to comply with the [relevant order or rule]; (2) the importance of the testimony of the precluded witness[es and/or documents]; (3) the prejudice suffered by the opposing party

as a result of having to prepare to meet the new testimony; (4) the possibility of a continuance.'"  *Pal v. N.Y. Univ.*, No. 06 Civ. 5892 (PAC)(FM), 2008 U.S. Dist. LEXIS 52620at * 8 (S.D.N.Y. June 30, 2008)  (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).   An analysis of these four factors militates strongly in favor of sanctions precluding the use of the untimely produced documents.[6]

First, Defendant SNET has offered no legitimate explanation for its failure to comply with this Court's discovery deadline or for its failure to produce responsive documents in a timely manner. It is well-established that absent a legitimate explanation, a party producing documents in violation of a court's order should be precluded from using those documents.  *See, e.g.*, *Bouzo v. Citibank, N.A.*, 96 F.3d 51, 56-58 (2d Cir. 1996) (precluding plaintiff from using documents not disclosed in violation of a court order); *Wilson v. Thorn Energy, LLC*, 08 CIV. 9009 FM, 2011 WL 1044860 at *5 (S.D.N.Y. Mar. 17, 2011) (precluding use of documents that were not timely produced and precluding the non-producing party from offering evidence relevant to certain of the documents); *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 09 CIV 6796 JGK, 2011 WL 70561, at *2 (S.D.N.Y. Jan. 6, 2011) (precluding defendants from using documents

---

[6] This Court has discretion to issue a wide variety of sanctions, including an order precluding Defendant SNET from deposing Mr. Tait and Mr. Albert and from calling them as witnesses at trial. *See Oz v. Lorowitz*, No. 09 CIV. 5532 RJHHBP, 2011 U.S. Dist. LEXIS 23313 at *3 (S.D.N.Y. Mar. 7, 2011) (precluding testimony of three expert witnesses for failure to produce documents); *Pal*, 2008 U.S. Dist. LEXIS 52620at * 15-16 (precluding witnesses); *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 93 CIV 8298 KTD RLE, 1996 WL 469660, at *4 (S.D.N.Y. Aug. 16, 1996) (precluding use of undisclosed expert testimony).  Indeed, courts have dismissed the claims of parties who violate a court's discovery order.  *See, e.g.*, *Southern New England Telephone Co. v. Global NAPs, Inc.*, 251 F.R.D. 82 (D. Conn. 2008 (Hall, J.) (entering an order of default judgment against a party violating court orders); *Banjo v. U.S.*, No. 95 CIV. 633 (DLC), 1996 U.S. Dist. LEXIS 10743 at * 5-22 (S.D.N.Y. July 30, 1996) (sanctioning a party for identifying responsive documents after the close of discovery and exercising discretion to dismiss the party's claims).

.

that were produced after court-ordered discovery deadline); *Burnett v. Venturi*, 903 F. Supp. 304, 309-10 (N.D.N.Y. 1995) (disallowing use of a belatedly disclosed tape).

In *Yuan v. Rivera*, No. 96 Civ. 6628 (HB)(JCF), 2000 U.S. Dist. LEXIS 4483 (S.D.N.Y. Apr. 7, 2000), the court precluded defendants from introducing at trial documents which were turned over after the close of discovery due to error. This, even though the court held that defendants' failure to produce the relevant documents in a timely manner was "inadvertent rather than willful." *See id.* at * 7. Nonetheless, the court "preclude[d] defendants from introducing the newly-discovered documents in evidence or presenting witnesses who were first identified through those documents." *Id.* The present situation calls for sanctions much stronger than those issued in *Yuan*. Defendant SNET did not inadvertently fail to produce documents. Rather, it willfully and knowingly withheld the relevant requested documents, producing them nearly 5 months after the close of discovery. Accordingly, Defendant should not be allowed to use the untimely-produced Tait and Albert documents in depositions, at trial, or in any way in this litigation.

With respect to the second factor, the importance of the documents at issue, Defendant SNET asserts the documents are not responsive to Plaintiffs' extensive requests.[7] If Defendant is taken at its word, the documents must be irrelevant to the case and of no importance. Defendant SNET's assertions are plainly untrue.

The third factor, prejudice, also weighs strongly in favor of precluding the documents.[8] Plaintiffs would be greatly prejudiced by having to address issues raised by

---

[7] In this case, an order precluding these documents is not akin to a dismissal order because Defendant SNET would be able to argue the merits of its claims without these documents.

[8] Plaintiffs would be prejudiced and this Court would be inconvenienced if Defendant SNET were allowed to use the wrongfully withheld documents in two-track depositions of Mr. Tait and Mr.

wrongfully withheld documents that were untimely produced in violation of this Court's Order.  This prejudice is exacerbated by the fact that Defendant SNET has withheld responsive documents until the eve of final trial preparations (witness lists, jury changes, etc., due within 1 month), only to belatedly produce a select set of documents that appear to support Defendant's positions in the case.  *See Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alimentari S.P.A.*, 2011 U.S. Dist. LEXIS 34237 (E.D.N.Y. Mar. 30, 2011) at 11 (collecting cases) ("prejudice…is particularly great because discovery is closed and would have to be reopened for [movant] to appropriately respond….") Plaintiffs have not had adequate opportunity to fully  review the 500+ pages of documents and—given the very selective nature of the documents that Defendant did produce—Plaintiffs cannot be sure what other documents have been wrongly withheld. Such "sandbag[ging]. . . is precisely the type of conduct that [Rule 37] is designed to prevent."  *Pal*, 2008 U.S. Dist. LEXIS 52620at * 13.[9]

An analysis of the final factor, continuance, also favors precluding the documents. This case is set for trial starting October 2.  Any continuance that allowed Defendant SNET to produce *all* of the wrongly withheld documents and allowed Plaintiffs time to conduct appropriate follow-up discovery would cause the trial to be postponed.

---

Albert, as proposed by Mr. Hawkins.  Should they be called as witnesses at trial, Mr. Tait and Mr. Albert's testimony would be polluted by their exposure to the untimely documents.  *Cf.* Fed. R. Evid. 615 (allowing witnesses to be prevented from viewing testimony or documents which might corrupt the witnesses' testimony).  Plaintiffs' counsel would incur cost greater in preparing for the two-tracked depositions and in reviewing the transcripts.  In addition, this Court would be burdened by additional complex motion practice based on a more voluminous record.  As a result of Defendant's refusal to withdraw the untimely produced documents, Plaintiffs had no choice but to file the instant motion.

[9] In an employment case such as this, where the vast majority of the documents are in Defendant's possession, Defendant SNET cannot be allowed belatedly to pick and choose which of their responsive documents to share with Plaintiffs.  *Cf. Innocent v. HK Hotels, LLC*, No. 05 CIV. 6057 (JCF), 2006 WL 2289809, *4 (S.D.N.Y. Aug. 9, 2006) (noting that, in a FLSA case, the employer "controls the pay records, witnesses, and information about the scope of its employees duties").

Moreover, as this Court has noted, one of the primary purposes of Rule 37 sanctions is to ensure that a party that violates a court's order does not benefit from its intransigence.  *See, e.g.*,*Update Art v. Modiin Publishing*, 843 F.2d 67, 71 (2d Cir. 1988); *In Re Sagecrest II, L.L.C.*, 444 B.R. 20, 23 (D. Conn. 2011) (Hall, J.) ("Sanctions pursuant to Rule 37 are intended:  (1) to prevent a given party from benefiting from its failure to comply with discovery orders . . .").  If Defendant SNET were allowed to use the wrongly withheld documents in any way, it would greatly benefit from its own wrongdoing.

The other two primary purposes of Rule 37 sanctions are to deter the offending party from future violations of court orders and to deter similar misbehavior by parties in other cases.  *See, e.g.*, *In Re Sagecrest II, L.L.C.*, 444 B.R. at 23 (Hall, J.).  The best way to deter Defendant SNET and other parties from violating this Court's orders is to prevent SNET from using the wrongfully withheld documents.  Plaintiffs therefore respectfully request that Defendant be precluded from using the untimely produced documents.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiffs respectfully request that this Court:

1. Find that Defendant SNET violated this Court's Order setting the deadline for discovery and preclude SNET from using any of the belatedly-produced documents regarding Tait and Albert in any way in this litigation, including at depositions and trial; and

2. Grant any and all other relief that the Court deems just and proper.

Dated: May 23, 2011

/s/_Steven L. Wittels_____
Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

*Attorneys for Plaintiffs and the Class*