UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,**<br>**Individually and on Behalf of Others**<br>**Similarly Situated,**<br><br>        **PLAINTIFFS,**<br><br>    **v.**<br><br>**SOUTHERN NEW ENGLAND**<br>**TELEPHONE COMPANY,**<br><br>        **DEFENDANT.** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |

## RESPONSES AND OBJECTIONS TO SNET'S PROPOSED JURY INSTRUCTIONS

**General Objections and Responses**: Plaintiffs assert that their proposed jury instructions are more accurate, balanced, straightforward, and legally sound than those proposed by SNET; they are also more comprehensible and helpful to a lay jury.  Plaintiffs' charges are guided by, and generally consistent with, model jury instructions and charges adopted in FLSA misclassification cases.  SNET does not even purport to have consulted such precedents in constructing a set of charges favorable to the company, which (in accordance with SNET's novel Trial Plan) creates a new and untested way of trying a certified wage and hour collective and class action.  In sum, Plaintiffs instructions are preferable, both individually and as a whole.  The failure to specifically object to one of SNET's instructions does not constitute a concession that the instruction is appropriate or should be given to the jury.

**SNET's Proposed Instruction #1**:

### 1.  The Claims

This case arises under the Fair Labor Standards Act (or "FLSA") and Connecticut state wage and hour laws.  Unless one of the legal exemptions applies, the FLSA and Connecticut

state wage and hour laws require employers to pay employees overtime compensation for working more than forty (40) hours per week.  Each Plaintiff claims that SNET did not pay him or her for overtime worked, as required by the FLSA and Connecticut state law.  Defendant maintains that each Plaintiff was an executive employee who was not eligible for overtime pay under the federal or state laws.

**Response and Objection:** SNET improperly frames this case as an assembly of individual suits,

(*See* SNET's Trial Plan, Doc. 346, and Instrs. 23-26), but this is a collective, class action.

SNET's position is contrary to a well-established law applicable to wage and hour actions.  (*See*

Doc. 347, Pltfs Trial Plan; Doc. 351, Resp. to Defts' Trial Plan; Resp. to Instrs. 23-26, <u>infra</u>)


**<u>SNET's Proposed Instructions # 3-4</u>:**

### 3.  Affirmative Defenses -- Burden of Proof

Defendant claims that the overtime pay requirements do not apply because of the executive exemption from this requirement under federal and Connecticut law.

I will review the elements of the executive exemption under the FLSA and Connecticut state law with you in a moment.  Defendant has the burden of proof on this issue.  This means that if Defendant has satisfied you by a preponderance of the evidence that Plaintiffs are exempt under the federal executive exemption under the FLSA, then your verdict must be for Defendant on Plaintiffs' FLSA claims.  Likewise, if Defendant has satisfied you by a preponderance of the evidence that Plaintiffs are exempt under the Connecticut executive exemption, then your verdict must be for Defendant on Plaintiffs' Connecticut wage and hour law claims.

### 4.  Definition of "Preponderance of the Evidence"

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents entered into evidence.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having the burden of proving that issue.  If you find that the scales tip, however slightly, in favor of the party with the burden of proof – that what the party claims is more likely true than not true – then that element will have been proven by a preponderance of the evidence.


**<u>Response and Objection</u>**: SNET's proposed "preponderance of the evidence" standard on its

executive exemption defense is incorrect for the reasons stated in Plaintiffs' proposed instructions. (*See* Pltfs' Proposed Jury Instructions,, at 1-3, 16-18)

Even assuming *arguendo* that a preponderance standard is applicable, using it without also mentioning "plainly and unmistakably" – as SNET does here – is misleading, incomplete, and prejudicial. It omits a key part of the relevant information that the jury should know about SNET's burden under the law.

**SNET's Proposed Instruction # 5**:

### 5.  Affirmative Defense – Stipulation to Salary Requirements

Employees must be paid a salary of at least $455 per week under federal law and $470 per week under state law in order to qualify for the "executive exemption".  The parties have stipulated that the Plaintiffs were paid more than the required salary levels for the "executive exemption" under both Connecticut and federal law.  You must therefore treat these facts as having been proved for the purposes of this case.  Now you should consider the other elements of Defendant's executive exemption defense.

**Response and Objection**: The salary requirements for the FLSA and Connecticut executive exemptions are satisfied and Plaintiffs will so stipulate.  It is thus completely irrelevant and should not be mentioned to the jury.  The only reason for SNET to include this instruction is to prejudice Plaintiffs by implying that the L1s make high salaries and therefore should not receive overtime.  However, this is not a valid legal basis for denying overtime and is immaterial to any determination to be made by the jury.  *See* FRE 401-403; Pltfs' MIL #6 on 1 Compensation.  No jury instruction is needed on this issue.

**SNET's Proposed Instruction #9**:

### 9.  Primary Duty - Consideration of Time

The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee, but is not dispositive of that issue. Thus, employees who spend more than 50 percent of their time performing exempt work will

3

generally satisfy the primary duty requirement.  But this is only a general guideline, and time is not the sole test.  Primary duty does not mean the most time-consuming duty; it instead connotes the "principal" or "chief" – meaning the most important – duty performed by the employee.  There is no requirement that exempt employees spend more than 50 percent of their time performing exempt work.  Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

**Response and Objection**: This is a one-sided instruction, which was not in the Court's

discussion of the relevant test in its summary judgment decision.  Consistent with that decision,

this guideline should not be given only in SNET's favor but should cut both ways: "Employees

are generally classified as exempt or non-exempt depending on what they spend the majority of

their time doing, but this generalization may not hold depending on the remaining factors."[1]

**SNET's Proposed Instruction #10**:

**10.  Definition of "Management"**

Both the federal and state law executive exemptions require that an employee's primary duty must be "management."  Generally, "management" includes, but is not limited to, activities such as:

- interviewing, selecting, and training of employees;

- setting and adjusting their rates of pay and hours of work;

- directing the work of employees;

- maintaining production or sales records for use in supervision or control;

- appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status;

- handling employee complaints and grievances;

- disciplining employees;

- planning the work;

---

[1] *See*, *e.g.*, *Johnson v. Big Lots*, 604 F.Supp.2d 903, 915 (E.D. La. 2009) ("That Johnson performed managerial duties less than 50% of his workweek is not dispositive, but this factor suggests his primary duty was not management.")

- determining the techniques to be used;

- apportioning the work among the employees;

- determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies;

- providing for the safety and security of the employees or the property;

- planning and controlling the budget; and

- monitoring or implementing legal compliance measures.

An employee need not perform all of these functions to have management as his or her primary duty. It is sufficient if the employee's primary duty consists of one or more of the functions on this list.

**Response and Objection**: SNET's cited authority does not support the instruction that Plaintiffs need only perform "one or more" of the enumerated activities. This statement is misleading and unnecessary. SNET concedes that an employee who performs only one of these tasks (e.g. a supply clerk) would not be properly classified as an exempt executive.

**SNET's Proposed Instruction #11**:

**11. Definition of "Department or Subdivision"**

Both the federal and state law executive exemptions require that an employee's primary duty is the management of the enterprise in which he is employed or of "a customarily recognized department or subdivision thereof." The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. In particular, a group of Technicians assigned to a particular function, such as Installation & Repair, Construction & Engineering, or U-verse functions for a particular geographic area, constitutes "a customarily recognized department or subdivision."

**Response and Objection**: SNET's instruction asks the Court to rule as a matter of law that a crew of technicians is a "customarily recognized department or subdivision" of SNET. The

Court has never made such a ruling in this case and Plaintiffs have not stipulated as such. The jury should determine whether a crew qualifies under the facts and circumstances of this case. Plaintiffs' instruction properly informs the jury members of what the term "customarily recognized department or subunit" entails.

**SNET's Proposed Instruction #12**:

### 12.    Co-Management of a Subdivision

Supervisors may co-manage the same department or subdivision, so long as each supervisor customarily and regularly directs the work of two or more employees.

**Response and Objection**: SNET's misleading instruction glosses over the fact that assisting someone else does not count as management of the enterprise; nor does shared responsibility establish this element of the exemption. To meet this prong of the test, an employee must be "in charge" of an establishment within the enterprise (29 C.F.R. § 541.103), and have as his or her primary duty the management of that establishment. *See* Pltfs' Proposed Jury Charges at 13, nn. 30-31. .

**SNET's Proposed Instruction #13**:

### 13. Work That Is "Directly and Closely Related" to Exempt Work

Work that is "directly and closely related" to the performance of exempt work is also considered exempt work. The phrase "directly and closely related" means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work. Thus, "directly and closely related" work may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly. Work "directly and closely related" to the performance of exempt duties may also include recordkeeping; monitoring and adjusting machinery; taking notes; using the computer to create documents or presentations; opening the mail for the purpose of reading it and making decisions; and using a photocopier or fax machine. Work is not "directly and closely related" if the work is remotely related or completely unrelated to exempt duties.

**Response and Objection**: SNET's instruction does not adequately convey that an employee must be performing exempt duties in order to be performing work "directly and closely related" to those duties.  Clerical-type tasks are commonly considered non-exempt.

**SNET's Proposed Instruction #14**:

**14.    Examples of Work That Is "Directly and Closely Related" to Exempt Work**

The following examples further illustrate the type of work that is normally considered as directly and closely related to exempt work:

(1) Keeping time, production or sales records for subordinates is work directly and closely related to an exempt executive's function of managing a department and supervising employees.

(2) The distribution of materials, merchandise or supplies to maintain control of the flow of and expenditures for such items is directly and closely related to the performance of exempt duties.

(3) A supervisor who spot checks and examines the work of subordinates to determine whether they are performing their duties properly, whether the work is satisfactory, and checks on the quality of customer service being given is performing work which is directly and closely related to managerial and supervisory functions.

(4) A supervisor may take notes recording his or her observations of an employee's work in the field; after returning to the office of the employer, the supervisor may personally use the computer to type a report and create a record of the employee's work. Standing alone, or separated from the primary duty, such note-taking and typing would be routine in nature. However, because this work is necessary for analyzing the data about employee performance and making recommendations for improvement, the work is directly and closely related to exempt work. While it is possible to assign note-taking and typing to nonexempt employees, and in fact it is frequently the practice to do so, delegating such routine tasks is not required as a condition of exemption.

**Response and Objection**: This instruction involves a level of detail and elaboration which is unnecessary to give to the jury.  Moreover, the instruction is a distortion of the regulations upon which it is purportedly based.  For example, SNET omits an essential caveat to 29 C.F.R.§ 541.703(b)(3), the requirement that "the checking is distinguishable from the work ordinarily performed by a nonexempt inspector."; SNET rewrites and reinvents 29 C.F.R.§ 541.703(b)(6)

to conform to its version of the facts of this case.

**SNET's Proposed Instruction #16**:

**16.     Definition of "Two or More Employees"**

Both the federal and state law executive exemptions require that an employee customarily and regularly directs the work of "two or more other employees."  The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

**Response and Objection**: SNET fails to define or address the term "direct the work."  The jury

should be provided guidance regarding this key term.

**SNET's Proposed Instruction #17**:

**17.     Definition of "Particular weight"**

The federal executive exemption requires proof of a third element that is not required by the state executive exemption.  Under the federal executive exemption, the employee must have the authority to hire or fire other employees, or his/her suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given "particular weight."    To determine whether an employee's suggestions and recommendations are given "particular weight" with respect to the hiring, firing, advancement, promotion or any other change of status of other employees, factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance.

**Response and Objection**: SNET fails to define the term "change in status."  The jury should be

provided guidance regarding this key term.

**SNET's Proposed Instruction #18**:

**18.     Final Decision-Making Authority**

A supervisor is not required to have final decision-making authority in order for the supervisor's suggestions and recommendations to be given particular weight under the federal executive exemption.

**Response and Objection**: There is no need for a separate instruction.  The instruction that an

employee can make recommendations that are given "particular weight" already encompasses

the idea that the employee need not have final decision-making authority.


**SNET's Proposed Instruction #19**:

**19.     Authority to Affect Status – Effect of Collective Bargaining Agreement**

The existence of a union grievance process under a Collective Bargaining Agreement which allows discipline decisions to be challenged does not mean that a supervisor does not have authority to discipline employees employed under the Collective Bargaining Agreement or that the supervisor's suggestions and recommendations as to the discipline of those employees are not given particular weight under the federal executive exemption.

**Response and Objection**: This unnecessary and confusing instruction is not supported by the

law, including the limited authority cited by SNET.  The jury must analyze the actual facts,

including any restrictions on the Level Ones' discretion, to determine whether they exercise

authority to hire and fire and whether they make recommendations that are given particular

weight.


**SNET's Proposed Instruction # 20**:

**20.     Use of Policies and Procedures**

The fact that First Level Managers may make judgments within well-defined policies, detailed guidelines or comprehensive procedures designed to provide uniform products and service does not mean that they are not engaged in management or that they do not make recommendations on personnel decisions that are entitled to particular weight.  The exercise of discretion, even when limited by prior instruction, will still satisfy the requirements of the exemption.

**Response and Objection**:  This confusing, misleading instruction is contrary to the Court's summary judgment decision.   In order to be exempt executives, employees must exercise discretion and independence in running the business.  Simply following orders does not make one a manager.[2]  The jury should reach a factual assessment of the Level Ones' duties and authority, without being unduly influenced by this unnecessary instruction.  SNET's purported authority for its proposed instruction has been repeatedly distinguished.[3]

**SNET's Proposed Instructions # 21 and 22**:

**21.     Applicability of Exemption – Company's Realistic Expectations**

In  determining  whether  the  executive  exemption  applies,  you  should  consider Defendant's reasonable expectations for the Plaintiffs' job.  If you find that Defendant designs the job to be exempt, and realistically instructs the employee to perform exempt duties, then you must find that job to be exempt.

**22.     Applicability of Exemption – Misperformance of Duties**

An employee who is supposed to be engaged in exempt activities, but fails to do so  due to  his  or  her  own  substandard  performance  or  divergence  from  the  employer's  realistic expectations is not thereby able to evade a valid overtime exemption and make himself or herself eligible for overtime pay.

**Response and Objection**:   SNET has cited no authority that its proposed instructions are remotely applicable to an FLSA or Connecticut Minimum Wage Act case.  *See Ruggeri v.*

---

[2] Furthermore, in contrast with SNET's proposed instruction, AT&T's relevant rules, policies, and procedures are not simply about how products or service is provided but how the company treats its techs in all instances; the ability to manage is stripped away from the Level Ones.

[3] *See*, *e.g*., *Morgan v. Family Dollar*, 551 F.2d 1233, 1271-73 (11th Cir. 2008); *Plaunt v. Dolgencorp, Inc.*, 2010 U.S. Dist. LEXIS 132135, at *27-32 (M.D.Pa. Dec. 14, 2010); *Pierce v. Dolgencorp, Inc.*,2011 U.S. Dist. LEXIS 10624, at *28-32 (M.D.Pa. Feb. 3, 2011).  *See also Salazar v. Sunbelt Sprinkler & Well Drilling, Inc.*, 2008 U.S. Dist. LEXIS 52034, at *15-16  (S.D. Fla. July 7, 2008) ("…the employee still must exercise some discretion that distinguishes him or her from other employees"; ultimately an employee must "'exercise[] discretion' in a managerial capacity", a factual question).

*Boehringer Ingelheim Pharm., Inc.*, 585 F. Supp. 2d 308, 313-15 (D. Conn. 2008).  Moreover,

these instructions are factually irrelevant and unduly prejudicial. (*See* Pltfs' MIL #3).

**SNET's Proposed Instruction #23**:

**23.     The Potential Outcomes**

The Named Plaintiffs Sharon Perkins, Michael Blasko, Joseph Kiely, Michael McDermott, and Kelly Werbinski have brought this case as a class action, arguing that all First Level Managers with the titles Manager, Construction & Engineering and Manager, Network Services that have technicians reporting to them are non-exempt and that all of them should receive overtime compensation. During this case, you have heard testimony from a number of First Level Managers.  As to each of the First Level Manager about whom you heard testimony, you will decide whether the FLSA executive exemption applies, and whether the Connecticut state law exemption applies.  The elements of these exemptions are different.  Thus, you may find that one, both, or neither of the exemptions apply to each of the First Level Managers.  You may find that one or both exemptions apply to one First Level Manager, but do not apply to another.  You should consider the evidence related to each First level Manager separately.

For Plaintiffs to succeed on their class claims, you must find that all of the First Level Managers about whom you heard testimony are not exempt under the executive exemption.  If you find that any of the First Level Managers about whom you heard testimony is exempt under either the federal executive exemption or the state executive exemption, you cannot return a verdict in favor of the class under that exemption.

In that case, you may consider only the claims of the Named Plaintiffs on that exemption.

**Response and Objection**: SNET's discussion of the "potential outcomes" in this case involves a

convoluted trial plan unsupported by actual authority.

Without moving to decertify, SNET proposes a Trial Plan and jury charges that essentially

amount to a backdoor challenge to (i) the Court's certification decision; and (ii) the

constitutionality of established class and collective procedures in misclassification cases.  SNET

cobbles together a loose assemblage of vague pronouncements, each of which are

distinguishable, but offers no actual authority in support of its Plan.  SNET has absolutely no

precedent for its novel trial procedure. Nor is there any authority for the proposition that a

certified class and collective wage and hour action is really a collection of individual controversies, that it is not the class (as defined by the certification decision) that is at issue but the testifying class members, that the trial is properly conceived as a group of individual liability determinations, or that 100% purity is required to maintain a representative (collective or class) action.[4]

-----

SNET's Trial Plan and corresponding jury instruction is fatally flawed in numerous respects.

(1) The jury does not need to find *anyone* "non-exempt."  (Instr. #23 ¶ 2).  Rather, it will decide only whether SNET has met its burden of proving that the class members are exempt.

(2) Moreover, it is basic trial practice that the Court, not the jury, makes decisions regarding class and collective certification and determines whether a case is appropriate for class-based adjudication.[5]  Contrary to the law, SNET's Trial Plan renders the status of this litigation as a class case tenuous and leaves it up to the jury to resolve.[6]  Plaintiff is unaware of any cases where the jury was asked to determine certification.

(3) SNET's Trial Plan and Instruction are contrary to well-established law and to the way certified wage and hour collective and class actions are tried.  *See*, *e.g.*, Doc. 347, Pltfs's Trial Plan at 8-13; Doc. 351, Pltfs' response to Defts' Trial Plan at 4-6; Docs. 255, 261, Pltfs' Papers

---

[4] SNET apparently contends that even one identified outlier in a properly-certified class of 1,000, 10,000, 50,000, or more would defeat class adjudication.

[5] *See*, *e.g.*, Fed. R. Civ. P. 23(c); *Perkins*, 669 F. Supp. 2d at 217 (collective action certification, noting typical two-stage process adopted by Courts throughout the country), at 222 (class certification); *Morgan,* 551 F.3d at 1261 (describing certification process as performed by the court).

[6] Although SNET's instruction does not directly charge the jury to apply the "similarly-situated" standard or Rule 23 requirements, its liability determinations are made conclusive; unless it finds unanimously, it *must* decertify and adjudicate only the remaining individual claims of the named Plaintiffs.  The Court is divested of its customary role in determining certification issues.

on Motion for Protective Order against individualized discovery.[7]   The case is not properly conceived as a collection of mini-trials, and probative representative evidence going towards the classification status of the class (not just the testifying witnesses) is admissible.[8]

(4) SNET's Trial Plan and corresponding jury instruction are internally inconsistent.  SNET appears to challenge the entire concept of representative adjudication as unconstitutional.[9]  Yet, under SNET's Plan, the jury's verdict regarding the testifying witnesses _can_ be extended to the larger class -- as long as it is unanimous.

**SNET's Proposed Instructions # 24-25**:

**24.    Consideration of Damages**

I am going to instruct you regarding the calculation of damages, should you find that either some or all of the Named Plaintiffs, or the class are entitled to overtime compensation.  Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

**25.    Proof of Overtime Hours Worked**

Federal and state laws require employers to keep payroll records showing the hours worked by and wages paid to non-exempt employees.

It is undisputed that Defendant treated the Plaintiffs as exempt and did not require them to punch a time clock or otherwise report their hours worked.  Accordingly, Defendant did not keep records of the hours worked by the Plaintiffs, so you must determine the number of overtime hours worked in any case where you have found an entitlement to overtime.

---

[7] In cases such as *Morgan*; *Rodriguez v. Farm Stores Grocery Inc.*, 518 F.3d 1259, 1263-65 (11th Cir. 2008); and *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009), courts have specifically upheld collective liability verdicts in misclassification actions.

[8] *See*, *e.g.*, *Morgan*, 551 F.3d at 1277; *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247, at *65-77 (D.N.J. May 11, 2009)(discussing representative testimony; even if there are discrepancies or inconsistencies, testimony is representative if plaintiffs are similarly situated; noting that testimony of non-parties and other evidence corroborated plaintiffs on duties and characteristics of class position); Plaintiffs Proposed Jury Instructions at 19-21& n.7. n.44.

[9] It has previously argued that class treatment is never appropriate in misclassification cases – a proposition decisively rejected by the Court in its November 4, 2009 Order.

Just as the Defendant had the burden of proving that the Plaintiffs are exempt, the Plaintiffs have the duty to prove their amount of uncompensated overtime by a preponderance of the evidence.   In this case, there are no employment records upon which a conclusive determination of the number of overtime hours worked can be made.  The Plaintiffs can therefore satisfy their burden of proof if they prove that they performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.    You may rely on all of the evidence presented at trial, including, without limitation, the testimony of those Plaintiffs who testified, time records and business records provided by both parties, and other business records.

If you find that any of the Plaintiffs have met this burden, the responsibility shifts to Defendant to come forward with evidence to negative the reasonableness of the inference to be drawn from the Plaintiffs' evidence.  If you find that Defendant has not succeeded in producing such evidence, you may find for the Plaintiffs and award an appropriate amount in damages, even though the result be only approximate.

**Response and Objection**: SNET's instructions on damages are inappropriate along the same lines as Instruction 23.  The jury should not be deciding the case on an individual basis, and the Court should not suggest this possibility.   Under the *Mt. Clemens* line of cases, it is well-established that the jury can reasonably approximate class-wide damages, even for non-testifying Plaintiffs and absent class members.

**SNET's Proposed Instruction # 26**:

### 26.     Determination of Damages, If Any

If you find no liability on a class-wide basis, you will still decide the amount of uncompensated overtime hours worked by any individual Named Plaintiff for whom Defendant has not established the exemption.

If you find that all of the Plaintiffs from whom you heard testimony are not exempt, you will have to decide the amount of uncompensated overtime hours worked on a class-wide basis.

In reaching a determination on damages – whether your determination is for some or all of the Named Plaintiffs, or on a class-wide basis – you will have to make three determinations each as to the state and federal law claims, for a total of six damages determinations.

First, you will have to determine which statute of limitations applies.  As I will instruct you, the statute of limitations is different under the federal law than the statute of limitations under state law.  In addition, one of two different federal statutes of limitations will apply,

depending on whether you determine that the Defendant's violations were "willful," as I will define that term for you.  Once you have determined the appropriate statute of limitations, you can calculate damages for overtime compensation.

Second, you will have to determine whether the Plaintiff(s) are entitled to double-damages (also called "liquidated damages").  As I will instruct you, the standards for awarding liquidated damages are different under the federal law than the state law.

Third, you will have to determine whether to award interest on Plaintiffs' damages.  You may not award interest on Plaintiffs' federal claims.  If you have not awarded liquidated damages, you may award interest payments on Plaintiffs' damages for their state law claims.

You will have to apply the above standards for calculating damages, without providing for any duplication of damages.  You may not award recovery under both the federal and the state laws for the same overtime hours worked.

**Response and Objection**: SNET asserts that the jury must make _six_ separate damages determinations for each employee; this just isn't the case, and SNET is creating obstacles to a sensible and efficient class trial where none exist.

Defendant's instruction improperly gives to the jury the question of liquidated damages under the FLSA to the jury.  *See*, *e.g.*, *McClanahan v. Matthews*, 440 F.2d 320, 322 (6th Cir. 1971).  Under the statute, liquidated damages are the norm, but the **Court** has the discretion to reduce or not to award them if the employer meets its evidentiary burden.  *See*, e.g., 29 U.S.C. § 260 ("the court may in its sound discretion…"); *Reich v. S. New Eng. Tel. Co.*, 121 F.3d 58, 70-72 (2d Cir. 1997); *Morales v. Cancun Charlie's Rest*., 2010 U.S. Dist. LEXIS 125516, at *24 (D. Conn. Nov. 23, 2010).

Likewise, the Court, not the jury, should determine whether interest is appropriate and the Court should perform the calculation.  In addition, SNET misstates the standard on whether interest is permitted.  On the FLSA claims, pre-judgment interest is permitted (indeed virtually required) if the Court denies liquidated damages.  Under the CMWA, interest is permitted concurrently with liquidated damages because they serve different statutory purposes.

Finally, SNET impermissibly directs the jury that it may not award damages under both federal and state law.   This is not true and would confuse lay jurors.  The jury may return a verdict under both statutes as to the amount of unpaid overtime due and the Court can then factor in any liquidated damages and interest and ensure that there is no duplicate recovery.[10]

**SNET's Proposed Instruction # 27**:

**27.    Statute of Limitations Under the Federal Fair Labor Standards Act**

"Overtime pay" under the federal Fair Labor Standards Act is ordinarily subject to a two-year statute of limitations from the time that a Plaintiff files a notice of his or her consent to join the class action.   No recovery for a violation of the FLSA, if found, can ordinarily be made for any occurrence more than two years prior to the date on which a Plaintiff joined this lawsuit.

If you find that the Defendant's failure to pay "overtime pay" was "willful," then "overtime pay" is subject to a three-year statute of limitations from the time that a Plaintiff files a notice of his or her consent to join the class action.  Plaintiffs have the burden of proving that the Defendant's failure to pay "overtime pay" was "willful."

**Response and Objection**: This instruction overstates Plaintiffs' burden.  The statement that no recovery can "ordinarily" be made more than two years from the violation implies a presumption that does not exist under the law.

**SNET's Proposed Instruction # 30**:

**30.    Determining Whether the Federal or State Statute of Limitations Applies**

If you find that a Plaintiff was exempt under both the state and federal law, you do not need to determine which statute of limitations applies.

If you find that a Plaintiff was exempt under the state law, but non-exempt under the federal law, then you will apply the federal statute of limitations.

If you find that a Plaintiff was exempt under the federal law, but non-exempt under the state law, then you will apply the state statute of limitations.

---

[10] For example, due to differing statutes of limitations and class size, the employee-class may be entitled to a greater amount of unpaid overtime under Connecticut law (this award would likely encompass the class' FLSA damages), be entitled to liquidated damages under the FLSA and/or state law, and be entitled to interest under state law.  Each of these elements would be properly included in a final judgment.  *See, e.g.*, *Morales*, 2010 U.S. Dist. LEXIS 125516, at *23-*27.

If you find that a Plaintiff was non-exempt under both the state and federal law, then you will apply the state statute of limitations, which is the longer of the two applicable limitations periods.

**Response and Objection**: This instruction is unduly complicated and unnecessary.  The jury

will be properly instructed on the relevant statutes of limitations.

**SNET's Proposed Instruction # 31**:

**31.    Definition of "Overtime Hours" and "Overtime Pay"**

The "overtime hours" worked by each Plaintiff means the hours that each Plaintiff worked longer than forty hours in a workweek, at the direction or with the knowledge of SNET, and for the benefit of SNET.  You should not include any periods during which a Plaintiff was completely relieved from duty and which were long enough to enable the Plaintiff to use the time effectively for his or her own purposes.  Rest periods of short duration, running from 5 minutes to about 20 minutes, should be included in hours worked.  Longer periods in which a Plaintiff did not perform work, such as time for meals (even if a Plaintiff did not actually eat a meal during some or all of those periods and even if a Plaintiff did not leave his or her office), should not be included in hours worked, provided that the Plaintiff was not required to perform any duties, whether active or inactive, during those periods.

"Overtime pay" for employees who are not exempt under either the Connecticut state law exemption or the federal Fair Labor Standards Act exemption is one and one-half times an employee's regular rate of pay for work.  "Overtime pay" is only applied to the "overtime hours" that a non-exempt employee works, over forty in a workweek, as described above.  There is no duplication.  Even if an employee is non-exempt under state law, as well as non-exempt under federal law, he is only paid "overtime pay" once.

**Response and Objection**: SNET's misleading and confusing instruction implies that if an

employee had a meal break available—which the employee did not actually use—it should not

be considered working time.  In addition, while duplicate recovery is not permitted as part of the

final judgment, the jury is able to issue awards under both the FLSA and state law.

**SNET's Proposed Instructions # 33 and 34**:

**33.    Definition of "Regular Rate of Pay" under the Fluctuating Work Week Method**

Defendant paid the Plaintiffs a fixed salary that covered all hours worked in a week whether few or many.  This is sometimes called a "fluctuating work week" calculation.  Under this method, the "regular rate of pay" will vary from week to week, and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week.

**34.    Nonpayment of Overtime Compensation – Calculation of Overtime Compensation Under Fluctuating Work Week Method**

Those Plaintiffs who are not exempt under the Connecticut state executive exemption or the federal Fair Labor Standards Act executive exemption are entitled to overtime compensation.  If you find that a Plaintiff is not exempt, you must determine the amount of overtime pay owed to that non-exempt Plaintiff.  Defendant paid the Plaintiffs under a "fluctuating work week" method.  Overtime pay under the "fluctuating work week" is calculated as follows:

1.    Identify the "regular rate of pay" for the non-exempt Plaintiff under the fluctuating work week method.

2.    Multiply the "regular rate of pay" by .5 to determine the "overtime rate of pay."

3.    Determine the number of overtime hours worked by the non-exempt Plaintiff.

4.    Multiply the number of overtime hours worked by the "overtime rate of pay" to determine overtime damages.

In determining the amount of damages, you may not include or add to the damages any sum for the purpose of punishing the Defendant or serving as an example to warn others.

**Response and Objection**: SNET's proposed instructions improperly assume that the Fluctuating Workweek (FWW) method of paying overtime applies as a matter of law, and that the jury that **must** calculate any damages based upon the FWW. Plaintiffs' position is that the FWW is inapplicable as a matter of law; alternatively, at a minimum, this is a contested factual issue, and it is SNET's burden to prove that the FWW applies.  (*See* Pltfs' MIL #11 on FWW).

**SNET's Proposed Instruction # 35**:

**35.    Liquidated Damages Under Federal Law**

If you award any damages under the FLSA, you may award the same amount of damages in the form of "liquidated damages" to compensate Plaintiffs for the delay in payment of

overtime compensation, unless you find that Defendant's actions in classifying Plaintiffs as exempt from overtime pursuant to the federal executive exemption were made in good faith and with reasonable grounds for believing that the exemption applied.

"Good faith" means an objectively honest intention to ascertain what the FLSA requires and a subjectively reasonable intention to comply with it.

**Response and Objection**: This instruction improperly puts the question of liquidated damages under the FLSA to the jury. *See* Response to Instruction 26, above.

**SNET's Proposed Instruction # 36**:

**36.    Liquidated Damages Under Connecticut Law**

If you award any damages under Connecticut law, you may not award the same amount of "liquidated damages" unless you find that the Defendant acted with bad faith, arbitrariness or unreasonableness in classifying the Plaintiffs as exempt from overtime pursuant to the Connecticut executive exemption.  You may not award duplicative double damages under both federal law and state law.

**Response and Objection**: Plaintiffs disagree that the jury should calculate liquidated damages. It is preferable and less confusing for the jury to make the requisite finding and for the Court to double the amount of any award.  SNET also improperly asserts that the jury may not award double damages under both federal and state law.  This is no more redundant that dual verdicts in general.  And, liquidated damages "serve fundamentally different purposes" under federal and state law.  Under the FLSA, they are compensatory in nature (*Reich*, 121 F.3d at 71; *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)); under the CMWA, they are punitive. Thus, Plaintiffs are "able to recover liquidated damages simultaneously under the FLSA and the applicable state statute." *Morales*, 2010 U.S. Dist. LEXIS 125516, at *24-*26.

**SNET's Proposed Instruction # 37**:

**37.    Applicable Interest Rate**

You may not award interest on Plaintiffs' federal claims.

You may not award interest on Plaintiffs' state law claims if you determine that an award of liquidated damages is appropriate.

If you do not award liquidated damages, and you determine that an award of interest is appropriate on Plaintiffs' state law claims, you must use the statutory interest rate of 10%.

**Response and Objection**: SNET's instruction on interest is both unnecessary and inaccurate.

*First*, there is no reason for the jury to be calculating pre- or post-judgment interest. If the jury returns an award, the Court can determine the applicable interest.

*Second*, with regard to the federal claims, SNET's instruction improperly states that no pre-judgment interest is available under the FLSA, even if liquidated damages are not awarded. The 1953 case cited by SNET for this proposition is no longer good law in this Circuit,[11] the Third Circuit (where the proposition originated),[12] or almost anywhere else.[13]

*Third*, on the state law claims, SNET falsely asserts that prejudgment interest cannot be awarded along with liquidated damages. Liquidated damages and interest serve entirely different

---

[11] *See*, *e.g.*, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064-65 (2d Cir. Apr. 5, 1988)(clarification of earlier decision); *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 57-58 (2d Cir. 1984); *Zhao v. E. Harlem Laundromat, Inc.*, 2010 U.S. Dist. LEXIS 121335, at *27 (E.D.N.Y. Oct. 8, 2010); *Soler v. G & U, Inc.*, 768 F. Supp. 452, 461-62 (S.D.N.Y. 1991). *See generally Gierlinger v. Gleason*, 160 F.3d 858, 873-74 (2d Cir. 1998) (in employment related cases, "to the extent… that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest"; citing cases under Title VII, Rehabilitation Act, Equal Pay Act, FLSA, and § 1983).

[12] *Pignataro v. Port Auth.*, 593 F.2d 265, 273-74 (3d Cir. 2010); *Brock v. Richardson*, 812 F.2d 121, 126-27 (3d Cir. 1987); *Gonzalez v. Bustleton Servs.*, 2010 U.S. Dist. LEXIS 43773 (E.D. Pa. May 5, 2010).

[13] *See e.g.*, *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993); *Hultgren v. Cty. of Lancaster*, 913 F.2d 498, 510 (8th Cir. 1990); *Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1102-1103 n.9 (8th Cir. 1982); *McClanahan*, 440 F.2d at 325-26; *Fowler v. Incor*, 2009 U.S. Dist. LEXIS 10841, at *61 (E.D. Okla. Feb. 12, 2009); *Roy v. Cty. of Lexington*, 928 F. Supp. 1406, 1423 (D.S.C. 1996); *Thomas v. Cty. of Fairfax*, 758 F. Supp. 353, 368-69 (E.D. Va. 1991); *Michigan Supervisors Union v. Michigan*, 1993 U.S. Dist. LEXIS 10329, at *4-6 (W.D. Mich. July 22, 1993); *Lomas v. Kolb-Lena Cheese Co.*, 720 F. Supp. 110, 114 (N.D. Ill. 1989); *Baker v. Stone Cty.*, 41 F. Supp.2d 965, 1002 n.13 (W.D. Mo. 1999); *Thiesen v. City of Maple Grove*, 41 F. Supp.2d 932, 942 (D. Minn. 1999). *But cf. Peters v. Shreveport*, 818 F.2d 1148, 1168-69 (5th Cir. 1987) (noting that Fifth Circuit stands alone in determining pre-judgment interest unavailable under 29 U.S.C. § 216, as opposed to § 217, and that there do not appear to be good reasons for this distinction).

purposes under Connecticut law and may be awarded concurrently.  *See, e.g., Morales*, 2010 U.S. Dist. LEXIS 125516, at *23-*27.  In addition, SNET inaccurately cites a 10% interest rate rather than the applicable 12% statutory rate.  *Id.* at *23.

## CONCLUSION

For the foregoing reasons, SNET's proposed jury instructions are factually and legally defective and should not be adopted by the Court.

Dated: July 27, 2011   /s/  Steven L. Wittels
          Steven Wittels, (SLW-8110)
          Jeremy Heisler, (JH-0145)
          **SANFORD WITTELS & HEISLER, LLP**
          1350 Avenue of the Americas, 31st Floor
          New York, NY 10019
          Telephone: (646) 723-2947
          Facsimile: (646) 723-2948

          David W. Sanford
          **SANFORD WITTELS & HEISLER, LLP**
          1666 Connecticut Avenue, N.W., Suite 310
          Washington, D.C. 20009
          Telephone: (202) 742-7780
          Facsimile:  (202) 742-7776

          Edmond Clark
          **Law Office of Edmond Clark**
          83 Scotland Avenue
          Madison, CT 06443-2501
          Telephone: (203) 245-4602
          Fax: (203) 245-9734
          eclarkmadisonlaw@aol.com

          *Attorneys for Plaintiffs and the Class*