UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON L. PERKINS, et al., | ) ) ) |
| Individually and on Behalf of Others Similarly Situated, | ) No: 3:07CV967 (JCH) ) ) |
| PLAINTIFFS, | ) ) ) |
| v. | ) ) ) |
| SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | ) ) ) ) |
| DEFENDANT. | ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO SNET'S MOTION *IN LIMINE* (DOC. 389) TO REQUIRE INDIVIDUALIZED DAMAGES DETERMINATIONS**

Time and again, courts in wage and hour cases have held that an employee-class can prove damages with representative proof and need not present individualized damages evidence. In fact, this Circuit and other courts have deemed samples ranging from as small as 2.5% of the class sufficient to establish class damages. Where, as here, the employer has failed to maintain adequate records of employees' work hours, the plaintiffs need only provide a reasonable approximation of their damages and defendant has no cause to complain about imprecision. Plaintiffs' damages expert, Dr. Drogin, has based his calculations on hours evidence from more than 40% of the class (more than 80 Plaintiffs out of a FLSA class of 149 and a Rule 23 class of approximately 191) and compensation data regarding each class member. The entire purpose of a certified class and collective action is to avoid the burden and impracticality of having each

class member testify.  In filing its motion, SNET conveniently ignores this fact.[2]

SNET attempts to counter more than sixty years of consistent and incontrovertible precedent by invoking a portion of *Wal-Mart Stores Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011).  In Section III(C) of the *Wal-Mart* decision, the Supreme Court addressed the limited question of whether monetary damages are available in a Title VII action certified under Rule 23(b)(2).  As SNET admits in the first sentence of its Memorandum, *Wal-Mart* was based on the Rules Enabling Act, 28 U.S.C. § 2072(b), which is inapplicable to a collective action under 29 U.S.C. § 216(b).  Moreover, *Wal-Mart* is distinguishable for the reasons stated in Plaintiffs' Memorandum in Opposition to SNET's Motion *in Limine* for Individual Liability Verdicts ("Liability Motion").  As discussed there, SNET can adequately raise its defenses in a collective and representative forum.

### I.     It is Well-Established That in Wage and Hour Cases, Damages May Be Fairly Approximated Based On Representative Evidence.

In its brief in opposition to SNET's Liability Motion, Plaintiffs discussed the purposes of collective and class adjudication in wage and hour cases.  *See id.* at 2-3 & n.1.  Consistent with these purposes, courts have uniformly allowed wage and hour plaintiffs to prove class damages by representative evidence, despite the potential for inexactitude decried by SNET.

In the seminal case, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court held that, where the employer fails to maintain adequate records, a plaintiff may prove damages "as a matter of just and reasonable inference . . . even though the result be only

---

[2] SNET itself hypocritically argues against individualized evidence and verdicts with its ongoing claim that it would be "enormously prejudiced" if Plaintiffs were allowed to call more than *five* L1 witnesses. SNET has further indicated to Class Counsel, following the Court's determination that Plaintiffs will put on their evidence first, that it no longer wants bifurcation into liability and damages phases.

approximate."³ *Id*. at 687-88. In such a case, a handful of employees can establish both liability (performance of uncompensated work) and damages (amount of unpaid compensation) on behalf of a class of hundreds of similarly-situated workers. *See id.,* esp. at 683-84, 693-94 (remanding case for calculation of damages, not just for the testifying witnesses, but for the entire class under 29 U.S.C. § 216(b)). *See also Reich v. SNET*, 121 F.3d 58, 68 (2d Cir. 1997) (discussing *Mt. Clemens*: "testimony of 8 of approximately 300 employees, or 2.7% of group, sufficient to establish entitlement to recovery under the FLSA"). The employer has no cause to complain that a plaintiff's damages calculation lacks precision. *Id*. at 688.⁴

Since *Mt. Clemens*, the Second Circuit has made clear that, where a defendant fails to keep adequate records, plaintiffs' damages need not be individualized. Rather, representative evidence from a small percentage of class members can suffice. *See, e.g.*, *Reich*, 121 F.3d at 68 ("SNET contends that, while it is permissible to award back pay wages to an entire group of employees based on the testimony of a representative sample, the sample of 2.5% used by the district court was inadequate. We disagree."); *see also Chao v. Vidtape Inc.*, 196 F. Supp.2d 281, 293-94, 296 (E.D.N.Y. 2002) (21 witnesses supported award to 67 employees); *Herman v. Davis Acoustical Corp.*, 21 F. Supp. 2d 130, 133-34, 136, 137-38 (N.D.N.Y. 1998) (40 witnesses and documentary evidence of 365 instances of conduct supported award to 956 employees, including 105 unidentified persons; finding "7.8% sample size" "sufficiently robust"); *Reich v. Waldbaum,*

---

³ The principles set forth in *Mt. Clemens* also apply to a claim under the CMWA. *See*, *e.g.*, *Schoonmaker v. Lawrence Brunoli, Inc*., 265 Conn. 210, 240-41 (2003) ("the state wage collection statute, is like the Fair Labor Standards Act, a remedial statute that is entitled to liberal construction. Accordingly, we find persuasive the plaintiffs' contention that, when an employer has failed to comply with statutory record keeping provisions, the failure to implement the [*Mt. Clemens*] burden shift has the potential to interfere with the remedial purpose of § 31-72, because any uncertainty in the damages amount is the fault of the employer"); *Butler v. McIntosh*, 1998 Conn. Super. LEXIS 3106 (Conn. Super. Oct. 29, 1998); *Morales v. Cancun Charlie's Rest*., 2010 U.S. Dist. LEXIS 125516, at *21-23 (D. Conn. Nov. 23, 2010).

⁴ The *Mt. Clemens* Court agreed in principle with a formula approach, in which a reasonable value would be assigned to the pre- and post-shift work performed by the employees. *See id*. at 685-86, 689-90.

*Inc.*, 833 F. Supp. 1037 (S.D.N.Y. 1993) (37 employees supported award to 262 employees; back wages to be determined by calculations using in-store and across-store averaging), *rev'd* on other grounds, 52 F.3d 35 (2d Cir. 1995); *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 865-66, 868 (S.D.N.Y. 1984) (deposition testimony of 29 employees and statements from 26 others sufficient to support award to over 200 employees).

In *Reich v. SNET,* the leading Second Circuit case on this issue, the court upheld a damages award based on a representative sample consisting of 2.5% of the class members (39 of 1,500 employees). The Court held that, even if the jury's damages award was "over-inclusive," it was fitting to "place[] the burden of inadequate record keeping on the employer." 121 F.3d at 66-70. Following *Reich*, courts have emphasized that Plaintiffs' burden under *Mt. Clemens* is "minimal" (*e.g. Solis v. Sec. Credit Sys.*, 2011 U.S. Dist. LEXIS 27613, at *10 (W.D.N.Y. Mar 15, 2011)), and can be met anecdotally; unless persuasively rebutted, Plaintiffs' "recollection and estimates of hours worked are presumed to be correct." *E.g. Solis v. Tally Young Cosmetics, LLC*, 2011 U.S. Dist. LEXIS 35333, at *8, 11 (E.D.N.Y. Mar. 4, 2011).[5] These principles hold true in collective and class cases, where such testimony, if reasonably representative, can be extended to the class. *See*, *e.g*., *Sec. Credit Sys.*, 2011 U.S. Dist. LEXIS 27613, at *12, 18-20 (class of 199 employees; plaintiff's summary judgment burden met by testimony from "several"); *Jankowski v. Castaldi,* 2006 U.S. Dist. LEXIS 4237, at *16-17 (E.D.N.Y. Jan 11, 2006); *Donovan v. Unique Racquetball & Health Clubs*, 674 F. Supp. 77, 80-81 (E.D.N.Y. 1987) (representative testimony supported award to 111 employees).

All other Circuits have similarly interpreted *Mt. Clemens* and "have uniformly held that damages in FLSA overtime cases can be proved with testimony from a representative group of

---

[5]*See also Morales*, *supra; Lin v. Hayashi Ya II, Inc*., 2009 U.S. Dist. LEXIS 12963, at *8-10 (S.D.N.Y. Jan. 30, 2009); *Moratea v. Taylor Freezer of Conn, Inc*., 2010 Conn. Super LEXIS 663, at *6-7 (Mar. 24, 2010).

plaintiffs." *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 997 (S.D. Ohio 2010) (collecting cases); Doc. 347, Pltfs' Trial Plan at 8-13. *See, e.g., Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297-98 (3d Cir. 1991); *Martin v. Petroleum Sales*, 30 F.3d 654 (6th Cir. 1994) (where trial court awarded damages to 363 employees based upon pertinent testimony from 29, holding that court should have also made an award to 25 additional employees who could not be identified); *McLaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir. 1988) (5 witnesses supported award to 28 employees); *Donovan v. Bel-Loc Diner*, 780 F.2d 1113, 1116 (4th Cir.1985) (22 of 98); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83 (10th Cir. 1983) (12 witnesses representative of all employees; permitting formula calculation to approximate damages); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472-73 (11th Cir. 1982) (23 employees testified; back wages awarded to 207); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (testimony of six employees and 20 stipulations representative of 246 employees at 44 restaurants and supported award to "long" test subclass); *Baden-Winterwood*, 729 F. Supp.2d at 997-1000 (awarding non-testifying plaintiffs average hours testified to by sample of employees in same job category); *Solis v. Best Miracle Corp.*, 709 F. Supp. 2d 843, 846, 850-53, 860 (C.D. Cal. 2010) (9 of 47: "Courts have allowed all employees to recover backwages on the representative testimony of 18 percent, 11 percent, or even 3.5 percent of employees"); *Stillman v. Staples*, 2009 WL 1437817, at *17-20 (D.N.J. May 15, 2009) (testimony from 13 of 342 opt-ins sufficient; statistical significance not required);[6] *Wang v. Chinese Daily News, Inc.*, 2008 U.S. Dist. LEXIS 82538, at *6-8, 13-16 (C.D. Cal. Feb. 27, 2008) (approving use of ratios expanding data from 44 employees to class of about 200;

---

[6] In *Staples*, the court allowed the jury to return individual damages verdicts based on the representative evidence at trial. However, in *Staples*, in contrast to this case, plaintiffs had no damages expert and made no attempt to break down damages individually. Thus, this purely ministerial task was left for the jury.

upholding award to entire class), *aff'd* 623 F.3d 743 (9th Cir. 2010); *Chao v. S. Cal. Maid Serv.*, 2007 U.S. Dist. LEXIS 96143 (C.D. Cal. Aug. 20, 2007) ($3.47 million in back pay to class of documented and undocumented Cleaners justified by ten declarations); *Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895 (N.D. Ohio 2006) (testimony of 7 employees supported DOL's damages estimates and awards to 70 employees); *Chao v. Akron Insulation & Supply, Inc.*, 2005 U.S. Dist. LEXIS 9331, at *2-3, 26-38 (N.D. Ohio May 5, 2005) (5 of 45), *aff'd*, 184 Fed. Appx. 508 (6th Cir. 2006); *Herman v. Hogar Praderas de Amor, Inc.*, 130 F. Supp. 2d 257, 264-67 (D.P.R. 2001) (testimony of 12 employees sufficient to support award for "many more employees" in two applicable categories); *Takacs v. Hahn Auto Corp.*, 1999 U.S. Dist. LEXIS 22146, at *10 (S.D. Ohio 1999) ("Plaintiffs may attempt to prove damages with testimony from only four to six" representatives); *Reich v. Brenaman Elec. Serv.*, 1997 U.S. Dist. LEXIS 4163 (E.D. Pa. Mar. 28, 1997) (9 of 39); *Dole v. Solid Waste Servs., Inc.*, 733 F. Supp. 895, 900, 925-27 (E.D. Pa. 1989) (65 of over 300); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812, 822-26 (D.N.J. 1989) (43 of 393; adopting formula based on averaging), *aff'd* 935 F.2d 1281 (3d Cir. 1991); *Donovan v. Hudson Stations, Inc.*, 1983 U.S. Dist. LEXIS 12751, at *9-11, 18-22, 24 (D. Kan. Oct. 14, 1983) (damages to be based on 572 depositions from class of about 15,000; calculation of awards by formula using averages from depositions); *National Electro-Coatings, Inc. v. Brock*, 1988 WL 125784, at *8 (N.D. Ohio July 13, 1988) (5 of 26: "Courts have consistently allowed, or required, a small number of employees to testify to establish a pattern of violations for a larger number of workers.").

It is uncontested that SNET maintained *no records* regarding the L1s' overtime or the compensation due for these hours. This dereliction triggers the *Mt. Clemens/Reich* framework, and representative sampling is therefore appropriate. *See, e.g., Mendoza v. Casa De Cambio*

*Delgado, Inc.*, 2008 U.S. Dist. LEXIS 61557, at *25 (S.D.N.Y. Aug. 12, 2008) ("[I]f . . . Defendants' record keeping is inadequate, Plaintiffs may be able to measure damages based on a representative sample and damages would be far less individualized."); *Archie v. Grand Cent. P'ship, Inc.*, 86 F. Supp. 2d 262, 264, 272 (S.D.N.Y. 2000) (setting formula to extrapolate damages for employees with missing time records based on averaging from "pattern and practice" evidence).

SNET contends that the jury must make individualized damages determinations. At the same time, however, Defendant argues just the opposite, in that it simultaneously seeks to limit Plaintiffs' trial testimony to 5 L1 witnesses and in any case no more than the 15 L1s on Plaintiffs' witness list (from a Class of nearly 200 employees). SNET further insists on a jury trial but does not want a bifurcated procedure where each class member testifies as to his or her personal damages. Again, SNET proposes an impossible, incoherent Trial Plan.

The evidence in this case -- including Plaintiffs' expert damages calculations -- is more than sufficient to support a class-wide verdict. 50 class-member depositions were taken by SNET; an additional 33 L1s (including 29 selected randomly) answered interrogatories about their hours.[7] These hours estimates are supported and corroborated by Company documents and data, a series of regional and nationwide surveys and analyses completed by the Company, and deposition testimony from Area Managers (L2s). Collectively, this evidence establishes that all L1 Field Managers regularly and consistently worked long hours (approximately 15-20 hours of overtime per week) and that the Company was aware of and expected these hours as a requisite of the job. Based on this information, as well as individualized compensation and employment

---

[7] SNET claims that Dr. Drogin bases his calculations solely on the 29 interrogatory responses. This is incorrect. Dr. Drogin's May 2011 report supplements, but does not replace, his primary final report of December 2010. The May 2011 provides additional information based on new data that corroborates Dr. Drogin's analysis.

data, Dr. Drogin has calculated damages both on a class-wide and individual basis. SNET's primary objections that the amount of damages is imprecise or that statistical significance is not met are legally unsound. *See*, *e.g.*, *Mt. Clemens*, 380 U.S. at 687-88; *Reich*, 121 F.3d at 66-70; *Mendoza*, 2008 U.S. Dist. LEXIS 61557, at *25; *Staples*, 2009 U.S. Dist. LEXIS 42247, at *76; *Craig v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 13843, at *21-22 (E.D. Pa. Feb. 7, 2011).[8]

## II.     *Wal-Mart* Does Not Require Individual Damages Verdicts in Wage and Hour Cases.

According to SNET, the Supreme Court's decision in *Wal-Mart* requires Plaintiffs to present evidence of each individual Class Member's damages. Defendant's law-changing position is unsupported by either the language in *Wal-Mart* on any other post-*Wal-Mart* cases.

In *Wal-Mart*, the Supreme Court considered only whether the procedural posture and limited safeguards of a Rule 23(b)(2) action are consistent with discrimination plaintiffs' well-established burdens under the unique statutory framework of Title VII, as set forth in *Teamsters*. *See* Opp. to Liability Motion, § III. *Wal-Mart* has no application to wage and hour cases under the FLSA or CMWA. There is no indication that *Wal-Mart* overrules *Hoffmann-LaRoche* or *Mt. Clemens* and its progeny, including *Reich v. SNET*. Contrary to SNET's position, therefore, *Wal-Mart* does not mandate individualized damages determinations in this case.

Other federal courts have specifically held that *Wal-Mart* has limited, if any, application to wage and hour cases. In *Ramos v. SimplexGrinnell LP*, 2011 U.S. Dist. LEXIS 65593 (E.D.N.Y. June 21, 2011), the court refused to extend *Wal-Mart* to wage and hour cases and certified a New York Labor Law claim under 23(b)(3). *See id*. at **14-18, 24-29 (distinguishing

---

[8] SNET's contention that Plaintiffs' proposed distribution plan is "disingenuous" is itself disingenuous. What Plaintiffs suggest is fairly obvious. Dr. Drogin has made both class-wide and individual damages estimates. Thus, each individual class member is entitled to a specific proportion of any award – a simple fraction with individual damages as the numerator and class damages as the denominator. If the jury adjusts Dr. Drogin's aggregate damages estimate upward or downward, individual awards can be adjusted accordingly – "on a proportional basis." It is premature to advance a more "specific distribution formula or plan" ahead of trial.

*Wal-Mart*); *see also id.* at \*25-26 ("courts have found that wage claims are especially suited to class litigation . . . despite difference in hours worked, wages paid, and wages due."); \*29 (distinguishing Title VII cases). Thus, even after *Wal-Mart*, class damages should be awarded under the established *Mt.Clemens/Reich* method. *Id*. ("it appears that plaintiffs may calculate class damages by applying a common formula to data culled from defendant's electronic records"); *id*. at \*77-79 (allowing expert report as plaintiffs may approximate damages based on "just and reasonable inferences"). *See also*, *e.g*., *Smith v. Ceva Logistics U.S., Inc*., 2011 U.S. Dist. LEXIS 82020, at \*5-11 (C.D. Cal. July 25, 2011) (certifying meal break claim under Rule 23(b)(3) where plaintiffs demonstrated a viable class-wide method of proof based on sampling and extrapolation of class damages from pay data); *Creely v. HCR ManorCare, Inc*., 2011 U.S. Dist. LEXIS 77170 (N.D. Ohio July 1, 2011) (finding *Wal-Mart* inapplicable to FLSA actions).[9]

### III.     SNET Can Adequately Present its Defenses in the Collective Forum.

SNET contends that it has the right to individualized defenses, which, in turn, requires individualized damages verdicts. In making this assertion, SNET relies on inapposite cases holding that due process is violated when a party has <u>no</u> opportunity to defend itself against a claim. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007) (involving specific due process concerns regarding punitive damages; error to award punitives based on injuries to a non-party -- punitives generally imposed as a ratio to compensatories -- because it would afford defendant <u>no</u> opportunity to defend itself against the charge and render punitives too

---

[9] SNET's post-*Wal-Mart* cases are distinguishable. Neither the FLSA nor CMWA requires an individualized "week-by-week analysis." (*Cruz*, cited in SNET's MIL at 4). *See*, *e.g*., *Mt. Clemens/Reich*, supra; *Ross v. RBS Citizens, N.A*., 2010 U.S. Dist. LEXIS 107779, at \*23-24 (N.D. Ill. Oct. 8, 2010). In *City of New York*, (MOL at 4), the court applied *Wal-Mart* in certifying a Rule 23 class in a *Teamsters*-style discrimination case. The court noted that economic damages for the class members' loss of pay from non-hiring or delayed hiring could be determined in the aggregate, but held that damages for intangible non-economic loss required an individualized assessment. There, substantive law required individual claimants to show actual non-economic injury and its magnitude, which could not be presumed from violation of the law. *Id*. at \*35-63. This is hardly a startling proposition and does not help SNET.

9

speculative);[10] *SEC v. Elliott*, 953 F.3d 1560, 1567-71 (11th Cir. 1992) (individual claimants must be given *some* opportunity to offer evidence and make arguments); *Lusardi v. Xerox*, 118 F.R.D. 351 (D.N.J. 1987) (where ADEA plaintiffs *not* similarly situated, defendant should be able to defend their discrimination claims individually).[11]

None of the cases cited by SNET hold that a party's due process rights are violated if it is denied individualized determinations in a class action (much less in an FLSA collective action). To the contrary, courts in wage and hour cases have repeatedly ruled that defendants' rights are not violated by having to put on their defenses in a collective forum. *See* Opp to Liability Motion at n.3;[12] *See also Gentrup v. Renovo Servs., LLC*, 2010 U.S. Dist. LEXIS 143203, at *24

---

[10] Yet, the Court noted, harm to others is material on the reprehensibility prong of the punitive test. *Id.* at 355, 357. Moreover, evidence of conduct with a "specific nexus" to the harm alleged by plaintiff may be used to impose punitives. *Smith v. Pfizer Inc.*, 2010 U.S. Dist. LEXIS 42481, at *5-7 (M.D. Tenn. Apr. 10, 2010). Even in the context of punitives, *Williams* has limited application in a class case. *See Iorio v. Allianz Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 97657, at *15-16, 22-24 (S.D. Cal. Oct. 21, 2009).

[11] *Lusardi* is akin to *Wal-Mart* in that discrimination actions, under *Teamsters*, are more analogous to a conglomeration of individual disputes than to traditional collective or class litigation.

[12] As one federal court has noted:
> Defendants…assert that adjudication of Plaintiffs' claims on a classwide basis is improper because the finder of fact must assess the credibility of [] each plaintiff individually as to how much, if any, uncompensated overtime he or she worked. Defendants also argue that their defenses can only be raised individually…[M]any of the purported defenses…are clearly amenable to classwide determination. This includes…whether management knew of the methods being used to deny overtime pay and whether Defendants acted willfully, since…showing notice of an illegal practice would surely place Defendants on notice of FLSA issues affecting more than the single individual who complained. Defendants' other purported defenses are in effect other ways of asserting that the finder of fact must assess each plaintiff's credibility, including how many hours he or she worked, what individual supervisors knew about the alleged uncompensated overtime, and whether the overtime work was pursuant to a supervisor's instructions…[T]he use of representative testimony in a collective action will not impair Defendants' ability to effectively raise these issues. The plaintiffs who testify will do so in a representative capacity, and the issues Defendants raise…may be broached with the testifying plaintiffs. While it will not afford the same level of forensic specificity as cross-examination of each plaintiff individually, a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23 precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of nontestifying plaintiffs and thereby arrive at an approximation of damages.

(S.D. Ohio Aug. 17, 2010) ("the use of representative discovery does not violate due process and is proper where it facilitates the orderly proceeding of a collective action."). Accordingly, and as discussed above, courts routinely award class damages based on representative evidence.

SNET claims it has three damages defenses requiring individualized evidence. Yet, each of these defenses can be fairly litigated on a collective, representative basis.

- 1: *Defendant is entitled to offset any liability by additional compensation and benefits afforded to the class member, including, without limitation, premium payments and payments for time not worked.*

Plaintiffs assume SNET is referring to duty pay and extended efforts payments. These payments are recorded in the company's SPEAR database. Even assuming that SNET is entitled to an offset for part of these payments (*see* 29 C.F.R. § 778.200 *et. seq.*), it can be determined on a class-wide basis and deducted from class damages.

- 2: *The class members' damages are barred to the extent they are not supported by a fair and reasonable inference.*

The very point of the *Mt. Clemens/Reich* line of cases discussed above is that a "fair and reasonable inference" of class-wide damages can be supported by representative proof, often from a small percentage of the employee-class. This is ***not*** an individualized defense.

- 3: *The class member is not entitled to damages for claimed work about which Defendant did not know or have reason to know.*

The law is clear that it is the employer's responsibility, not its employees', to ensure compensation for work "suffered or permitted."[13]  *See*, *e.g.*, 29 U.S.C. §203(g); 29 C.F.R. §

---

*Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 995-96 (W.D. Tenn. 2011) (citations omitted). *See also Gentrup*, 2010 U.S. Dist. LEXIS 143203, at *17-19 ("liability for each Plaintiff is not an individualized inquiry with proper representative discovery. The use of representative samples to determine lost wages is appropriate even where there are no records at all").

[13] "Work" includes non-exertional acts or inactivity which is predominantly for the benefit of the employer.  *See, e..g,, Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003); *Reich*, 121 F.3d at 64-65; 29 C.F.R. § 785.14-19.

785.11-13; *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287-88 (2d Cir. 2008); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May. 14, 2009). Here, the evidence establishes that SNET knew, and indeed expected, that Plaintiffs and all L1 class members would regularly work excessive hours in order to complete their assigned tasks. In fact, SNET did "Day in the Life" studies regarding the Field Managers' hours (showing up to 14-hour average working days), and discussed potential ways to "deload" the L1s. At a minimum, SNET had "actual or constructive knowledge" that its L1s routinely worked long hours to get the job done. There is no reason why SNET's defense cannot be litigated on a representative and collective basis. *See*, *e.g.*, *Monroe*, *supra*, cited at n.12.

## CONCLUSION

In its motion *in limine*, SNET again attempts to circumvent established law. There is no basis for requiring Plaintiffs to present individualized damages evidence. To the contrary, the law is clear that SNET's defenses can be litigated on a representative and collective basis. Accordingly, SNET's motion must be denied.

Respectfully Submitted,

Dated: August 18, 2011            s/ Steven L. Wittels
                                  Steven Wittels (SLW-8110)
                                  Jeremy Heisler (JH-0145)
                                  **SANFORD WITTELS & HEISLER, LLP**
                                  1350 Avenue of the Americas, 31st Floor
                                  New York, NY 10019
                                  Telephone: (646) 723-2947
                                  Facsimile: (646) 723-2948

                                  David W. Sanford
                                  **SANFORD WITTELS & HEISLER, LLP**
                                  1666 Connecticut Avenue, N.W., Suite 310
                                  Washington, D.C. 20009

Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served via ECF this 18th day of August, 2011 upon the following counsel of record:

**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*


   /s/ Steven L. Wittels_____
        Steven L. Wittels