UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON L. PERKINS, et al., | ) |
| Individually and on Behalf of Others Similarly Situated, | ) No: 3:07CV967 (JCH) |
| PLAINTIFFS, | ) |
| v. | ) |
| SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | ) |
| DEFENDANT. | ) |

**PLAINTIFFS' EVIDENTIARY MEMORANDUM PURSUANT TO
SCHEDULING ORDER (DOC. 367, PARA. 11) IN SUPPORT OF PLAINTIFFS'
<u>OBJECTIONSTO SNET'S TRIAL EXHIBITS 6960 – 7070</u>**

**INTRODUCTION**

On the deadline to exchange trial exhibits and exhibit lists, SNET produced to Plaintiffs trial exhibits 6960-7070, consisting of over one hundred documents that purport to be "summaries" of electronic data analyzed and provided by Plaintiffs'computer forensic expert,YevgenyKlimov.[1]SNET'snewly-created "summaries" actually contain only a cherry-picked microscopic portion of the data, and additionally includecomputations not contained within the underlying data as well as controverted factual assumptions and conclusions interpreting the data. Because of this, the documents are not reliable and fail to meetthe requirements for admission as summaries of voluminous writings under Federal Rule of Evidence 1006 and are also inadmissible under Federal Rule of Evidence 403.They lack

---

[1] Plaintiffs no longer intend to call Mr. Klimov as a trial witness.

2

probative value and should be excluded at trial.

Having gone well beyond mere summary of the plain and unvarnished facts, SNET's attempt to use purported summaries of a database prepared by Plaintiff's expert must fail. SNET presents noproper foundation to analyze and derive conclusions from the data.If SNET is to engage in such an exercise, it cannot escape the requirement that its witness must do his own analysis and be subjected to vigorous cross-examination. With the deadline for expert disclosures long since expired, SNET cannot shoehorn expert analysis – extracting, molding, and crunching the raw data to advance the company's view of the case – into the guise of a "summary." Any opinions emanating from this newly-created data were not timely disclosed in accordance with the requirements of Rule 26.

## FACTUAL BACKGROUND

On the deadline for the parties to exchange trial exhibit lists and trial exhibits, SNET produced for the first time over one hundred documents – exhibits 6960-7070 – that it describes as summaries of electronic datacontained in the database of Plaintiffs' expert Yevgeny Klimov – whom Plaintiffs have now opted not to call. The documents purport to summarize data for a number of Level One class member-employees and fall into four categories that are titled by SNET as follows: VPN data summary; Building access data summary; Summary of daily first building access times (weekdays only); and Summary of number of days with VPN activity by year.

While the documents purport to be mere summaries of data available in Mr. Klimov's database, they are really much more. The "summaries" include information that is the product of additional computationsnot contained in the data or performed by Mr. Klimov, who prepared the database. They also include impermissible argument, by presenting the data under headings that

are the subject of controverted factual conclusions. For example, the "summaries of daily first building access times" contain frequency and percentage columns that are calculations not provided in Mr. Klimov's database.[2] In addition, by labeling the data as "daily first building access times", the summaries include a significant (and unsupported) factual assumption, not reached or even addressed in Mr. Klimov's data, that employees utilized their access cards every time they entered the building. This unsupported factual assumption is also included in the "building access data summaries" through the use of a column labeled "first entry of the day". Additionally, the portions of the documents that actually summarize the data are cherry-picked excerpts of a very small portion of the data provided. The "building access data" summaries only include data from May of 2008 and the "VPN data summaries" only include data from January through June of 2008, despite the fact that the central database contains these types of data for the years 2005 through 2010.Thus, in direct defiance of Fed. R. Evid. 1006, SNET's "charts" (1) present a factually-skewed picture of the underlying data, and (2) do not actually digest "voluminous" materials. SNET, in short, is trying to smuggle in new information and new arguments under the deceptive heading of "summaries."

In its list of witnesses that SNET "may" call at trial (SNET has not named any witnesses it "will" call), it does not designate any witnesses to testify about creating the summaries or about the assumptions and methodology used in performing the calculations and arriving at the factual conclusions they contain.

---

[2]Similarly, the "summary of days with VPN activity by year" contains a "percentage of days" column that is also a calculation not provided in Plaintiffs' database.

**ARGUMENT**

**I. THE SO-CALLED "SUMMARIES" ARE NOT ADMISSIBLE BECAUSE SNET WILLNOT BE ABLE TO PRESENT THE TESTIMONY REQUIRED <u>FOR THEIR ADMISSION</u>**

For a summary document to be admitted under Federal Rule of Evidence 1006, the document must meet a number of requirements, including the requirement that the summary "be properly introduced through the testimony of a witness who supervised its preparation." *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008). This type of testimony permits courts to determine whether "a proper foundation is established connecting numbers on the chart with the underlying evidence." *United States v. Citron*, 783, F.2d 307, 316 (2d Cir. 1986). The charts or summaries will not be admitted unless courts are able to "ascertain that summary charts 'fairly represent and summarize the evidence upon which they are based.'" *Id*. citing *United States v. O'Connor*, 237 F.2d 466, 475 (2d Cir. 1956).

The need for testimony of the nature described above is particularly acute in this instance because SNET's summaries contain additional calculations and factual assumptions not present in the raw data or in Mr. Klimov's database. In spite of this, SNET has not listed a single witness that it "may" call to testify regarding the creation of the summaries.See doc. 418, p. 17 – 29.Even if SNET intends to provide a foundation and authentication for the summaries through the testimony of its own expert, Dr. Lamoreaux, such testimony must be precluded. Dr. Lamoreaux's expert disclosures and report arepresented solely as a rebuttal to Plaintiffs' expert reports. Dr. Lamoreaux's disclosures, expert report, and depositioncontain absolutely no notice or indication that he would be proffered to testify on this subject. Significantly, there has never been even a hint that he will offer <u>*any*</u> analysis or opinions on VPN data or building access data.[3]

---

[3] SNET's witness list states only that Lamoreaux*may* offer "Expert testimony regarding damages".

5

Expert reports required under Federal Rule of Civil Procedure 26(a)(2)(b) must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "any exhibits that will be used to summarize or support them". Fed. R. Civ. P. 26(a)(2)(B). *See, e.g.Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)(An expert report "must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor."). Expert reports that fail to contain such information must lead to the exclusion of the expert's testimony or the testimony being restricted to those subjects addressed in the report. *Id*. SNET also failed to comply with the pretrial Scheduling Order (Doc. 367, para. 8), which required Defendant to file with the Court by yesterday (August 22) the mandated summary of its expert's report, including a statement as to each opinion to be expressed and a brief summary of the basis of each opinion.

SNET cannotsneak in new expert opinions and testimony under the pretense of presenting summary evidence under Rule 1006.

## II. THE SO-CALLED "SUMMARIES" FAIL TO MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE403 BECAUSE OF THEIR LIKELIHOOD TO <u>CONFUSE OR MISLEAD</u>

A summary chart that does not "fairly represent and summarize the evidence" is more likely "to confuse or mislead the jury than it is to assist it." *Citron*, 783 F.2d at 316, citing Fed. R. Evid. 403.*See alsoUnited States v. Conlin*, 551 F.2d 534, 539 (2d Cir. 1977)(**"A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error."**).As set forth above, the proposed exhibits, while purporting to merely summarize data, also contain material factual assumptions and conclusionsabout the data and further computations not contained in the data sourcesupposedly summarized. By masking argument and analysis this way, introduction of the summaries invite error, and present a high

likelihood of confusing or misleading the jury.  In addition, the cherry-picked excerpts of the data summarized cover only a very small portion of the data, all from the year 2008. By selectively summarizing the available data this way, the proposed exhibits present the type of "unfair picture" the Second Circuit views to be a "potent weapon for harm."

### III. MR. KLIMOV LACKS REQUISITE FOUNDATIONAL INFORMATION TO AUTHENTICATE DEFENDANT'S NEWLY CREATED EVIDENCE

This afternoon, Defendant filed its own submission regarding the admissibility of its newly-created summaries (*See* Defendant SNET's Brief Regarding Expert Data Summary Exhibits).  At the upcoming pretrial conference, Plaintiffs' counsel will be fully prepared to address in detail all of the arguments set forth in that submission, none of which legitimately support its assertion that the summaries constitute proper evidence that the jury should consider. Nor do Defendant's arguments diminish the evidentiary basis for Plaintiffs' objections.  Briefly, however, so that the Court may consider Plaintiffs' position in advance of the pretrial conference, we address some of the arguments Defendant has raised.

First, Plaintiffs have exercised their right to withdraw their expert, Mr. Klimov, as a witness in this case.  There is no sinister intent involved and no improper motive, rather, just a strategic decision regarding the evidentiary presentation at trial.  That Defendant was planning its case on the ability of *Plaintiffs'* expert testimony is short-sighted and constitutes poor planning on its part.  Moreover, Mr. Klimov, for all of the reasons stated above, is not a competent witness to testify about the newly-created summaries that Defendant has thrown together.  *Fed. R. Evid.* 601, 602.  Mr. Klimov has no personal knowledge of how the documents were created, and as such, nothing reliable to offer the jury to advance their admissibility.

Second, Defendant's desperate suggestion that Defendant will call Dr. Klimov to testify ignores the general rule that the court should not compel expert testimony. Defendant has advanced no argument to support such an extraordinary measure.

Third, even if Mr. Klimov appeared to offer testimony, he has no foundational information to support any assertion that the information that he used for his own database was an official business record of SNET. Mr. Klimov does not have the requisite knowledge of the business filing system, how the underlying records were collected, or the process used in generating the data for production to Plaintiffs. Stated simply, Mr. Klimov is not in a position to offer testimony that supports any permissive inference regarding the genuineness of the documents he used in preparing his database, nor can he state that the documents were authentic. Calling him as a witness would not meet these necessary requirements to admit the summaries. Fed. R. Evid. 901.

Finally, testimony concerning the creation of Defendant's summaries is outside the scope of Mr. Klimov's opinions contained in the expert disclosures submitted to SNET. Similarly, SNET never disclosed its intent to use Plaintiff's expert in any manner, short of normal cross-examination. For this reason as well, the summaries are not proper evidence that can be used in this trial.

## CONCLUSION

SNET again attempts to cover its failure to comply with the discovery rules by engaging in sleight-of-hand. For the reasons stated above, SNET's exhibits 6960 through 7070 are inadmissible at the trial in the case. The Court should bar these exhibits from being used at trial.

Respectfully Submitted,

Dated: August 23, 2011    /s/ Steven L. Wittels
Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

*Attorneys for Plaintiffs and the Class\*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served via ECF this 23rd day of August, 2011 upon the following counsel of record:

**Patrick Shea**

Paul Hastings

Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022

212-318-6405
Fax: 212-752-2542

Email: patrickshea@paulhastings.com

*Attorneys for Defendant*

   /s/ Steven L Wittels_____

      Steven L. Wittels