UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON L. PERKINS, et al., | |
| Individually and on Behalf of Others Similarly Situated, | CIVIL ACTION NO. 3:07CV967 (JCH) |
| PLAINTIFFS, | |
| | SEPTEMBER 21, 2011 |
| v. | |
| SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | |
| DEFENDANT. | |

**DEFENDANT SNET'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION IN LIMINE #8
TO EXCLUDE EVIDENCE AND PROVIDE ADVERSE INFERENCE INSTRUCTION**

Plaintiffs' motion alleging spoliation of evidence has evolved in oral argument and bears no resemblance to the original motion *in limine* they filed on July 27, 2011. [Doc. Nos. 401 and 409] Plaintiffs' original motion alleged that Defendant had spoliated evidence by failing to discontinue its 55-day "auto-deletion of emails" and by sending emails to Plaintiffs urging them to delete or save elsewhere data that was stored on the Sharepoint servers. Pls.' Mem. in Supp. of Mot. in Limine #8 [Doc. No. 401-1] at 1-4. After Defendant's response to the motion made clear that Plaintiffs' spoliation allegations were utterly baseless due to Defendant's 42-day email archive preservation mechanism affecting email for all Plaintiffs and due to Plaintiffs' failure to show that any evidence was actually deleted as a result of the email allegedly instructing Plaintiffs to move files from the Sharepoint servers [Doc. No. 453], Plaintiffs raised a new spoliation argument in Court during the parties' September 9, 2011 pretrial hearing. Despite having been aware since April 30, 2010 (*see* Defendant's Response in Opposition to Plaintiff's Motion to Compel Production of Documents [Doc. No. 260], Ex. A (Declaration of Lito

Fernando), ¶ 4) that there was an 8-month gap in the archived emails retained by Defendant, Plaintiffs elected to raise this issue for the first time only three weeks before trial is scheduled to begin.

Defendant submits this brief to supplement its previously filed brief in opposition to Plaintiffs' Motion *in Limine* #8 and to address Plaintiffs' new argument that Defendant's inadvertent 8-month discontinuation of the 42-day email archive preservation mechanism constitutes spoliation of evidence and warrants the imposition of the sanctions sought by Plaintiffs' Motion. To justify sanctions, Plaintiffs must show that relevant evidence that would likely be favorable to their position was destroyed. But in this case, there is absolutely no reason to believe that the missing emails would have contained relevant evidence favorable to Plaintiffs' claims. To the contrary, the emails would have been entirely cumulative in light of the 350,000 pages of emails that have been produced in this litigation which provide a comprehensive record of emails relating to Plaintiffs' duties for almost 90% of the liability period in this case, as well as emails produced from sources other than the archives that have yielded a substantial number of emails from the 8-month period in question that appear on both parties' exhibit lists. Plaintiffs cannot be heard to claim that their duties were different or more likely non-exempt during the 8-month period at issue, because they sought and obtained class certification on the premise that their duties were uniform throughout the liability period. Moreover, Plaintiffs unreasonably delayed raising this issue and should not be permitted to seek spoliation sanctions now, on the eve of trial. The Court should deny Plaintiffs' Motion *in Limine* #8 to Exclude Evidence and Provide Adverse Inference Instruction.

## I.   FACTUAL BACKGROUND

During the early stages of this case, Defendant's outside counsel, in-house counsel, and company IT personnel considered methods for preserving the emails of the putative class

members.  Declaration of Lori B. Alexander ("L. Alexander Decl.") [Doc. No. 504-3] ¶ 4; Declaration of David Vegliante ("D. Vegliante Decl.") [Doc. No. 504-2] ¶ 4.  Because Defendant was already automatically capturing the emails of all Connecticut first level managers on a 42-day periodic basis as a result of a litigation hold placed in another then-pending lawsuit against the Company, Declaration of William M. Schur ("W. Schur Decl.") [Doc. No. 504-4] ¶¶ 3-7, Defendant's counsel relied on the 42-day email archive preservation mechanism for purposes of this case.  L. Alexander Decl. ¶ 4; D. Vegliante Decl. ¶ 4.  Defendant's counsel notified Plaintiffs' counsel in open court that it intended to rely on this preservation mechanism.  D. Vegliante Decl. ¶ 4; *see also* Transcript of April 4, 2008 Hearing [Doc. No. 49] at 22.  Plaintiffs did not object.  *Id.*

On May 29, 2008, the litigation hold upon which Defendant's counsel had been relying to preserve Plaintiffs' emails was lifted.  *See* W. Schur Decl. ¶¶ 8-9.  Defendant's counsel was not notified at the time that the preservation mechanism had been discontinued.  D. Vegliante Decl. ¶ 5.  As soon as Defendant's counsel learned that the preservation mechanism had been discontinued, counsel investigated the issue and took steps to implement a new preservation mechanism.  *Id.* ¶¶ 7-8; L. Alexander Decl. ¶¶ 7-8.  A new 42-day preservation mechanism was operational by February 24, 2009.  D. Vegliante Decl. ¶ 8; L. Alexander Decl. ¶ 8.

During the intervening 8-month period, other email preservation and collection methods were also in place.  D. Vegliante Decl. ¶¶ 6-8; Declaration of Lito Fernando ("L. Fernando Decl.") [Doc. No. 504-1] ¶ 4.  Defendant searched the files collected pursuant to its other email preservation and collection methods for the emails that were produced to Plaintiffs.  L. Fernando Decl. ¶¶ 3-4.  As a result, Plaintiffs' exhibit list contains 110 emails from the 8-month period in question.  *See* Plaintiffs' Preliminary Exhibit List ("Plaintiffs' Exhibit List") [Doc. No. 512].

On April 30, 2010, Defendant submitted its brief in Opposition to Plaintiffs' Motion to Compel Production of Documents [Doc. No. 260] ("Opp. to Pls.' Mot. to Compel"). In support of that motion, Defendant submitted the first of three declarations of Lito Fernando. *See* Opp. to Pls.' Mot. to Compel, Ex. A [Doc. No. 260-1]. In paragraph four of his declaration, Mr. Fernando stated that archived email files for all 200 class members were available for the period of time between November 2004 and May 2008, and February 2009 to present. *Id.* ¶ 4. Despite having been told about the 8-month gap in the spring of 2010, Plaintiffs never expressed any objection to or alleged any harm caused by the gap until the September 9, 2011 pretrial conference with the Court.

## II. PLAINTIFFS CANNOT SHOW THAT THE MISSING EMAILS ARE RELEVANT, THEREFORE SANCTIONS AGAINST DEFENDANT ARE UNWARRANTED.

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that a court "may make such orders…as are just" if the court finds that a party has failed to produce evidence pursuant to the court's order. Fed. R. Civ. P. 37(b)(2). The Court has broad discretion in fashioning the appropriate relief for non-production of documents, including what sanctions to impose, if any. *See Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("[A] district court has wide discretion in sanctioning a party for discovery abuses.").

The party seeking an adverse inference instruction for non-production of evidence must show: (1) that the party having control over the evidence had an obligation to preserve it or produce it; (2) that the party that failed to produce or destroyed the evidence had "a culpable state of mind;" and (3) that the missing or destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F. 3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)). Although Defendant

does not concede that Plaintiffs can satisfy the first element of the *Residential Funding* test, the second and third elements are dispositive as to this issue, therefore Defendant will focus the argument here on those elements.[1]

Regarding the "culpable state of mind" element, there is no evidence that Defendant acted in bad faith or with gross negligence when it inadvertently discontinued the email preservation mechanism. If Defendant had a culpable state of mind at all, it was at worst mere negligence. Defendant's merely negligent state of mind should be taken into account by the Court when weighing what severity of sanctions, if any, to impose. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010) ("[W]hen the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction." (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001)); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24, *reconsideration denied* (Oct. 5, 2010), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010) ("[H]ow severe a sanction is warranted will depend on the extent of the discovered party's non-compliance with discovery obligations, the degree of that party's culpability, and the extent to which the non-compliance prejudiced the other parties…Although the court may impose sanctions even if the discovery violation did not prejudice the other parties, the absence of prejudice generally militates toward the imposition of a less harsh sanction.")

---

[1] To the contrary, Plaintiffs have made *no* showing that relevant evidence is missing or has been destroyed. A party alleging spoliation must provide *some evidence* that spoliation actually occurred. *Estate of Mali v. Fed. Ins. Co.*, No. 3:06-cv-01475, 2011 U.S. Dist. LEXIS 64319, at *10 (D. Conn. June 17, 2011) ("It is axiomatic, of course, that to pursue a spoliation claim, a party must show that the evidence existed at one time."). There are 110 exhibits on Plaintiffs' exhibit list that are emails from the 8-month period during which Defendant's 42-day email archive preservation mechanism had been discontinued. Clearly, Defendant's other backup email preservation mechanisms operational during that time effectively captured relevant emails.

Plaintiffs' request for an adverse inference sanction is considered severe and is thus only available where the party seeking the sanctions can show not only that the missing evidence is relevant, but that Plaintiff has been prejudiced by its absence because "the lost information would have been *favorable* to it." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 290 (S.D.N.Y. 2011) (emphasis added; quoting *In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 197 (S.D.N.Y. 2007) (noting by contrast that "[a] moving party may obtain modest sanctions by showing only that the lost evidence was *pertinent* to its claims." (emphasis added)); *see Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 76 (S.D.N.Y. 1991) ("[b]efore an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence."); *Skeete v. McKinsey & Co., Inc.*, No. 91 Civ. 8093 (PKL), 1993 WL 256659, at *7 (S.D.N.Y. July 7, 1993) (to warrant an adverse inference, the moving party "must show that [it] suffered prejudice as a result of [spoliator's] failure to produce the requested evidence."). Where the missing evidence could have supported either the moving party's claims or the opposing party's defense, the moving party's burden has not been met. *Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 244, 250 (D. Conn. 2006) (no adverse inference instruction where missing or non-existent doctor's notes would have been crucial to both plaintiff's claim and defendant's defense). Similarly, where the missing evidence would have been largely cumulative, this standard has not been met. *New York State Nat'l Org. for Women v. Cuomo*, No. 93 Civ. 7146(RLC)JCF, 1998 WL 395320, at * 3 (S.D.N.Y. July 14, 1998) (denying sanctions because plaintiffs had amassed substantial evidence supporting their claims from sources other than the destroyed documents, the destroyed documents "would have been largely cumulative," and no prejudice to plaintiffs' case resulted from their loss).

In this case, there can be no suggestion that the missing emails would have been favorable to Plaintiffs. To the contrary, they plainly would have been entirely cumulative. As an initial matter, *both* sides have selected as trial exhibits a large number of emails from among the 350,000 pages of Plaintiffs' email that were produced to Plaintiffs on November 22 and December 29, 2010. *See* Plaintiffs' Exhibit List; Proposed Exhibit List *Final Revised* ("Defendant's Exhibit List") [Doc. No. 513]. In fact, both sides have selected as trial exhibits a large number of emails *from the May 29, 2008 to February 24, 2009 time period* that were preserved and produced from other backup sources. *See id.* Whatever emails may be "missing" as a result of Defendant's inadvertent 8-month discontinuation of the 42-day email archive preservation mechanism, the most that can be said is that *both* sides might have found additional emails potentially supporting their claims in the emails that would have been collected had the email archive preservation mechanism been operational.

And all of these additional emails would have been cumulative of the massive email production that has already occurred in this case. Plaintiffs have made no claim that there is anything unique about their job duties during the time period between May 29, 2008 and February 24, 2009. To the contrary, Plaintiffs' position throughout this litigation has been that their duties were the same throughout the entire liability period. As a consequence, there is no reason to believe that the missing emails would have supported any different view of this case compared to: 1) the massive amounts of email that were archived from June 2004 through May 2008 and from the end of February 2009 through August 2010; and 2) the emails from May 2008 through February 2009 that were produced from other email backup sources. Under these circumstances it would be plainly unfair and highly prejudicial for the Court to instruct the jury, as Plaintiffs have requested, that they should infer that the emails from the 8-month period in

question would show, in contrast to all the other emails that have been produced, that their duties were non-exempt.

Because Plaintiffs cannot demonstrate that emails from the missing 8-month period would have been favorable to them, Plaintiffs cannot make the requisite showing to support the Court's imposition of any sanction, much less the severe sanction of an adverse inference.

### III. PLAINTIFFS UNREASONABLY DELAYED IN SEEKING RELIEF FOR THE COMPANY'S INADVERTENT DISCONTINUATION OF ITS BACKUP EMAIL ARCHIVE PRESERVATION MECHANISM UNTIL THE EVE OF TRIAL.

Plaintiffs' unreasonable delay in raising the most recent spoliation argument should not be rewarded by the imposition of the severe sanctions Plaintiffs seek.  Courts in this Circuit repeatedly have held that a party's delay in raising a spoliation claim until the eve of trial, or until raising the claim would be tactically convenient, bars the moving party from obtaining the relief it seeks.  *See Franklin v. Krueger Int'l, Inc.*, No. 96 CIV 2408(DLC), 1997 WL 691424, at *5 (S.D.N.Y. Nov. 5, 1997) (finding the doctrine of laches barred plaintiff from obtaining sanctions against defendant for discovery violations because plaintiff had known about the violation for over eight months and delayed in bringing motion for sanctions until long after discovery had closed); *Gutman v. Klein*, No. 03 Civ. 1570(BMC)(RML), 2010 WL 4916722, at * 7-9 (E.D.N.Y. Nov. 24, 2010) (adopting magistrate's recommendation to deny defendants' motion for sanctions in part because the motion was untimely, stating "[t]o delay filing this motion until more than four years after the events in question, and nearly two years after the court last invited a motion, is to wait too long."); *R.F.M.A.S., Inc.*, 271 F.R.D. at 57 (denying plaintiff's requested sanction of adverse inference instruction or preclusion of relevant testimony in part because of the "considerable delay in seeking a remedy").

Plaintiffs have known about the 8-month gap in the emails available from Defendant since at least April 30, 2010.  Plaintiffs had ample opportunity to raise the issue of the 8-month

gap with either Defendant or with the Court prior to the close of discovery, but they failed to do so.  Plaintiffs never sought relief from the Court, nor moved for sanctions regarding the 8-month gap, nor even mentioned the 8-month gap in their spoliation motion *in limine*.  Only now, on the eve of trial and because it is tactically convenient for them, do Plaintiffs raise the issue.

Defendant has been prejudiced by Plaintiffs' delay.  Plaintiffs' raising of the baseless argument that the gap in email archive preservation constitutes a sanctionable discovery offense on September 9, 2011 caused distraction on the eve of trial and required Defendant to shift its focus away from trial preparation and toward the collection of declarations addressing the gap in email archive preservation and the drafting of this brief.  Plaintiffs should not be permitted to seek spoliation sanctions based on the 8-month discontinuation of email at this late stage in the litigation.

### IV.   CONCLUSION

Because Plaintiffs have not shown that any emails missing as a result of Defendant's inadvertent discontinuation of the 42-day email archive preservation mechanism from May 2008 to February 2009 would have been favorable to their claims, Plaintiffs have not met the requisite standard for the Court to impose the severe discovery sanctions Plaintiffs seek.  Moreover, Plaintiffs unreasonably delayed in seeking spoliation sanctions, and they should be barred from pursuing such relief now, on the eve of trial.  Plaintiffs' Motion *in Limine* #8 should be denied.

Dated:  New York, New York
       September 21, 2011

Respectfully submitted,

By:  /s/ Patrick W. Shea
     Patrick W. Shea (CT07071)
     Paul Hastings LLP
     75 East 55th Street
     New York, NY 10022
     Telephone: (212) 318-6000
     Facsimile: (212) 319-4090
     patrickshea@paulhastings.com

     Leslie A. Dent (PHV 03877)
     John F. Wymer, III (PHV 03876)
     Erika L. Leonard (PHV 03875)
     Paul Hastings LLP
     600 Peachtree Street, N.E., Suite 2400
     Atlanta, Georgia 30308
     Telephone: (404) 815-2400
     Facsimile: (404) 815-2424
     lesliedent@paulhastings.com
     johnwymer@paulhastings.com
     erikaleonard@paulhastings.com

     Counsel for Defendant
     SOUTHERN NEW ENGLAND
     TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,**<br><br>**Individually and on Behalf of Others Similarly Situated,**<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**SOUTHERN NEW ENGLAND TELEPHONE COMPANY,**<br><br>**DEFENDANT.** | CIVIL ACTION NO. 3:07CV967 (JCH)<br><br><br>SEPTEMBER 21, 2011 |

### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2011, a copy of foregoing DEFENDANT SNET'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE #8 TO EXCLUDE EVIDENCE AND PROVIDE ADVERSE INFERENCE INSTRUCTION was filed electronically and served by U.S. mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Shea
Patrick W. Shea (CT07071)
Paul Hastings LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

*Attorney for Defendant SNET*

LEGAL_US_W # 69140882.5