UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARON L. PERKINS, ET AL., | : | CIVIL ACTION NO. |
|    Plaintiffs, | : | 3:07-CV-967 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | SEPTEMBER 27, 2011 |
| TELEPHONE CO., | : | |
|    Defendant. | : | |

**RULING RE: PLAINTIFFS' MOTION IN LIMINE No. 11 (Doc. No. 407), PLAINTIFFS' MOTION IN LIMINE No. 5 (Doc. No. 402) AND DEFENDANT'S MOTION IN LIMINE (Doc. No. 379)**

**I.    INTRODUCTION**

Plaintiffs, Sharon Perkins, Michael Blasko, Joseph Kiely, Michael McDermott, and Kelly Werbinski, bring this action against defendant, Southern New England Telephone Co. ("SNET"), on behalf of themselves and a class of similarly situated employees (collectively, "plaintiffs"), alleging that they were not paid for overtime work in violation of the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 207 and Connecticut General Statutes §§ 31-60(a) and 31-76(c). See Second Am. Compl. (Doc. No. 118).

The parties have filed opposing motions in limine regarding the appropriate rate at which a jury should calculate overtime payment, should the jury find that SNET is liable to the plaintiffs for unpaid overtime. Plaintiffs contend that any overtime rate should be for "time and a half," or one and one-half the employee's normal rate. SNET contends that any overtime rate should be one-half the regular rate of pay.

1

For the following reasons, the court grants plaintiffs' Motion in Limine No. 11 (Doc. No. 407) and Motion in Limine No. 5 (Doc. No. 402)[1], and denies SNET's Motion in Limine, Doc. No. 379.

## II. DISCUSSION

If a jury finds that SNET has violated the FLSA by failing to compensate the plaintiffs for overtime hours, the court must instruct the jury regarding the proper way to calculate damages.[2] SNET contends that such calculation should either be calculated according to the Supreme Court's decision in Overnight Motor Transportation Co. v. Missel, or as explained in a Department of Labor Interpretative Bulletin, codified at 29 C.F.R. § 778.114, using the "fluctuating workweek method."

### A. *Missel* Opinion

In Overnight Motor Transportation Co. v. Missel, the Supreme Court found that an employment contract may specify a particular weekly wage to be paid for a work schedule with variable or fluctuating hours. See 316 U.S. 572, 580 (1942). In such a case, the regular rate of pay is calculated by dividing the fixed weekly wage by the total number of hours worked in a given week, and will vary week to week depending on the hours worked. See id. For all hours worked over the statutory maximum, the employee is entitled to an overtime premium of one-half the regular rate. See id. at 580 and n.16.

---

[1] To the extent plaintiffs' Motion in Limine No. 5 argues that plaintiffs cannot waive a legal entitlement to overtime pay, SNET does not contest that aspect of the Motion and thus it is granted absent objection.

[2] At this time, the court is considering trying all liability issues separate from damages issues. As a result, it is possible that it will actually be a second jury who will perform any necessary damage calculations. Nonetheless, the jury impaneled for the liability portion of the case will need to make any underlying factual determinations necessary to perform such a calculation. Consequently, though damage calculations may not actually take place until the second phase of trial, the jury impaneled for the first phase of the trial will need to make factual findings for damages issues as well.

The Court then went on to hold that Missel's employment contract did not comply with the law because there was no contractual limit on the number of hours the defendant could have required Missel to work and no provision for additional pay if such pay was necessary to ensure Missel's wage exceeded the minimum wage, even though the wage actually paid to Missel "was sufficiently large to cover both base pay and fifty percent additional for the hours actually worked over the statutory maximum." See id. at 581.

SNET contends that, because the plaintiffs "received a fixed salary (satisfying the minimum wage) for fluctuating weekly hours that could exceed 40 per week," Missel dictates that plaintiffs may only recover an overtime premium equal to half the plaintiffs' regular rate of pay, as calculated in Missel. Defs.' Mot. in Limine to Exclude Evidence and Argument at 4–6 (hereafter "Defs.' Mot. in Limine No. 379"). This reading of Missel, however, fails to account for the actual holding of the case, where the Court states that a contract that places no limit on the amount of hours an employee may work and does not provide for additional compensation for time over forty hours, should such compensation be necessary to ensure the employee is paid minimum wage, may not comply with the law. See id. at 581. Here, plaintiffs were paid a fixed salary, regardless of the number of hours they worked. Although the parties appear to agree that, even given the overtime plaintiffs allege, this salary was more than sufficient to meet the minimum wage, SNET does not contend that any contractual limit existed on the number of hours the plaintiffs could have worked. In addition, SNET maintains that plaintiffs were not entitled to any additional compensation, regardless of how many hours they worked, because their fixed salary was meant to compensate for all hours

worked. But this is exactly the position rejected in Missel. Id. at 581 ("[T]here was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law."). Given these characteristics of the plaintiffs' employment agreements, the court does not find Missel to be controlling in this case.

B.  Department of Labor Interpretative Bulletin

Alternatively, SNET contends that the court should defer to the Department of Labor's ("DOL") interpretation of the fluctuating workweek method, as described in 29 C.F.R. 778.114. See Defs.' Mot. in Limine (Doc. No. 379) at 6. DOL issued section 778.114 as part of the "Statements of General Policy or Interpretation Not Directly Related to Regulations." See 29 C.F.R. 778.114. Despite SNET's repeated references to section 778.114 as a regulation, section 778.114 is in fact an interpretative bulletin. See Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 n. 5 (11th Cir. 2008). Accordingly, the court is not required to afford section 778.114 controlling deference. See Batterton v. Francis, 432 U.S. 416, 425 n. 9 (1977) ("[A] court is not required to give effect to an interpretative regulation."). Consequently, the court will consider section 778.114 as guidance, but does not afford the same deference to section 778.114 as it would to a regulation. See Rodriguez, 518 F.3d at 1268 n. 5 (applying more limited Skidmore type deference); Brock v. Wilamowsky, 833 F.2d 11, 17 (2d Cir. 1987) (finding that an interpretative bulletin is "due some deference").

4

Section 778.114 provides that an employer and employee may agree that the employee is to be paid a fixed salary "as straight time pay for whatever hours [the employee] is called upon to work in a workweek, whether few or many." It continues to specify that:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, . . . such a salary arrangement is permitted . . . if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

Section 778.114 does not discuss how it is to be applied, or whether it is to be applied, in an instance where an employer has misclassified an employee as exempt and failed to pay any overtime premium to the employee.

Although the Second Circuit has not addressed the use of the fluctuating workweek method in a misclassification case, other Courts of Appeal have applied section 778.114 to misclassification cases. See Clements v. Serco, Inc., 530 F.3d 1224, 1230–31 (10th Cir. 2008); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 40 (1st Cir. 1999); Blackmon v. Brookshire Grocery Co., 835 F.2d 1135, 1138 (5th Cir. 1988).[3] None of these cases, however, provide any meaningful analysis regarding the merits of adapting the fluctuating workweek method to the misclassification context.[4] Instead, the

---

[3] In addition, the Fourth Circuit and the Seventh Circuit have approved the use of an overtime premium equal to one-half the regular rate of pay in a misclassification case. See Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 357 (4th Cir. 2011) (basing its decision on Missel); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 681 (7th Cir. 2010) (finding that section 778.114 does not apply in misclassification cases, but applying an overtime premium of one-half the regular rate of pay based on Missel).

[4] The only Court of Appeals case to thoroughly analyze the use of the fluctuating workweek

5

Tenth Circuit and the First Circuit base their finding on another case, Bailey v. County of Georgetown, wherein the Fourth Circuit held that section 778.114 does not require that the employee understand the manner in which overtime pay is calculated in order to apply the fluctuating workweek method.  See Bailey v. Cnty. of Georgetown, 94 F.3d 152, 156 (4th Cir. 1996).  The plaintiffs in Bailey, however, were contesting the rate of overtime they were receiving, not whether they were entitled to overtime at all.  See id. at 153–54 (describing the facts of the case).  Consequently, Bailey is easily distinguishable from the case at hand.  Also failing to address the applicability of the fluctuating workweek method to misclassification cases, Blackmon provides only a cursory explanation of computing overtime according to section 778.114.  Blackmon, 835 F.2d at 1138–39.

In contrast, several district courts have held that applying the fluctuating workweek method to a misclassification violates the plain language of section 778.114. Generally, these courts hold that the language of section 778.114 requires both "(1) a clear mutual understanding that a fixed salary will be paid for fluctuating hours, *apart from overtime premiums*; and (2) the contemporaneous payment of overtime premiums."  See Russell v. Wells Fargo & Co., 672 F.Supp.2d 1008, 1013 (N.D.Cal. 2009) (emphasis in original); Ayers v. SGS Control Servs., Inc., 2007 U.S. Dist. LEXIS 19634 at *40–42 (S.D.N.Y. Feb. 27, 2007); Rainey v. Am. Forest & Paper Assoc., Inc., 26 F.2d 82, 100–02 (D.D.C. 1998) (finding that as a matter of law, the employer cannot

---

method in a misclassification context holds that section 778.114 is not applicable.  In Urnikis-Negro, the Seventh Circuit declines to apply section 778.114 in a misclassification case because the rule is forward looking and not a remedial measure, and requires both a clear, mutual understanding between employer and employee and contemporaneous (not after the fact) payment of an overtime premium.  See Urnikis-Negro, 616 F.3d at 677–79.

6

prove a clear mutual understanding or contemporaneous payment of overtime premiums in a misclassification case); see also Urnikis-Negro, 616 F.3d at 678 ("Besides looking forward rather than backward, the interpretive rule plainly envisions the employee's contemporaneous receipt of a premium apart from his fixed wage for any overtime work he has performed."); 29 C.F.R. 778.114, supra at 4–5. Because the employer in a misclassification case has necessarily not made any contemporaneous payment of overtime premiums, these courts find that section 778.114 is inapplicable in a misclassification case. In addition, courts have found that assessing damages according to section 778.114 may actually frustrate the purpose of the FLSA. See, e.g., In re Texas EZPawn Fair Labor Standards Act Litig., 633 F.2d 395, 404–05 (W.D.Tex. 2008) (using a hypothetical situation to demonstrate that the fluctuating workweek method may result in overtime compensation that is 375% lower than the traditional method, and asserting that using the fluctuating workweek method to calculate damages in misclassification cases allows employers to "escape the time and one-half requirement of the FLSA").

This court agrees with other district courts that have analyzed this issue and concludes that section 778.114 does not support the use of the fluctuating workweek method in the circumstances presented in this misclassification case.

C. Wage and Hour Opinion Letter

Finally, SNET argues that the court should consider a Wage and Hour Opinion Letter ("Opinion Letter") published by DOL on January 14, 2009. In the Opinion Letter, DOL endorsed the use of an overtime premium of one-half the regular rate in an instance where an employee has been misclassified as exempt following a

7

reorganization and the employee's fixed salary was meant to compensate for fluctuating hours. In that case, DOL explained that the employer could pay back wages for overtime worked during the period of misclassification at a rate of one-half the employee's regular rate of pay.

An administrative opinion letter is not entitled to deference; instead, it is entitled to respect to the extent that it has the "power to persuade." See Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000). DOL published this letter after choosing not to pursue a Notice of Proposed Rulemaking that had proposed to omit the phrase "apart from overtime premiums" from the sentence regarding the "clear mutual understanding" required to rely on the fluctuating workweek method. See Russell, 672 F.Supp.2d at 1013; see also 29 C.F.R. 778.114, supra at 4–5. In the letter, DOL endorsed the use of section 778.114 to compute retroactive payment of overtime premiums, citing to the Clements and Valerio decisions. See Wage and Hour Opinion Letter FLSA 2009-3. On April 5, 2011, however, DOL backtracked, stating that it "does not believe that it would be appropriate to expand the use of [the fluctuating workweek method] of computing overtime pay beyond the scope of the current regulation." See Dep't of Labor Rules & Regulations, 76 F.R. 18832-01, 18850 (April 5, 2011). In light of the circumstances under which the Opinion Letter was promulgated and the fact that DOL has since reversed its position, the court does not find the Opinion Letter to be persuasive.

D.    Perkins, et al. v. SNET

Absent a controlling decision from the Supreme Court or the Second Circuit, this court must look to those cases it finds persuasive for guidance in reaching its decision. Although several circuits have applied section 778.114 in a misclassification case, the

8

court does not find those decisions to be particularly persuasive, especially given the lack of analysis regarding the difference between applying the fluctuating workweek method prospectively—where both the employer and the employee have agreed regarding compensation—and retrospectively—when the employer has made a unilateral, and incorrect, decision that an employee is exempt from being paid overtime at all.  The court agrees with other district courts that have held that the plain language of section 778.114 requires that, in order to employ the fluctuating workweek method of overtime compensation, an employer—pursuant to a clear agreement—must contemporaneously pay employees an overtime premium of one-half the regular rate for overtime hours.  See 29 C.F.R. § 778.114 (". . . such a salary arrangement is permitted . . . if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage . . . and if he receives extra compensation, in addition to such salary, for all overtime hours worked.") (emphasis added).  As SNET has not paid contemporaneous overtime premiums, section 778.114 is inapplicable to this case.[5]

---

[5] In addition, the court agrees that assessing damages using the fluctuating workweek method provides a perverse incentive to employers to misclassify workers as exempt, and a windfall in damages to an employer who has been found liable for misclassifying employees under the FLSA.  See, e.g., Russell, 672 F.Supp.2d at 1014–16 ("Given the remedial purpose of the FLSA, it would be incongruous to allow employees, who have been illegally deprived of overtime pay, to be shortchanged further by an employer who opts for the discount accommodation intended for a different situation."); In re Texas EZPawn Fair Labor Standards Act Lit., 633 F.Supp.2d at 404–05 ("[A]n employer could claim exempt status for an employee, withhold overtime, then after being held liable for failing to pay overtime, escape the time and one-half requirement of the FLSA.").

### III. CONCLUSION

For the reasons stated above, defendant SNET's Motion in Limine (Doc. No. 379) is denied. Plaintiffs' Motions in Limine No. 5 (Doc. No. 402) and No. 11 (Doc. No. 407) are granted.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 27th day of September, 2011.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge