## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**SHARON L. PERKINS, et al.,**
**Individually and on Behalf of Others**
**Similarly Situated,**

           **PLAINTIFFS,**

      **v.**

**SOUTHERN NEW ENGLAND**
**TELEPHONE COMPANY,**

        **DEFENDANT.**

**CIVIL ACTION NO. 3:07CV967 (JCH)**

## PLAINTIFFS' SUGGESED LANGUAGE FOR CHANGES AND ADDITIONS TO THE COURT'S OCTOBER 7, 2011 DRAFT JURY INSTRUCTIONS AND TO PLAINTIFF'S PROPOSED VERDICT FORM

**Instruction 4,  p. 6:**

Delete the fourth sentence and replace with:

To establish its special defense that plaintiff-employees are exempt from overtime pay, the employee's job duties must satisfy the exemption plainly and unmistakably.  SNET must prove this by a preponderance of the evidence.

**Failure to Produce Evidence  (Instruction 8, p.12)**

      Second sentence: Change "…emails were destroyed during this period" to "…SNET destroyed emails during this period."

      At end of first paragraph, add: "I have determined that SNET's destruction of emails during this nine-month period was 'at least' gross negligence."

References: *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109-110 & n.4 (2d Cir. 2002); *Harkabi v. Sandisk Corp.*, 2010 U.S. Dist. LEXIS 87483, at *18 (S.D.N.Y. Aug. 23, 2010); *Pension Comm. of the Univ. of Montreal Pension Plan v.*

*Bank of AM. Secs., LLC*, 685 F Supp.2d 456, 470-71 (S.D.N.Y. 2010); *Green v. McClendon*, 262 F.R.D. 284, 291 & n.6 (S.D.N.Y 2009); *Heng Chen v. Triple 8 Palace*, 2005 U.S. Dist. LEXIS 16520, at \*23-24 (S.D.N.Y. Aug. 11, 2005).

## **Instruction 13, p. 19**

Paragraph 2 class definition

The group definition for both the collective action and the class action is the same: all First Level (or Level One) Managers employed by SNET in the state of Connecticut from June 2005 and thereafter in two titles (Manager Network Services and Manager Construction and Engineering) who were assigned technicians with specific bargaining unit titles as follows:  Network Delivery Technician, Network Deployment Technician, Installation and Repair Technician, Outside Plant Technician, Premises Technician, Service Delivery Technician, Service Delivery Technician-Business.

## **Instruction 22, p.31**

Second sentence: "The burden is on the defendant to prove by a preponderance of the evidence that the plaintiffs **plainly and unmistakably** fall under this exemption."

## **Instruction 23, p32**

Second sentence: "The burden is on the defendant to prove by a preponderance of the evidence that the plaintiffs **plainly and unmistakably** fall under this exemption."

**Instruction 25, Primary duty, p.34**

Paragraph two replacement:

There is a rule of thumb that employees are generally classified as exempt or non-exempt depending on what they spend the majority of their time doing, but this generalization may not hold depending on an application of the remaining factors.  Time alone is not the only factor in determining whether the employee's primary duty was managerial. Primary duty does not necessarily mean the most time-consuming duty; instead it connotes the main or major – meaning the most important – duty performed by the employee.

Delete first paragraph on page 35.

*The Court's instructions misleadingly imply that the fact that an employee spends more than 50% of his or her time on management is conclusive, and that the other factors need not be considered, but that the fact that the employee spends less than 50% of his or her time on management means little if anything.  In fact, the 50% rule of thumb is a useful generalization and any determination of an employee's exemption status is based on the "totality of the circumstances."*

*See, e.g.,* 29 C.F.R. § 541.700; *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1267-71 (11th Cir. 2008)(discussing regulations that the amount of time spent on exempt v. non-exempt duties is not dispositive); *Scott v. SSP Am., Inc.*, 2011 U.S. Dist. LEXIS 32819, at *22-23 (E.D.N.Y. Mar. 29, 2011) ("The time an employee spends performing exempt work is an in important but non-determinative factor in determining an employee's primary duty."); *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 32322, at *14, 17 (S.D.N.Y. Mar. 31, 2010)  ("While it appears clear that Plaintiff performed a variety of exempt duties, the very limited record before the Court does not reveal the relative importance of these duties versus the non-exempt duties Plaintiff alleges he performed on a weekly basis"); *Johnson v. Big Lots*, 604 F.Supp.2d 903, 915 (E.D. La. 2009) ("That Johnson performed managerial duties less than 50% of his workweek is not dispositive, but this factor suggests his primary duty was not management.")

**Instruction 26, Management Activities**

P. 36 add new paragraph after the list of management duties:

In order to be performing actual management duties, the Level Ones must have actual authority and control over the technicians that the company says that they manage. You must consider whether the Level Ones have discretion and authority over the tasks they perform, and whether they have control over the design or the implementation of the policies or procedures for completing these tasks.

References: Doc. 361, Summary Judgment Decision at 4-5, 13-18, esp. at 15: "Absent some level of control over the design or method of implementation of these processes, these duties cannot be considered exempt.").

And at 17-18:

> In light of the little control Level Ones exercise over the nature of the various duties described in this section, the record supports a finding that Level Ones do not engage in "management" duties. *See*, *e.g.*, *Ale v. TVA*, 269 F.3d 680, 692 (6th Cir. 2001) ("Although [plaintiffs] did spend some of their time supervising employees, this supervision was not managerial in nature because they had no control over the people they supervised."). Instead of management, a reasonable jury could conclude that Level Ones' duties are better characterized as those of an administrative assistant to the Area Manager, lacking any real authority or power.

See also Doc. 418-2 Plaintiffs Proposed Jury charges 26-28, 33 and authority cited.

p.37 and 38 last two paragraphs, replace with:

If you find that SNET has failed to prove that the Level Ones' primary duty plainly and unmistakably consisted of actual management functions, and that they have engaged in such duties in connection with the management of the enterprise or of a customarily recognized department or subdivision, then the defendant has not proved the second

element of the FLSA executive exemption, and you should return a verdict in favor of the plaintiffs on their FLSA claim.

If you find that SNET has proven that the Level Ones' primary duty was actual management and that they engaged in their duties in the management of the enterprise or a customarily recognized department or subdivision, then the defendant has met its burden of proving the second element of the FLSA exemption and you should move on to consider the third element.

**New Instruction 28A- Change in Status**

*1. Change in Status Defined*

"Change in status means a "tangible employment action," namely a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  A tangible employment action, or change in status, is established only where there is an "explicit alteration in the terms and conditions of employment," and usually has a "direct economic impact" on the employee.  Such an action is taken by a supervisory employee with the power to make economic decisions affecting other employees "under his or her control."

Performance reviews and evaluations, warnings, discussions, reprimands, and ordinary disciplinary actions are not considered to be changes in status.  Discipline resulting in consequences such as a loss of vacation days or comp time does not qualify, as "these economic harms are not the equivalent of a tangible employment action, which

must result in a change in employment status."   Similarly, a short-term suspension, whether paid or unpaid, is not a change in status if it does not result in an alteration in the terms and conditions of employment upon the employee's return.

### 2. Relationship Between Change in Status and Particular Weight

Under this element of the exemption, it is not enough for SNET to show that Level Ones merely handed out discipline.   For this element to be met, SNET must demonstrate that the Level Ones made or had substantial influence over employment decisions which actually had a significant effect on the techs' employment status.   In order for an employee's recommendation to have "particular weight," there must be a clear and obvious connection between the recommendation and the ultimate change in status. In other words, the recommendation must "precipitate" (cause) the change.

Thus, if Level Ones are not empowered with substantial authority to make, initiate, or exercise a high degree of influence over decisions regarding the basic terms and conditions of employment of company employees "under their control," then they are not true managers – or bona fide executive employees – and SNET cannot prove that the exemption applies.

References: 69 Fed. Reg. 22122, 22131 (Apr. 23, 2004), adopting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998); DOL Amicus Brief in *Mullins v. City of New York* (Ex. 1) (summarizing the law, including requirement that the employee's recommendation "precipitate" the change in status); *Ellerth*, 524 U.S. at 761-62 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits… When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm…Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or

her control."); *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 604 (2d Cir. 2006) (tangible employment action only established where there was an "explicit… alteration[] in the terms and conditions of employment"); *Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) ("notice of discipline" and "counseling memo" did not constitute adverse employment action, citing *Smart v. Ball State Univ.*, 89 F.3d 437, 442-43 (7th Cir. 1996)); *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) (no adverse employment action if no "change in job description, days and hours, duties, benefits, or opportunity for promotion"); *Castro v. NYC Bd. of Educ. Personnel Director*, 1998 U.S. Dist. LEXIS 2863, at *20-22 (S.D.N.Y. Mar. 11, 1998) ("negative evaluations…that are unattended by a demotion, diminution of wages, or other tangible loss do not materially alter employment conditions… Moreover, although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions."); *Mullins v. City of New York*, 2008 WL 4620709, at *3 (S.D.N.Y. Oct. 17, 2008) (ordinary disciplinary actions resulting in loss of vacation days or comp time did not qualify as changes in status, as "these economic harms are not the equivalent of a tangible employment action, which must result in a change in employment status"; *Tahir v. Avis Budget Group, Inc.*, 2011 WL 1045096, at *4 (D.N.J. Mar. 23, 2011) (defendants "do not point to any fact of record that, in any of the instances in which Plaintiff disciplined hourly employees, Plaintiff's disciplinary action had some effect on the employee's status"); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 911 (E.D. La. 2009).

*Short-term suspensions not by themselves a change in employment status*: *Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F. Supp. 2d 557, 564-65 (S.D.N.Y. 2006) (one-day unpaid suspension not a materially adverse employment action as a matter of law); *Martinez v. Connecticut State Library*, 3:09CV1341 VLB, 2011 WL 4396704, at *10 (D. Conn. Sept. 21, 2011) (same); *Gibson v. Wyeth Pharmas., Inc.*, 07 CIV. 946 LTS GAY, 2011 WL 830671, at *7 (S.D.N.Y. Mar. 9, 2011) (same, three-day suspension)

## Instruction 30, FLSA Liquidated Damages- Good Faith Exception

T*his instruction should be removed. It is not an issue for the jury.*

E.g. 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1063 (2d Cir. 1988)("since an award of liquidated damages under section 16 is within the discretion of the district judge, 29 U.S.C. § 260, no right to a jury is available on that issue… The jury is required only to determine liability for and the amount of an award of back pay."); *McClanahan v. Matthews*, 440 F.2d 320, 322 (6th Cir. 1971); *El v. Potter*, 2004 U.S. Dist. LEXIS 24447, at *36-37 (S.D.N.Y. Dec. 6, 2004). *See also Reich v. S New Eng.*

*Tel. Co*., 121 F.3d 58, 70-72 (2d Cir. 1997); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 947 (2d Cir. 1959)

**New Instruction on Duty/On-Call Time**

An employer, if it chooses, may hire an employee to wait or even to do nothing.  "Work" includes inactivity which is predominantly for the benefit of the employer.

In this case, plaintiffs allege that they worked on call and duty hours.  Waiting time while on duty or on call is compensable where the time belongs to and is controlled by the employer.  While plaintiffs were on call and on duty, they performed a number of tasks for SNET including taking phone calls, working in the garage, working in the field, traveling to and from jobsites in company vehicles, or working on the computer for SNET.  Such time qualifies as work and is compensable.  You are not being asked to decide about actual working hours when we are taking about on call or on duty time.

What you the jurors are being asked to decide is whether the time plaintiffs spent waiting between phone calls and any time spent waiting to perform other tasks was done primarily for the benefit of SNET.  If you find that such on-call time was done primarily for SNET, then time is compensable.

If plaintiffs are engaged to be waiting, then their time is primarily for the benefit of the employer and such waiting time during on call work is compensable.  If plaintiffs are merely waiting to be engaged, and can use the time freely for their own benefit, then such time is not compensable.  In making this determination, you should decide if plaintiffs'

on call or duty time is compensable because being on duty restricted their personal

activities and freedoms.

References: 29 C.F.R. § 785.14; 29 C.F.R. § 785.17; 29 C.F.R. § 553.221(c); Conn. Gen. Stat. § 31-76b(2); Modern Federal Jury Instructions, Instruction 85-11; *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("An employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."); *Skidmore v. Swift*, 323 U.S. 134 (1944); *Reich v. SNET*, 121 F.3d 58, 64-65 (2d Cir. 1997); *Alvarez v. IBP, Inc*., 339 F.3d 894, 902 (9th Cir. 2003)(work includes "non-exertional acts"); *Pabst v. Oklahoma Gas & Elec. Co*., 228 F.3d 1128 (10th Cir. 2000); *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916-17 (8th Cir. 1991) (finding on-call time compensable because, inter alia, employees were required to respond within thirty minutes, and because they were subject to on-call status twenty-four hours per day for every day of a work period); *Nonnenmann v. City of NY*, 2004 U.S. Dist. LEXIS 8966, at *83-90 (S.D.N.Y. May 20, 2004); *Moon v. Kwon*, 248 F.Supp.2d 201, 228-30 (S.D.N.Y. 2002); *Abdelkhaleq v. Precision Door of Akron*, 653 F.Supp.2d 773 (N.D. Ohio 2009); *Harris v. Mercy Health Corp*., 2000 U.S. Dist. LEXIS 11228, at *12-16 (E.D. Pa. Aug. 9, 2000). *Cf. Sarrazin v. Coastal, Inc*., 2009 Conn. Super. LEXIS 1435 (Conn. Super. Ct. May 22, 2009) (travel time).

### *Proposed verdict question for Phase One jury on duty/on-cal time:*

Was any part of the time that Plaintiffs spent on call during duty weeks primarily for the benefit of Defendant SNET?

Dated: October 12, 2011

/s/  Steven L. Wittels
Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**

83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734
eclarkmadisonlaw@aol.com

*Attorneys for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served via ECF

this 12th day of October, 2011 upon the following counsel of record:


**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*


____/s/ Steven L Wittels_____
        Steven L. Wittels