UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,**<br>**Individually and on Behalf of Others**<br>**Similarly Situated,**<br><br>         **PLAINTIFFS,**<br><br>         **v.**<br><br>**SOUTHERN NEW ENGLAND**<br>**TELEPHONE COMPANY,**<br><br>         **DEFENDANT.** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |

**PLAINTIFFS' OBJECTIONS TO SNET'S**
**PROPOSED JURY INSTRUCTIONS #19-22**

At the charge conference on Tuesday, October 11, 2011, SNET objected to the Court's

decision not to include SNET's proposed instructions #19-22.  Based upon governing law and

the trial testimony, Plaintiffs object to these four instructions.  SNET's proposed charges

should be rejected because they are not based on the relevant regulations, do not comport with

the law, do not fit with the record testimony and evidence, and have a substantial capacity to

confuse and mislead the jury.

**SNET's Proposed Instruction #19**:

**19. Authority to Affect Status – Effect of Collective Bargaining Agreement**

The existence of a union grievance process under a Collective Bargaining Agreement
which allows discipline decisions to be challenged does not mean that a supervisor does not have
authority to discipline employees employed under the Collective Bargaining Agreement or that
the supervisor's suggestions and recommendations as to the discipline of those employees are
not given particular weight under the federal executive exemption.

**Response and Objection**: This unnecessary and confusing instruction is not supported by

the law, including the limited authority cited by SNET.  The case relied upon most by SNET,

*Scherer v. Compass Group USA, Inc.*, 340 F. Supp. 2d 942, 953 (W.D. Wis. 2004), did not even

deal with the relevant part of the test (authority over hiring, firing, and changes in status) that the jury is being instructed on here.

Plaintiffs have never suggested that the CBA is the main restriction on the L1s' ability to discipline the techs and to change their employment status.  This can't be so because everyone at SNET, up to the company's CEO, is bound by the CBA.  Notwithstanding this, even within the confines of the CBA, the L2s and upper management **have the power** and authority to make such decisions, and the L1s **do not**.  The evidence in this case also establishes that the L2s, Directors, and VPs are able to negotiate employment matters with the union, but the L1s are not. It isn't the CBA that most limits Plaintiffs' authority, but rather SNET's decision to bestow meaningful disciplinary powers on upper management and withhold such authority from the L1s. Accordingly, the CBA is not a determinative factor on the subject of whether the L1s possess disciplinary authority.   SNET's proposed instruction would therefore confuse the jury.

The jury must analyze the actual facts, including any restrictions on the Level Ones' discretion, to determine whether they exercise authority to hire and fire and whether they make recommendations on changes of the techs' status that are given particular weight.

Moreover, SNET's instruction is misleading because not all discipline is considered to be a "change in status" under the applicable regulations.  The vast majority of the so-called discipline passed down by L1s to the company's techs does not result in any change of status.  Discussions, warnings, reprimands, and short-term suspensions do not materially alter the techs' terms and conditions of employment.  *See* Doc. 551, Plaintiffs' Proposed Charge 28A on Change of Status; Pltfs' Reply to Doc 553, Deft's Response in Opposition to Doc. 551.

<u>**SNET's Proposed Instruction # 20**</u>:

  **20. Use of Policies and Procedures**

The fact that First Level Managers may make judgments within well-defined policies, detailed guidelines or comprehensive procedures designed to provide uniform products and service does not mean that they are not engaged in management or that they do not make recommendations on personnel decisions that are entitled to particular weight.  The exercise of discretion, even when limited by prior instruction, will still satisfy the requirements of the exemption.

**Response and Objection**:  This confusing and misleading instruction is contrary to the Court's summary judgment decision.  In order to be exempt executives, employees must exercise discretion and independence in running the business.  Simply following orders does not make one a manager.[1]  The jury should reach a factual assessment of the Level Ones' duties and authority, without being unduly influenced by this unnecessary instruction.  SNET's purported authority for its proposed instruction has been repeatedly distinguished.[2]  The mere existence of policies and procedures does not **by itself** foreclose exempt status; however, the jury must consider the application of those policies and procedures, how restrictive they are in practice, and their effect on the Level Ones actual daily and weekly duties.

---

[1]Furthermore, in contrast with SNET's proposed instruction, AT&T's relevant rules, policies, and procedures are not simply about how products or service is provided but how the company treats its tech-employees in all instances; the ability to manage is stripped away from the Level Ones.

[2]*See*, *e.g*., *Morgan v. Family Dollar*, 551 F.2d 1233, 1271-73 (11th Cir. 2008); *Plaunt v. Dolgencorp, Inc.*, 2010 U.S. Dist. LEXIS 132135, at \*27-32 (M.D.Pa. Dec. 14, 2010); *Pierce v. Dolgencorp, Inc.*, 2011 U.S. Dist. LEXIS 10624, at \*28-32 (M.D.Pa. Feb. 3, 2011); *Gregorio v. TempleUniv.*, 1983 U.S. Dist. LEXIS 13243, 101 Lab. Cas. (CCH) P34,570 (E.D. Pa. Sept. 30, 1983)(relatively "minor" discretionary power and "de minimus" supervisory capacity do not establish exemption).  *See also Salazar v. Sunbelt Sprinkler & Well Drilling, Inc.*, 2008 U.S. Dist. LEXIS 52034, at \*15-16 (S.D. Fla. July 7, 2008) ("…the employee still must exercise some discretion that distinguishes him or her from other employees"; ultimately an employee must "'exercise[] discretion' in a managerial capacity", a factual question). *Cf. Scott v. SSP Am., Inc.,* 2011 U.S. Dist. LEXIS 32819, at \*42 2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011) (Plaintiff was asked to create a managerial "checklist" which "laid out many of Plaintiff's managerial responsibilities in order of importance, but it did not infringe on her discretion to execute those responsibilities by providing, for example, **step-by-step instructions**.") The checklists, policies, procedures, instructions, and directives in this case do in fact provide step-by-step instructions for performing the L1s' job tasks.

Simply being "in charge" does not mean that one's "primary duty is management." *E.g. Morgan*, 551 F.3d at 1272 n.60; *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 503 (6th Cir. 2007); *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001); *Guthrie v. Lady Jane Collieries, Inc*., 722 F.2d 1141, 1146 (3d Cir. 1983).

Furthermore, if the company uses its policies and practices to restrict the L1s' exercise of authority and control over the technicians assigned to them but does not similarly restrict the authority of higher-level managers, this fact would tend to show that the L1s are not performing *bona fide* managerial duties and that their primary duty is not management.

SNET's citation to *Burger King* does not call for the instruction it seeks.  In that case, with regard to the assistant managers subject to the old "short" test, the trial court found – and the Second Circuit agreed – that they actually performed managerial tasks, that these tasks were the principal and most important part of their job, that they exercised discretionary powers, that they hired and fired other employees, and that they did make independent judgments despite detailed guidelines for the provision of uniform products and services to customers.  Under the totality of the circumstances, the district court's finding that the "short" test employees were exempt was not erroneous.  It would be misleading here to take language from *Burger King* out of context, manipulate it, and suggest to the jury in this case that the comprehensive constraints on the Level Ones' authority and discretion do not matter.  *See* n.2, supra.  *Cf. In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155-57 (2d Cir. 2010) (relatively minor forms of discretion do not satisfy administrative exemption).

SNET's instruction is also improperly and deceptively worded.  The first sentence, "The fact that…," assumes or at least suggests that Level Ones do in fact make judgments and exercise meaningful discretion.  The Court should not issue instructions that imply its view of the evidence.  Moreover, the *Burger King* case discusses solely whether an employee's "primary duty" is "management" under the old short test.  It has nothing to do with the separate element of the current exemption on whether an employee makes recommendations on hiring, firing, or other changes in status that are given particular weight.

Finally, the last sentence of SNET's proposed instruction is so broad and de-contextualized that it is both virtually meaningless and highly misleading.  Under this sentence, it is hard to envision any employee – even a rookie mailroom clerk – who does not exercise "discretion as limited by prior instruction."   Every human employee uses some degree of discretion no matter how trivial, but is not thereby made an exempt manager.

The jury should decide from the trial record what level of managerial authority and control the L1s actually have, without being essentially told to disregard particular evidence.

**SNET's Proposed Instructions # 21 and 22**:

**21. Applicability of Exemption – Company's Realistic Expectations**

In determining whether the executive exemption applies, you should consider Defendant's reasonable expectations for the Plaintiffs' job.  If you find that Defendant designs the job to be exempt, and realistically instructs the employee to perform exempt duties, then you must find that job to be exempt.

**22. Applicability of Exemption – Misperformance of Duties**

An employee who is supposed to be engaged in exempt activities, but fails to do so  due to his or her own substandard performance or divergence from the employer's realistic expectations is not thereby able to evade a valid overtime exemption and make himself or herself eligible for overtime pay.

**Response and Objection**:   SNET has cited no authority that its proposed instructions are remotely applicable to an FLSA or Connecticut Minimum Wage Act case. *See Ruggeri v. Boehringer Ingelheim Pharm., Inc.*, 585 F. Supp. 2d 308, 313-15 (D. Conn. 2008), which specifies that SNET's cited authority is particular to California state law on California overtime exemptions.  Because of the distinct differences between California law and the FLSA, the *Ruggeri* court declined to be bound by cases interpreting the California outside sales exemption. SNET twists the meaning of *Ruggeri* when it says that *Ruggeri* supports these instructions.

SNET's instructions #21 and 22 are designed to circumvent this Court's ruling, based on

well-established law, that an employer's job titles and job descriptions are not dispositive and are in fact entitled to little or no weight. Furthermore, they contravene the Court's ruling on the admissibility of Plaintiffs' performance evaluations. It is beyond cavil that Plaintiffs' exemption status focuses on their actual duties and not on the employer's labels or upon variations in performance. Hence, these instructions are factually irrelevant and unduly prejudicial. (*See* Pltfs' MIL #3). Courts frequently allow class-wide determinations based on evidence that the employees share common duties and job characteristics. The Court has done so in this case. It should not imply that any poor performers among the class are not entitled to receive overtime.

## CONCLUSION

For the foregoing reasons, SNET's proposed instructions are misplaced and would not assist the jury in its deliberations. The Court should not adopt them.

Dated: October 16, 2011

/s/_Steven L. Wittels
Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
eclarkmadisonlaw@aol.com

*Attorneys for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served via ECF this 16th

day of October, 2011 upon the following counsel of record:

**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*

    /s/ Steven L Wittels

         Steven L. Wittels