UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON L. PERKINS, et al., Individually and on Behalf of Others Similarly Situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>SOUTHERN NEW ENGLAND TELEPHONE COMPANY,<br><br>DEFENDANT. | CIVIL ACTION NO. 3:07CV967 (JCH) |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO SUGGESED LANGUAGE FOR CHANGES AND ADDITIONS TO THE COURT'S OCTOBER 7, 2011 DRAFT JURY INSTRUCTIONS AND TO PLAINTIFF'S PROPOSED VERDICT FORM**

**I. Change in Status**

Defendant SNET's citations are distinguishable for several major reasons.

First, the Second Circuit authorities relied upon by SNET involve retaliation for protected activity. *See Lovejoy-Wilson v. NOCO Motor Fuel*, 263 F.3d 208, 223 (2d Cir. 2001), citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). What constitutes an adverse employment action is interpreted more expansively in the context of retaliation. *See*, *e.g.*, *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 224-27 (2d Cir. 2006); *Sebold v. City of Middletown*, 2007 U.S. Dist. LEXIS 70081, at *53-55, 63-66 (D. Conn. Sept. 21, 2007) (written reprimands and warnings constituted adverse action for retaliation claim but not for discrimination claim); *Evarts v. S. New England Tel. Co.*, 2006 U.S. Dist. LEXIS 71257, at *35-37 (D. Conn. Oct. 2, 2006)(same). Minor acts of retaliation can be actionable in the aggregate, *Burgos v. City of New Britain*, 2011 U.S. Dist. LEXIS

1

104570, at *12 (D. Conn. Sept. 15, 2011), citing *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010), while "change in status" under the FLSA contemplates a singular act or decision ("hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

Here, discipline such as a reprimand (warning) or one-day suspension might – in some circumstances – dissuade a reasonable person from complaining or engaging in other protected activity, and thus constitute actionable retaliation. *See*, *e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Zelnik*, supra; *Evarts*, supra; *Henton v. City of New London*, 2008 U.S. Dist. LEXIS 41088, at *44-46 (D. Conn. May 23, 2008) (disciplines which do not change the terms and conditions of employment qualify as adverse action for retaliation purposes).[1] But it does not amount to the requisite "change in status" under the FLSA. While the "institution of disciplinary proceedings" is a sufficient basis for a retaliation claim (*Gordon v. Marquis*, 2007 U.S. Dist. LEXIS 27811, at *31-32 (D. Conn. Mar. 31, 2007) (citing *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 106 (2d Cir. 2006)), discipline without an accompanying change in status does not satisfy the FLSA executive exemption.[2] Moreover, under Title VII, "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable

---

[1] *See also Bush v. Fordham Univ.*, 452 F. Supp.2d 394, 416 (S.D.N.Y. 2006), a retaliation case cited by Defendant SNET.

[2] *See*, *e.g.*, *Mullins v. City of New York*, 2008 WL 4620709, at *3 (S.D.N.Y. Oct. 17, 2008) (disciplinary actions resulting in loss of vacation days or comp time did not qualify as changes in status, as "these economic harms are not the equivalent of a tangible employment action, which must result in a change in employment status"); *Tahir v. Avis Budget Group, Inc.*, 2011 U.S. Dist. LEXIS 29729, at *10 (D.N.J. Mar. 23, 2011) (defendants "do not point to any fact of record that, in any of the instances in which Plaintiff disciplined hourly employees, Plaintiff's disciplinary action had some effect on the employee's status").

manner." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006).

Second, the Court must recognize the fundamentally different structure of the FLSA and Title VII, and the divergent purposes of the relevant statutory provisions. Both statutes are remedial and interpreted liberally for the protection of employees. Accordingly, Title VII's anti-discrimination provisions, including the requirement of an adverse action, are construed broadly, while the exemptions to the FLSA's coverage – including the "change in status" element – are construed narrowly. *See*, *e.g*., *White v. Burlington N. & Santa Fe Ry.*, 364 F.3d 789, 802 (6th Cir. 2004)(Title VII); *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010)(FLSA); *Tahir*, 2011 U.S. Dist. LEXIS 29729, at *10-11 (FLSA). For example, workplace harassment can rise to the level of an alteration of the terms and conditions of employment under Title VII, but clearly does not fall within the change in status element of the FLSA; a supervisor cannot make a recommendation that an employee be harassed on the basis of a protected category and it cannot be given particular weight. Hence, the Court should decline to adopt an expansive reading of the term change in status.

When construed narrowly, in accordance with the DOL's guidance in the 2004 bulletin (69 Fed. Reg. 22122, 22131 (Apr. 23, 2004)) and its amicus brief in *Mullins* (see Ex. A, attached, at 5-7) only a closely subscribed category of employment actions qualify as a change in status under the FLSA.[3] Under the accepted statutory maxim of *ejusdem generis*, "change in status" must be construed as similar to the nearby terms – "hiring, firing, advancement, promotion…". *See* 29 C.F.R. § 541.100; *Kuck v. Danaher,* No. 3:07cv1390(VLB), 2011 U.S. Dist. LEXIS 111793, *35-36 (D. Conn. Sept. 29, 2011)

---

[3] The DOL's brief is entitled to controlling deference. *See*, *e.g. Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Mullins v. City of New York*, 2011 U.S. App. LEXIS 16132, at *25-28 (2d Cir. Aug. 5, 2011).

(*citing diLeo v. Greenfield*, 541 F.2d 949, 954 (2d Cir. 1976)).  To the extent that the Second Circuit has read the requirement of an adverse action under Title VII more broadly than the strict language of this regulation or of *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998), such a reading would be inapplicable to the FLSA executive exemption.  Applying the correct FLSA standard, it is difficult to see how a mere reprimand or one-day suspension unaccompanied by any other consequences would constitute such a change in status.

Where "change in status" must be interpreted more narrowly than an adverse action under Title VII, the reasoning of *Dobrynio*, *Martinez*, and other recent cases finding a one to three day suspension to be insufficient by itself to constitute such an adverse action should prevail.  Cases construing the employment discrimination and retaliation statutes more liberally, in accordance with their remedial purposes, should not be imported into FLSA exemption jurisprudence and thereby permitted to "frustrate the announced will of the people" in the wage and hour context.  A.*H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

Third, SNET misconstrues the current status of the law on warnings and reprimands.  The prevailing body of authority is that such preliminary forms of discipline, by themselves, are not materially adverse.  Both within and outside of the retaliation context, courts have repeatedly "found that written reprimands do not result in materially adverse changes in the terms and conditions of an employee's employment." *Sebold*, 2007 U.S. Dist. LEXIS 70081, at *55  (citing *Weeks v. New York State*, 273 F.3d 76, 86 (2nd Cir. 2001); *Evarts*, 2006 U.S. Dist. LEXIS 71257, at *29-39 (concluding that a "verbal warning . . . the lowest form of discipline and the first step in a four-step

4

process outlined in the Collective Bargaining Agreement" was not an adverse employment action)). *See also Aiello v. Stamford Hosp.*, 2011 U.S. Dist. LEXIS 87121, at *35-36 (D. Conn. Aug. 8, 2011); *Guglietta v. Meredith Corp.*, 301 F. Supp.2d 209, 214-16 (D. Conn. 2004). [4]

In *Chang v. Horizons*, 254 Fed. Appx. 838, 839 (2d Cir. 2007), the court stated:

> In particular, we note that oral and written warnings do not amount to materially adverse conduct in light of our reasoning in *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), in which we stated that "[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action." Because Safe Horizons issued Chang warnings consistent with its progressive discipline policy, Chang did not suffer a materially adverse action under the circumstances.

Following *Chang*, numerous cases have held that such warnings do not ordinarily constitute materially adverse employment actions. *See*, *e.g.*, *Villagomez v. Catholic Charities, Inc.*, 2010 U.S. Dist. LEXIS 125743, at *25 (D. Conn. Nov. 30, 2010).

Even one of Defendant's own cited cases, *Satterfield v. UPS*, 2003 U.S. Dist. LEXIS 17229, at *33-34 (S.D.N.Y. Sept. 30, 2003), deems Second Circuit law "clear that plaintiff's receipt of verbal and written warnings, as well as her being placed on 'Notice of Discharge,' fail to rise to the level of an adverse action."

---

[4] *See also*, *e.g.*, *Asanjarani v. City of New York*, 2011 U.S. Dist. LEXIS 93664, at *40 (S.D.N.Y. Aug. 18, 2011) ("courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation"); *Honey v. Cty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (same); *Danieu v. Teamsters Local 264*, 2011 U.S. Dist. LEXIS 34546, at *19-20 (W.D.N.Y. Mar. 30, 2011); *Cristofaro v. Lake Shore Cent. Sch. Dist.*, 2011 U.S. Dist. LEXIS 13687, at *28-30 (W.D.N.Y. Feb. 10, 2011); *Mazzone-Trani v. Donohoe Cecere Funeral Home*, 2010 U.S. Dist. LEXIS 84543, at *21 & n.6 (E.D.N.Y. Aug. 13, 2010); *Cody v. Cty of Nassau*, 577 F. Supp.2d 623, 645-46 (E.D.N.Y. 2008), *aff'd* 345 Fed Appx. 717, 719 (2d Cir. 2009); *Oliphant v. Conn. DOT*, 2006 U.S. Dist. LEXIS 77021, at *19-22 (D. Conn. 2006); *Weissman v. New York City Dept. of Educ.*, 2005 U.S. Dist. LEXIS 15728, at *25-26 (S.D.N.Y. July 29, 2005); *Knight v. City of New York*, 303 F. Supp.2d 485, 497 (S.D.N.Y. 2004) ("Disciplinary memoranda… are adverse employment actions only if they affect ultimate employment decisions such as promotions, wages, or termination"); *Lumhoo v. Home Depot U.S.A., Inc.*, 229 F. Supp.2d 121, 150-51 (E.D.N.Y. 2002); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp.2d 236, 248 (S.D.N.Y. 2001), *aff'd* 51 Fed. Appx. 55 (2d Cir. 2002).

Finally, SNET obfuscates the relevant law on one to three day suspensions. *Satterfield* assumed, without deciding, that a one-day suspension qualified as an adverse employment action. *Id*. at *35. In *Cormier v. City of Meriden*, 420 F. Supp.2d 11, 22 (D. Conn. 2006), a retaliation case, the suspension in question carried a one-year loss of eligibility for a senior position (crew leader) which carried a pay premium – unquestionably a materially adverse condition.

SNET's attempt to rebut Plaintiffs' authority is also misplaced. The recent cases cited by Plaintiffs persuasively distinguish SNET's citations. *Martinez v. Conn. State Library*, 2011 U.S. Dist. LEXIS 107848 (D. Conn. Sept. 21, 2011), is not a subsidiary authority but a "primary" case cited by Plaintiffs. *Martinez* did in fact take into account the Second Circuit's decision in *Lovejoy-Wilson*. Faced with competing district court precedent on whether a one-day unpaid suspension would alone qualify as an adverse employment action, it found the reasoning of *Dobrynio* compelling. *Id*. at *26-29. The facts of *Martinez* and *Dobrynio* are analogous to those developed in this trial (*id*. at *29):

> Here, Martinez did not suffer any other short term nor any long term consequences as a result of the suspension nor did she suffer a material change in the terms and conditions, benefits or responsibilities of her employment. Like Dobrynio, Martinez returned after her one day off to the same job, the same position, the same title, the same duties and the same salary.

*See also Polanco v. 34th St. P'ship*, 724 F. Supp.2d 420, 426 (S.D.N.Y. 2010)("The Court is not persuaded that either a written warning with no discernible employment consequences or a single day of suspension for a sufficiently justifiable reason amounts to a materially adverse employment action.").

Plaintiffs' proposed instruction should be adopted, and Defendant's denied.

## II. Duty/On-Call Time

### A. *On Call Time Presents a Class Issue for the First Jury*

During trial proceedings, the Court indicated that it believed that Plaintiffs' on call time presented class-wide issues for the Phase One jury.

SNET downplays the representative evidence on Plaintiffs' 24/7 duty shifts presented in this trial. Plaintiffs testified that they frequently received almost constant calls during duty weeks, that they needed to respond to calls immediately, that many calls required them to go out into the field immediately, that they could not make personal plans or go places during duty and that attempting do so was a gamble, and that they often were relegated to the basement or guest room to get what little sleep they could. Plaintiffs uniformly testified that duty was a significant disruption to their lives, not a modest one. Receiving calls 3-5 times per day, a benchmark frequently exceeded by the SNET L1s, may be sufficiently restrictive to make on-call time compensable. *Ingram v. Cty. of Bucks,* 144 F.3d 265, 269 (3d Cir. 1998) (citing *Renfro v. City of Emporia*, 948 F.2d 1529, 1537 (10th Cir. 1991)). *See also*, *e.g*., *Dinges v. Sacred Heart St. Mary's Hosps*., 164 F.3d 1056, 1058 (7th Cir. 1999) ("An employee who can remain at home while on call, but is called away every few hours, can't use the time 'effectively' for sleeping, and probably not for many other activities"); *Harris v. Mercy Health Corp*., 2000 U.S. Dist. LEXIS 11227, at *12-16 (E.D. Pa. Aug. 9, 2000) (average of over 7 pages per day, each of which took 10-40 minutes of plaintiff's time).

Defendant's citations on the substantive on-call standard are distinguishable. In *Gilligan v. City of Emporia*, 986 F.2d 410 (10th Cir. 1993), plaintiff-employees were called less than once per day and given 30 minutes to an hour to respond. In *Bright v.*

*Houston Northwest Medical Center*, 934 F.2d 671 (5th Cir. 1991), a biomedical technician received calls with an average frequency of two times per week and two to three times over the weekend. In *Boehm v. Kansas City Power & Light Co.*, 868 F.2d 1182 (10th Cir. 1989), plaintiffs were required to carry a pager and to respond to one-third of "counted" call requests; only one call "counted" per day despite the number of times the employees received calls and did not answer. Finally, in Brock v. El Paso Natural Gas Co., 826 F.3d 369 (5th Cir. 1987), plaintiffs were on call only for a single night at a time and were free to engage in personal activities virtually without restriction.

The Tenth Circuit distinguished these cases *in Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128 (10th Cir. 2000), where plaintiffs received 3-5 calls per night and needed to take action within 15 minutes. The fact that plaintiffs were on-call on a 24-7 basis was a significant factor in the court's decision. *See also Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 916-17 (8th Cir. 1991). Like the employees in *Cross,* plaintiffs in this case are on call 24-7, are restricted in their travel, must be linked in at virtually all times (they have their computers on and must remain close to the company car), and have limited ability to engage in personal pursuits. The mere fact that Plaintiffs do other activities while engaged to be waiting for work does not mean they are able to use the time effectively for their own purposes. *See*, *e.g.*, 29 C.F.R. § 785.16.

On-call issues may be properly adjudicated as representative collective and class claims. *See*, *e.g.*, *Reich v. SNET*, 121 F.3d 58 (2d Cir. 1997); *Marroquin v. Canales*, 505 F. Supp. 2d 283 (D. Md. 2007); *Jonites v. Exelon Corp.*, 2006 U.S. Dist. LEXIS 75510 (N.D. Ill. Oct. 4, 2006)(certifying collective action where plaintiffs alleged they were not compensated for on-call waiting time); *Sakas v. Settle Down Enters., Inc.*, 90 F. Supp. 2d

1267 (N.D. Ga. 2000). *See also Laborers' Pension Fund v. Eagle Am. Corp.*, 2009 U.S. Dist. LEXIS 112979 (N.D. Ill. Dec. 1, 2009). Here, Plaintiffs are subject to uniform policies about working duty and the Court has noted that their testimony is representative. Each Level One must take rotating duty, for which he or she is not paid; they all cannot leave their territories and suffer similar restrictions on their personal pursuits and freedoms. Although the number of calls differs week by week, the typical experiences of being on duty do not vary considerably between L1s. SNET's citations declining class treatment for on-call claims are therefore inapposite. *See*, *e.g., Prise v. Alderwoods Group, Inc.*, 2011 U.S. Dist. LEXIS 101817 at *76-77 (W.D. Pa. Sept. 9, 2011) (national suit that covered six different policies and nine different job descriptions; no common policy or practice as to whether on-call time was compensated); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 105302, at *21 (W.D.N.C. Sept. 16, 2011) (no "common policy" of requiring employees to be on call).

### B. Plaintiffs' Instruction is Preferable to Defendant SNET's Instruction; Plaintiffs' Charge is More in Line with Controlling Law and More Comprehensible to a Lay Jury

Plaintiffs proposed instruction is based on the applicable regulations and Supreme Court and Second Circuit authority. SNET's instruction relies mostly on law from other Circuits and is unduly confusing. Furthermore, SNET's instruction is misleading and prejudicial in informing the jury that if they find in favor of the Plaintiffs, Plaintiffs will have to be compensated for the entire period they are on call, up to 24/7 for an entire week (168 hours). Plaintiffs' instruction asks only whether "any part" of their on call waiting time while on duty constitutes compensable work.

SNET, nevertheless, argues that Plaintiffs' instruction improperly implies that *any* limitation on the L1s' time, however minor, makes it compensable. Plaintiffs' instruction is derived from the key benchmark is that time is compensable if an employee is prevented from using the time "effectively" for his or her own purposes. In order to make this standard more understandable to a lay jury, Plaintiffs proposed an instruction which asks whether they can "use the time *freely* for their own benefit." Plaintiffs believe this is a simpler formulation but, to avoid possible confusion, would agree to substitute the actual language from the case law and regulations: "use the time *effectively* for their own purposes."

## **CONCLUSION**

Accordingly, Plaintiffs proposed instructions should be adopted by the Court and Defendant SNET's denied.

Dated: October 17, 2011                /s/  Steven L. Wittels
                                                           Steven Wittels, (SLW-8110)
                                                           Jeremy Heisler, (JH-0145)
                                                           **SANFORD WITTELS & HEISLER, LLP**
                                                           1350 Avenue of the Americas, 31st Floor
                                                           New York, NY 10019
                                                           Telephone: (646) 723-2947
                                                           Facsimile: (646) 723-2948

                                                           David W. Sanford
                                                           **SANFORD WITTELS & HEISLER, LLP**
                                                           1666 Connecticut Avenue, N.W., Suite 300
                                                           Washington, D.C. 20009
                                                           Telephone: (202) 742-7780
                                                           Facsimile:  (202) 742-7776

                                                           Edmond Clark
                                                           **Law Office of Edmond Clark**
                                                           83 Scotland Avenue
                                                           Madison, CT 06443-2501
                                                           Telephone: (203) 245-4602
                                                           Fax: (203) 245-9734
                                                           eclarkmadisonlaw@aol.com

                                                           *Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via ECF this 17th day of October, 2011 upon the following counsel of record:

**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*

\_\_\_/s/ Steven L Wittels_____
         Steven L. Wittels