# Mullins *Amicus* Brief, in the disposition of plaintiff's motion for summary judgement

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MULLINS, EDWARD D., et al. | ) |
| Plaintiffs | ) |
| v. | )  C.A. No. 1:04-cv-2979 (SAS) |
| CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT | ) ) ) |
| Defendants. | ) ) |

BRIEF OF THE SECRETARY OF LABOR AS AMICUS IN
THE DISPOSITION OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Of Counsel:

STEVEN J. MANDEL
Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

JENNIFER R. MARION
Attorney

U.S. Department of Labor
Officer of the Solicitor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210

JONATHAN L. SNARE
Acting Solicitor of Labor

PATRICIA M. RODENHAUSEN
Regional Solicitor

SUSAN B. JACOBS
Senior Trial Attorney
(SBJ 8388)

POST OFFICE ADDRESS:

Patricia M. Rodenhausen
U.S. Department of Labor
Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel. 212-337-2116

## TABLE OF CONTENTS

Table of Authorities

Statutory and Regulatory Background

Deference to the Secretary

Management as the Primary Duty

Hiring and Firing

Certificate of Service

## TABLE OF AUTHORITIES

Cases:

A.H. Phillips, Inc. v. Walling, 324 U.S. 490 (1945)

Anderson v. City of Cleveland, Tenn., 90 F. Supp. 2d 906 (E.D. Tenn. 2000)

Auer v. Robbins, 519 U.S. 452 (1997)

Belt v. EmCare, Inc., 444 F.3d 403 (5th Cir.), cert. denied, 127 S. Ct. 349 (2006)

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)

Burlington N. & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S. Ct. 2405 (2006)

Castro v. N.Y. City Bd. of Educ. Pers., No. 96 Civ. 6314, 1998 WL 108004 (S.D.N.Y. Mar. 12, 1998)

Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984)

Corning Glass Works v. Brennan, 417 U.S. 188 (1974)

Fairbrother v. Morrison, 412 F.3d 39 (2d Cir. 2005)

Hillig v. Rumsfeld, 381 F.3d 1028 (10th Cir. 2004)

IntraComm v. Bajaj, __ F.3d __, 2007 WL 1933887 (4th Cir. July 5, 2007)

Jackson v. City of San Antonio, No. SA-03OCA-0049, 2006 WL 2548545 (W.D. Tex. Aug. 31, 2006

Keeton v. Flying J, Inc., 429 F.3d 259 (6th Cir. 2005), cert. denied, 127 S. Ct. 109 (2006)

Kessler v. Westchester County Dept. of Social Servs., 461 F.3d 199 (2d Cir. 2006)

Long Island Care at Home, Ltd. v. Coke, __ U.S. __, 127 S. Ct. 2339 (2007)

Martin v. Malcolm Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991)

Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999)

Phelan v. Cook County, 463 F.3d 773 (7th Cir. 2006)

Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000)

Schaefer v. Ind. Mich. Power Co., 358 F.3d 394 (6th Cir. 2004)

Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597 (2d Cir. 2006)

United States v. Mead Corp., 533 U.S. 218 (2001)

Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76 (2d Cir. 2001), overruled on other grounds, National R.R. Passengers Corp. v. Morgan, 536 U.S. 101 (2002)

**Statutes and regulations:**

Administrative Procedure Act:

    5 U.S.C. 553

Fair Labor Standards Act of 1938,

    29 U.S.C. 201 et seq.:
    Section 7(a)(1), 29 U.S.C. 207(a)(1)
    Section 13(a)(1), 29 U.S.C. 213(a)(1)

29 C.F.R.:

    Part 541
    Section 541.3(b)
    Section 541.3(b)(1)
    Section 541.3(b)(2)
    Section 541.100
    Section 541.100(a)(1)
    Section 541.100(a)(2)
    Section 541.100(a)(3)
    Section 541.100(a)(4)
    Section 541.102
    Section 541.105
    Section 541.106
    Section 541.106(a)
    Section 541.106(b)
    Section 541.106(c)
    Section 541.700
    Section 541.700(a)
    Section 541.700(b)
    Section 541.700(c)

**Miscellaneous:**

3 Fed. Reg. 2518 (Oct. 20, 1938)
14 Fed. Reg. 7705 (Dec. 24, 1949)
19 Fed. Reg. 4405 (July 17, 1954)
68 Fed. Reg. 15,560 (Mar. 31, 2003)
69 Fed. Reg. (Apr. 23, 2004):

    p. 22,122
    p. 22,124
    p. 22,128
    p. 22,129

p. 22;130
p. 22,131

Wage & Hour Opinion Letter, FLSA 2005-40 (Oct. 14, 2005), available at 2005 WL 3308611

(A) Back to Top

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MULLINS, EDWARD D., et al. | ) |
| Plaintiffs | ) |
| v. | ) C.A. No. 1:04-cv-2979 (SAS) |
| CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT | ) ) ) |
| Defendants. | ) ) |

**BRIEF OF THE SECRETARY OF LABOR AS AMICUS IN**
**THE DISPOSITION OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The Secretary of Labor ("Secretary") submits this brief as amicus in the disposition of Plaintiffs' motion for summary judgment. This Court granted the Secretary's request to participate on June 26, 2007. At issue is whether the Plaintiffs are exempt executive employees under the Department of Labor's current overtime regulations. See 29 C.F.R. pt. 541.

1.   Statutory and Regulatory Background

The Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. 201 et seq., generally requires a covered employer to pay each employee overtime compensation for all hours worked in excess of 40 hours in a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. 207(a)(1). Section 13(a)(1) of the Act provides a complete exemption from this overtime pay requirement for "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor])." 29 U.S.C. 213(a)(1). Congress has not defined the terms "executive," "administrative," or "professional." As reiterated in a recent case involving the exempt status of police officers, "[a]ny exemption . . . must . . . be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." Jackson v. City of San Antonio, No. SA-03-CA-0049, 2006 WL 2548545, at *4 (W.D. Tex. Aug. 31, 2006) (first alteration added) (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)).

Pursuant to Congress's specific grant of authority, the Secretary issued new final regulations on April 23, 2004, effective on August 23, 2004, to "define and delimit" the section 13(a)(1) overtime exemptions. 69 Fed. Reg. 22,122 (Apr. 23, 2004).[1] The final regulations were issued pursuant to full notice-and-comment rulemaking in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. 553. See 68 Fed. Reg. 15,560 (Mar. 31, 2003). The purpose of the new regulations was to "restore the overtime protections intended by the FLSA" and "to ensure that employees could understand their rights, employers could understand their legal obligations, and the Department could vigorously enforce the law." 69 Fed. Reg. at 22,122.

Included in the revised overtime regulations is a new "duties test" for executive employees, the exemption at issue in Plaintiff's motion for summary judgment. 29 C.F.R. 541.100. Provided the salary requirement is met,[2] the executive exemption only applies to an employee: (1) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (2) "who customarily and regularly directs the work of two or more other employees;[3] and" (3) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. 541.100(a)(2)-(4). The revised regulations further define a number of the terms used in the duties test, such as "management," 29 C.F.R. 541.102, "particular weight," 29 C.F.R. 541.105, and "primary duty," 29 C.F.R. 541.700, and provide guidance whether the executive exemption applies when an employee is performing exempt and non-exempt duties concurrently. 29 C.F.R. 541.106.

The new Part 541 regulations also include, for the first time, provisions that explicitly address the application of the overtime exemptions to police officers and other first responders. Specifically, section 541.3(b)(1) provides that,

[t]he [FLSA] section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs . . . investigators, inspectors . . . and similar employees, regardless of rank or pay level, who perform work such as . . . rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. 541.3(b)(1) (emphasis added). Section 541.3(b)(2) further explains that,

> [s]uch employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to <u>investigate crimes</u> or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also <u>directs the work of other employees in the conduct of an investigation or fighting a fire</u>.

29 C.F.R. 541.3(b)(2)(emphasis added).

The regulatory preamble explains that section 541.3(b) was added to the final rule after commenters on the proposed rules expressed concern about the impact of the new regulations on police officers and other first responders, and notes that the silence in the prior regulation resulted in significant litigation. 69 Fed. Reg. at 22,128, 22,129. For these reasons, the Secretary added section 541.3(b) to clarify that front line police officers, regardless of rank, whose primary duty is law enforcement in the field are not exempt from the FLSA's overtime requirements.

The preamble cites police sergeants as an example of a first responder who typically is nonexempt: when police sergeants' primary duty consists of front line law enforcement, they "are entitled to overtime pay even if [in the course of such front line law enforcement] they direct the work of other police officers because their primary duty is not management or directly related to management or general business operations." 69 Fed. Reg. at 22,129. In this regard, the new regulations do not depart from the "established case law" in which application of the duties test determines whether a given employee is exempt. Id. Rather, section 541.3(b) explains that any police officer whose primary duty consists of such law enforcement activities as "preventing or detecting crimes" and "conducting investigations," 29 C.F.R. 541.3(b)(1), even as they are concurrently "direct[ing] the work of other employees in the conduct of an investigation," are not exempt because their primary duty is not "management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof." 29 C.F.R. 541.3(b)(2); see 29 C.F.R. 541.106 (concurrent duties).

(A) Back to Top

2. **Deference to the Secretary**

As discussed above, the Part 541 overtime regulations were promulgated pursuant to an express statutory grant of rulemaking authority and after notice and comment. See 69 Fed. Reg. at 22,124. As such, the regulations are entitled to controlling deference. Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); see Long Island Care at Home, Ltd. v. Coke, __ U.S. __, 127 S. Ct. 2339, 2349 (2007); United States v. Mead Corp., 533 U.S. 218, 229-30 (2001).

Furthermore, courts must give controlling deference to the Secretary's interpretation of her own regulations unless it is "plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted). As recently reiterated by the Supreme Court in Coke, 127 S. Ct. at 2349 (citation omitted), where the interpretation "'reflect[s] [the Secretary's] fair and considered judgment on the matter in question,'" the Secretary's interpretation is "controlling." This principle holds true whether the Secretary's interpretation is articulated in the preamble, opinion letters or other interpretive materials, or a legal brief. Id.; see Auer, 519 U.S. at 462; IntraComm v. Bajaj, __ F.3d __, 2007 WL 1933887, at *5 (4th Cir. July 5, 2007) (deference to the Secretary's interpretation of the Part 541 "combination exemption"); Belt v. EmCare, Inc., 444 F.3d 403, 415-16 (5th Cir.) (deference to the Secretary's interpretation of prior Part 541 regulations), cert. denied, 127 S. Ct. 349 (2006).

The Secretary's interpretation of the regulations reflects the agency's careful and considered analysis of the statutory exemption as applied to police officers. It is neither plainly erroneous nor inconsistent with the regulations. As such, the Secretary's interpretation, as discussed in the preamble to the final rule and in this brief, is dispositive. See Auer, 519 U.S. at 461.

3. **Management as the Primary Duty**

The first requirement of the current executive exemption is that the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. 541.100(a)(2). Section 541.700(a) defines "primary duty" as the "principal, main, major, or most important duty that the employee performs." 29 C.F.R. 541.700(a). When determining an employee's primary duty, factors to consider include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id. This analysis should focus on the employee's actual day-to-day duties and not the general job descriptions found in position descriptions and performance evaluations. See Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 400 (6th Cir. 2004).

The regulations clarify that the amount of time an employee spends performing exempt work is informative, but not dispositive. 29 C.F.R. 541.700(b). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." Id. Furthermore, a nonexempt employee does not become exempt from the overtime requirements simply because he or she has to perform exempt duties when filling in for an exempt employee as needed. 29 C.F.R. 541.700(c).

The overtime regulations define management duties as generally including,

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees'

productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. 541.102.

The preamble to the final rule provides further guidance in assessing police duties that, in accordance with existing case law, may be considered "managerial." 69 Fed. Reg. at 22,130. For example, the preamble lists such exempt duties as,

> evaluating personnel performance; enforcing and imposing penalties for violations of the rules and regulations; making recommendations as to hiring, promotion, discipline or termination; coordinating and implementing training programs; maintaining company payroll and personnel records; handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation; preparing budgets and controlling expenditures; ensuring operational readiness through supervision and inspection of personnel, equipment and quarters; deciding how and where to allocate personnel; managing the distribution of equipment; maintaining inventory of property and supplies; and directing operations at crime, fire or accident scenes, including deciding whether additional personnel or equipment is needed.

Id. The Department of Labor's Wage and Hour Division thus has determined that police lieutenants were exempt because their primary duties included,

> supervising a group of Police Officers and Sergeants assigned to patrol duties; deploying patrol units in accordance with needs of the workload; planning, directing, and coordinating activities of any of the special units; assisting and instructing Police Officers and Sergeants in handling difficult problems; conducting and participating in training courses; supervising and participating in the development and maintenance of a police records system; performing employee appraisals on subordinates; and disciplining subordinates when required . . . supervising, commanding and reviewing work of station and field personnel; assisting in the direction of the training and development of personnel; assisting in budget preparation and management; and coordinating and directing expenditures, material acquisition, and maintenance.

Wage and Hour Opinion Letter, FLSA 2005-40 (Oct. 14, 2005), available at 2005 WL 3308611.

While these lists of exempt duties are not exhaustive, they illustrate the types of managerial duties performed by some high-ranking police officers. By way of contrast, they reinforce the Secretary's position that front-line law enforcement, such as patrolling, firing taser guns, serving warrants, participating in and making arrests, investigating crimes, interviewing and interrogating witnesses, and securing crime scenes are front-line law enforcement activities that are not management tasks under section 541.3(b). See Jackson, 2006 WL 2548545, at *8-11 (denying, based on review of duties, City's motion for summary judgment arguing that sergeants and lieutenants were exempt executives under the new Part 541 regulations).

The revised regulations also clarify that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the [other regulatory requirements] are otherwise met." 29 C.F.R. 541.106(a). "Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work[, while a] nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods." Id. For example, as noted in the preamble, high-level, exempt police officers typically have the discretion whether to respond to calls, while non-exempt police officers are typically dispatched to calls. 69 Fed. Reg. at 22,130 (citing Anderson v. City of Cleveland, Tenn., 90 F. Supp. 2d 906, 909 (E.D. Tenn. 2000)).

Determining an employee's primary duty when that employee performs "concurrent duties" is key to the exemption analysis. The regulations provide guidance, noting that "an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management," but a "working supervisor" is not exempt, nor is "an employee whose primary duty is to work as an electrician . . . even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor." 29 C.F.R. 541.106(b), (c).

(A) Back to Top

### 4.   Hiring and Firing

The revised regulations require that in order to qualify as exempt, an employee must have "the authority to hire or fire other employees or [be an employee] whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. 541.100(a)(4). This was a requirement in the prior "long test" for executives. The preamble to the final rule clarifies that the Secretary intended "other change of status" to have the same narrow meaning as was given to "tangible employment action" by the Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998): "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." See 69 Fed. Reg. at 22,131. As explained by the Court, a tangible employment action "fall[s] within the special province of the supervisor," who "has been empowered by the company as . . . [an] agent to make economic decisions affecting other employees under his or her control." 524 U.S. at 762. The tangible employment action is "an official act of the enterprise, a company act" and, in most cases, will have a "direct economic" impact. Id.

As explained in the preamble to the final rule, "an executive does not have to possess full authority to make the ultimate decision regarding an employee's status, such as where a higher level manager or a personnel board makes the final hiring, promotion or

termination decision." 69 Fed. Reg. at 22,131. Rather, the exemption can apply if the employee in question makes recommendations for changes in employment status that carry "particular weight." 29 C.F.R. 541.100(a)(4). Factors to consider when determining whether the "particular weight" requirement is met include

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. . . . It does not include an occasional suggestion with regard to the change in status of a co-worker.

29 C.F.R. 541.105. There must be a discernible nexus between the recommendation made by the potentially exempt employee and the ultimate change in status of the supervised employee. In other words, the recommendation must "precipitate[]" the change in status. See 69 Fed. Reg. at 22,131 (discussing public agencies).

The Defendants' memorandum of law in opposition to the motion for summary judgment describes recommendations made by the Test Plaintiffs pertaining to purported changes in status. Based on Defendants' descriptions of these recommendations, as well as their own Patrol Guide (Defs. App. pp. 394-458 (Tabs EE-II); Pls. App. pp. 55-134 (Ex. 1-6)), sample performance evaluations (Defs. App. pp. 523-36), and Performance Evaluation Guide for Sergeants (Defs App. pp. 487-501 (Tab NN)), it appears doubtful that the criteria of 29 C.F.R. 541.100(a)(4) are met.[4]

The Test Plaintiffs fill out quarterly performance evaluations in which they assign point values to various criteria, such as law enforcement tasks and personal appearance, and annual performance evaluations in which they rate the officers on performance and behavior and may make recommendations for Departmental Awards, training, reassignment, and monitoring. (Defs. Mem. pp. 12-13, 15-16; Defs. Facts ¶¶ 53-59, 72-74). The Test Plaintiffs also may initiate the disciplinary process by issuing "command discipline," and may make entries in the "Minor Violations Log." (Defs. Mem. p. 13; Defs. Facts ¶¶ 61-65). These actions involve "other changes in status" that must be "tangible employment actions" in order to meet the requirements of 29 C.F.R. 541.100(a)(4).

The points earned on the quarterly and annual evaluations, once accumulated, only permit a police office to apply for a transfer through the Police Officer's Career Program.[5] The points are not necessary for a transfer, nor do they automatically earn an officer a transfer; the officer must still receive a "highly recommend" from his commanding officer and go through the required screening panels. (Defs. App. pp. 404-06). The Test Plaintiffs do not recommend police officers for transfer under the Career Program. The points earned are not actually suggestions or recommendations for a transfer. The fact that points are awarded does not necessarily mean that a Test Plaintiff would recommend or support a transfer. Thus, because the points may be accumulated from a number of different sources, and the actual decision whether to transfer comes from a commanding officer's recommendation and the screening panel, the link between the points and the ultimate transfer decision is too attenuated to satisfy the regulation's requirement that the points be given "particular weight" in the transfer decision. 29 C.F.R. 541.100(a)(4).

Furthermore, a lateral transfer is not a tangible employment action. In order to demonstrate a tangible employment action, an employer must establish that there was an "explicit . . . alteration[ ] in the terms or conditions of employment." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 604 (2d Cir. 2006) (alterations in original) (internal quotation marks and citations omitted). As such, a transfer would not be a tangible employment action for the purposes of the executive exemption unless there was a "real change in the conditions of employment." See Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005) (finding that a lateral transfer is not an adverse employment action); see also Morris v. Lindau, 196 F.3d 102, 113 (2d Cir. 1999) (noting that there is no adverse employment action if there is no "change in job description, days and hours, duties, benefits, or opportunity for promotion").[6]

The recommendations Test Plaintiffs make for Departmental Awards do not satisfy the regulatory requirements for similar reasons. First, the recommendations for Departmental Awards are not tantamount to recommendations for promotion or any other "change of status"; just because a Sergeant has recommended a Departmental Award for "Excellent Police Duty," for example, does not mean that the Sergeant believes the police officer should be promoted to Sergeant. Second, the Departmental Awards only equate to a fraction of what an officer requires in order to be eligible for promotion. Officers may only take the examination for sergeant if they are eligible according to such requirements as education and length of service. Officers who pass the examination for promotion to sergeant are placed on a list of officers eligible for promotion in final score order. (Pls. Reply App. pp. 2-6 (Ex. A)). An officer who has passed the written test portion of the examination may receive points for Departmental Awards, ranging from .031 to .5, added to his overall examination score. Points may also be awarded for seniority. Thus, as with the Career Program points, the link between the recommendation for a Departmental Award and any eventual promotion is attenuated.

To the extent that Sergeants may "discipline" officers by recommending officers for "additional training, coaching, and counseling" (Defs. Facts ¶ 63), or give a negative performance evaluation, these also are not tangible employment actions. See, e.g., Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) ("It hardly needs saying that criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."), overruled on other grounds, National R.R. Passengers Corp. v. Morgan, 536 U.S. 101 (2002). Such is also the case with reporting officers in a Minor Violations Log. See, e.g., Castro v. N.Y. City Bd. of Educ. Pers., No. 96 Civ. 6314, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) ("[A]lthough reprimands . . . may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Finally, to the extent that the Test Plaintiffs initiate Command Discipline, it appears that their responsibility is limited to reporting violations to the Commanding Officers. (Defs. App. p. 407). The Patrol Guide establishes that it is the Commanding Officers who investigate the violations and determine whether discipline is necessary. (Defs. App. p. 408). Although the procedure for Command Discipline states that the Commanding Officer may "[c]onfer with the supervisor, . . . if necessary." (id.), there is no indication that the supervising officer's recommendation is sought or given any particular weight.

DATED: July 18, 2007                                    Respectfully submitted,
New York, New York

Of Counsel:

STEVEN J. MANDEL
Associate Solicitor

JONATHAN M. KRONHEIM
Counsel for Trial Litigation

JENNIFER R. MARION
Attorney

U.S. Department of Labor
Officer of the Solicitor
Room N-2716
200 Constitution Avenue, N.W.
Washington, DC 20210

JONATHAN L. SNARE
Acting Solicitor of Labor

PATRICIA M. RODENHAUSEN
Regional Solicitor

___signed___
SUSAN B. JACOBS
Senior Trial Attorney
(SBJ 8388)

POST OFFICE ADDRESS:

Patricia M. Rodenhausen
U.S. Department of Labor
Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel. 212-337-2116

Back to Top

## CERTIFICATE OF SERVICE

I, SUSAN B. JACOBS, an employee of the United States Department of Labor, in the Office of the Solicitor, Region II, 201 Varick Street, New York, New York, certify that on the 20th day of July 2007, I served the within Secretary of Labor's Brief as Amicus upon the following individuals, by enclosing a true copy of same in securely sealed United States Government postage-free, franked envelopes addressed as follows:

Gregory K. McGillivary
Woodley & McGillivary
1125 15th St., NW
Suite 400
Washington, DC 20005

Lauren E. Schwartzreich
Woodley & McGillivary
1125 15th St., NW
Suite 400
Washington, DC 20005

Andrew Quinn
Quinn & Mellea
399 Knollwood Road
Suite 220
White Plains, NY 10603

Stephen P. Younger
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Lorie E. Almon
Seyfarth Shaw LLP
1270 Avenue of the Americas
Suite 2500
New York, NY 10020-1801

Gerald Maatman
Seyfarth Shaw LLP
1270 Avenue of the Americas
Suite 2500
New York, NY 10020-1801

Robert S. Whitman
Seyfarth Shaw LLP
1270 Avenue of the Americas
Suite 2500
New York, NY 10020-1801

Michael A. Cardozo
Corporation Counsel of the City of New York

100 Church Street, Room 2-108
New York, NY 10007

Michelle Ann Molfetta
NYC Law Department,
Office of the Corporation Counsel
100 Church Street
New York, NY 10007

      ___signed___
      SUSAN B. JACOBS

(A) Back to Top

## Footnotes

[1] The Secretary of Labor first promulgated implementing regulations to define the scope of the overtime exemptions in October 1938. See 3 Fed. Reg. 2518 (Oct. 20, 1938). After major revisions to the Part 541 regulations in 1949 and 1954, see 14 Fed. Reg. 7705 (Dec. 24, 1949) and 19 Fed. Reg. 4405 (July 17, 1954), the "tests" for determining whether an employee was an "executive," "administrative," or "professional" employee remained essentially unchanged for almost fifty years. Generally, under both the prior "short test" and the current test, (1) the employee must be paid a predetermined and fixed salary that is not subject to reduction because of variation in the quality or quantity of work performed (the "salary basis test"); (2) the amount of salary paid must meet minimum specified amounts (the "salary level test"); and (3) the employee's job duties must primarily involve executive, administrative or professional duties as defined by the regulations (the "duties tests"). This brief does not address the application of the prior regulations to the instant case.

[2] Under the new regulations, for the executive exemption to apply, the employee must be "[c]ompensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities." 29 C.F.R. 541.100(a)(1).

[3] As there does not appear to be any dispute between the parties about whether the Test Plaintiffs "customarily and regularly direct[] the work of two or more other employees," this brief will not address this prong of the duties test.

[4] The burden of proving an employee's status under the overtime regulations is on the employer. See Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974)).

[5] As indicated by Patrol Guide Procedure No. 205-15, which describes the Police Officer's Career Program (Defs. App. pp. 404-06, 519), a police officer's annual performance review points are converted to career points that can be used towards a transfer. A police officer with 60-68 annual performance review points, at the high end of the scale, would receive 4 career points. A minimum of 15 career points is required before an officer may apply for a career program transfer. Officers may also earn career points through such things as Departmental Recognitions, education, and perfect attendance.

[6] The Second Circuit has not resolved whether there is a distinction between a "tangible employment action" and an "adverse employment action." See Schiano, 445 F.3d at 609. Those circuit courts that have addressed the issue have either determined that the two terms are interchangeable, see, e.g., Phelan v. Cook County, 463 F.3d 773, 785 n.5 (7th Cir. 2006); Keeton v. Flying J, Inc., 429 F.3d 259, 263 n.1 (6th Cir. 2005), cert. denied, 127 S. Ct. 109 (2006), or that the "tangible employment action" standard is narrower than the "adverse employment action" standard. See, e.g., Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir. 2004) (superseded by regulation on other grounds); Ray v. Henderson, 217 F.3d 1234, 1242 (9th Cir. 2000). As such, it is appropriate to conclude that, for the purposes of the executive exemption, a transfer absent a "real change in the conditions of employment" is not a tangible employment action. The Second Circuit recently has determined that, as a result of the Supreme Court's decision in Burlington Northern & Santa Fe Railway Co. v. White, ___ U.S. ___, 126 S. Ct. 2405 (2006), the "adverse employment action" standard used in Fairbrother is no longer applicable to Title VII retaliation cases. See, e.g., Kessler v. Westchester County Dept. of Social Servs., 461 F.3d 199, 207-08 (2d Cir. 2006).

(A) Back to Top

Freedom of Information Act | Privacy & Security Statement | Disclaimers | Customer Survey | Important Web Site Notices | Plug-ins Used by DOL

U.S. Department of Labor | Frances Perkins Building, 200 Constitution Ave., NW, Washington, DC 20210
www.dol.gov | Telephone: 1-866-4-USA-DOL | TTY: 1-877-889-5627 | Contact Us

http://www.dol.gov/sol/media/briefs/mullins(A)-07-20-2007.htm