# SHARON PERKINS, ET AL.
# V.
# SOUTHERN NEW ENGLAND TELEPHONE COMPANY

### 3:07CV967 (JCH)
U.S. District Court, Connecticut

**Plaintiff Designations of Thomas Brzeninski's
September 20, 2011 Deposition**

Steven Wittels
**Sanford Wittels & Heisler, LLP**
1350 Avenue of the Amerias, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
*Lead Counsel for Plaintiffs and the Class*

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
*Counsel for Plaintiffs and the Class*

21:10        domestic footprint.


ID:            BRZEZINSKI 02112-02117

21:12            THE WITNESS: Unless there are
21:13        state-specific reasons to change a policy, yes.
21:14    BY MR. MELZER:
21:15    Q    And state-specific reasons would be differences
21:16        in state law, if one state had a stricter law for
21:17        some reason; is that correct?


ID:            BRZEZINSKI 02119-02119

21:19            THE WITNESS: Correct.


ID:            BRZEZINSKI 02313-02316

23:13    Q    And you were also responsible in your position as
23:14        HR Director of Compensation for the
23:15        classification of employees as exempt or
23:16        nonexempt from overtime; is that correct?


ID:            BRZEZINSKI 02323-02422

23:23            THE WITNESS: I would be responsible
23:24        for those that I have authority over.
23:25
24: 24
24: 1    BY MR. MELZER:
24: 2    Q    Anyone in the technical divisions in the domestic
24: 3        footprint.
24: 4    A    Yes, sir.
24: 5    Q    So you would be responsible for classification
24: 6        decisions regarding those employees, whether they
24: 7        are exempt or nonexempt and should be paid
24: 8        overtime.
24: 9    A    The final decision would have been mine, yes.
24:10    Q    And you were also responsible for performing
24:11        classification analysis to the determine whether
24:12        a position is properly classified, correct?
24:13    A    That would have been within my organization, yes.
24:14    Q    And you would have been responsible for
24:15        performing classification audits to determine
24:16        whether a position is properly classified; is

24:17     that correct?
24:18  A   Yes, sir.
24:19  Q   And the purpose of a classification analysis or a
24:20     classification audit is to determine whether an
24:21     employee is properly classified or as exempt or
24:22     nonexempt from overtime, correct?

ID:       BRZEZINSKI 02424-02503

24:24     THE WITNESS:  That would be one of
24:25     the reasons, yes.
25: 25
25: 1  BY MR. MELZER:
25: 2  Q   And to make sure that they're being compensated
25: 3     properly, correct?

ID:       BRZEZINSKI 02505-02510

25: 5     THE WITNESS:  That would be another
25: 6     reason, yes.
25: 7  BY MR. MELZER:
25: 8  Q   Because if they are a nonexempt employee,
25: 9     properly classified as a nonexempt employee, they
25:10     are entitled to receive overtime, correct?

ID:       BRZEZINSKI 02512-02515

25:12     THE WITNESS:  Correct.
25:13  BY MR. MELZER:
25:14  Q   Is it correct that compensation policies for AT&T
25:15     are set at the national level?

ID:       BRZEZINSKI 02517-02520

25:17     THE WITNESS:  Yes.
25:18  BY MR. MELZER:
25:19  Q   And they apply nationwide to all of the local and
25:20     regional affiliates?

ID:              BRZEZINSKI 02522-02601

25:22            THE WITNESS: Yes.
25:23   BY MR. MELZER:
25:24   Q     And benefits policies are set at the national
25:25         level and apply also to the entire domestic
26: 26
26: 1          footprint, correct?


ID:              BRZEZINSKI 02603-02610

26: 3            THE WITNESS: That's my
26: 4          understanding.
26: 5   BY MR. MELZER:
26: 6   Q     And it's correct that the company's paid time off
26: 7         policies are set on a national basis?
26: 8   A     That is also my understanding.
26: 9   Q     And they would apply to the entire domestic
26:10         footprint, including SNET?


ID:              BRZEZINSKI 02612-02617

26:12            THE WITNESS: Unless there are
26:13          state-specific reasons not to apply the national
26:14          policy, yes.
26:15   BY MR. MELZER:
26:16   Q     And the state-specific reason again would be
26:17         something in that state's labor laws.


ID:              BRZEZINSKI 02619-02624

26:19            THE WITNESS: Yes, sir.
26:20   BY MR. MELZER:
26:21   Q     And it's correct also that the decision as to
26:22         whether to classify a particular position as
26:23         exempt or nonexempt is determined at a national
26:24         level, correct?


ID:              BRZEZINSKI 02701-20707

27: 1            THE WITNESS: Unless there are
27: 2          state-specific reasons to consider a different
27: 3          classification, yes.
27: 4   BY MR. MELZER:

27: 5   Q     And unless there were a state-specific reason,
27: 6           the decision or the policy would apply to the
27: 7           entire domestic footprint; is that correct?


ID:               BRZEZINSKI 02709-02709

27: 9             THE WITNESS: Yes, sir.


ID:               BRZEZINSKI 02802-02804

28: 2   Q     And apart from that reason, a position would be
28: 3           classified the same way in every state in the
28: 4           domestic footprint, correct?


ID:               BRZEZINSKI 02806-02809

28: 6             THE WITNESS: As long as all of the
28: 7           work that that position is performing is the
28: 8           same, the classification would be the same
28: 9           nationwide.


ID:               BRZEZINSKI 02816-02825

28:16   Q     Mr. Brzezinski, you understand that the class of
28:17           plaintiffs, employees in this case is composed of
28:18           Level 1 managers in Connecticut in two titles,
28:19           and that's Manager Network Services and Manager
28:20           Construction and Engineering, correct?
28:21   A     That's my understanding.
28:22   Q     And is it correct that the title Manager Network
28:23           Services includes Level 1 managers in both Core
28:24           I&M, that's Installation and Maintenance and
28:25           U-verse, correct?


ID:               BRZEZINSKI 02902-02902

29: 2             THE WITNESS: Correct.


ID:               BRZEZINSKI 02904-03015

29: 4   Q     And another part of the definition for who is
29: 5           part of this case is, they also have to have

29: 6     outside technicians assigned to them; is that
29: 7     correct?
29: 8   A   In those titles, yes.
29: 9   Q   They have -- so they have -- and the technician
29:10     titles would be installation and repair tech,
29:11     network delivery tech, network deployment tech,
29:12     outside plant tech, premises tech, service
29:13     delivery tech, and service delivery tech
29:14     business; is that your understanding?
29:15   A   That's my understanding.  I don't know if that's
29:16     all inclusive, not understanding the language
29:17     within the contract that exists today.  But those
29:18     titles you had made mention to, it's my
29:19     understanding that they are direct reports of the
29:20     two titles in question.
29:21   Q   So for the purposes of this deposition if I refer
29:22     to the term Level 1 manager or L1, you'll
29:23     understand that I mean the plaintiffs in this
29:24     case, the Level 1 managers and those titles in
29:25     Connecticut who have outside techs assigned to
30: 30
30: 1     them.
30: 2   A   In those two titles?
30: 3   Q   Yes.
30: 4   A   Yes, sir.
30: 5   Q   Is it correct that people in those positions are
30: 6     also commonly known as field managers?
30: 7   A   That's correct.
30: 8   Q   And that's because they're assigned outside
30: 9     technicians in the technical field; is that
30:10     correct?
30:11   A   I don't know if that's the reason why.  It's just
30:12     a term that's been historically used for those
30:13     positions.
30:14   Q   And it's associated with being assigned outside
30:15     techs who are out in the field; is that true?


ID:           BRZEZINSKI 03017-03023


30:17         THE WITNESS:  Correct.
30:18   BY MR. MELZER:
30:19   Q   Mr. Brzezinski, you understand that there's a
30:20     collective bargaining agreement that sets forth
30:21     the contract between the technicians union and
30:22     the company; is that correct?
30:23   A   That's correct.

33: 3        in the 1B category?


ID:                 BRZEZINSKI  03305-03312

33: 5                THE WITNESS:  Yes, they are, I
33: 6        believe.  And I don't believe that's changed.
33: 7    BY MR. MELZER:
33: 8    Q    And that all of the employees in these positions
33: 9        nationwide would also be in the 1B category?
33:10    A    That is correct.
33:11    Q    And they're all classified as exempt from
33:12        overtime; is that correct?


ID:                 BRZEZINSKI  03314-03314

33:14                THE WITNESS:  Correct.


ID:                 BRZEZINSKI  03402-03404

34: 2    Q    So is it correct that that decision to classify
34: 3        this position was made nationwide and applies
34: 4        nationwide, correct?


ID:                 BRZEZINSKI  03406-03409

34: 6                THE WITNESS:  That's correct.
34: 7    BY MR. MELZER:
34: 8    Q    It wasn't made specific to Connecticut, correct?
34: 9    A    No, sir.


ID:                 BRZEZINSKI  03410-03415

34:10    Q    So anyone with the title Manager Network Services
34:11        or Manager Construction and Engineering who is 1B
34:12        is exempt?
34:13    A    Yes, sir.
34:14    Q    And that applies to all of the employees in this
34:15        case, correct?

ID:           BRZEZINSKI 03417-03425

34:17          THE WITNESS:  If they're all under
34:18      those titles, two titles in question, yes.
34:19  BY MR. MELZER:
34:20   Q   And any employees in those two titles nationwide
34:21      as 1B would be exempt?
34:22   A   Yes, sir.
34:23   Q   Is it correct that the L1's that we're talking
34:24      about in this case are not required to have any
34:25      particular level of education?


ID:           BRZEZINSKI 03502-03624

35:2           THE WITNESS:  That's correct.
35:3   BY MR. MELZER:
35:4    Q   They're not required to have a college degree; is
35:5      that correct?
35:6    A   That's correct.
35:7    Q   And there's no requirement that you're aware of
35:8      that they have to have a high school diploma; is
35:9      that correct?
35:10   A   Not that I'm aware of.
35:11   Q   They're not required to have any particular
35:12      educational background, true?
35:13   A   Not that I'm aware of.
35:14   Q   They're not -- they don't need a background in
35:15      business, correct?
35:16   A   Not that I'm aware of.
35:17   Q   And they're not required to have a background in
35:18      management, correct?
35:19   A   Not that I'm aware of.
35:20   Q   They're not required to have previous management
35:21      experience?
35:22   A   Not that I'm aware of.
35:23   Q   And they're not required to have a technical
35:24      background; is that correct?
35:25   A   That's correct.
36:36
36:1    Q   They're not required to have previously been a
36:2      technician at the company; is that correct?
36:3    A   That's correct.
36:4    Q   And they're not required to have technical
36:5      experience in the department where they would be
36:6      working as a Level 1; is that correct?
36:7    A   That's correct.
36:8    Q   They don't need to have experience with the

| | | |
|---|---|---|
| 36: 9 | | technology that the technicians assigned to them |
| 36:10 | | will be working on; is that correct? |
| 36:11 | A | It's not required, if that's what your question |
| 36:12 | | is. |
| 36:13 | Q | If there's an L1 job opening in one of the |
| 36:14 | | positions we're talking about, someone from |
| 36:15 | | outside of the technical divisions could apply; |
| 36:16 | | is that correct? |
| 36:17 | A | That's correct. |
| 36:18 | Q | Someone from a staff position? |
| 36:19 | A | That's correct. |
| 36:20 | Q | Someone even from HR; is that correct? |
| 36:21 | A | That's correct. |
| 36:22 | Q | And they could be hired into the position; is |
| 36:23 | | that correct? |
| 36:24 | A | There's a remote possibility. |

ID:        BRZEZINSKI 04820-04902

| | | |
|---|---|---|
| 48:20 | Q | And you're aware that the Level 1's in this case |
| 48:21 | | are responsible for rotating, what's known as |
| 48:22 | | duty, when they're on call for an area on a 24 by |
| 48:23 | | 7 basis; is that correct? |
| 48:24 | A | That's correct. |
| 48:25 | Q | Is it your understanding that when they're on |
| 49: 49 | | |
| 49: 1 | | duty, the Level 1's have to respond to calls that |
| 49: 2 | | they receive immediately? |

ID:        BRZEZINSKI 04904-04908

| | | |
|---|---|---|
| 49: 4 | | THE WITNESS: That's part of their |
| 49: 5 | | responsibilities, yes. |
| 49: 6 | | BY MR. MELZER: |
| 49: 7 | Q | And they must be prepared to go out into the |
| 49: 8 | | field immediately; is that correct? |

65: 2      be -- be on the same pay scale?

ID:             BRZEZINSKI 06504-06510

65: 4           THE WITNESS: That's part of it, yes.
65: 5   BY MR. MELZER:
65: 6   Q    And as we see from this document under the box
65: 7        Job Evaluation, it's correct that AT&T considers
65: 8        jobs to be similar if there is at least an
65: 9        80 percent match between the job responsibilities
65:10        and the skills required; is that correct?

ID:             BRZEZINSKI 06512-06515

65:12           THE WITNESS: That's right.
65:13   BY MR. MELZER:
65:14   Q    So if there's an 80 percent match, the company
65:15        regards the jobs as similar.

ID:             BRZEZINSKI 06519-06521

65:19   A    Correct.
65:20   Q    And, therefore, they should be compensated in the
65:21        same way, in the same range.

ID:             BRZEZINSKI 06523-06523

65:23           THE WITNESS: Correct.

ID:             BRZEZINSKI 07202-07206

72: 2   Q    So it's correct that the people who are viewed as
72: 3        similar who have an 80 percent match and should
72: 4        be compensated similarly are jobs with
72: 5        technicians reporting to them in the technical
72: 6        field; is that correct?

ID:             BRZEZINSKI 07208-07208

72: 8           THE WITNESS: In part, yes.

ID:          BRZEZINSKI 07317-07318

73:17          THE WITNESS: Similar in what
73:18     respects?


ID:          BRZEZINSKI 07323-07323

73:23  Q    Job responsibilities and skills required.


ID:          BRZEZINSKI 07404-07408

74:4          THE WITNESS: Even though they may be
74:5     under a different title, yes.
74:6  BY MR. MELZER:
74:7   Q    And anyone in those jobs is treated as being in
74:8        an exempt classification; is that correct?


ID:          BRZEZINSKI 07410-07416

74:10          THE WITNESS: If your question is to
74:11       the jobs that we just made mention to, being an
74:12       exempt classification, yes.
74:13  BY MR. MELZER:
74:14  Q    The jobs with technicians reporting to them in
74:15       the technical field, Level 1 jobs?
74:16  A    Yes.


ID:          BRZEZINSKI 07419-07425

74:19  Q    And that's the case for people in Core I&M,
74:20       correct?
74:21  A    Correct.
74:22  Q    And in Construction and Engineering, correct?
74:23  A    Correct.
74:24  Q    And U-verse, correct?
74:25  A    Correct.


ID:          BRZEZINSKI 07503-07505

75:3   Q    So it's correct that under this policy AT&T
75:4       regards all the Level 1's in this case as having
75:5       similar jobs, correct?

ID:                 BRZEZINSKI 07507-07512

75: 7                  THE WITNESS:  The Level 1's in this
75: 8          case referring to the IR division, the IR
75: 9          manager, Construction and Engineering manager.
75:10    BY MR. MELZER:
75:11    Q    Yes.
75:12    A    Yes.


ID:                 BRZEZINSKI 07719-07722

77:19    Q    Anyone considered to have a similar job would
77:20          be -- under this policy would be classified in
77:21          the same way, exempt or nonexempt, on a
77:22          position-wide basis, correct?


ID:                 BRZEZINSKI 07724-07810

77:24                  THE WITNESS:  Unless there are
77:25          state-specific requirements that would change it,
78: 78
78: 1          yes.
78: 2    BY MR. MELZER:
78: 3    Q    And as we discussed before, state-specific
78: 4          requirements being a difference in the state
78: 5          labor law.
78: 6    A    Yes.
78: 7    Q    So other than that, if they're regarded to have
78: 8          similar jobs under this policy, they would -- the
78: 9          position would be classified exempt or nonexempt
78:10          in the same way nationwide, correct?


ID:                 BRZEZINSKI 07812-07815

78:12                  THE WITNESS:  Yes, sir.
78:13    BY MR. MELZER:
78:14    Q    And that's the case for the positions in this
78:15          case; isn't it?


ID:                 BRZEZINSKI 07817-07817

78:17                  THE WITNESS:  Yes, sir.

ID:           BRZEZINSKI  08525-08603

85:25  Q    That was my question.  So in about 2007, or in
86: 86
86: 1       2007 any local organizations that were paying
86: 2       duty pay, that practice was discontinued by the
86: 3       national company; is that correct?


ID:           BRZEZINSKI  08605-08617

86: 5           THE WITNESS:  It should have been,
86: 6       yes.
86: 7   BY MR. MELZER:
86: 8   Q    And it, in fact, was in Connecticut, correct?
86: 9   A    To my understanding, yes.
86:10   Q    I'm going to show you a document that was marked
86:11       as Exhibit 10 at your previous deposition.
86:12           (Exhibit No. 3 was marked.)
86:13   BY MR. MELZER:
86:14   Q    And this is the cover page, Table of Contents,
86:15       and a particular excerpt from the AT&T Code of
86:16       Business Conduct; is that correct?
86:17   A    Yes, sir.


ID:           BRZEZINSKI  08702-09005

87: 2   Q    The AT&T Code of Business Conduct is formulated
87: 3       and written by the HR policy group; is that
87: 4       correct?
87: 5   A    That's correct.
87: 6   Q    And it applies to all AT&T employees nationwide;
87: 7       is that correct?
87: 8   A    Yes, sir.
87: 9   Q    And that would include SNET employees in
87:10       Connecticut.
87:11   A    Yes, sir.
87:12   Q  · And all employees are expected to follow the
87:13       policy, correct?
87:14   A    Correct.
87:15   Q    And they would be subject to discipline for
87:16       failure to do so; is that correct?
87:17   A    Yes, sir.
87:18   Q    Let's turn to the last page of the exhibit which
87:19       is Bates stamped 019388.  This is under the page
87:20       that's titled Company Property and Resources.  Is
87:21       it correct that there's a policy on reporting

```
87:22        hours worked?
87:23   A    Yes.
87:24   Q    Do you agree that this is the company policy on
87:25        reporting hours worked that applies to all
88: 88
88: 1        nonexempt employees nationwide?
88: 2   A    I can't attest for today, but I can attest for
88: 3        the time in question, which was 8/1 of '08, yes.
88: 4   Q    And it would have been -- is it fair to say that
88: 5        this would represent the policy at the company at
88: 6        the time of your deposition in September, 2010?
88: 7   A    Yes.
88: 8   Q    And at the time you left the company in December,
88: 9        2010?
88:10   A    I believe so, yes.
88:11   Q    So is it correct that you would·agree that any
88:12        nonexempt employee must be paid for all of the
88:13        hours that they work?
88:14   A    Yes, sir.
88:15   Q    And you would agree that they must be paid
88:16        overtime for all hours worked above 40 in a
88:17        particular week?
88:18   A    Yes, sir.
88:19   Q    And that when they're being paid overtime, they
88:20        have to be paid at the legal overtime rate; is
88:21        that correct?
88:22   A    Yes, sir.
88:23   Q    And that would be the case even if the hours were
88:24        not approved by a supervisor; is that correct?
88:25   A    That's correct.
89: 89
89: 1   Q    And you would agree that nonexempt employees are
89: 2        not -- never permitted to work off the clock
89: 3        without being compensated for those hours?
89: 4   A    That's correct.
89: 5   Q    Let's go through some of the examples in the box
89: 6        on the lower half of the page.  You agree that a
89: 7        nonexempt employee must be paid if they take home
89: 8        work to complete; is that correct?
89: 9   A    Yes, sir.
89:10   Q    And even if the supervisor didn't approve that?
89:11   A    Yes, sir.
89:12   Q    And you would agree that the same rule would
89:13        apply to employees who perform work during a
89:14        lunch period?
89:15   A    Yes, sir.
89:16   Q    And you would agree that that would also apply,
89:17        the rule that someone must be paid, if people
```

89:18        perform work before or after their scheduled
89:19        hours?
89:20    A    Yes, sir.
89:21    Q    And again even if the supervisor didn't approve
89:22        that?
89:23    A    Yes, sir.
89:24    Q    And it would also apply to answering work-related
89:25        phone calls after hours; is that correct?
90: 90
90: 1    A    Yes, sir.
90: 2    Q    So you would agree that AT&T is well aware that a
90: 3        nonexempt employee must be compensated for all of
90: 4        these kinds of tasks; is that correct?
90: 5    A    Yes, sir.


ID:            BRZEZINSKI 09008-09015

90: 8    Q    Now, you stated that the HR compensation
90: 9        division, your department, makes the decision on
90:10        whether to classify a particular position as
90:11        exempt or nonexempt; is that correct?
90:12    A    That's correct.
90:13    Q    And you've stated that the positions in this case
90:14        are classified as exempt.
90:15    A    Correct.


ID:            BRZEZINSKI 09219-09315

92:19    Q    The decision for the classification of these
92:20        positions, which applies in Connecticut to SNET
92:21        employees, you believe that was made before 1999?
92:22    A    Yes.
92:23    Q    And you would agree that there's been no
92:24        discussion or review of that decision that
92:25        there -- since you became a director of
93: 93
93: 1        compensation?
93: 2    A    Correct.
93: 3    Q    And you didn't personally evaluate whether the
93: 4        Level 1's in these positions should be exempt or
93: 5        nonexempt?
93: 6    A    That is correct.
93: 7    Q    You're not aware of any day-in-the-life surveys
93: 8        conducted with regard to the Level 1's work
93: 9        activities; is that correct?
93:10    A    That's correct.

```
93:11  Q    And no studies of their typical duties and hours
93:12       that you're aware of, correct?
93:13  A    That's correct.
93:14  Q    As the person making classification decisions,
93:15       correct?
```

ID:          BRZEZINSKI 09317-09317

```
93:17            THE WITNESS:  Correct.
```

ID:          BRZEZINSKI 09319-09319

```
93:19  Q    And doing classification audits, correct?
```

ID:          BRZEZINSKI 09321-09424

```
93:21            THE WITNESS:  Correct.
93:22  BY MR. MELZER:
93:23  Q    And you're not aware of whether any AT&T staff
93:24       members have done ride-alongs with Level 1's to
93:25       observe their typical day on the job and see what
94: 94
94: 1       they're doing, correct?
94: 2  A    Correct.  I'm not aware of that.
94: 3  Q    So -- and you don't know whether the company used
94: 4       any surveys in evaluating the Level 1
94: 5       classification status?
94: 6  A    For these positions in question, no.  That's
94: 7       correct, I'm not aware of it.
94: 8  Q    And you don't know that they used ride-alongs in
94: 9       determining the classification status.
94:10  A    That's correct.
94:11  Q    And you don't know if they've interviewed Level
94:12       1's about their duties to make the classification
94:13       decision?
94:14  A    That's correct.  I don't.
94:15  Q    And you don't know if they interviewed the
94:16       Level 2's, the area managers, to make the
94:17       decision?
94:18  A    No, I don't.
94:19  Q    And you don't -- you're not aware that they ever
94:20       interviewed any directors, Level 3's?
94:21  A    I'm not aware of that, no.
94:22  Q    And you're not aware that the company did
94:23       anything to personally observe the Level 1's work
```

94:24          in connection with their classification status?

ID:              BRZEZINSKI 09503-09712

95: 3   Q   AT&T and its subsidiaries in the domestic
95: 4          footprint.
95: 5   A   I'm not aware that they didn't or that they did.
95: 6          In respect to the answers that I've just been
95: 7          giving, so it's not misunderstood, I'm not aware
95: 8          that any of the studies were done in respect to
95: 9          the questions that you just asked, nor am I aware
95:10          that they didn't take place.
95:11   Q   Didn't you say in your deposition that they
95:12          hadn't been done that you were aware of?
95:13   A   Right.
95:14   Q   These particular -- in relation to the questions
95:15          I've been asking.
95:16   A   Correct.
95:17   Q   So I asked you, are you aware of whether the
95:18          company did anything to personally observe the
95:19          Level 1's at work in connection with their
95:20          classification status. Is it correct that there
95:21          was nothing that you're aware of?
95:22   A   There is nothing that I'm aware of. But not to
95:23          confuse the term aware. Aware could be that
95:24          there was.
95:25   Q   And you're the person -- but you're the person
96: 96
96: 1          making the classification decisions, correct?
96: 2   A   In the current environment?
96: 3   Q   Since -- from 2004 to December, 2010.
96: 4   A   Correct.
96: 5   Q   And there was no analysis of the Level 1's actual
96: 6          duties on a daily or weekly basis that you're
96: 7          aware of; is that correct?
96: 8   A   Correct.
96: 9   Q   Isn't it also true that the company has never
96:10          sought an opinion from the Department of Labor on
96:11          the classification status of the Level 1's?
96:12   A   Of these two positions, that's my understanding,
96:13          yes.
96:14   Q   And the company -- with regard to these
96:15          positions, the company hasn't asked for any input
96:16          from the Department of Labor that you're aware
96:17          of.
96:18   A   That's my understanding, yes.
96:19   Q   And the company hasn't provided any information

96:20      to the DOL about the Level 1's job duties and
96:21      responsibilities; is that correct?
96:22  A   Of these two positions in question, that's
96:23      correct.
96:24  Q   And is it correct that it hasn't sought an
96:25      opinion with regard to these positions from any
97: 97
97: 1      governmental organization from the State of
97: 2      Connecticut?
97: 3  A   Not that I'm aware of.
97: 4  Q   And it hasn't sought any input on these positions
97: 5      from a governmental organization for the State of
97: 6      Connecticut; is that correct?
97: 7  A   Not that I'm aware of.
97: 8  Q   And it hasn't provided a Connecticut governmental
97: 9      body with any information about the Level 1's job
97:10      duties and responsibilities; is that correct?
97:11  A   In respect to those two positions, not that I'm
97:12      aware of.


ID:          BRZEZINSKI  10008-10012


100: 8  Q   You testified in your deposition that AT&T
100: 9      reclassified the planning engineers and design
100:10      engineers from exempt to nonexempt in 2009; is
100:11      that correct?
100:12  A   That's correct.


ID:          BRZEZINSKI  10112-10122


101:12  Q   And you testified at your deposition in September
101:13      of 2010 in this case that the reason for the
101:14      classification change was that the duties of the
101:15      employees in those positions had changed over
101:16      time; is that correct?
101:17  A   Yes, sir.
101:18  Q   And that their jobs became more formulaic; is
101:19      that correct?
101:20  A   Yes, sir.
101:21  Q   They experienced loss of independent judgment; is
101:22      that correct?


ID:          BRZEZINSKI  10124-10203


101:24          THE WITNESS: That's correct.

101:25
102: 102
102: 1   BY MR. MELZER:
102: 2   Q     And the tools that they were supposed to use on
102: 3        the job became more mechanical; is that correct?


ID:            BRZEZINSKI 10207-10208


102: 7   Q     And, therefore, the job had to be changed from
102: 8        exempt to nonexempt?


ID:            BRZEZINSKI 10210-10216


102:10          THE WITNESS:  That was the primary
102:11        reason, yes.
102:12   BY MR. MELZER:
102:13   Q     So AT&T is aware that if an employee's job is
102:14        formulaic, mechanistic, and he doesn't exercise
102:15        independent judgment, he might need to be
102:16        classified as nonexempt; is that correct?


ID:            BRZEZINSKI 10218-10225


102:18          THE WITNESS:  May have to be,
102:19        correct.
102:20   BY MR. MELZER:
102:21   Q     And be paid overtime, correct?
102:22   A     Correct.
102:23   Q     And AT&T is aware that if an employee's job
102:24        duties change over time, if the -- he might need
102:25        to be reclassified.


ID:            BRZEZINSKI 10302-10307


103: 2          THE WITNESS:  May have to be
103: 3        reclassified, correct.
103: 4   BY MR. MELZER:
103: 5   Q     So if a job changes because it becomes less of a
103: 6        creative, independent job than before, it might
103: 7        then need to be changed from exempt to nonexempt?

ID:                 BRZEZINSKI 10309-10314

103: 9               THE WITNESS: That could be one of
103:10      the reasons, yes.
103:11   BY MR. MELZER:
103:12   Q   Are you aware that the Level 1's in this case are
103:13      alleging that they have also experienced a loss
103:14      of independent judgment?


ID:                 BRZEZINSKI 10316-10404

103:16               THE WITNESS: I believe that's my
103:17      understanding.
103:18   BY MR. MELZER:
103:19   Q   Over the last ten years or so?
103:20   A   Yes, sir.
103:21   Q   And you're aware they're also alleging that over
103:22      the last ten years or so their jobs have become
103:23      more formulaic?
103:24   A   That's my understanding as to what they're
103:25      alleging, yes.
104: 104
104: 1   Q   And you agree that AT&T has never conducted a
104: 2      review or an audit to determine whether the
104: 3      Level 1 managers in this case have experienced a
104: 4      loss of independent judgment.


ID:                 BRZEZINSKI 10406-10407

104: 6               THE WITNESS: That's my understanding
104: 7      yes.


ID:                 BRZEZINSKI 11005-11006

110: 5   Q   And would you agree that AT&T is well aware of
110: 6      the requirements of the FLSA; is that correct?


ID:                 BRZEZINSKI 11008-11011

110: 8               THE WITNESS: Yes, sir.
110: 9   BY MR. MELZER:
110:10   Q   And it's well aware of the requirements of the
110:11      state labor laws?

ID:                BRZEZINSKI 11013-11016

110:13             THE WITNESS: Yes, sir.
110:14   BY MR. MELZER:
110:15   Q    And it knows that it has to pay employees for all
110:16        of their time; is that correct?


ID:                BRZEZINSKI 11022-11102

110:22   Q    it knows that it has to -- if an employee is
110:23        nonexempt, that it has to pay that employee for
110:24        all of their time.
110:25   A    Yes, sir.
111: 111
111: 1   Q    And it knows that it has to classify employees
111: 2        properly based upon their actual duties, correct?


ID:                BRZEZINSKI 11104-11108

111: 4             THE WITNESS: Correct.
111: 5   BY MR. MELZER:
111: 6   Q    And that adherence to its obligations is an -- to
111: 7        comply with the law is an ongoing process over
111: 8        time; is that correct?


ID:                BRZEZINSKI 11113-11114

111:13   Q    It's an ongoing process -- okay. You can answer
111:14        that a question.


ID:                BRZEZINSKI 11121-11203

111:21   A    For nonexempt employees, should each manager be
111:22        aware and attain to that? Absolutely.
111:23   Q    And you would agree that accurately determining
111:24        whether an employee is exempt or nonexempt is an
111:25        ongoing obligation?
112: 112
112: 1   A    Yes.
112: 2   Q    And that that may require a reexamination of a
112: 3        position over time?

ID:              BRZEZINSKI 11205-11205

112: 5            THE WITNESS:  May, yes.


**Total Length - 00:39:47**