## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. Perkins, et al.,** ) | |
| ) | |
| **Individually and on Behalf of** ) | **No: 3:07CV967 (JCH)** |
| **Others Similarly Situated,** ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **SOUTHERN NEW ENGLAND** ) | |
| **TELEPHONE COMPANY,** ) | |
| ) | |
| **DEFENDANT.** ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION,
IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER FED. R. CIV. P. 59**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ........................................................................................ 1

ARGUMENT ........................................................................................................................ 2

PLAINTIFFS ARE ENTITLED TO A NEW TRIAL BECAUSE OF SERIOUS
QUESTIONS ABOUT THE FAIRNESS AND RELIABILITY OF THE VERDICT; THE
VERDICT IS CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE AND MAY
HAVE BEEN INFLUENCED BY PREJUDICIAL ERRORS AND IMPROPRIETIES ...... 2

A. ...... A New Trial is Required Because the Verdict  is Against the Weight of the Evidence
........................................................................................................................................ 4

B.  Errors in the Jury Charges, Exacerbated By Improper Argument By Defense Counsel,
Mandate a New Trial; a New Trial is Required Unless Any Such Errors are Harmless
and, the Court Cannot be Certain that the Flawed Charges Had No Influence on the
Verdict ............................................................................................................................ 4

　　1.　The Instructions on "Management" and "Primary Duty" Were Inadequate to Apprise
the Jury of the Relevant Law and May Have Misled it as to the Applicable  Standard .......... 6

　　2.　The Jury Instructions on "Directing the Work" Contained Similar Errors ..................... 8

　　3.　The Court Denied Proposed Instructions on "Change of status" and "Particular Weight"
Which Were Essential to the Fair Adjudication of the L1s' FLSA Claim ............................. 8

　　4.　The Court Instructed the Jury on the Incorrect Burden of Proof ................................... 9

C. ............ Prejudicial Errors in Admitting Evidence and Arguments Demand a New Trial
...................................................................................................................................... 13

　　1.　The Court Erred in Denying Plaintiffs' Motion in Limine #6 and Allowing Defense
Counsel to Argue to the Jury that the L1s' Salaries Alone Made Them Exempt ................. 14

　　2.　The Court Erred by Admitting Testimony Regarding the Compensation of General
Office Assistants, Resulting in Unfair Surprise and Greatly Prejudicing Plaintiffs ............. 16

　　3.　The Court Erred by Admitting the Testimony of John Sullivan Regarding His Duties
and Experiences as an L1, Resulting in Unfair Surprise and Extreme Prejudice ................. 17

　　4.　Testimony as to the Underlying Facts Contained in Excluded Documents was
Inherently Unfair and Prejudicial ........................................................................... 19

D. Defense Counsel Made Inaccurate, Misleading, and Prejudicial Statements and
Arguments to the Jury that Call for a New Trial ............................................................ 19

CONCLUSION ................................................................................ 20

TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) ..................................................... 10

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)........................................................... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 12

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ................................................... 10

*Astor v. U.S.*, 79 Fed. Cl. 303 (2007)........................................................................... 11

*Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) ............................................ 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) .................... 12, 14

*Berard v. Town of Rotterdam*, 2010 WL 2425902 (N.D.N.Y. June 11, 2010)............... 6

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002) ................... 10

*Bradley v. Jusino*, 2008 WL 3891529 (S.D.N.Y. Aug. 19, 2008) ................................. 6

*Brown v. Royalty*, 535 F.2d 1024 (8th Cir. 1976)........................................................ 19

*Cal v. Green*, 399 U.S. 149 (1970) .............................................................................. 18

*Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) ............................. 13, 17

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008)...................................... 12

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) ................................ 10

*Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108 (5th Cir. 1982)............. 14

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009)........................... 4, 10

*Dean v. Priceline.com, Inc.*, 2001 WL 35962826 (D. Conn. Apr. 6, 2001) ................ 16

*DeWitt v. New York State Hous. Fin. Agency*, 1999 WL 672560 (S.D.N.Y. Aug. 26, 1999) ........ 6

*Diamond D Enters. USA, Inc. v Steinsvaag*, 979 F.2d 14 (2d Cir. 1992)..................... 3

*Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982)..................................... 16

*Friedrich v. U.S. Computer Servs.*, 974 F.2d 409 (3d Cir. 1992)................................ 10

*Galu v. Swissair*, 1988 U.S. Dist. LEXIS 6753 (S.D.N.Y. June 27, 1988) ................... 2

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996) ....................................... 3

*Geller v. Markham*, 481 F. Supp. 835 (D. Conn. 1979) ............................................... 5

*Girden v. Sandals, Int'l*, 262 F.3d 195 (2d Cir. 2001)................................................... 5

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) ...................... 5, 9

*Gregory v. First Title of Am., Inc.*, 555 F.3d 1300 (11th Cir. 2009) .......................... 11

*Gros v. Port Washington Police Dist.*, 944 F. Supp. 1072 (E.D.N.Y. 1996) ................ 6

*Haber v Cty. of Nassau*, 557 F. 2d 322 (2d Cir. 1977) .................................................. 3

*Hall v. Porter W. Yett Co.*, 1991 U.S. Dist. LEXIS 5575 (D. Or. Apr. 19, 1991) ........................ 11

*Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544 (D. Conn. 2009) ................. 15

*Hillard v. Hargraves*, 197 F.R.D. 358 (N.D. Ill. 2000) ........................................................ 3, 20

*Hiller v. Cty. of Suffolk*, 199 F.R.D. 101 (E.D.N.Y. 2001) ...................................................... 6

*Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998) ................................................ 5

*Hopson v Riverbay Corp.*, 190 F.R.D. 114 (S.D.N.Y. 1999) ................................................. 20

*Hudson v. New York City*, 271 F.3d 62 (2d Cir. 2001) ...................................................... 3, 5

*Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986) ................................................ 1, 8, 9

*In re Novartis Wage & Hour Litig.*, 593 F. Supp. 2d 637 (S.D.N.Y. 2009) ............................... 15

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010) ...................................... 12, 15

*Jacques v. DiMarzio*, 386 F.3d 192 (2d Cir. 2004) ............................................................ 5

*Jennings* v. Jones, 587 F.3d 430 (1st Cir. 2009) ............................................................... 4

*Jewell Ridge Coal Corp. v. United Mineworkers of Am.*, 325 U.S. 161 (1945) ........................... 14

*Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003) ................................................................. 6

*Johns Hopkins v. Cellpro*, 931 F. Supp. 303 (D. Del. 1996) ............................................ 14, 17

*Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998) ........................................................... 14

*Lawrence v. City of Philadelphia*, 527 F.3d 299 (3d Cir. 2008) .......................................... 12

*LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454 (2d Cir. 1999) ...................................... 5, 9

*Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175 (3d Cir. 2000) ............................. 12

*Manley v. AmBase Corp.*, 337 F.3d 237 (2d Cir. 2003) ...................................................... 4

*Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991) ......................................... 10

*Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991) ............................................. 11

*Martin v. Moscowitz*, 272 Fed. Appx. 44 (2d Cir. 2008) ..................................................... 4

*McCarthy v. New York City Tech. College*, 202 F.3d 161 (2d Cir. 2000) .............................. 9, 13

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ............................................. 6, 12

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) ................................................. 11

*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243 (1940) ................................................ 2

*Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530 (5th Cir. 1984) ..................... 3

*O'Neill v. Krzeminksi*, 839 F.2d 9 (2d Cir. 1988) ............................................................ 6

*Otero v. Hous. Auth. of Bridgeport*, 263 F. Supp. 2d 440 (D. Conn. 2003) ............................ 4

*Overnight Transp. Co. v. Missel*, 316 U.S. 572 (1942) .......................................................... 12, 14

*Packard v. Pittsburgh Transp. Corp.*, 418 F.3d 246 (3d Cir. 2005)...................................... 10

*Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 (2d Cir. 1992) ............................... 20

*Partida v. Am. Student Loan Corp.*, 2008 U.S. Dist. LEXIS 4346 (D. Ariz. Jan. 18, 2008)........ 12

*Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281 (1st Cir. 1993) .......................... 17, 19

*Perkins v. S. New Eng. Tel. Co.*, 2011 U.S. Dist. LEXIS 109882 (D. Conn. Sept. 27, 2011)...... 12

*Petersen v. Cleveland Inst. of Art*, 2011 WL 1467378 (N.D. Ohio Apr. 18, 2011) .................... 11

*Phoenix Assocs. III v. Stone*, 60 F.3d 95 (2d Cir. 1995).......................................................... 3

*Pouliot v. Paul Arpin Van Lines, Inc.*, 235 F.R.D. 537 (D. Conn. 2006) ...................................... 3

*Ramos v Cty. of Suffolk*, 707 F. Supp.2d 421 (E.D.N.Y. 2010)................................................... 20

*Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1994) ................................................... 10, 12

*Rosera v. Int'l Harvester Co.*, 109 F.R.D. 143 (E.D. Wisc. 1986).............................................. 3

*Russo v. City of Hartford*, 419 F. Supp. 2d 134 (D. Conn. 2006)............................................. 3, 4

*Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882 (8th Cir. 1998).............................................. 17

*Santa Maria v. Metro N. Commuter R.R.*, 81 F.3d 265 (2d Cir. 1996) ...................................... 2

*Shockley v. City of Newport News*, 997 F.2d 18 (4th Cir. 1993) ........................................... 11, 12

*Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45 (2d Cir. 1984) ..................................... 18

*Tesser v. Bd. of Educ. of the City Sch. Dist. of New York,* 370 F.3d 31 (2d Cir. 2004).............. 20

*Thomas v. Cty. of Fairfax*, 758 F. Supp. 353, 358 (E.D.Va. 1991) ............................................ 10

*Twigg v. Norton Co.*, 894 F.2d 672 (4th Cir. 1990)....................................................................... 17

*U.S. v. Kralmann*, 3 F.R.D. 473 (D. Ky. 1941) ........................................................................ 14

*Virginian R. Co. v Armentrout*, 166 F.2d 400 (4th Cir. 1948)....................................................... 3

*Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042 (C.D. Cal. 2006)............................... 11

*Woodby v. INS*, 385 U.S. 276 (1966).......................................................................................... 13

*Wright v. Monroe Cty.*, 2007 U.S. Dist. LEXIS 35143 (W.D.N.Y. May 14, 2007)..................... 11

*Yi v. Sterling Cleaners*, 480 F.3d 505 (7th Cir. 2007) .............................................................. 12

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009) ................................................. 11

**Other Authorities**

29 C.F.R. § 541.100 ........................................................................................................... 1, 6, 9, 15

29 C.F.R. § 541.700 ............................................................................................................... 7, 15

Fed. R. Civ. P. 59(a) ................................................................................................................... 2

Fed. R. Evid. 403 ..................................................................................................................... 14

Department of Labor "Stein Report," October 10, 1940…………………………………...14

## INTRODUCTION AND SUMMARY

In their companion Rule 50 memo, Plaintiffs demonstrate that the verdict cannot stand because it is unsupported by the evidence.  SNET failed as a matter of law to satisfy its burden to prove that the L1s are exempt under the FLSA and Connecticut executive exemptions.  Plaintiffs are therefore entitled to judgment as a matter of law.

Alternatively, Plaintiffs seek a new trial under Rule 59(a).  The verdict for SNET is against the clear weight of the evidence.  And especially considering the weakness of SNET's case, numerous irregularities – errors in the instructions, improper remarks by defense counsel, and evidentiary issues – confused the jury, prejudiced Plaintiffs, and created an unfair trial:

- Despite recognizing that the L1s' authority and discretion was the critical issue in the case, the Court refused to instruct that true management under the executive exemption requires the "manager" to exercise authority, discretion, and control.  (Doc. 568 at 33-36)

  The instructions gave the misleading impression that "discretionary authority" is only a minor footnote to the primary duty test, rather than the heart of *bona fide* management.  The charges (and defense counsel's comments) may have further led the jury to believe that if SNET proved the L1s performed more than 50% supervisory-type work, even with no discretion at all, SNET necessarily satisfied the primary duty test.  (*See id*. at 33-34)

  Moreover, in its summary judgment denial, the Court linked the principle that a manager exercises discretion and control over subordinates with the executive exemption requirement that the L1s "direct" the techs' work.  But the charges failed to make this connection.  (*Id*. at 35, 37) The jury may have been led to believe that merely passing along information and directives – the very thing the Court held could not legally qualify as "directing the work" – satisfied this element of the FLSA and state law exemptions.

- The Court instructed the jury that it was up to them to determine what work activities not listed in the regulations qualified as exempt managerial tasks.  (*Id*. at 35)  SNET argued that several such duties constituted management and formed the L1s' primary duty.  However, it is the role of the Court, not the jury, to determine what types of activities are exempt.  *E.g. Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

- The Court rejected Plaintiffs detailed charges on "change of status" and "particular weight."  The Court failed to adequately inform the jury on the applicable law, rejecting Plaintiffs' proposed charge that, as a matter of law, a one-day suspension is not a change in status.  SNET was improperly allowed to argue that automatic one-day suspensions for specific "life-threatening" safety violations satisfy 29 C.F.R. § 541.100(a)(4).  This could have affected the jury's verdict on the Plaintiffs' FLSA claims.

1

● The Court improperly instructed the jury on the burden of proof.  (*See* Doc. 568 at 7-8)  Supreme Court and Second Circuit law, as well as other persuasive authority, dictates that it was SNET's obligation to prove the exemption "plainly and unmistakably" and/or by "clear and convincing" evidence.  Assuming "preponderance" applies, the jury should have been charged that SNET needed to prove that the L1s "plainly and unmistakably" fit the exemption."  The Court buried "plainly and unmistakably" in another instruction.

● Other evidentiary errors resulted in last minute surprise, leaving Plaintiffs at an unfair disadvantage.

-The Court allowed SNET to surprise Plaintiffs in the final days of trial by introducing testimony on the salaries of General Office Assistants (GOAs).  SNET's pretrial submissions gave no indication that it intended to introduce this evidence.  No evidence was available on the GOAs' job descriptions, benefits, hours, salary range, and overtime pay.  The testimony was an ambush and lacked the proper foundation.

-SNET disclosed John Sullivan as one out of 57 non-L1 witnesses, not among its 15 L1 witnesses who would testify as to their personal experiences on the job.  Yet, at trial, he testified as an L1.  Through SNET's ruse, Plaintiffs were rendered unable to challenge Sullivan's testimony and develop impeachment and rebuttal evidence.

-The Court excluded about 500 pages of documents from the files of labor manager John Nasznic due to untimely production.  Notwithstanding this, SNET's witnesses, such as Mr. Nasznic, were permitted to testify as to the facts contained within the documents.

## ARGUMENT

**PLAINTIFFS ARE ENTITLED TO A NEW TRIAL BECAUSE OF SERIOUS QUESTIONS ABOUT THE FAIRNESS AND RELIABILITY OF THE VERDICT; THE VERDICT IS CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE AND MAY HAVE BEEN INFLUENCED BY PREJUDICIAL ERRORS AND IMPROPRIETIES**

Under Fed. R. Civ. P. 59(a), the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Courts should grant a new trial if the verdict is against the weight of the evidence; if there were prejudicial errors of law, including jury instructions and evidentiary rulings; if misconduct of opposing counsel, such as improper arguments, may have affected the outcome; or if the trial was unfair for any other reason.  *See*, *e.g., Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Santa Maria v. Metro N. Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996).[1]  Courts are particularly sensitive

_____

[1] *See also*, *e.g., Hopson v Riverbay Corp.*, 190 F.R.D. 114, 121-22 (S.D.N.Y. 1999); *Galu v. Swissair*, 1988 U.S. Dist. LEXIS 6753, at *1 (S.D.N.Y. June 27, 1988).

to the risk of juror confusion.  *See*, *e.g.*, *Hudson v. New York City*, 271 F.3d 62, 71 (2d Cir. 2001); *Nissho-Iwai Co. v. Occidental Crude Sales, Inc*., 729 F.2d 1530, 1538 (5th Cir. 1984) ("A trial judge may order a new trial if he suspects that the jury verdict reflects confusion."); *Haber v Cty. of Nassau*, 557 F. 2d 322, 325 (2d Cir. 1977) (upholding new trial based on possibility that jury held individual defendant liable out of mistaken impression that County would pay the judgment); *Russo v. City of Hartford*, 419 F. Supp. 2d 134, 149 (D. Conn. 2006) (Hall, J.) (granting new trial in § 1983 case because of possibility that verdict against municipal defendant may have been based on conduct of dismissed individual defendant).

Errors and irregularities in the trial should be considered cumulatively and not in isolation.  *E.g. Hillard v. Hargraves*, 197 F.R.D. 358, 361 (N.D. Ill. 2000); *see also Phoenix Assocs. III v. Stone*, 60 F.3d 95, 104-105 (2d Cir. 1995) ("While each of the three erroneous evidentiary rulings discussed above, if considered alone, may be insufficient to justify reversal, we conclude that the cumulative effect of these exclusions was not harmless.").

As a general matter, "[t]he decision whether to grant a new trial following a jury [verdict] under Rule 59 is committed to the sound discretion of the trial judge."  *Pouliot v. Paul Arpin Van Lines, Inc.*, 235 F.R.D. 537, 542 (D. Conn. 2006) (Hall, J.) (citations omitted).  *See also*, *e.g.*, *Diamond D Enters. USA, Inc. v Steinsvaag*, 979 F.2d 14, 17 (2d Cir. 1992).  Ultimately, "[w]hile according due respect to the findings of jury," a trial judge "should not hesitate to set aside their verdict and a grant new trial in any case where ends of justice so require."  *Virginian R. Co. v Armentrout*, 166 F.2d 400, 408 (4th Cir. 1948).[2]  The trial court's power to grant a new trial "is not in derogation of the right of trial by jury but is one of the historic safeguards of that right."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996).

---

[2]*See also Rosera v. Int'l Harvester Co*., 109 F.R.D. 143, 148 (E.D. Wisc. 1986) ("Court has the inherent right, if it believes that a fair trial has not been had, to set aside the jury's verdict and order a new trial").

**A.**     **A New Trial is Required Because the Verdict  is Against the Weight of the Evidence**

To award a new trial based on the weight of the evidence, a court "must conclude that the

jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it

must view the jury's verdict as 'against the weight of the evidence.'"  *Manley v. AmBase Corp.*,

337 F.3d 237, 245 (2d Cir. 2003) (citations omitted).  *See also, e.g., Russo*, 419 F. Supp. 2d at

140-41; *Otero v. Hous. Auth. of Bridgeport*, 263 F. Supp. 2d 440, 442-43, 445 (D. Conn. 2003)

(granting new trial as "the evidence can be questioned under this standard").  The standard is

"less stringent" "than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) may

be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge

is free to weigh the evidence [herself], and need not view it in the light most favorable to the

verdict  winner."  *Manley*, 337 F.3d at 244-45 (citations omitted).  *See also Jennings* v. Jones,

587 F.3d 430, 436, 439 (1st Cir. 2009); *Russo*, 419 F. Supp. 2d at 140; *Otero*, 263 F.Supp. 2d. at

443.  Although the jury's credibility findings are "entitled to some deference," a court may

consider credibility issues when weighing the evidence.  *See Martin v. Moscowitz*, 272 Fed.

Appx. 44, 47-48 (2d Cir. 2008); *Otero*, <u>supra</u>, at 443.[3]

Even if the Court denies Plaintiffs' Rule 50 motion, it should grant a new trial because

the verdict in favor of SNET is against the weight of the evidence.  The weight of the evidence

supports a conclusion that SNET failed to meet its burden of proving its exemption defense

under both the FLSA and Connecticut law.   The evidence thus warrants a retrial on both claims.

**B**.  **Errors in the Jury Charges, Exacerbated By Improper Argument By Defense Counsel,
Mandate a New Trial; a New Trial is Required Unless Any Such Errors are Harmless and,
the Court Cannot be Certain that the Flawed Charges Had No Influence on the Verdict**

It is long established that "prejudicial error in the instructions given to the jury is properly

---

[3] *See also Dunlap-McCuller v. Riese Org*., 980 F.2d 153, 158 (2d Cir. 1992); *In re Joint E. & S. Dist. Asbestos Litig*., 762 F. Supp. 519, 526 (E.D.N.Y. 1991); *Lombardo v Columbia Dentoform Corp.*, 103 F.R.D. 630, 635 (S.D.N.Y. 1984).

grounds for granting a Rule 59 motion." *Geller v. Markham*, 481 F. Supp. 835, 836 (D. Conn. 1979), *aff'd in part and rev'd in part* 635 F.2d 1027 (2d Cir. 1980).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. An erroneous instruction ***requires*** a new trial ***unless the error is harmless***." *LNC Invs. v. First Fid. Bank, N.A.*, 173 F.3d 454, 460 (2d Cir. 1999) (Sotomayor, J.)  (citations omitted, emphasis added).  **"**An error is harmless **only** if the court is convinced that the error did not influence the jury's verdict." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir. 2000) (emphasis added).  *See also Hudson v. New York City*, 271 F.3d 62, 71 (2d Cir. 2001) (error is prejudicial rather than harmless when court does "not ***know*** whether a correctly charged jury would have reached a different verdict.") (emphasis added).[4]

If a jury instruction creates "an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to the plaintiff's claim." *LNC Invs.*, 173 F.3d at 463; *see also Girden v. Sandals, Int'l*, 262 F.3d 195, 204-205 (2d Cir. 2001).  Hence, "[i]f an instruction improperly directs the jury on whether the plaintiff has satisfied her burden of proof… a new trial is warranted." *Gordon*, 232 F.3d at 116 (new trial called for given improper instructions on the elements plaintiff needed to prove).  *See also*, *e.g.*, *Jacques v. DiMarzio*, 386 F.3d 192, 204 (2d Cir. 2004); *Bank of China v. NBM LLC*, 359 F.3d 171, 176-80 (2d Cir. 2004); *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84 (2d Cir. 2002); *Pahuta v. Massey-Ferguson, Inc.*, 173 F.3d 125, 135-36 (2d Cir. 1999) (failure to adequately inform jury of legal elements); *Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998) (improper verdict question and instructions on compensable work under FLSA; these errors "could have prejudiced plaintiff" because they "might well" have led to a different result); *Anderson v. Branen*, 17 F.3d 552, 557-58 (2d Cir.

---

[4]*See also id.* at 70 ("We reject the notion… that a court's earlier incorrect statements are necessarily 'cured' so long as the charge contains the correct standard elsewhere").

1994) (failure to give instruction supported by "at least some evidence of probative value").

District judges do not hesitate to grant new trials where their own flawed instructions could have influenced the verdict.  *See*, *e.g.*, *Berard v. Town of Rotterdam*, 2010 WL 2425902, at *3-4 (N.D.N.Y. June 11, 2010); *Bradley v. Jusino*, 2008 WL 3891529, at *3-4 (S.D.N.Y. Aug. 19, 2008); *Hiller v. Cty. of Suffolk*, 199 F.R.D. 101, 106 (E.D.N.Y. 2001); *DeWitt v. New York State Hous. Fin. Agency*, 1999 WL 672560, at *3-4 (S.D.N.Y. Aug. 26, 1999); *Gros v. Port Washington Police Dist.*, 944 F. Supp. 1072, 1082 (E.D.N.Y. 1996).  When, as here, a jury issues a general verdict, it is inappropriate to presume that any errors were harmless.  *See*, *e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 137 (2d Cir. 2003) (although prejudice unlikely, "in light of the general verdict and the possibility that the jury based its decision… on [a] doctrine, which should not have been charged, we must vacate the… denial of a new trial… and order a new trial.").[5]

### 1. The Instructions on "Management" and "Primary Duty" Were Inadequate to Apprise the Jury of the Law and May Have Misled it as to the Applicable  Standard

Here, the Court erroneously declined to issue Plaintiffs' proposed instructions on the characteristics of management and the application of the primary duty test.  *See* Doc. 418-2 at 10-17; Doc. 551 at 3-5; 29 C.F.R. § 541.100(a)(2).   In particular, the Court made several important errors going to the heart of the trial.

*First*, the Court declined to give Plaintiffs' proposed instructions that true management requires the "manager" to possess **discretion, authority, and control**.  *See* Doc. 418-2 at 10-12, 14-15; Doc. 551 at 4.  Despite the Court's rulings on summary judgment that an employee's duties are not exempt managerial tasks unless they entail "real authority and power" (Doc. 361,

---

[5] *Cf. Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986) ("When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, the error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict."); *O'Neill v. Krzeminksi*, 839 F.2d 9, 12 (2d Cir. 1988) ("Normally, when two claims have been submitted to a jury and one of them should not have been…a general verdict in favor of the claimant cannot stand").

at 12-18), and despite recognizing that the L1s' level of discretion was a "focal point" of the case (*see*, *e.g.*, Tr. at 2568, 2599, 2600), the Court instead gave a separate, indistinct, and isolated charge that "discretionary power" is an "aspect" of the "relative freedom from supervision" prong of the **"primary duty"** test.  Doc. 568 at 33-36.  *See* MOL on Rule 50 Motion, at 5-7.

From these instructions, the jury could have seen discretion and control as only a minor factor in the primary duty test and not the basic element which makes one's duties managerial in the first instance.  *See id*.  Moreover, the charges could have led the jury to understand that the "freedom from supervision" prong and its "discretionary power" "aspect" did not even come into play if the L1's duties were more than 50% managerial. *See* Doc. 568 at 33-34.[6]  Based on these flawed instructions, the jury could have found that the L1s' duties were almost entirely robotic and discretionless, but could still be labeled as "managerial."  From these infirm suppositions, the jury could have then found that the first element of the exemptions was met – exactly contrary to the Court's prior legal rulings.  *See* Doc. 361 at 14-18.

*Second*, the Court improperly instructed and allowed SNET to argue that it was up to the jury to decide what duties qualified as exempt managerial tasks.  Doc. 568 at 35 ("This is not an exclusive list. You may also consider—as management activities—other activities which are of a similar nature to those I have listed"); Tr. at 2661.  SNET proceeded to argue that several types of tasks not in the regs (*see* Doc. 568 at 35; 29 C.F.R. § 541.102) qualified – e.g. boosting techs'

---

[6] This potential impression was exacerbated by SNET's argument in closing that if the L1s performed more than 50% managerial tasks they were *per se* exempt.  Tr. at 2659.  Counsel's statement was a facially small but highly significant departure from the charges (and hence likely to mislead the jury).  In fact, upon Plaintiffs' argument that the 50% rule is a useful guideline but not dispositive, the Court removed additional paragraphs in line with SNET's argument.  SNET should not have been allowed to argue from a stricken charge.  The language in 29 C.F.R. 541.700(b) – that an employee who performs more than 50% exempt work "generally" satisfies the primary duty test but that one who performs less than 50% exempt work can still be exempt – is an illustration of that principle.  It does not mean that there can be no conceivable circumstance where an employee who performs more than 50% "managerial"-type work that is relatively unimportant and almost wholly discretionless is properly regarded as non-exempt.

numbers, customer interaction, dispatching, dealing with "roadblocks," checkbox inspections. Tr. at 2661-63.  But, whether a job activity is "exempt" under the applicable regulations is a question for the Court, not the jury.  It was incumbent upon the Court under *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) and its progeny to determine as a matter of law that such activities are not "management."  *See* MOL in Supp. Rule 50 Motion at 3-12.

*Third*, the Court's instructions on work that is "directly and closely related" to exempt tasks, when considered in conjunction with the first two errors, were also prejudicial to Plaintiffs. These instructions very specifically described some of the exact type of work performed by the L1s.  But the instructions did not clearly state that in order to be considered exempt, such tasks must be "directly and closely related" to the employees' *own* exempt work.  (*See* Doc. 568 at 35-36)  Thus, if the L1s' duties were best "characterized as those of an administrative assistant to the Area Manager" (Doc. 361 at 18), the jury could have erroneously found the L1s exempt.

These errors acted in deadly concert to prejudice Plaintiffs and undermine the fairness of the trial.  The jury could have based its verdict that the L1s' "primary duty" is "management" on a constellation of activities that are not "management" at all as a matter of law.

### 2.  The Jury Instructions on "Directing the Work" Contained Similar Errors

Similar to its instruction on management and primary duty, the Court declined to give an instruction that "directing the work" entails discretion and control over subordinates.  *See* Doc. 418-2 at 19-20; Doc. 568 at 37.  The jury could have been misled to believe that even a nominal supervisory role, including the mere transference of information to subordinates, would itself satisfy this element.  *See* Doc. 361 at 14, 17-18; MOL in Supp. Rule 50 Motion at 3, 5-7, 12-13.

### 3.  The Court Denied Proposed Instructions on "Change of status" and "Particular Weight" Which Were Essential to the Fair Adjudication of the L1s' FLSA Claim

Plaintiffs' proposed charges on "change of status" and "particular weight" were essential

to providing the jury an adequate understanding of the law on the final element of the FLSA executive exemption, 29 C.F.R. § 541.100(a)(4).  *See* Doc. 418-2 at 20-21; Doc. 551 at 5-7.  But the Court declined to adopt them.  Doc. 568 at 30, 38.  Most notably, the Court failed to instruct that short-term suspensions without other consequences are not "changes of status."  The Court rejected Plaintiffs' argument that one-day suspensions are not "changes of status" as a matter of law.  Instead, the Court put the question to the jury, and allowed SNET to argue that automatic one-day suspensions for specific "life-threatening" safety violations would themselves meet § 541.100(a)(4).  *See* Tr. at 2125-26, 2666.[7]  As a matter of law, such disciplinary measures cannot satisfy § 541.100(a)(4); this was a non-jury question involving undisputed facts.  *See* MOL in Supp. Rule 50 Motion at 15-17; Doc. 551, at 5-7; Doc. 556, at 1-4, 6; *Icicle Seafoods*, *supra*.  The jury could have based its verdict on the FLSA claim on an impermissible ground.[8]

### 4.  <u>The Court Instructed the Jury on the Incorrect Burden of Proof</u>

The Court improperly instructed the jury on the burden of proof.  *See* Doc. 568 at 7-8; Doc. 418-2, at 1-4, 23-25.  Application of the wrong burden is not "harmless" and requires a new trial.  *See*, *e.g.*, *LNC Invs.*, 173 F.3d at 463; *Gordon*, 232 F.3d at 116; *Gaines v. Kelly*, 202 F.3d 598, 604 (2d Cir. 2000).  Especially given its denial of SNET's Rule 50 motion, the Court cannot

---

[7] SNET's addition that a decision causing a "significant reduction in pay" is a "change of status" (*see* Tr. at 2127-29; Doc. 568 at 30) was intended to provide a basis for this argument.  In closing, SNET argued that a loss of one day's pay is significant to a technician.  Tr. at 2666.  But SNET offered no actual evidence that an automatic one-day suspension without pay had any meaningful impact on the technician's employment at the company.  SNET offered no proof that losing a day's pay is "significant."  And a technician (many of whom made over $100,000) could easily make up one day's pay by working four hours at double time over the weekend.

[8] SNET separately argued that, when requesting a "waiver" from the company's set performance process, the L1 makes "a suggestion or a recommendation" that is given "particular weight."  (Tr. at 2674)  Not only is this contrary to the evidence, but using this language from the jury instructions on § 541.100(a)(4) was inherently confusing.  SNET did not argue that waivers from increased monitoring and scrutiny are "changes in status" and any such contention would have been unavailing as a matter of law.  But, counsel's statements may have implied otherwise and thereby misled the jury.

be assured that the jury would have returned the same verdict under a higher standard.

The Court should have instructed that SNET had the burden to prove its defense "plainly and unmistakably" and/or by "clear and convincing" evidence. The Supreme Court has repeatedly articulated a "plain and unmistakable" rule. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."); *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). The Second Circuit and other courts have followed this mandate. *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 531 (2d Cir. 2009); *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 694 n.11 (3d Cir. 1994) (employer "has the burden of proving that each of the exemptions applies clearly and unmistakably"); *Martin v. Cooper Elec. Supply Co*., 940 F.2d 896, 900 (3d Cir. 1991) ("if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden") (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190 (1966)).[9] Given these articulations, the Court should have instructed the jury that SNET must show "plainly and unmistakably" that an employee is exempt.

Alternatively, the Court should have instructed the jury that SNET had to prove the exemption by the "clear and convincing" evidence standard rather than a mere "preponderance." Because of the remedial nature of the FLSA and limited application of the exemptions, several

---

[9] *See also*, *e.g.*, *Friedrich v. U.S. Computer Servs*., 974 F.2d 409, 412 (3d Cir. 1992) ("any exemption from the Act must be proven plainly and unmistakably"); *Packard v. Pittsburgh Transp. Corp.*, 418 F.3d 246, 250 (3d Cir. 2005) (employer "bears the burden of proving 'plainly and unmistakably' that the [employees] qualify for the [ ] exemption"); *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) ("the City has the burden to prove that Plaintiffs meet each element of the [ ] exemption … and that Plaintiffs fit 'plainly and unmistakably' within the terms and spirit of the exemption."); *Thomas v. Cty. of Fairfax*, 758 F. Supp. 353, 358, 366 (E.D.Va. 1991) ("in circumstances which are not plain or unmistakable, the presumption of coverage should control").

courts have adopted the "clear and convincing" standard of proof. *See Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993); *Wright v. Monroe Cty.*, 2007 U.S. Dist. LEXIS 35143 (W.D.N.Y. May 14, 2007).[10]   Similarly, the Second Circuit has instructed: "The employer has the *burden of proving* that the employee **clearly** falls within the terms of the exemption." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (emphasis added).  *See also Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) ("It is well established that the employer bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence."); *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1051 (C.D. Cal. 2006), *aff'd* 623 F.3d 743 (9th Cir. 2010) ("an employer who does not pay overtime bears the burden of proving an exemption by clear and affirmative evidence").[11]

The Supreme Court's recent decision in *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011), further supports a "clear and convincing" standard.  There, the Court held that since a patent is "presumed valid," a party challenging a patent must overcome this presumption by "clear and convincing" evidence.  131 S. Ct. at 2245-47.[12]   Under the FLSA, there is a similar **presumption** that an employee is entitled to overtime and that exemptions do not apply.   *E.g. Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991).  By analogy, under the FLSA,

---

[10] *See also Petersen v. Cleveland Inst. of Art*, 2011 WL 1467378, at *9 (N.D. Ohio Apr. 18, 2011); *Hall v. Porter W. Yett Co.*, 1991 U.S. Dist. LEXIS 5575, at *7 (D. Or. Apr. 19, 1991); *Astor v. U.S.*, 79 Fed. Cl. 303, 308 (2007).

[11] *See also Pravia v. Blasa Group, Inc.*, 2008 U.S. Dist. LEXIS 24321, at *5, 11 (S.D. Fla. Mar. 27, 2008) ("Defendant has not met its burden of establishing, by clear and affirmative evidence, that Plaintiffs are exempt"); *Rock v. Sunbelt Cranes, Constr. & Hauling, Inc.*, 678 F. Supp. 2d 1264, 1268, 1270 (S.D. Fla. 2009), *aff'd* 380 Fed. Appx. 875 (11th Cir. 2010) (applying "clear and affirmative" evidence standard; finding defendant was "unable to clearly establish that [plaintiff] was an executive pursuant to the FLSA exemptions"); *Miley v. City of Bogalusa*, 2009 U.S. Dist. LEXIS 100696, at *7 (E.D. La. Oct. 29, 2009).

[12] *See also, e.g.*, *FDIC v. Schaffer*, 731 F.2d 1134, 1137 (4th Cir. 1984); *Adams & Westlake, Ltd. v. NLRB*, 814 F.2d 1161, 1167-68 (7th Cir. 1987); *MacDonald v. Kahikolu, Ltd.*, 581 F.3d 970, 973 (9th Cir. 2009); *Moncrief v. Anderson*, 342 F.2d 902, 904 (D.C. Cir. 1964); *Bogart v. Somer*, 762 S.W.2d 577 (Tex. 1998), other cases in which "clear and convincing" evidence is needed to overcome a presumption.

an employer must prove that an exemption applies by clear and convincing evidence.

SNET's arguments during trial against a heightened burden are unavailing:

SNET's reliance on *Yi v. Sterling Cleaners*, 480 F.3d 505 (7th Cir. 2007), the leading "preponderance" case, is misplaced. *Yi* revolved upon a Seventh Circuit rule – that the "plain and unmistakable" formulation is a mere "tiebreaker" (*id.* at 508) – foreign to Second Circuit law. *See*, *e.g.*, *Martin*, 949 F.2d at 614 (presumption). *See also Partida v. Am. Student Loan Corp.*, 2008 U.S. Dist. LEXIS 4346, at *5 (D. Ariz. Jan. 18, 2008) (rejecting "tiebreaker" rule). The Seventh Circuit rule aligns with its conception of FLSA overtime rights as not "particularly important," *Yi*, 480 F.3d at 507, a view likely to be rejected by the Second Circuit.[13, 14]

SNET's argument that Plaintiffs' citations are off-base because they involve summary judgment or bench trials, not jury trials, is unfounded.   A motion seeking judgment as a matter of law is adjudicated in light of the ultimate burden of proof at trial.  *E.g. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986).  And unquestionably, the burden of proof is identical.

---

[13] *See*, *e.g.*, *Overnight Transp. Co. v. Missel*, 316 U.S. 572, 577-78 (1942); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739-41 (1981); *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008); *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).  *Cf. Perkins v. S. New Eng. Tel. Co.*, 2011 U.S. Dist. LEXIS 109882, esp. at *4-6 & n.3 (D. Conn. Sept. 27, 2011) (rejecting holding of *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010)).  The mere "tiebreaker" concept is consistent with a preponderance (or 50.1%) standard.  There is no indication that the Supreme Court's forceful instructions and the strong "presumption" of coverage under the FLSA bear so little traction in this Circuit.

[14] It appears that Circuits which adhere to the "presumption" of coverage also apply a heightened burden. *See*, *e.g.*, Second Circuit: *Martin* ("presumption"); *Young*, *supra* ("burden of proving that the employee clearly falls within the terms of the exemption").  Third Circuit:  *Madison v. Resources for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir. 2000) (employer must "overcome" "significant burden"); *Reich*, *supra* & n. 9, *supra* ("clear and unmistakable"/"plain and unmistakable").  Fourth Circuit: *Schultz v. W. R. Hartin & Son, Inc.*, 428 F.2d 186, 189 (4th Cir. 1970)("presumption"); *Shockley*, *supra* ("clear and convincing").  Eleventh Circuit: *Falken*, *v. Glynn Cty.*, 197 F.3d 1341, 1345 (11th Cir. 1999) ("presumption"); *Gregory*, *supra* ("clear and affirmative").  *See also Astor*, *supra* ("presumption"; "clear and convincing").

 *Compare Seventh Circuit*: *Yi*, 480 F.3d at 507-508 ("tiebreaker" rule; only "presumption" invoked is that "predominance" standard applies) (citing *Mehmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177-78 (7th Cir. 1987) (adopting "tiebreaker" concept, not "presumption").  After a diligent search, Plaintiffs are unaware of any Seventh Circuit law setting forth a "presumption" of overtime.  Similarly, Plaintiffs' search failed to return any precedential authority of the Sixth and Tenth Circuits (the other two Courts of Appeals to delineate a "preponderance" standard) referring to a "presumption" of non-exemption.

*See*, *e.g.*, *McCarthy v. New York City Tech. College*, 202 F.3d 161, 167 (2d Cir. 2000).

Some cases assume that, since an exemption is an affirmative defense, "preponderance" applies.  But, as with any claim or defense, it ain't necessarily so.  The clear and convincing standard is "no stranger to the civil law."  *Woodby v. INS*, 385 U.S. 276, 285 & n.18 (1966).

Finally, SNET's citations predate *Microsoft* and do not consider its holding or effect.

The applicable jurisprudence on the FLSA and the remedial nature of the statute strongly counsel that "plain and unmistakable" and/or "clear and convincing," not preponderance, is the proper standard.  The Court erred by not charging the jury accordingly.[15]

## C.    Prejudicial Errors in Admitting Evidence and Arguments Demand a New Trial

It is well-established that prejudicial errors in the Court's evidentiary rulings warrant a new trial.  Factors to be considered are: (1) whether the evidence bore on an issue that is plainly critical to the jury's decision; (2) whether the testimony was material or "simply cumulative or corroborative"; (3) whether the evidence was emphasized in argument to the jury; and (4) the overall strength of the prevailing party's case.  *Cameron v. City of New York*, 598 F.3d 50, 61, 65-66 (2d Cir. 2010) (granting new trial).  Moreover, Rule 59(a) clearly permits a new trial for unfair surprise.  *See*, *e.g.*, *Conway v. Chemical Leaman Tank Lines, Inc.*, 687 F.2d 108, 111-12 (5th Cir. 1982); *Klonoski v. Mahlab*, 156 F.3d 255, 274-76 (1st Cir. 1998); *U.S. v. Kralmann*, 3 F.R.D. 473, 475 (D. Ky. 1941); *Johns Hopkins v. Cellpro*, 931 F. Supp. 303, 317 (D. Del. 1996).

---

[15] Even assuming a "preponderance" standard applies, the jury should have been adequately informed of the "plain and unmistakable" test as part of the burden of proof: that SNET needed to prove "by a preponderance that the L1s plainly and unmistakably fit within the exemption." The charges labored over the meaning of "preponderance" (*see* Doc. 568 at 7-8), but buried the "plain and unmistakable" language in an isolated, separate instruction where its impact was diluted to the point of invisibility.  *See id.* at 25.  At a charge conference, Plaintiffs expressly asked the Court – if it was not going to charge the jury on a "clear and convincing" burden of proof – to instruct the jury multiple times that SNET needed to prove that the L1s duties "plainly and unmistakably" satisfied the executive exemption duties test.  In order to comport with the Supreme Court's and Second Circuit's mandates, the Court, at a minimum, should have paired "preponderance" with "plainly and unmistakably" wherever the instructions referenced the burden of proof.  *See* Doc. 418-2 (discussing the "alternative" to a heightened burden); Doc. 551 at 1, 2, 4.

**1.   The Court Erred in Denying Plaintiffs' Motion in Limine #6 and Allowing SNET to Argue to the Jury that the L1s' Salaries Alone Made Them Exempt**

In pretrial proceedings, the Court denied Plaintiffs' motion in limine #6 (Docs. 404, 404-1) and thereby allowed defense counsel to argue to the jury that the L1s' salaries by themselves supported a finding of exemption.  (*See* Tr. at 2650, 2656, 2683)  This was erroneous under the substantive law and the Rules of Evidence (Fed. R. Evid. 401, 403) and resulted in prejudice.

As set forth in Plaintiffs' motion in limine #6, the FLSA's overtime requirements are designed to combat the evil of overwork as well as underpay.  By providing a disincentive to concentrate the available work in the hands of a few, they are meant to spread the work and reduce unemployment.  Thus, well-paid workers are not excluded from these protections.  *See* MIL #6, citing *e.g.*, *Missel*, 316 U.S. at 578; *Barrentine*, 450 U.S. at 739; *Jewell Ridge Coal Corp. v. United Mineworkers of Am.*, 325 U.S. 161, 167 (1945).[16] And, because of these particular purposes, poor economic times marked by "widespread unemployment" are precisely when wage and hour laws demand the most teeth.  *See*, *e.g.*, *Missel*, _supra_; *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp.2d 448, 450 (E.D.N.Y. 2007).  Yet, in such a climate, allowing SNET to harp on the L1s' salaries as a basis for holding them exempt was likely to prejudice and inflame the jury against Plaintiffs and their claims.  It had the very real capacity to turn the jury's focus from the relevant legal test to extraneous factors.  *See* Fed. R. Evid. 403.

Under the present regulations, an employee's salary is relevant only for limited purposes. First, following the 2004 revisions, the FLSA contains a "highly compensated employee exemption," 29 C.F.R. § 541.601, which SNET expressly waived.  Second, for employees not within § 541.601, the law no longer contains a "long" test and "short" test but a single test with

---

[16] *See also* 1940 DOL Stein Report at 8 (Ex. 2) ("A ceiling for hours is as much an independent objective of the [FLSA] as a floor for wages… Living conditions can be improved and work spread even where wages are comparatively high."); *see also id.* at 8-10 (importance of hours limit for white-collar workers).

salary and duties components.  *See* 29 C.F.R. § 541.100; *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544, 551 (D. Conn. 2009).  Here, the parties stipulated that the salary component of the FLSA and Connecticut exemptions was met; thus, there was no reason for evidence and argument on the L1s' earnings.  Finally, the "primary duty" test applicable to various white-collar exemptions considers "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).  The Court should not have permitted SNET to argue that Plaintiffs' salaries made them exempt, divorced from this comparative aspect of the primary duty test.

The decision in *Novartis*, 611 F.3d 141, an administrative exemption case, is instructive. There, the district court granted summary judgment to defendant based in part on the court's belief that plaintiffs' average salaries of $91,500 belied their contention that they were "robots" without meaningful judgment or discretion.  *See In re Novartis Wage & Hour Litig*., 593 F. Supp. 2d 637, 656-57 (S.D.N.Y. 2009).  The district court's statements are closely akin to arguments made by SNET to the jury.  The Second Circuit reversed and granted summary judgment to the employees, holding that Novartis had not "adduced sufficient evidence to permit a rational juror to infer" that the exemption was met, and that their duties were non-exempt as a matter of law.  While briefly reviewing the reasoning below, the Second Circuit did not consider plaintiffs' salaries relevant to its analysis.  *See* 611 F.3d at 148, 150, 155-57.

This Court relied on two cases in deciding that SNET could argue that their salaries meant they were likely exempt, even disregarding the comparative component of 29 C.F.R. § 541.700(a).  Both cases predate the applicable 2004 regulations, neither involve Rule 403 concerns in jury trials, and both are distinguishable.[17]

---

[17] *Donovan v. Burger King Corp.,* 675 F.2d 516, 520 (2d Cir. 1982) considered whether the DOL had any "rational" basis for the old "long" and "short" tests, which could lead to differing results based solely on

**2. The Court Erred by Admitting Testimony Regarding the Compensation of GOAs, Resulting in Unfair Surprise and Greatly Prejudicing Plaintiffs**

The error in allowing SNET to argue that the L1s salaries made them exempt was exacerbated by testimony about the compensation of GOAs. As Plaintiffs objected at trial, SNET blindsided them by introducing this surprise evidence towards the end of the defense case.

Nothing in SNET's pretrial submissions or disclosures suggested in any manner that it intended to present evidence on the GOAs' salaries.[18] During pretrial proceedings, the parties briefed and argued motions in limine on whether the L1s' salaries were relevant evidence of their exemption status (Docs. 404, 404-1) and whether the techs' salaries were material under the primary duty test (Docs. 383-384). SNET hid the ball, never indicating that it intended to present evidence on GOA salaries. *See*, *e.g*., Doc. 503 (witness list).[19] Plaintiffs were thus deprived of the ability to take pertinent discovery and to test SNET's evidence. SNET made no information available on the GOAs' job descriptions, hours, salary range, benefits, bonuses and other relevant details which might have countered the raw impact of the base salary figure.

---

salary. The "dispositive mechanical" test set forth by the old regulations (*id*.) is no longer in effect, or at least has been shifted. Where plaintiffs fall between the salary thresholds for the ordinary exemptions ($455 per week) and the highly-compensated exemption ($100,000 per year), their duties govern.

  In *Dean v. Priceline.com, Inc.*, 2001 WL 35962826 (D. Conn. Apr. 6, 2001), the plaintiff made $120,000 and also received stock options worth $328,000 and a signing bonus. The case did not involve a trial or dispositive motion, determining only whether plaintiff had met the standard for a prejudgment remedy. The court found no credible facts to support a finding of "probable cause" on his claims.

[18] SNET was well aware from the extensive discovery in this case – as well as the Court's summary judgment decision (*see* Doc. 361 at 18) – that Plaintiffs asserted that their duties were mostly administrative and clerical, consisting largely of routine paperwork. Indeed, the evidence shows that SNET briefly attempted an experiment called Deload the Manager to attempt to relieve the L1s of some of these tasks. SNET cannot seriously claim it could not have anticipated the need for this evidence.

[19] John Buxton ("Testimony regarding First Level Manager duties generally, as well as testimony specific to particular opt-in trial witnesses"); Dan Chantlos (same); Steve Gemmell (same); Peter Johnson (same); Louis Lastrina (same); Cathy McDonald (same); John Sullivan ("Testimony regarding knowledge of first level manager duties generally and MSOC"); John Nasznic ("Testimony regarding knowledge of first level manager duties, including, but not limited to, testimony regarding first level involvement with discipline, grievances, and arbitrations"); John Tait ("Testimony regarding job duties and hours worked").

SNET's unforeseen evidence, pounded heavily by defense counsel during closing, had a palpable effect on the trial and likely affected the verdict. SNET should not be allowed to profit from setting its snare. *Cf. Twigg v. Norton Co.*, 894 F.2d 672, 674-76 (4th Cir. 1990) (change in witness testimony constituted unfair surprise and was grounds for new trial); *Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882, 886 (8th Cir. 1998); *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 287-88 (1st Cir. 1993); *Johns Hopkins*, 931 F. Supp. at 317 (new trial warranted, among other reasons, where defendant offered witness' testimony "extremely late during discovery" and plaintiffs received many of the related documents in the middle of trial; "Thus, a new trial will allow plaintiffs to prepare adequate cross-examination… if necessary").

### 3. The Court Erred by Admitting the Testimony of John Sullivan on His Duties and Experiences as an L1, Resulting in Unfair Surprise and Extreme Prejudice

It can hardly be disputed that John Sullivan was one of the most critical defense witnesses, offering testimony straight from an L1's mouth on discretion and disciplinary authority. This testimony stood in stark contrast to that of the other L1 witnesses. In a case dependent on credibility, its importance cannot be discounted. *Cf. Cameron*, 598 F.3d at 66. Yet, Sullivan's testimony was not the product of fair play but dirty tricks. It is reminiscent of the conduct for which the Court chastised SNET during pretrial. The Court must clearly recall that, not long ago, SNET produced a list of 57 non-L1 witnesses, designating all of them "may call." Mr. Sullivan was among this number. The Court warned SNET not to play games with its witness list. (SNET ultimately named 41 will-call witnesses) Still, in a plain bait-and-switch, SNET elicited Sullivan's testimony as an L1 who had opted out of the class. SNET's tactics left Plaintiffs unable to adequately prepare for Sullivan's testimony and to cross-examine him at trial.

In preparation for trial, the Court required both parties to disclose the names of 15 L1 witnesses in June 2011, as well a separate list of non-L1 witnesses. No L1 witnesses beyond the

15 designees would be permitted to testify.  Through the date of trial, SNET disclosed John Sullivan as a non-L1 witness, "SNET- Network Process & Quality Manager."  Similar to SNET's other non-L1 witnesses, Mr. Sullivan was designated to provide "Testimony regarding knowledge of first level manager duties *generally*," but not his own "job duties and hours worked" as an L1.  (*See, e.g.,* Doc. 503)  Until Sullivan was called to the stand, Plaintiffs were unaware that he would testify as an L1 witness.  Yet, he was allowed to testify about his duties and authority as an L1 during the class period.  Had Plaintiffs known that Mr. Sullivan was an L1 witness outside of their control (as a Rule 23 opt-out), rather than one of 57 non-L1 witnesses unlikely to be called, they would have sought to depose him and to obtain relevant documents.[20]

Because of SNET's ruse, Plaintiffs were rendered unable to challenge Sullivan's testimony through discovery and to develop impeachment and rebuttal evidence.  As courts have widely acknowledged, adequate cross-examination is the "greatest legal engine ever invented for the discovery of truth."  *E.g. Cal v. Green*, 399 U.S 149, 158 (1970) (citing 5 Wigmore § 1367).  But SNET jammed the pistons, nullifying any potential grounds for attack.  Sullivan's testimony constitutes unfair surprise and is grounds for a new trial.  *See*, *e.g.*, *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984) (ordering a new trial due to several errors, the most prejudicial being testimony of Dr. Mantell; "Moreover because defendants lacked the opportunity for adequate pretrial discovery, their cross-examination may have been less probing than one prepared with foreknowledge of Dr. Mantell's testimony."); *Perez-Perez*, *supra* (shift in testimony constituted unfair surprise because party was "denied the opportunity to design an intelligent litigation strategy to address the charge… and to effectively cross examine"); *Twigg*, *supra*; *Sanford*, *supra*; *Johns Hopkins*, *supra*.

---

[20] Every other L1 witness was either within Plaintiffs' control as an opt-in party plaintiff or had been subject to written discovery and a deposition.  If properly disclosed, Sullivan presented a unique situation, and Plaintiffs would have pressed the need for discovery.

### 4. Testimony as to the Underlying Facts Contained in Excluded Documents was Inherently Unfair and Prejudicial

Upon Plaintiffs' Motion (*see* Docs. 355-357), the Court precluded Defendants from using more than 500 pages of untimely disclosed documents "in any way in this litigation, including at deposition or trial." Doc. 355 at 2; Pretrial Tr. 9/14/2011 at 353-60, granting motion. The documents in question were selected by defense counsel from the file of Labor Relations Manager John Nasznic. Rather than require production of the complete file and consider a continuance to permit discovery, the Court excluded the documents in their entirety. Plaintiffs were not permitted to use the documents to refresh recollection under Fed. R. Evid. 612. But, that was not the end of it. During its case, SNET elicited testimony from Mr. Nasznic and other witnesses regarding the facts contained in the documents. *Cf. Brown v. Royalty*, 535 F.2d 1024, 1028 (8th Cir. 1976) (remanding for new trial where counsel took every opportunity to refer to inadmissible evidence). Again, SNET's tactics resulted in surprise and unfair prejudice. Having been deprived of an opportunity to take relevant discovery and prepare adequate cross-examination and rebuttal, Plaintiffs could not fairly respond to this testimony.

## D. Defense Counsel Made Inaccurate, Misleading, and Prejudicial Statements and Arguments to the Jury that Call for a New Trial

A party is entitled to a new trial, within the trial court's discretion, where "opposing counsel's conduct" – including, for example, improper statements or arguments – "causes prejudice to that party . . . thereby unfairly influencing its verdict." *Tesser v. Bd. of Educ. of the City Sch. Dist. of New York,* 370 F.3d 314, 321 (2d Cir. 2004) (citations omitted). *See also*, *e.g.*, *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992); *Ramos v Cty. of Suffolk*, 707 F. Supp.2d 421, 427-29 (E.D.N.Y. 2010) (new trial where counsel's improper statements went to the integrity of the trial and caused unfair prejudice); *Hopson v Riverbay*

*Corp.*, 190 F.R.D. 114 (S.D.N.Y. 1999) (new trial based on misstatements of fact and law, among other conduct); *Hillard v. Hargraves*, 197 F.R.D. 358 (N.D. Ill. 2000).

In the previous sections and in the concurrent Rule 50 motion, Plaintiffs have described actions by defense counsel that call for a new trial. In addition, defense counsel made other inaccurate, misleading, and prejudicial statements. For example:

-SNET played heavily on anti-union sentiment. *See*, *e.g*., Tr. at 2675.

-SNET misrepresented Plaintiffs' position in this lawsuit. Plaintiffs never argued that they could not be managers unless they set their own policies for SNET and hired and fired at will. It certainly was not the sum and substance of the L1's contentions. *See* Tr. at 2655.

-After being instructed not to say anything to the jury about the "magnitude" of Plaintiffs' financial interest, ie. "that they could calculate it" (*see*, *e.g*., Tr. at 2566-67, 2573), SNET suggested to the jury that it should "figure [ ] out" the calculation. *See id*. at 2650.

-Corporate rep Louis Lastrina testified that John Tait consulted with him about Tait's side business *about **one year** before trial* and told Lastrina he was discontinuing the business. Tr. at 1694-1697. Tait testified he did not recall such a conversation, that he never discontinued the business, that its existence is common knowledge, and Lastrina is aware of it. *Id*. at 1798, 1801. These were significant discrepancies casting doubt on the credibility of both key defense witnesses. SNET misrepresented it as a simple "difference in recollection about a conversation that took place…in 2005…something going back six years." *Id*. at 2647.

## **CONCLUSION**

For the foregoing reasons, the Court should grant a new trial in the interests of justice.[21]

---

[21] The Court, in its discretion, may also consider other reasons allowed by Rule 59. Fed. R. Civ. P. 59(d).

Respectfully Submitted,

Dated: November 18, 2011        /s/ Steven L. Wittels

Steven Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Edmond Clark
**Law Office of Edmond Clark**
83 Scotland Avenue
Madison, CT 06443-2501
Telephone: (203) 245-4602
Fax: (203) 245-9734

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via ECF this 18th

day of November, 2011 upon the following counsel of record:


**Patrick Shea**
Paul Hastings
Park Avenue Tower
75 E. 55th Street, First Floor
New York, NY 10022
212-318-6405
Fax: 212-752-2542
Email: patrickshea@paulhastings.com

*Attorneys for Defendant*



    /s/ Steven L Wittels
        Steven L. Wittels