UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHARON L. PERKINS, et al., | |
| **Individually and on Behalf of Others Similarly Situated,** | CIVIL ACTION NO. 3:07CV967 (JCH) |
| **PLAINTIFFS,** | |
| **v.** | DECEMBER 19, 2011 |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | |
| **DEFENDANT.** | |

<u>DEFENDANT SNET'S RESPONSE TO PLAINTIFF'S MOTION
FOR NEW TRIAL UNDER FED. R. CIV. P. 59</u>

I.     INTRODUCTION

After a trial that lasted three weeks involving the testimony of 25 witnesses, 180 exhibits, 2,762 pages of transcript and more than seven hours of deliberations, the jury in this case found that SNET had proven that the Plaintiffs and the class were exempt under both the Fair Labor Standards Acts ("FLSA") and Connecticut State Law. [Doc. 569]. By their Rule 59 Motion, Plaintiffs now seek to retry this case based largely on waived or meritless claims of errors in the Court's jury instructions and evidentiary rulings.

This motion is subject to the high standard a Rule 59 Motion must satisfy. As this Court has held:

> It is well-settled that Rule 59 is not a vehicle for re-litigating old issues, presenting the case under new theories, securing a re-hearing on the merits, or otherwise taking a "second bite at the apple."

*Pouliot v. Paul Arpin Van Lines, Inc.*, 235 F.R.D. 537, 542 (D.Conn. 2006 (Hall, J.)) (quoting *Sequa v. JBG Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). *Accord Manley v. Ambase Corp.*, 337

F.3d 237, 246 (2d Cir. 2003) (grant of new trial inappropriate unless the court is "convinced that

the verdict was manifestly erroneous"); *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124,

133 (2d Cir. 1998) ("the court should only grant such a motion [for new trial] when the jury's

verdict is 'egregious.'").

      Because Plaintiffs' Motion does not come close to satisfying this exacting standard, the

Motion for New Trial should be denied.

II.     THE JURY'S VERDICT WAS NOT CONTRARY TO THE WEIGHT OF EVIDENCE

      For the reasons described at length in Defendant's Opposition to Plaintiffs' Motion for

Judgment as a Matter of Law, the jury verdict was fully consistent with the weight of the

evidence adduced at trial.  *See* Defendant SNET's Response to Plaintiff's Motion for Judgment

As a Matter of Law Under Rule 50(b), filed contemporaneously herewith.  Plaintiffs' *pro forma*

argument to the contrary improperly asks the Court simply to reach a different conclusion than

the jury.  This is contrary to well-established requirements under Rule 59, which allow for the

grant of a new trial only in the face of a "seriously erroneous result" or a "miscarriage of

justice."  *See Manley*, 337 F.3d at 245; *Ensign Yachts, Inc. v. Arrigoni,* No. 3: 09-CV-209

(VLB), 2011 WL 5325174, at *5 (D. Conn. Nov. 2, 2011) "[W]e have often emphasized that a

district judge cannot displace a jury's verdict merely because he disagrees with it or because a

contrary verdict may have been equally supportable …. as we have repeatedly observed, trial

judges do not sit as thirteenth jurors, empowered to reject any verdict with which they disagree."

*Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009) (internal citations and quotations omitted).

*Accord Sorlucco v. N.Y. City Police Dep't.*, 971 F.2d 864 (2d Cir. 1992) (reversing grant of new

trial where "there is no great weight of the evidence in either direction") (internal quotations

omitted).

This Court should be particularly loath to disturb the jury's verdict in this case, because that verdict ultimately depended on the jury's assessment of which witnesses were most credible in their conflicting descriptions of the field managers' job duties.  It is settled law that "a court should rarely disturb a jury's evaluation of a witness's credibility. … [W]here the resolution of the issues are dependant on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial."  *Pouliot*, 235 F.R.D. at 542 (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

III.    A NEW TRIAL IS NOT WARRANTED BASED ON CLAIMED ERRORS IN THE JURY CHARGE

The Court took enormous care in preparing the jury charge in this case.  It prepared four drafts of the charge and discussed the charge with counsel on ten separate occasions, including two charging conferences, (spanning 173 pages of transcript) before finalizing the instructions it gave to the jury.  Counsel for both parties had ample opportunity to state their objections.

Faced with this, Plaintiffs do not seriously contend that the charge the Court gave included instructions that erroneously stated the law.[1]  Instead, they complain that the charge did not stress points they believed deserved greater emphasis.  This is simply not a basis for granting a new trial.

"A jury instruction is considered proper so long as the charge correctly states the law and permits the jury to intelligently decide the questions presented to it."  *Izzarelli v. R.J. Reynolds Tobacco Co.*, No. 3:99-CV-2338, 2011 WL 3803900, at *19 (D. Conn. Aug. 26, 2011) (denying motion for new trial based in part on an allegedly improper jury instruction on the ground that the moving party "is not entitled to an instruction of its precise wording"; moreover, the fact that

---

[1] The one exception is Plaintiffs' challenge to the Court's reliance on a preponderance of evidence standard.  For the reasons noted in Section III(C) below, that claim is baseless.

the jury may have considered evidence that the moving party deems irrelevant "does not render the instruction erroneous") (internal citations and quotations omitted).  *See also Lawyers Title Ins. Corp. v. Singer*, 792 F. Supp. 2d 306, 313 (D. Conn. 2011) ("In determining whether the Court's jury instructions were erroneous, the question is whether considered as a whole, the instructions adequately communicated the essential ideas to the jury.") (internal citations and quotations omitted); *Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville*, 289 F. Supp. 2d 62, 78-82 & fn. 22 (D. Conn. 2003) (the inclusion or exclusion of a particular word or phrase in jury instructions does not entitle a party to a new trial where the "instructions, viewed as a whole, were a correct explanation of the law").

In light of these well-settled principles, each of Plaintiffs' challenges to the Court's instructions should be rejected.

### A.    The Court's Instructions on "Management" and "Primary Duty" Accurately Stated the Law.

The Court's instructions on "management" and "primary duty" closely track the language of the applicable regulations.  *Compare* [Doc. 568, p. 33-36] and 29 C.F.R. §§ 541.102, 541.103, 541.700 (2011).  Plaintiffs do not contend that these instructions erroneously state the governing law.  Instead, their principal complaint is that the Court did not give a further instruction to the jury which emphasized that managers must exercise discretion, authority and control.  No such separate requirement, however, is found in the statute or regulations.[2]  Nor is there any such

---

[2] To the contrary, Connecticut Law expressly imposes a requirement that exempt executive employees exercise discretion and disciplinary authority only for employees who, unlike the plaintiffs in this case, earn salaries of less than $475 per week.  CONN. AGENCIES REGS. § 31-60-14.  Treating discretion and disciplinary authority as a separate requirement that must equally be satisfied by employees earning greater than the $475 weekly threshold would essentially rewrite the statute in a way that rendered the statutory threshold meaningless.  *See Paul v. McPhee Elec. Contractors*, 46 Conn. App. 18, 22 (1997) ("Where statutory language is clearly expressed ... courts must apply the legislative enactment according to the plain terms and cannot read into the terms of [the] statute something which manifestly is not there in order to reach what court thinks

requirement found in the applicable case law.  *See, e.g., Beauchamp v. Flex-N-Gate LLC*, 357 F.

Supp. 2d 1010, 1018 (E.D. Mich. 2005) (under current executive exemption regulation "there is

no … requirement that these duties entail the exercise of discretion or independent judgment.

Rather, the focus is on activities typically associated with management or supervision, such as

hiring and firing, apportioning or directing the work of subordinates, evaluating performance and

handling employee complaints and discipline."); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104,

1117 (9th Cir. 2001) ("it is not necessary for Plaintiff to have final-decision making authority in

order for the Court to find that Plaintiff managed a unit."); *Kastor v. Sam's Wholesale Club*, 131

F. Supp. 2d 862, 866 (N.D. Tex. 2001) (final decisionmaking authority is not required under the

executive exemption of the FLSA).

Instead of giving a misleading instruction on discretion that would have supplied an

additional requirement to the exemption test not found in the statute or the regulations, the Court

did given an additional instruction to the jury, based on language found in the Department of

Labor's Regulatory Preamble to its most recent revision of the regulations, that discusses the

administrative exemption.  Specifically, the Court told the jury that in evaluating Plaintiffs'

"relative freedom from supervision," as part of the primary duty inquiry, the jury should consider

"the exercise of discretionary power."  *Compare* 69 Fed. Reg. 22,144 (Apr. 23, 2004) and [Doc.

568, at 33].  Plaintiffs accepted this addition, while Defendant objected to it.  In light of the

Court's decision to instruct the jury based on the precise language of the regulations,

supplemented with Preamble language that emphasized Plaintiffs' position in this litigation,

Plaintiffs cannot be heard to complain that the Court's instruction misstated the law or failed to

---

would be a just result."); *Wright v. Rayonnier, Inc.*, 972 F. Supp. 1474, 1478, n. 5 (S.D. Ga.
1997) (in deciding claims under prior FLSA "short test," plaintiff's "reliance on elements of the
long test, which allegedly weigh in her favor, is misplaced. … If the short test is applicable, then
the long test need not be considered.").

inform the jury adequately.

Plaintiffs also contend that the Court's instructions left it up to the jury to determine which job duties were managerial. This is false. The Court instructed the jury concerning which tasks were managerial by again closely tracking the precise language in the regulations. *Compare* [Doc. 568, at 35-36] and 29 C.F.R. § 541.102. The Court did state that the list of management duties supplied by the regulations was not exhaustive, but that is fully consistent with the regulations themselves, which specifically note that management "includes, but is not limited to" the specific duties recited in the regulation. *Compare* [Doc. 568, at 35] and 29 C.F.R. § 541.102. The Court's instruction, however, did not leave the jury completely at sea in determining what constitutes a management duty. The Court specifically instructed the jury only to consider "activities which are of a similar nature to those I have listed."[3]  [Doc. 568, p. 35].

More significantly, Plaintiffs never requested that the Court provide any more specific instruction to the jury on this point; nor did they object to this instruction. Had they done so, the Court could have considered whether further instructions were appropriate. In light of their failure in this regard, this claim must be deemed waived. *See Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992) ("failure to object to a jury instruction … prior to the jury retiring results in a waiver of that objection. Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions.") (internal citations omitted.)

Finally, Plaintiffs make the extraordinarily strained claim that the Court's instruction on duties that are "directly and closely related" to exempt managerial tasks may have been

---

[3] The specific duties mentioned in Defendant's closing to which Plaintiffs object all hewed to this limitation by referencing only similar duties that have been recognized by courts as managerial functions. *See* Defendant SNET's Response to Plaintiff's Motion for Judgment As A Matter of Law Under Rule 50(b), filed contemporaneously herewith.

misunderstood by the jury to permit a finding of exempt status based on Field Managers

performing non-exempt work for their Area Managers.  This speculation is flatly inconsistent

with the court's instruction to the jury that "tasks, such as data entry and basic clerical work, are

non-managerial and non-exempt."  [Doc. 568, p. 35].  Moreover, Plaintiffs never objected to this

language in the multiple charging conferences held by the Court and therefore plainly waived

any objection on this ground.[4]

## B.      The Court properly instructed the jury on the meaning of "change in status" in the executive exemption regulations

The Court instructed the jury to determine whether the Plaintiffs made recommendations

about subordinates' change in status by again essentially tracking the language of the operative

regulations.  *Compare* [Doc. 568, p. 30] and 29 C.F.R. §§ 541.100, 541.105 (2011).  Indeed, the

only meaningful addition made by the Court was to charge the jury that a "significant reduction

in pay" constituted a change in status for purposes of the exemption.  [Doc. 568, p. 30].

Plaintiffs cannot complain that this addition was improper, because they expressly agreed to it in

the following colloquy:

> MR. WITTELS:  Very briefly, if I may, I consulted with our team
> here.  *We would agree to the suggestion on the language by
> defense counsel about the language adding the phrase changing
> status.*
> THE COURT:  His sort of second position to add the significant
> change, I can't remember what it was.
> *MR. WITTELS:  Significant change in pay.*
> *THE COURT:  In pay.  Okay.  All right.  I probably will give it if
> you both agree.*

---

[4] Plaintiffs also object for the first time to the Court's instruction concerning the direction of the work of two or more subordinates.  The language of that instruction was again taken directly from the regulations and was never objected to in any fashion by the Plaintiffs.  *Compare* [Doc. 568, p. 35] and 29 C.F.R. §§ 541.100, 541.104 (2011).  The objection is therefore waived and furnishes no basis for a new trial.

(Tr. 2300; emphasis supplied).

Instead of challenging the accuracy of the Court's instructions, Plaintiffs instead again complain that the charge was not specific enough to their liking, because it did not instruct the jury that a one-day suspension without pay could never as a matter of law amount to a change in status. Any such charge would have been a misstatement of the law. All parties agree, based on the language of the Department of Labor's Regulatory Preamble, that the reference to change in status in the regulations was intended to equate with "tangible employment actions" or "adverse employment actions" under Title VII, as described by Justice Kennedy in the seminal case of *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998), in which the Court fashioned a test for vicarious employer liability. *See* 69 Fed. Reg. 22,131 (Apr. 23, 2004). In that case, Justice Kennedy's opinion makes clear that the docking of pay constitutes a tangible employment action for which the employer is vicariously liable. The Court specifically held:

> When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury. A co-worker can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct. … But one co-worker (absent some elaborate scheme) cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.

*Ellerth*, 542 U.S. at 761-62 (emphasis supplied).

Consistent with the Supreme Court's direction, many courts in the Second Circuit have held that short suspensions without pay constitute tangible or adverse employment actions in the

Title VII context.  *See, e.g., Waters v. General Bd. of Global Ministries,* 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) (short unpaid suspension constituted adverse employment action); *Wagner v. Connecticut Dep't of Corr.*, 599 F. Supp. 2d 229, 239 (D. Conn. 2009) (same); *Ruhling v. Tribune Co.,* No. CV-04-2430, 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007) (same); *Satterfield v. United Parcel Servs.,* 00CIV. 7190, 2003 U.S. Dist. LEXIS 17229, at *10 (S.D.N.Y. Sept. 30, 2003) (one-day suspension without pay "arguably does fall within the Second Circuit's definition of 'materially adverse' actions since plaintiff presumably was forced to forego one day's worth of wages."); *Page v. Connecticut Department of Public Safety,* 185 F. Supp. 2d 149, 157 (D. Conn. 2002) (two-day suspension was an adverse action sufficient to support a *prima facie* case of sex discrimination; "in this Circuit, suspension without pay constitutes adverse employment action.").

By contrast, in different factual settings, certain other courts have found to the contrary, but have relied on the particular facts of each case to arrive at this conclusion.  *See, e.g., Martinez v. Connecticut Library,* No. 3: 09-CV-1341, 2011 U.S. Dist. LEXIS 107848, at *29 (D. Conn. Sept. 21, 2011) (relying on specific facts, including plaintiff's decision to opt for an unpaid suspension in lieu of a written warning that would not have impacted pay, to determine there was no adverse action); *Gibson v. Wyeth Pharmaceuticals, Inc.*, 2011 U.S. Dist. LEXIS 23935, at *21 (S.D.N.Y. Mar. 9, 2011) (making its determination "under the circumstances"); *Polanco v. 34th Street P'ship,* 724 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) (analyzing a suspension the court said was "for a sufficiently justifiable reason").  The one case supporting Plaintiffs' view that short suspensions can never be an adverse employment action fails to cite the relevant language in *Ellerth,* the contrary Circuit precedent, or any analysis to support its conclusion.  *See Dobrynio v. Central Hudson Gas & Elec. Corp.,* 419 F. Supp. 2d 557, 564

(S.D.N.Y. 2006).  This case should be disregarded as an outlier.[5]

In short, the Court acted properly and well within its discretion when it correctly instructed the jury on the law regarding an exempt supervisor's authority to recommend changes in status based on the language of the regulations.  Decisions about the significance of that authority, which arose in diverse factual settings, were properly left for the jury.  *See Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir. 2010) ("[t]he exemption question … is a mixed question of law and fact involving a number of subsidiary questions …"); *Yoakum v. PBK Architects, Inc.,* No. Civ. A. H-10-00278, 2011 WL 4688720, at *2 (S.D. Tex. Oct. 4, 2011) (whether a particular duty is exempt presents a legal question, but the amount of time devoted to particular duties and the significance of those duties, are issues of fact); *McGrath v. City of Philadelphia,* 864 F. Supp. 466 (E.D. Pa. 1994) (same); *McKinney v. United Stor-All Ctrs.,* 656 F. Supp. 2d 114 (D.D.C. 2009) (same).  The Court's instructions did not misstate the law or fail to adequately inform the jury about the law.  There is thus no basis for a new trial.

## C.   The Court properly instructed the jury that Defendant was required to prove its exemption defense by a preponderance of the evidence

The Court specifically instructed the jury:

1.      There was a presumption that plaintiffs should be paid overtime;

---

[5] Even farther afield is plaintiffs' purported reliance on *Joseph v. Leavitt,* 465 F.3d 87 (2d Cir. 2006).  There the Second Circuit found no adverse employment action because the plaintiff had suffered no economic injury after being placed on paid leave pending an investigation.  In contrast, the Technicians in this case lost money each and every time they were suspended without pay.  *See, e.g.*, Damboise, Tr. at 1741-42 ("Q.  Then regarding the suspensions that you have testified about, do those suspensions ever affect a technician's total compensation, their wages and overtime pay?  A. When they are suspended, they are unpaid, so, yeah, it does affect."); Lechnar, Tr. at 569; Ensling, Tr. at 646, 663-64 ("Q.  I think Ms. Eubanks asked you questions about suspensions so we're clear if I'm suspended without pay, I'm losing money in my paycheck, right?  A.  Yes, that would be correct.  Q.  You suffer an immediate monetary loss if you suspend a technician without pay, correct?  A. In that instance, yes."), Johnson, Tr. at 2003; Buxton, Tr. at 2044-45, 2048; McDonald, Tr. at 2157.

      2.      Exemptions from overtime are "narrow";

      3.      "[E]xemptions are limited to employment positions which plainly and unmistakably come within the terms and spirit of the federal and state law."

[Doc. 568, p. 25].  The last instruction was given over Defendant's repeated objection.[6] (Tr. at 2395, 2765, 2786, 2798).

Plaintiffs now claim it was error for the Court not specifically to have instructed the jury that Defendant had the burden to prove its defense "plainly and unmistakably."  But having instructed the jury both that the Defendant had the burden of proving the exemption and that the exemption was limited to positions to which it "plainly and unmistakably" applied, the Court essentially gave Plaintiffs their proffered instruction.  The fact that the Court did not phrase it in precisely the terms Plaintiffs desired and did not repeat the instruction four or five times as Plaintiffs requested, is neither a basis for objecting to the instruction nor for seeking a new trial. *Wilson v. Aquino*, 233 F. App'x 73, 77 (2d Cir. 2007) (finding no error in district court's failure to employ the precise jury instruction language suggested by defendants, because "trial courts enjoy considerable 'discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law.'"); *Izzarelli*, 2011 WL 3803900, at *19 (a party "is not entitled to an instruction of its precise wording").

Plaintiffs also object that the Court did not instruct the jury that the Defendants had the burden of proving the exemption defense by "clear and convincing evidence."  Any such instruction would have been clear error and contrary to the uniform practice of the district courts

---

[6] Defendant continues to believe that the "plainly and unmistakably" language included in the charge is properly considered only as a guide to statutory construction which has no bearing on issues considered by a jury.  *See, e.g., Yi v. Sterling Collision Ctrs., Inc.,* 480 F.3d 505, 507 (7th Cir. 2007).  But having lost that issue (and Plaintiffs having won it), Plaintiffs can hardly complain about the charge's failure to incorporate the "plainly and unmistakably" standard.

in this Circuit.  The standard burden of proof in civil cases is by a preponderance of the evidence.

*See, e.g., Concrete Pipe and Prods. of California, Inc. v. Construction Laborers Pension Trust for S. California,* 508 U.S. 602, 622 (1993) ("The burden of showing something by a 'preponderance of the evidence,' . . . [is] the most common standard in the civil law . . . ."); *Ramsey v. United Mine Workers of America,* 401 U.S. 302, 306 (1971) (preponderance of the evidence is the "ordinary civil burden of persuasion").

Consistent with that established standard, district courts in the Second Circuit uniformly have applied the preponderance of the evidence standard when trying exempt status cases, including one case where the judgment was affirmed by the Second Circuit.  *See Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271(RMB), 2011 WL 2565330, at *3 (S.D.N.Y. June 16, 2011) ("[I] n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence."); *Scott v. SSP America, Inc.*, No. 09–CV–4399 (RRM)(VVP), 2011 WL 1204406, at *6 (E.D.N.Y. Mar. 29, 2011) ("[T]he employer has the burden of proving that a plaintiff is an exempt "bona fide executive" by a preponderance of the evidence."); *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970, 2007 WL 4299443, at *17 (S.D.N.Y. Dec. 6, 2007) ("Golden has also asserted that Merrill bears the burden of establishing the exemption by 'clear and convincing evidence[.]'  However, in the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence."); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 456 (E.D.N.Y. 2007) ("In an action brought to compel the payment of overtime compensation, the employer must by a preponderance of the evidence make a clear showing of exemption …"); *Marshall v. Burger King Corp.*, 504 F. Supp. 404, 406-07 (E.D.N.Y. 1980) ("Defendant bears the burden of proof with regard to establishing its entitlement to these exemptions by a preponderance of the

evidence."), *aff'd*, *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982).[7]

By contrast, the cases upon which Plaintiffs rely use the "clear and convincing" language in discussing the court's role in construing the statutory language in procedural postures that do not involve the burden of proof at trial.  As a result, these cases do not suggest that a defendant must prove its case to a jury by a heightened burden of proof.  *See* cases cited at Pl. Br. 11: *e.g., Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993) (dealing with appeal from trial on a stipulated record).  The only Second Circuit case Plaintiffs cite in support of this purported heightened burden does not support their assertions.  *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (in reviewing summary judgment on exemption issue and bench trial on willfulness issue, considering whether "the employee clearly falls within the

---

[7] In addition, the Sixth, Seventh, Tenth and Eleventh Circuits and many district courts have explicitly rejected Plaintiffs' arguments. S*ee Fowler v. Incor*, 279 F. App'x 590, 592 (10th Cir. 2008) ("[W]e have held that an employer must prove an exemption by 'clear and affirmative evidence.' Our use of 'clear and affirmative evidence,' has led to confusion whether this in fact means clear and convincing evidence-a burden beyond the preponderance of evidence standard traditionally applied in civil cases. This is not the case; instead, clear and affirmative evidence is simply an 'invocation of the familiar principle of statutory interpretation that exemptions from a statute that creates remedies should be construed narrowly,' and 'also that the burden of proof is on the [employer], since entitlement to an exemption is an affirmative defense.'") (internal citations omitted) (quoting *Yi*, 480 F.3d at 507); *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007) ("We clarify here that the phrase "clear and affirmative evidence" does not heighten AEP's evidentiary burden when moving for summary judgment. … because establishing the applicability of an FLSA exemption is an affirmative defense, AEP has the burden to establish the [] elements [of the defense] by a preponderance of the evidence.") (internal citations omitted); *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 n.5 (11th Cir. 1991) ("The employer has the burden of establishing by a preponderance of the evidence that it is entitled to the benefit of an exemption under section 213(a)(1)."); *Walters v. American Coach Lines of Miami, Inc.*, No. 07-22000-CIV., 2009 WL 1708811, at *2-3, n.5 (S.D. Fla. June 17, 2009) ("The Court has used the 'plainly and unmistakably' language when discussing an employer's burden of proving that an employee falls within a claimed FLSA exemption…However, the Court employed this language at the summary judgment stage, pursuant to the Eleventh Circuit's reminder in *Nicholson v. World Business Network, Inc.* of the 'Supreme Court's admonition that *courts* closely circumscribe the FLSA's exemption.' …When it comes to the burden of proof at trial, however, the Eleventh Circuit has expressly stated that the standard to be applied is the preponderance of the evidence.").

terms of the exemption," but not referencing any heightened burden of proof).

Plaintiffs' reliance on the Supreme Court's recent decision in *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-47 (2011) is particularly misplaced.  The cited discussion relates to the statutory construction of § 282 of the Patent Act of 1952, which provides by statute that "'[a] patent shall be presumed valid' and '[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.'"  *Id.* at 2245.  In this very specific context, the Court explained that prior to the adoption of this provision, "[t]he common-law presumption … reflected the universal understanding that a preponderance standard of proof was too 'dubious' a basis to deem a patent invalid. … ('[A] patent ... is presumed to be valid until the presumption has been overcome by convincing evidence of error')." *Id.* at 2246.  As the Supreme Court explained:

> Thus, by the time Congress enacted § 282 … the presumption of patent validity had long been a fixture of the common law.  According to its settled meaning, a defendant raising an invalidity defense bore "a heavy burden of persuasion," requiring proof of the defense by clear and convincing evidence. That is, the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof. Under the general rule that a common-law term comes with its common-law meaning, we cannot conclude that Congress intended to "drop" the heightened standard proof from the presumption simply because § 282 fails to reiterate it expressly.

> *Id.* (internal citations omitted).

As the quoted language makes clear, the decision in *Microsoft Corp.* was based solely on a well-established common law heightened burden of proof in patent invalidity actions, which the Court concluded that Congress had not intended to abrogate.  No such common law heightened burden was ever associated with the FLSA, and thus *Microsoft* affords no basis to depart from the preponderance of evidence standard in this case.

In short, Plaintiffs offer no reason why this Court's instructions should have diverged

from established practice in this Circuit.  There is no error and no basis for a new trial.

IV.    PLAINTIFFS ARE NOT ENTITLED TO A NEW TRIAL BASED ON CLAIMED
       ERRORS IN EVIDENTIARY RULINGS WHERE PLAINTIFFS CANNOT SHOW
       THAT THE COURT ABUSED ITS DISCRETION OR THAT ANY RULING WAS
       CLEARLY PREJUDICIAL

       In seeking a new trial based on claimed errors in evidentiary rulings, Plaintiffs must clear

a high hurdle.  They must demonstrate both that the Court's rulings were a "clear abuse of

discretion" and that the error was "clearly prejudicial to the outcome of the trial." *Chopra v.*

*General Elec. Co.,* 527 F. Supp. 2d 230, 248-49 (D. Conn. 2007).  *See also Schanzer v. United*

*Techs. Corp.,* 120 F. Supp. 2d 200, 213-16 (D. Conn. 2000) (the fact that a party's case was

"perhaps harmed" by the admission of evidence does not entitle that party to a new trial where

the party cannot "articulate how it suffered 'extreme prejudice' from its admission, other than the

possible detriment caused to its case by the probative value of the [evidence] in its own right").

Plaintiffs' Motion for New Trial comes nowhere near meeting this exacting standard.

       A.     Evidence of Plaintiffs' salaries was properly admitted and no argument was
              made that salaries alone made Plaintiffs exempt.

       The Court properly found that Plaintiffs' salaries are relevant to the determination of

whether an employee is engaging in exempt duties.  This is consistent with existing precedent.

*See Donovan v. Burger King Corp.*, 675 F.2d 516, 520 (2d Cir. 1982) ("Salary ranges . . . are

relevant to whether an employee's primary duty is managerial.  Where salary is low . . . the

inference that the employee is not an executive is quite strong. . . .  At higher salaries, no such

inference can be drawn and the need to weigh and balance a range of factors is more

compelling."); *Dean v. Priceline.com, Inc.*, No. 3:00CV1273(DJS), 2001 WL 35962826, at *4

(D. Conn. Apr. 6, 2001) (considering plaintiff's salary as relevant evidence in finding plaintiff

exempt from the FLSA's overtime requirements).  It is also consistent with common sense.

Plaintiffs repeatedly claimed that they performed only low level clerical tasks, but it was logical

for the jury to wonder why the Plaintiffs were paid large salaries and bonuses if they contributed such little value to the employer.

Plaintiffs fail to cite a single case where the Court held that evidence of the plaintiffs' compensation was inadmissible in a challenge to their exempt status.  There was plainly no abuse of discretion in admitting this evidence.

Likewise, nothing in Defendant's argument urged (as Plaintiffs claim) that Plaintiffs' "salaries by themselves supported a finding of exemption."  (Pl. Br. 14).  Rather, Defendant only suggested that Plaintiffs' high salaries were evidence that they performed important managerial duties on behalf of the Company, since a rational employer was unlikely to provide such compensation to mere clerks.  (Tr. 2650-51).  Such an argument was entirely proper and consistent with the Court's unambiguous instruction to the jury that "[t]he presumption [of overtime] applies even where an employee receives a salary, as plaintiffs do in this case, and even if you consider their salary to be a 'high' salary."  [Doc. 568, p. 25].

## B. Evidence of salaries of GOAs was plainly admissible and involved no unfair surprise.

Defendant introduced evidence of the lower compensation paid to GOA clerks compared to Field Managers to support its claim that the primary duty of Field Managers was management and not clerical work.  Such evidence was plainly relevant under 29 C.F.R. §541.700(a), which asks the finder of fact to compare the compensation of Plaintiffs to the compensation paid to other employees "for the kind of non-exempt work performed by [the Plaintiffs]."  Since Plaintiffs claimed that they were largely saddled with clerical duties, the regulations plainly instructed that a comparison should be made to the compensation paid to the GOAs who perform clerical tasks.

Plaintiffs claim that they were unfairly surprised by Defendant's introduction of this

evidence, but they should not have been.  In connection with its Motion in Limine to exclude evidence of technician compensation, Defendant argued that the proper comparison was not between field managers and technicians, but between field managers and "any other employees that Plaintiffs allege do the same non-exempt work that Plaintiffs claim to do."  *See* Defendant's Motion in Limine to Exclude Evidence, Testimony or Argument Related to the Compensation of Non-Exempt Technicians [Doc. 383], at 3.  Since Plaintiffs have repeatedly claimed they perform clerical work, this plainly referred to the compensation of clerical employees like the GOAs.

Nor can Plaintiffs claim any prejudice arising from their purported surprise.  The compensation paid to the GOAs is undisputed and set forth in collective bargaining agreements that were produced in discovery.  (Tr. 2230-2232).  Plaintiffs can point to nothing they could have done differently in the absence of their claimed surprise.  There was no abuse of discretion in admitting this highly relevant evidence.

### C.   Witness John Sullivan's testimony was properly admitted.

Plaintiffs complain of unfair surprise regarding the testimony of John Sullivan, but there was no attempt by Defendant to hide the identity of John Sullivan as a witness or the nature of his testimony.  The Court ordered the parties to submit to Parajudicial Officer James Hawkins on June 1, 2011 a list of 15 opt-in Plaintiffs they would propose calling to testify at trial, and to submit on June 17, 2011, a list of other witnesses the parties would propose calling.  *See* June 1, 2011 email from Erika Leonard to James Hawkins, attached as Exhibit A; June 17, 2011 email from Meg Kochuba to James Hawkins, attached as Exhibit B.  The list Defendant submitted to Mr. Hawkins on June 1, which Mr. Hawkins promptly forwarded to Plaintiffs, plainly stated that it was a list of opt-in Plaintiffs.  As such, it did not contain Mr. Sullivan's name.  *See* Exhibit A ("Pursuant to the instructions of Parajudicial Officer James Hawkins, Defendant Southern New

England Telephone Company ("SNET") provides this preliminary list of 15 opt-in Plaintiffs whom SNET may call as witnesses at trial …").  Mr. Sullivan was not an opt-in Plaintiff, having instead elected to opt out of the Rule 23 class on February 10, 2010.  Plaintiffs' counsel was well aware of this, having filed Mr. Sullivan's opt out form.  [Doc. 228 at 23].  Instead, Mr. Sullivan was disclosed to Plaintiffs on June 17 as one of Defendant's non-Plaintiff witnesses.  *See* Exhibit B.  At that time – more than three months before trial – Defendant identified Mr. Sullivan by his proper job title, disclosed that he had not been deposed, and explained that he would be called to testify "regarding knowledge of first level manager duties generally and MSOC."  *Id.*  Plaintiffs could not have been surprised that Mr. Sullivan's testimony would include accounts of his own experiences as a Field Manager, since Plaintiffs plainly knew he was a class member who had opted out, and Defendant never suggested his testimony would be limited in any way.

Plaintiffs' lack of surprise is confirmed by their failure to make any objection on this basis when Mr. Sullivan testified.  There was plainly no abuse of discretion in admitting Mr. Sullivan's testimony in the absence of any objection.

D.   **The Court's ruling on Plaintiffs' motion to preclude "the Nasznic documents" did not preclude admissible testimony regarding facts mentioned in those documents.**

As ordered by the Court, the documents produced by Defendant in June 2011, referred to in briefing and hearings on the matter as "the Nasznic documents," were not used in any way in the trial.[8]  The Court, however, did not ban Defendant's witness from testifying about the underlying facts contained in those documents, and Plaintiffs never requested such relief in their Motion to Preclude.  Plaintiffs offer no basis for their after-the-fact claim that the Court should

---

[8] Plaintiffs' comment that "[r]ather than require production of the complete [Nasznic] file … the Court excluded the documents in their entirety" is misleading, because in fact Plaintiffs not only did not ask the Court for production of the full file [Doc. 355], but also declined Defendant's offer (made before the filing of Plaintiffs' motion) to do so.  [Doc. 362].

have gone farther and precluded any reference to the facts contained in these documents.  Such a ruling would have represented an extraordinary sanction that would have prevented the jury from hearing substantial probative evidence.  Nor was any such ruling required to protect the Plaintiffs from unfair surprise.  The events recounted in the documents all concerned incidents that Plaintiffs and the class members were fully familiar with; indeed, they were the authors or recipients of many of the documents.  Plaintiffs had these 500 pages of documents four months in advance of trial and plainly had ample time to prepare.  Their refrain of unfair surprise once again rings hollow.

In any event, there was no abuse of discretion in failing to impose a sanction Plaintiffs never asked for, and there is no basis for a new trial.

## V.   THE ARGUMENTS OF COUNSEL AFFORD NO BASIS FOR GRANTING A NEW TRIAL

Plaintiffs also argue in passing that they should receive a new trial based on the arguments of Defendant's counsel.  Plaintiffs, however, never objected to any such argument at trial, nor did they request a curative instruction with respect to any such arguments.  Under these circumstances, the objection is deemed waived unless the allowance of such argument was plain error.  *See Chopra,* 527 F. Supp. 2d at 248-49 (denying motion for new trial in the face of far more prejudicial arguments by counsel because, "[to] the extent that any comment was prejudicial, the Court instructed the jury not to consider statements by counsel as evidence, and further instructed the jury as to the proper standards to review the evidence.  A litigant is entitled to a fair trial but not necessarily a perfect one."); *Pouliot,* 235 F.R.D. at 544-45 (allegedly improper remarks by counsel do not entitle a party to a new trial unless the remarks "lead to a seriously erroneous result, or a miscarriage of justice").

In this case there is simply no basis for objecting to counsel's entirely proper arguments

to the jury:

- Counsel made no improper appeal to anti-union settlement; he merely responded to Plaintiffs' claims that the union witnesses who testified were completely disinterested in the matter by noting that the union is engaged in serious conflict with the Company (Tr. 2640, 2675-76);

- Counsel properly made reference to the high bar certain Plaintiffs had set to be considered a manager.  (Tr. 2655-56).  Plaintiff Thomas McKeon, for example, testified that "in my opinion, the level one managers should be able to hire, fire and set policy.  I cannot do any of those items I just listed, so I don't agree with the manager title."  (Tr. 124);

- Counsel argued consistent with the Court's instructions that jurors could consider the testifying Plaintiffs' financial interest in the lawsuit, noting: "That's something for you to consider under the circumstances.  It is in the judge's instruction.  You have to figure it out."  (Tr. 2650).  There is nothing improper in that argument; counsel merely asked the jury to make a determination about an issue the Court had charged them to consider [Doc. 568, p. 15-17];

- Counsel noted that the discrepancy between John Tait's and Lou Lastrina's recollection of a conversation could be explained by the passage of time. (Tr. 2646-47).  Mr. Tait did not recall the conversation, but noted that his communication with AT&T on the subject had occurred a couple of years after he started his business in 2005 or 2006.  (Tait, Tr. at 1794-98, 1801).

In short, none of the comments of counsel were improper.  Plaintiffs' handful of quibbles come nowhere close to satisfying the exacting standard for granting a new trial.

VI.    CONCLUSION

Plaintiffs' motion for new trial should be denied.

Dated:  New York, New York                    Respectfully submitted,
           December 19, 2011

                                      By:   /s/ Patrick W. Shea
                                            Patrick W. Shea (CT07071)
                                            Paul Hastings LLP
                                            75 East 55th Street
                                            New York, NY 10022
                                            Telephone: (212) 318-6000
                                            Facsimile: (212) 319-4090
                                            patrickshea@paulhastings.com

                                            Leslie A. Dent (PHV 03877)
                                            John F. Wymer, III (PHV 03876)
                                            Erika L. Leonard (PHV 03875)
                                            Paul Hastings LLP
                                            600 Peachtree Street, N.E., Suite 2400
                                            Atlanta, Georgia 30308
                                            Telephone: (404) 815-2400
                                            Facsimile: (404) 815-2424
                                            lesliedent@paulhastings.com
                                            johnwymer@paulhastings.com
                                            erikaleonard@paulhastings.com

                                            Counsel for Defendant
                                            SOUTHERN NEW ENGLAND
                                            TELEPHONE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SHARON L. PERKINS, et al.,** | |
| **Individually and on Behalf of Others Similarly Situated,** | **CIVIL ACTION NO. 3:07CV967 (JCH)** |
| **PLAINTIFFS,** | |
| **v.** | **DECEMBER 19, 2011** |
| **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** | |
| **DEFENDANT.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2011, a copy of foregoing DEFENDANT SNET'S RESPONSE TO PLAINTIFF'S MOTION FOR NEW TRIAL UNDER FED. R. CIV. P. 59 was filed electronically and served by U.S. mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Shea
Patrick W. Shea (CT07071)
Paul Hastings LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
patrickshea@paulhastings.com

*Attorney for Defendant SNET*

LEGAL_US_W # 69894823.3

22