UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARON L. PERKINS, ET AL., | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:07-CV-967 (JCH) |
| Individually and on Behalf of Others | : | |
| Similarly Situated | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHERN NEW ENGLAND | : | FEBRUARY 14, 2012 |
| TELEPHONE CO., | : | |
| Defendant. | : | |

**RULING RE: PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL (DOC. NO. 575)**

## I.     INTRODUCTION

Plaintiffs, Sharon Perkins, Michael Blasko, Joseph Kiely, Michael McDermott, and Kelly Werbinski, brought this action against defendant, Southern New England Telephone Co. ("SNET"), on behalf of themselves and a class of similarly situated employees (collectively, "plaintiffs"), pursuant to the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 207, and Connecticut General Statutes §§ 31-60(a) and 31-76(c). Plaintiffs argued that they were improperly classified as exempt employees and, as a result, not paid for overtime work, in violation of federal and state law.

## II.     BACKGROUND

The court will offer only a short discussion of the relevant background.  The plaintiff class consisted of approximately two hundred individuals who were employed as Level One Managers (hereafter "Level Ones" or "L1s") at SNET in Connecticut from June 2005 and thereafter, and who were assigned technicians.  The class asserted that they were entitled to overtime wages pursuant to sections 31-60(a) and 31-76(c) of the

1

Connecticut General Statutes.  Of those approximately two hundred individuals, one hundred forty-eight of them opted into a FLSA collective action, asserting that they were entitled to overtime wages pursuant to the FLSA.  SNET contended that the plaintiffs were not entitled to overtime wages because the plaintiffs were employed in a <u>bona</u> <u>fide</u> executive capacity (hereafter "executive exemption"), and therefore exempt from receiving overtime wages, pursuant to 29 U.S.C. § 213(a)(1) and Conn. Gen. Stat. § 31-58.

At the conclusion of twelve days of evidence, the jury returned a verdict in favor of the defendant with regard to both federal and state law.  Plaintiffs now move pursuant to Fed. R. Civ. P. 50(b) for judgment as a matter of law.  In the alternative, plaintiffs seek a new trial, pursuant to Fed. R. Civ. P. 59(a).

## III.   STANDARD OF REVIEW

A.   <u>Motion for a New Trial</u>

A new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a)(1)(A).  Generally, a new trial "'should be granted when, in the opinion of the district court, the jury reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.' " <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133 (2d Cir.1998) (quoting <u>Song v. Ives Labs., Inc.</u>, 957 F.2d 1041, 1047 (2d Cir.1992)).  The decision of whether to grant a new trial is left to the sound discretion of the judge.  <u>See</u> <u>Pouliot v. Paul Arpin Van Lines, Inc.</u>, 235 F.R.D. 537, 542 (D. Conn. 2006).

Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict.  <u>See</u> <u>DLC Mgmt. Corp.</u>, 163 F.3d at

2

134.  In considering whether to grant a new trial, a trial judge is free to weigh the evidence herself, and need not view it in the light most favorable to the verdict winner. Id. at 134.  However, "a court should rarely disturb a jury's evaluation of a witness's credibility," and should only grant a new trial where the jury's verdict is "egregious."  See id. (citations omitted).  Further, "it is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  Pouliot, 235 F.R.D. at 542 (quoting Sequa v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)) (internal quotations omitted).

   B.   Motion for Judgment as a Matter of Law

   Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis.  See Fed.R.Civ.P. 50.  The standard under Rule 50 is the same as that for summary judgment: a court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir.1998) (citation and internal quotation marks omitted).  Thus, in deciding such a motion, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir.1998) (citations omitted).  In short, the court cannot "substitute its judgment for that of the jury."  LeBlanc-Sternberg v. Fletcher, 67

3

F.3d 412, 429 (2d Cir.1995) (citations omitted).  Rather, judgment as a matter of law may only be granted if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. Galdieri-Ambrosini, 136 F.3d at 289 (quoting Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir.1994)) (internal quotation marks omitted); see also Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir.1997).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir.1993)).  The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor."  Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir.1998) (citation omitted); see also Mickle v. Morin, 297 F.3d 114, 120 (2d Cir.2002) (court must draw all reasonable inferences in favor of the non-moving party).  Additionally, in making its determination, the court "'must disregard all evidence favorable to the moving party that the jury is not required to believe.'"  Mickle, 297 F.3d at 120 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)).  Thus, "[a] party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." Norton, 145 F.3d at 118.

4

IV.    **DISCUSSION**

A.    New Trial

Plaintiffs contend that they are entitled to a new trial for several reasons.  First, plaintiffs argue that the jury verdict was against the weight of evidence.  See Mem. Supp. Mot. New Trial at 4.  Second, plaintiffs assert that the court's instructions to the jury contained several prejudicial errors.  See id. at 4–13.  Third, plaintiffs contend that the court erred in admitting certain evidence and allowing particular testimony.  See id. at 13–19.  Finally, plaintiffs argue that defense counsel made "inaccurate, misleading, and prejudicial statements" to the jury.  See id. at 19–20.

1.    Weight of the Evidence

Plaintiffs first argue that a new trial is warranted because the jury's verdict in favor of SNET was against the weight of the evidence with regard to both claims.  See Mem. Supp. Mot. New Trial at 4.  While the court may grant a new trial where the court finds that the verdict was against the weight of evidence, it should only do so where the jury's verdict was egregious, or a miscarriage of justice.  See DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133–34 (2d Cir. 1998).  In addition, a court should "rarely disturb a jury's evaluation of a witness's credibility."  See id. at 134.

To demonstrate that the executive exemption applied under Connecticut law, SNET was required to prove:[1] (1) plaintiffs were compensated at a rate of not less than four hundred seventy-five dollars per week; (2) plaintiffs' primary duty consists of

---

[1] Under the FLSA and Connecticut Minimum Wage Act, the burden of proof rests on the employer invoking an exemption to prove that the exemption applies.  See, e.g., Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010); Butler v. Hartford Technical Inst., Inc., 243 Conn. 454, 466 (1997).

management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; and (3) that plaintiffs' duties include the customary or regular direction of the work of two or more other employees. See Conn. Agencies Regs. § 31-60-14(a). Similarly, to show that the executive exemption applied under the FLSA, SNET was required to prove: (1) plaintiffs were compensated on a salary basis at a rate of not less than four hundred fifty-five dollars; (2) the employee's primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) the employee customarily and regularly directs the work of two or more other employees; and (4) the employee has the authority to hire or fire other employees, or the employee's suggestions and recommendations as to hiring, firing, advancement, promotion, or any other changes of status of other employees are given particular weight. See 29 C.F.R. § 541.100. The parties stipulated that the plaintiffs met the salary requirement for both exemptions.

Plaintiffs contend that SNET was required to prove each of these elements "plainly and unmistakably" or by "clear and convincing evidence." See Mem. Supp. Mot. New Trial at 9–13. This contention rests on the Supreme Court's directive that FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 396 (1960); see also Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002). The Fourth Circuit has explicitly adopted this "clear and convincing evidence" burden of proof. See Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993).

6

In the Second Circuit, however, most courts have applied a preponderance of the evidence standard of proof. See, e.g., Golden v. Merrill Lynch & Co., 2007 WL 4299443, at *17 (S.D.N.Y. Dec. 6, 2007) ("[I]n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence.") (citing Marshall v. Burger King Corp., 504 F. Supp. 404, 406–07 (E.D.N.Y. 1980), aff'd 675 F.2d 516 (1982)).  Similarly, the Connecticut courts have not specified that a heightened burden of proof applies here.  See Butler v. Hartford Technical Inst., Inc., 243 Conn. 454, 466 (1997).  In recognition that the exemptions are meant to be construed narrowly, as instructed by the Supreme Court and the Court of Appeals for the Second Circuit, the court incorporated the "plainly and unmistakably" language into its instructions to the jury.  See Doc. No. 568 at 25.  However, this court is in agreement with other courts in this Circuit that the employer must ultimately prove the exemption by a preponderance of the evidence.[2]  Consequently, in examining the weight of the evidence, the court will use the preponderance of the evidence standard.

       a.      Plaintiffs' Primary Duty was Management[3]

With regard to both the FLSA executive exemption and the Connecticut executive exemption, SNET was required to prove that the plaintiffs' primary duty was "management of the enterprise in which [they] are employed or of a customarily

---

[2] Plaintiffs' reliance on the Supreme Court's decision in Microsoft Corp. v. i4i Ltd. P'ship, 131 S.Ct. 2238 (2011) is unavailing.  The Court's discussion is clear that the "clear and convincing" burden of proof is based on a long-established common law tradition with regard to patent validity.  See Microsoft Corp. 131 S.Ct. at 2246.  This case is clearly distinguishable, as no similar common law tradition exists with regard to the FLSA or Connecticut Minimum Wage Act.

[3] Plaintiffs now argue that the court should have determined whether plaintiffs' primary duty was management as a matter of law.  See Mem. Supp. Mot. New Trial at 7–8.  The court addresses this argument in Sections IV.A.2.a and IV.A.2.b.

recognized department or subdivision thereof."  29 C.F.R. § 541.100.  Pursuant to

Department of Labor (hereafter "DOL") regulations, "management" under the executive

exemption includes, but is not limited to, appraising employees' productivity and

efficiency for the purpose of recommending promotions or other changes in status;

directing the work of employees; providing for the safety and security of the employees

or the property; apportioning the work among employees; and disciplining employees,

as well as work that is "directly and closely related" to management work, such as spot

checking the work of subordinates to determine whether their work product is

satisfactory and they are performing their duties properly; keeping time, production, or

sales records for subordinates; and checking the quality of customer service.  See 29

C.F.R. §§ 541.102, 541.703.  To prove that management activities were the plaintiffs'

primary duty, SNET was required to prove that such duties were the "principal, main,

major, or most important duty" that plaintiffs performed.  See 29 C.F.R. § 541.700.

　　　SNET presented ample evidence that the plaintiffs performed various

management activities, including observing, reviewing, and working to improve the

quality of the work of technicians assigned to the plaintiffs; handling customer

complaints or other issues; ensuring the safety of their technicians; assessing their

technicians' performance; and giving technicians feedback in order to approve their

productivity.  See, e.g., Tr. at 207, 555, 823–24, 1515–17, 2149, 2339–41.  In addition,

the jury was entitled to find that these duties were the plaintiffs' primary duty, in that

these duties were the "main, major, or most important" duties the plaintiffs performed.

See id.

Furthermore, there was sufficient evidence for the jury to conclude that the Level Ones duties entailed management of a customarily recognized department or subdivision.  Pursuant to 29 C.F.R. § 541.103, such a department or subdivision "must have a permanent status and a continuing function."  See also Scherer v. USA Compass Group, Inc., 340 F. Supp. 2d 942, 950 (W.D. Wisc. 2004) ("It is clear that divisions beneath a formal 'department' are sufficient so long as they are 'customarily recognized.'").  Here, SNET presented evidence that plaintiffs were responsible for fixed crews of ten to twenty technicians that covered particular geographic areas on a regular basis.  See, e.g., Tr. at 119, 292, 481, 1056, 1750–51.  On the basis of this evidence, the jury was entitled to find that the plaintiffs managed a customarily recognized department or subdivision.

In their brief supporting their Motion for Judgment as a Matter of Law, plaintiffs argue that the evidence showed that Level Ones' roles in performing these tasks were "limited and circumscribed," "discretionless," and "scripted," and, as a result, the evidence was insufficient for the jury to find that the Level Ones' primary duty was management.  See Mem. Supp. JMOL at 8–11.  In support of these assertions, plaintiffs point almost exclusively to their own witnesses.  See id.

Given the evidence in support of SNET's position, the jury was entitled to determine that the plaintiffs' primary duty was management.  Though the jury could have credited the plaintiffs' testimony, it was not required to do so, and the court will not disturb the jury's finding with regard to this prong.

b.      Plaintiffs Customarily and Regularly Direct Work

Next, SNET was required to prove that plaintiffs "customarily and regularly direct the work of two or more other employees." See 29 C.F.R. §§ 541.100, 541.701.  Again, plaintiffs rely solely on their own witnesses to argue that the Level Ones did not direct the work of subordinate employees because the technicians are "mostly self-guided or closely controlled by detailed policies and procedures." See Mem. Supp. JMOL at 12–13.  In addition, plaintiffs argue that, because the Level Ones are not required to have a technical background, the Level Ones' jobs are mainly administrative and clerical, and do not involve directing the technicians' work. See id. at 14.

On the basis of the evidence presented, it was reasonable for the jury to determine that the plaintiffs customarily and regularly directed the work of the technicians, even though the plaintiffs may not have the same technical background as the technicians.  SNET presented ample evidence that the Level Ones had the authority and discretion to supervise the technicians, and assign and apportion work among them. See, e.g., Tr. at 1752, 2349–50, 1770–71, 1989–91.  It was reasonable for the jury to credit testimony that favored SNET on this point.

As the jury was entitled to determine that the plaintiffs' primary duty was management, and that they customarily or regularly directed the work of the technicians, the jury's verdict that SNET had met its burden of proving the executive exemption as to the Connecticut claim was not against the weight of evidence.  As such, it was neither egregious nor a miscarriage of justice, and a new trial is not warranted on these grounds.

10

c.     Recommendations and Suggestions as to Changes of
Status Given Particular Weight

With regard to the FLSA claim only, SNET was required to show that the

plaintiffs had the authority to hire or fire other employees, or that their "suggestions and

recommendations as to the hiring, firing, advancement, promotion or any other change

of status of other employees are given particular weight."  See 29 C.F.R. §§ 541.100,

541.105.   In this context, "other change in status" is defined as "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in

benefits."  See 69 Fed. Reg. 22122, 22131 (quoting Burlington Indus. v. Ellerth, 524

U.S. 742, 761–62 (1998)).

Plaintiffs first argue that unpaid one-day suspensions for life-threatening safety

violations instituted by the Level Ones do not, as a matter of law, constitute a "change in

status" pursuant to section 541.100(a)(4).  See Mem. Supp. JMOL at 15–16.  The court

previously considered this argument at trial, see Tr. at 2124–26, and sees no reason to

disturb its ruling here.  It was a question of fact for the jury whether the one day unpaid

suspensions for life-threatening situations, implemented by the Level Ones, constituted

a "change in status," as defined by the court.  See Doc. No. 568 at 30, 38.

Significantly, SNET also presented other evidence that the Level Ones made

various recommendations as to suspensions and terminations for a variety of reasons.

See, e.g., Tr. at 1780–81, 1529–30, 2002–04, 2235–43.  The jury was entitled to credit

this testimony.  On the basis of this evidence, it was not egregious for the jury to

conclude that the Level Ones' suggestions and recommendations were given particular

11

weight.  As SNET introduced sufficient evidence for the jury to come to this conclusion, the jury's verdict was not against the weight of evidence with regard to the FLSA claim.

In reviewing the evidence presented at trial, the court finds there was substantial, credible evidence presented to the jury to support the jury's verdict in favor of SNET with regard to both the Connecticut executive exemption and the FLSA executive exemption.  This was a hotly contested case, and both sides presented a substantial amount of evidence to the jury in support of their positions, which were nearly always in direct conflict.  The court is not persuaded by plaintiffs' attempts to characterize the evidence in their favor, and it will not second guess the jury's credibility judgments in the face of this conflicting evidence.  The court is not convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice.  Accordingly, the motion for a new trial on the basis that the jury's verdict is against the weight of evidence is denied.

### 2. Jury Instructions

Plaintiffs point to several errors in the court's instructions to the jury which they argue were prejudicial and warrant a new trial.  First, plaintiffs argue that the court erred in declining to issue plaintiffs' proposed instructions with regard to the "characteristics of management and the application of the primary duty test."  See Mem. Supp. Mot. New Trial at 6.  Second, plaintiffs contend that the court erred in its instruction to the jury about "directing the work" of other employees.  See id. at 8.  Third, plaintiffs assert that the court erred in its instructions with regard to the meaning of the terms "change of status" and "particular weight," and it should have instructed the jury that one-day suspensions were not a change in status, as a matter of law.  See id. at 8–9.  Finally,

12

plaintiffs state that the court incorrectly instructed the jury with regard to the applicable

burden of proof.  See id. at 9–13.

A jury instruction is erroneous if it fails to adequately inform the jury of the law or

misleads the jury as to the correct legal standard.  See Lawyers Title Ins. Corp. v.

Singer, 792 F. Supp. 2d 306, 313 (D. Conn. 2011).  A jury instruction is proper,

however, so long as it "correctly and sufficiently covers the case to allow the jury

intelligently to decide the questions presented to it."  See id. (quoting Bruneau v. South

Kortright Cent. Sch. Dist., 163 F.3d 749, 761 (2d Cir. 1998)).  The ultimate question is

"whether considered as a whole, the instructions adequately communicated the

essential ideas to the jury."  Id. (quoting United States v. Schultz, 333 F.3d 393, 414 (2d

Cir. 2003)).

a.    Management and Primary Duty

Plaintiffs first contend that the court erroneously declined to "give Plaintiffs'

proposed instructions that true management requires the "manager" to possess

discretion, authority, and control," and, instead, it instructed the jury that "one aspect of

'freedom from direct supervision' is the exercise of discretionary power" with regard to

the second element of the exemptions.  See Mem. Supp. Mot. New Trial at 6–7.  In

addition, plaintiffs aver that the jury instructions could have misled the jury to believe

that, if they found plaintiffs' jobs were more than 50% managerial, management

activities were necessarily the plaintiffs' primary duty.  See id.

Plaintiffs are not entitled to dictate the precise wording of the court's instructions

to the jury.  United States v. Han, 230 F.3d 560, 565 (2d Cir. 2000).  The court's

instructions regarding "management" and "primary duty" closely tracked the applicable

13

regulations with regard to these terms.  <u>Compare</u> Doc. No. 568 at 33–36 <u>with</u> 29 C.F.R.

§§ 541.102, 541.700, 541.703.  Plaintiffs do not point to any controlling authority in

support of their assertion that the law requires that a manager must possess "discretion,

authority, and control."  <u>See</u> <u>Mem. Supp. Mot. New Trial</u> at 6.  In fact, unlike the

administrative exemption, which specifically requires that employees' primary duty

"includes the exercise of discretion and independent judgment," the executive

exemption does not explicitly contain such a requirement.  <u>See</u> 29 C.F.R. §§ 541.100,

541.200; <u>see also</u> <u>Beauchamp v. Flex-N-Gate LLC</u>, 357 F. Supp. 2d 1010, 1018 (E.D.

Mich. 2005) ("[T]he focus of the executive exemption turns upon the performance of

'management' duties . . . and there is not analogous requirement that these duties entail

the exercise of discretion or independent judgment.").  The court's instruction that the

jury may consider the exercise of discretionary power when determining whether

plaintiffs were free from direct supervision invited the jury to consider plaintiffs' exercise

of discretion in their deliberations.  These instructions allowed the jury to intelligently

consider the questions presented.

Plaintiffs also speculate that "the charges could have led the jury to understand

that the 'freedom from supervision' prong and its 'discretionary power' 'aspect' did not

even come into play if the L1's duties were more than 50% managerial."  <u>See</u> <u>Mem.</u>

<u>Supp. Mot. New Trial</u> at 7.  Absent any indication to the contrary, a jury is presumed to

follow the court's instructions.  <u>See</u> <u>United States v. Cassese</u>, 428 F.3d 92, 102 (2d Cir.

2005).  The court specifically instructed the jury that "employees who spend more than

50 percent of their time performing exempt work will <u>generally</u> satisfy the primary duty

requirement.  Time alone, however, is not the sole test, and nothing requires that

14

exempt employees spend more than 50 percent of their time performing exempt work." See Doc. No. 568 at 33 (emphasis added). This language closely followed the applicable regulation. See 29 C.F.R. § 541.700. Consequently, the jury was not misled as to the applicable legal standard for determining the plaintiffs' primary duty.

            b.      Management Duties

Plaintiffs next argue that the court "improperly instructed and allowed SNET to argue that it was up to the jury to decide what duties qualified as exempt managerial tasks." See Mem. Supp. Mot. New Trial at 7. Plaintiffs contend that whether a job activity is exempt was a question for the court, not the jury. See id. at 8.

In this court's recollection, at no point during the four pretrial conferences, twelve days of trial, or various conferences regarding the jury charge did plaintiffs raise this issue with the court, or ask for a ruling from the court with regard to whether a particular task could, as a matter of law, constitute a management activity. Plaintiffs assert that this argument was preserved when they objected "that SNET should not be permitted to argue to the jury that 'handling customer problems' . . . constituted an exempt management task." See Reply Mem. Supp. Mot. New Trial at 4. This objection, however, was raised in the context of a discussion regarding the parties' demonstratives for closing arguments. See Tr. at 2576–78. The court allowed both parties several opportunities to raise concerns regarding the jury charge and addressed those concerns on multiple occasions. In addition, the parties not only submitted proposed jury instructions prior to the pretrial conference, see Doc. No. 418, but also submitted supplemental proposed jury instructions during the trial. See, e.g., Doc. Nos. 540, 551, 554. It is also worth noting that the plaintiffs' own proposed jury instructions left the

15

question of what constitutes management activities to the jury.  <u>See</u> Doc. No. 418-2 at

12–13.  As plaintiffs failed to raise a contemporaneous objection regarding this issue,[4]

the court will review for fundamental error.  <u>See</u> <u>Chooseco, LLC</u>, 364 Fed. Appx. at 672.

Plaintiffs argument that the court should have decided what constitutes

management activities as a matter of law rests on language contained in <u>Icicle</u>

<u>Seafoods, Inc. v. Worthington</u>, 475 U.S. 709 (1986).  <u>See</u> <u>Mem. Supp. Mot. New Trial</u> at

8.  In that case, the Supreme Court considered "whether the Court of Appeals applied

the appropriate standard of review" in reviewing the District Court's decision, after a

bench trial, that respondents fell within an exemption from the FLSA which exempted

"any employee employed as a seaman."  <u>See</u> <u>Icicle Seafoods, Inc.</u>, 475 U.S. at 710.  In

its analysis, the Court discussed its prior holding in <u>Walling v. General Industries Co.</u>,

330 U.S. 545 (1947), "that whether an employee falls within the exclusion for

'executives' under 29 U.S.C. § 213(a)(1) is a factual question subject to the 'clearly

erroneous' standard of review . . . ."  <u>See</u> <u>id.</u> at 712.  The Court subsequently reaffirmed

its holding in <u>Walling</u>, stating that "the facts necessary to a proper determination of the

legal question whether an exemption to the FLSA applies in a particular case should be

reviewed by the courts of appeals . . . like the facts in other civil bench-tried litigation in

federal courts."  <u>Id.</u> at 713.  From there, the Court went on to determine that the Court of

Appeals had erred in engaging in its own factfinding on appeal.  <u>See</u> <u>id.</u> at 714.

---

[4] A party's failure to object to a jury instruction, prior to the jury retiring, results in the waiver of that objection.  <u>See</u> <u>Chooseco, LLC v. Lean Forward Media, LLC</u>, 364 Fed. Appx. 670, 672 (2d Cir. 2010).  Where an objection has been waived, the court reviews the instruction for fundamental error.  <u>See</u> <u>id.</u>; <u>Chopra v. Gen. Electric Co.</u>, 527 F. Supp. 2d 230, 250 (D. Conn. 2007) ("The Court, noting that defendant did not preserve a contemporaneous objection to this instruction, finds that it committed no plain error in so instructing the jury.").

Plaintiffs' argument that the court should have ruled, as a matter of law, that various types of tasks--that SNET contended the plaintiffs performed--were not management activities ignores the contested nature of the evidence in this case.  In Icicle Seafoods, the Supreme Court was clear that, "The question of how the respondents spent their working time . . . is a question of fact.  The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law which . . . is governed by the pertinent regulations."  See 475 U.S. at 714.  The question of whether particular tasks constitute management activities, then, is a "mixed question of law and fact."  See Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir. 1998) ("[T]he trial judge was responsible for determining as a matter of law whether plaintiff's activities could potentially constitute 'work.'  The jury was to decide as a question of fact, not only how much of plaintiff's time spent within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employer's actual or constructive knowledge.").

Here, the court instructed the jury, in accordance with the applicable DOL regulations, what types of activities may constitute "management activities."  See Doc. No. 568 at 35–36.  It was then left to the jury to determine, on the basis of the conflicting evidence presented by the parties, whether the plaintiffs' duties fit within the law, as described by the court.  This was not fundamental error, and a new trial is not warranted on these grounds.

c.      Directly and Closely Related

Plaintiffs next claim that the court's instruction regarding work that is "directly and closely related" to exempt tasks failed to clearly instruct the jury that, "in order to be

17

considered exempt, such tasks must be 'directly and closely related' to the employees'
own exempt work," rather than tasks performed as "an administrative assistant to the
Area Manager."  See Mem. Supp. Mot. New Trial at 8.  Again, the court's instructions
regarding work that is "directly and closely related" to exempt work, closely tracked the
applicable regulation.  Compare Doc. No. 568 at 35–36 with 29 C.F.R. 541.703.  In
addition, the court specifically instructed the jury that "other types of tasks, such as data
entry and basic clerical work, are non-managerial and non-exempt."  See Doc. No. 568
at 35.  These instructions were sufficient to communicate the essential idea to the jury.
Consequently, a new trial is not necessary on this ground.

> d.    Directing the Work, Changes of Status, and Particular
>        Weight

Next, plaintiffs assert that the court erroneously declined to instruct the jury that
"'directing the work' entails discretion and control over subordinates.'"  See Mem. Supp.
Mot. New Trial at 8.  In addition, plaintiffs claim that the court erred in declining to issue
plaintiffs' proposed instructions regarding the meanings of the terms "change of status"
and "particular weight."   As discussed above, supra Section IV.A.2.a, plaintiffs are not
entitled to dictate the precise wording of the court's instructions.  See United States v.
Han, 230 F.3d 560, 565 (2d Cir. 2000).  The court's instructions closely followed the
applicable regulations and did not mislead the jury as to the applicable legal standard.

e.       Remaining Arguments

Finally, plaintiffs argue that the court improperly instructed the jury regarding the burden of proof and that the court should have instructed the jury that a one-day, unpaid suspension is not a change in status, as a matter of law. <u>See</u> <u>Mem. Supp. Mot. New Trial</u> at 9. The court already addressed these arguments. <u>See</u> <u>supra</u> Sections IV.A.1 and IV.A.1.c. Neither argument warrants a new trial.

3.       Evidentiary Rulings

A party is generally entitled to a new trial if the court committed evidentiary errors that were a "clear abuse of discretion" and were "clearly prejudicial to the outcome of the trial." <u>See</u> <u>Marcic v. Reinauer Transp. Cos.</u>, 397 F.3d 120, 124 (2d Cir. 2005). A court determines whether the error was prejudicial by considering the error in light of the record as a whole. <u>See</u> <u>id.</u> Relevant considerations include whether the testimony related to an issue that was plainly critical to the jury's decision, whether the testimony was material to establishing a critical fact, and whether the wrongly admitted evidence was emphasized in arguments to the jury. <u>See</u> <u>Wray v. Johnson</u>, 202 F.3d 515, 526 (2d Cir. 2000). Where a party failed to contemporaneously object to the claimed error, however, a new trial is only warranted if there was "plain error," that is, that the error was "so serious and flagrant that it goes to the very integrity of the trial." <u>See</u> <u>id.</u> (internal quotations omitted).

a.       Plaintiffs' Salaries

Plaintiffs first argue that the court erred in denying their Motion in Limine No. 6 (Doc. No. 404) and allowing defense counsel to introduce evidence regarding the plaintiffs' salaries. <u>See</u> <u>Mem. Supp. Mot. New Trial</u> at 14. In its decision, the court

19

relied on binding Second Circuit precedent that "[s]alary ranges . . . are relevant to whether an employee's primary duty is managerial."  See Donovan v. Burger King Corp., 675 F.2d 516, 520 (2d Cir. 1982).  Further, the court's instruction to the jury--that the presumption of overtime "applies even where the employee receives a salary, as plaintiffs do in this case, and even if you consider their salary to be a 'high' salary"--served to eliminate any confusion as to whether plaintiffs' salaries, by themselves, supported a finding of exemption.  See Doc. No. 568 at 25.  The court did not clearly abuse its discretion in allowing SNET to introduce evidence as to the plaintiffs' salaries.

b.      General Office Assistant Compensation

Plaintiffs next argue that they were unfairly surprised by SNET's introduction of evidence regarding the compensation of General Office Assistants (hereafter "GOAs") as compared to the Level Ones' salaries.  See Mem. Supp. Mot. New Trial at 16–17.  A relevant factor for the jury to consider when determining an employee's primary duty is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a).  As such, this evidence was relevant, and the court did not clearly abuse its discretion in admitting it.

Plaintiffs' claims of unfair surprise also do not warrant a new trial.  SNET introduced this evidence through Exhibit 6756, which was disclosed on their exhibit list on September 16, 2011, and to which plaintiffs failed to object.  See Doc. Nos. 502, 519.  Further, SNET raised this argument at the pretrial conference on September 9, 2011.  See Tr. at 192–93.  Consequently, plaintiffs cannot contend that they were unfairly surprised by this argument.

20

c.      Testimony of John Sullivan

Next, plaintiffs argue that a new trial is necessary because they were unfairly surprised by testimony of one of SNET's witnesses, John Sullivan, who testified as to his experiences as a Level One.  See Mem. Supp. Mot. New Trial at 17–18.   Plaintiffs failed to object to this part of Sullivan's testimony at trial, see Tr. at 2320–56, so the court will review for plain error.

SNET disclosed Sullivan as a witness on June 17, 2011.  See Def.'s Resp. Mot. New Trial at Ex. A.  Further, as SNET points out, plaintiffs themselves filed Sullivan's opt-out form.  See Doc. No. 228 at 23.  Consequently, plaintiffs had sufficient notice that Sullivan had opted out of the suit, and that SNET planned to call him as a witness. That Sullivan's testimony contradicted testimony offered by the plaintiffs was an issue for the jury to resolve.  Its introduction does not amount to plain error, or warrant a new trial.

d.      Testimony Regarding Excluded Documents

Finally, plaintiffs argue that the court erred in allowing a defense witness, John Nasznic, to testify regarding information contained in documents the court had previously excluded.  See Mem. Supp. Mot. New Trial at 19.  The court excluded these documents, at plaintiffs' request, as a discovery sanction for SNET's failure to produce them in a timely manner.  See Tr. at 354.  The court made no ruling as to the information in the documents though, as it was clear that plaintiffs' argument in favor of the sanction rested on the late production of the documents, not the information contained in them.

Defense counsel represented to the court that he did not use the documents to refresh the witness's recollection, and the documents were not introduced at trial.  See

21

Tr. at 2407–08.  It was not a clear abuse of discretion for the court to allow Nasznic, or any other witness, to testify regarding events of which he had an independent recollection, without the use of the excluded documents.  Consequently, a new trial is not warranted on this ground.

            4.        Arguments by Defense Counsel

Lastly, plaintiffs argue that they are entitled to a new trial because defense counsel made "inaccurate, misleading, and prejudicial statements" to the jury during his closing argument regarding "anti-union sentiment," plaintiffs' position and financial interest in the lawsuit, and conflicting testimony from two of SNET's witnesses.  See Mem. Supp. Mot. New Trial at 19–20.  As plaintiffs did not object to any of these statements at the time, the court will review for plain error.  See Chopra, 527 F. Supp. 2d at 249.  To the extent any particular comment was prejudicial, the court instructed the jury throughout the trial, immediately prior to closing arguments, and during the final instructions, that statements and characterizations by the attorneys were not evidence. None of these arguments were so prejudicial that they went to the integrity of the trial itself and, consequently, plaintiffs are not entitled to a new trial.

        B.        Judgment as a Matter of Law

Plaintiffs argue that they are entitled to judgment as a matter of law because the evidence was legally insufficient to show that SNET had met its burden of proving that the plaintiffs fell within the state and federal overtime exemptions for workers employed in a bona fide executive capacity.  See Mem. Supp. Mot. J. Matter of Law (hereafter "Mem. Supp. JMOL") at 2.  Plaintiffs contend that there was insufficient evidence to support the jury's findings with regard to the FLSA and Connecticut law that the

plaintiffs' primary duty is management, that plaintiffs were in charge of and manage a customarily recognized department or subunit, and that plaintiffs customarily and regularly directed the work of technicians.  See id. at 2–15.  In addition, plaintiffs assert that there was insufficient evidence, with regard to the FLSA claim, that the plaintiffs make recommendations or suggestions as to changes in status of other employees that are given particular weight.  See id. at 15–19.

Judgment as a matter of law may only be granted where: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.   See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir.1998).  The court must view the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in its favor.  See Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir.1998). The court may not substitute its judgment for that of the jury with regard to the credibility of witnesses or the weight of the evidence.  See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir.1995).

As discussed above, see supra Section IV.A.1, there was ample evidence in this case to support a verdict in SNET's favor with regard to both the Connecticut executive exemption and the FLSA executive exemption.  The evidence in this case was fiercely contested, and often contradictory.  Plaintiffs are not entitled judgment as a matter of law.

**V.      CONCLUSION**

For the reasons stated above, plaintiffs' Motion for Judgment as a Matter of Law,

or, in the alternative, for a New Trial (Doc. No. 575) is **denied**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 14th day of February, 2012.

       /s/ Janet C. Hall            
       Janet C. Hall
       United States District Judge